## IN UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------------x

*In re:*                                           :    **Chapter 11**

:

**ESSAR STEEL MINNESOTA LLC and**                  :    **Case No. 16-11626 (BLS)**
**ESML HOLDINGS INC.,**[1]                          :
                                                   :    **(Jointly Administered)**
         **Reorganized Debtors.**                  :
                                                   :

-------------------------------------------------------------------x

:

**MESABI METALLICS COMPANY LLC**                   :    **Adv. Proc. No. 17-51210 (BLS)**
**(F/K/A ESSAR STEEL MINNESOTA LLC),**             :
                                                   :    **Related to Adv. Docket No. 18**
         **Plaintiff,**                            :
                                                   :    **DEFENDANT**
**v.**                                             :    **CLEVELAND-CLIFFS**
                                                   :    **MINNESOTA LAND**
**CLEVELAND-CLIFFS INC. (F/K/A CLIFFS**            :    **DEVELOPMENT LLC'S**
**NATURAL RESOURCES, INC.);**                      :    **ANSWER and**
**CLEVELAND-CLIFFS MINNESOTA LAND**                :    **COUNTERCLAIMS TO**
**DEVELOPMENT LLC; GLACIER PARK**                  :    **SECOND AMENDED**
**IRON ORE PROPERTIES LLC; and**                   :    **COMPLAINT**
**DOES 1-10,**                                     :
                                                   :
         **Defendants.**                           :

-------------------------------------------------------------------x

                                                   :    **[JURY DEMAND**
**CLEVELAND-CLIFFS INC. (F/K/A CLIFFS**            :    **ENDORSED HEREON]**
**NATURAL RESOURCES, INC.); and**                  :
**CLEVELAND-CLIFFS MINNESOTA LAND**                :
**DEVELOPMENT LLC,**                               :
                                                   :
         **Counterclaim-Plaintiffs,**              :
                                                   :
**v.**                                             :
                                                   :
**MESABI METALLICS COMPANY LLC**                   :
**(F/K/A ESSAR STEEL MINNESOTA LLC);**             :
**CHIPPEWA CAPITAL PARTNERS, LLC; and**            :
**THOMAS M. CLARKE,**                              :
                                                   :
         **Counterclaim-Defendants.**              :

-------------------------------------------------------------------x

---

[1]    Essar Steel Minnesota LLC has changed its name to Mesabi Metallics Company LLC.

Cleveland-Cliffs Minnesota Land Development LLC ("Cliffs Minnesota"), by and through its undersigned counsel, for its answer to Mesabi's Second Amended Complaint and (Substantive and Non-Substantive) Objection to Claim Nos. 55 and 224 (the "Second Amended Complaint"), states as follows:[2]

## ANSWER

Cliffs Minnesota asserts that the headings and sub-headings and "Nature of the Case" section of the Second Amended Complaint are argumentative and require no response.  To the extent any response is deemed necessary, Cliffs Minnesota denies each and every allegation deemed to be contained in each such heading and sub-heading and in the "Nature of the Case" section of the Second Amended Complaint.  All allegations in the Second Amended Complaint, if not expressly admitted, are denied.

## JURISDICTION AND VENUE

1.      This is an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  This adversary proceeding relates to the Chapter 11 Cases pending before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").  Mesabi consents, pursuant to Bankruptcy Rule 7008 and Local Rule 7008-1, to the entry of a final order by the Bankruptcy Court in connection with this Complaint to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

**ANSWER:**      In response to Paragraph 1, Cliffs Minnesota admits that Plaintiff Mesabi Metallics Company LLC ("Mesabi") purports to bring this action as an adversary proceeding under Federal Rule of Bankruptcy Procedure 7001 related to the above-captioned bankruptcy case, and admits that Mesabi consents to the bankruptcy court entering final orders and

---

[2]      Capitalized terms not defined herein shall have the meanings given to them in the Second Amended Complaint or the applicable exhibits to the Second Amended Complaint.

judgments in connection with this adversary proceeding.  Except as so admitted, referred and

denied, Cliffs Minnesota denies each and every allegation in Paragraph 1.

2.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157
        and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

        **ANSWER:**      The allegations in Paragraph 2 are legal conclusions to which no response

is required.  To the extent that the Court deems Paragraph 2 to include factual allegations that

require a response, Cliffs Minnesota denies them.

3.      This Court has personal jurisdiction over Defendants pursuant to Bankruptcy Rule 7004.

        **ANSWER:**      The allegations in Paragraph 3 are legal conclusions to which no response

is required.  To the extent that the Court deems Paragraph 3 to include factual allegations that

require a response, Cliffs Minnesota denies them.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

        **ANSWER:**      The allegations in Paragraph 4 are legal conclusions to which no response

is required.  To the extent that the Court deems Paragraph 4 to include factual allegations that

require a response, Cliffs Minnesota denies them.

5.      All Defendants are properly joined in this action pursuant to Rule 20 of the Federal Rules
        of Civil Procedure, made applicable by Bankruptcy Rule 7020, because the right to relief
        asserted against all Defendants arises out of the same transaction, occurrence, or series of
        transactions and occurrences, and questions of law and fact common to all Defendants
        and/or certain categories of Defendants will arise in this action.

        **ANSWER:**      The allegations in Paragraph 5 are legal conclusions to which no response

is required.  To the extent that the Court deems Paragraph 5 to include factual allegations that

require a response, Cliffs Minnesota denies them.

6.      Pursuant to this Court's *Order Granting Debtors' Motion Pursuant to 11 U.S.C. §§105(a)
        and 1142(b) for Entry of Order Implementing the Provisions of the Plan with Respect to
        the Cliffs Claims* [D.I. 1335], after the occurrence of the Effective Date, the claims set
        forth in this Complaint shall vest in the Reorganized Debtor and will be pursued by the

01:22917217.1

2

Reorganized Debtor as Tranche 2 Claims for its benefit, as well as the benefit of the Debtors' secured and unsecured creditors, pursuant to the Plan.

**ANSWER:**    In response to Paragraph 6, Cliffs Minnesota states that the Order Granting

Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and 1142(b) for Entry of Order Implementing

the Provisions of the Plan with Respect to Cliffs Claims [D.I. 1355] is a written document which

speaks for itself, and Cliffs Minnesota refers to it for a fair and accurate portrayal of its contents

and, on that basis, denies any allegations in Paragraph 6 inconsistent therewith.

### THE PARTIES

7.    Plaintiff Mesabi is a limited liability company organized and licensed under the laws of the State of Minnesota, with its principal place of business at 17113 County Road 58, P.O. Box 25, Nashwauk, MN 55769.  Mesabi is the wholly owned subsidiary of ESML Holdings Inc. ("Holdings," together with Mesabi, the "Debtors"), a holding company, organized and licensed under the laws of the State of Delaware.

**ANSWER:**    In response to Paragraph 7, Cliffs Minnesota is without knowledge or

information sufficient to form a belief as to the truth or falsity of the allegations contained

therein, and on that basis denies each and every allegation in Paragraph 7.

8.    Based upon information and belief, Defendant Cliffs is a corporation organized under the laws of the State of Ohio with its principal place of business in Cuyahoga County, Cleveland, Ohio.  The registered agent for service of process for Cliffs is James D. Graham, whose address is listed with the Ohio Secretary of State as 200 Public Square Suite 3300, Cleveland, Ohio 44114.  According to Cliffs, it is the "only real merchant supplier within the Great Lakes markets."

**ANSWER:**    In response to Paragraph 8, Cliffs Minnesota admits that Defendant

Cleveland-Cliffs Inc. ("Cliffs") is a corporation organized under the laws of the State of Ohio

with is principal place of business at 200 Public Square, Suite 3300, Cleveland, Ohio 44114, and

that James D. Graham is its registered agent for service of process.  The remaining allegations in

Paragraph 8 purport to characterize or paraphrase statements made during an earnings report

conference call on July 27, 2017; the transcript of that call speaks for itself and Cliffs Minnesota

refers to it for a fair and accurate portrayal of its contents.  Except as so admitted and referred,

Cliffs Minnesota denies all remaining allegations in Paragraph 8.

9.      Based upon information and belief, Defendant Cliffs Minnesota is a limited liability
        company organized under the laws of the State of Delaware, with its principal place of
        business in Cleveland, Ohio.  The registered agent for service of process for Cliffs
        Minnesota is the Corporation Trust Company with an address listed with the Delaware
        Department of State as 1209 Orange Street, Wilmington, Delaware 19801.

        **ANSWER:**      In response to Paragraph 9, Cliffs Minnesota admits that it is a limited

liability company formed under the laws of the State of Delaware with its registered agent for

service of process as The Corporation Trust Company, Corporation Trust Center, 1209 Orange

Street, Wilmington, Delaware 19801, and its principal place of business at 200 Public Square,

Suite 3300, Cleveland, Ohio 44114.  Responding further, Cliffs Minnesota avers that it is an

affiliate of Cliffs.

10.     Based upon information and belief, Defendant GPIOP is a limited liability company
        organized under the laws of the State of Delaware, with its principal place of business in
        Houston, Texas.  The registered agent for service of process for GPIOP is the
        Corporation Service Company with an address listed with the Delaware Department of
        State as 251 Little Falls Drive, Wilmington, Delaware 19808.

        **ANSWER:**      In response to Paragraph 10, Cliffs Minnesota admits that Glacier Park

Iron Ore Properties LLC ("Glacier Park") is a limited liability company formed under the laws of

Delaware with its registered agent for service of process as Corporation Service Company, 251

Little Falls Drive, Wilmington, Delaware 19808, and further avers that its principal place of

business is in Hibbing, Minnesota.  Except as so admitted and averred, Cliffs Minnesota denies

all remaining allegations in Paragraph 10.

11.     Does 1-10 are Defendants whose true names, identities and capacities are presently
        unknown to Plaintiff.   As and when the names, identities, and capacities of these
        fictitiously named Defendants become known, Plaintiff will amend this Complaint to set
        forth these Defendants' true names, identities, and capacities and otherwise proceed
        against them as if they had been named parties upon the commencement of this adversary
        proceeding in accordance with Rules 15 and 25 of the Federal Rules of Civil Procedure,

made applicable to this proceeding by Bankruptcy Rules 7015 and 7025.  Without limitation, the fictitiously named Defendants may include affiliates, agents, or representatives of Cliffs.

**ANSWER:**     In response to Paragraph 11, Cliffs Minnesota admits that Mesabi has alleged it will file a further amended complaint seeking to assert claims for relief against additional defendants named as "Does 1-10" in the Second Amended Complaint, which "Does 1-10" Mesabi asserts may be "affiliates, agents, or representatives of Cliffs."  Cliffs Minnesota denies that any such "affiliates, agents, or representatives" exist that could be liable in any way to Mesabi.  Except as so admitted and denied, Cliffs Minnesota denies each and every remaining allegation in Paragraph 11.

## FACTUAL BACKGROUND

A.     **The Debtors' Chapter 11 Cases:  Paragraphs 12 through 16**

**ANSWER:**     Paragraphs 12 through 16 are based on actions that occurred before Cliffs Minnesota was in existence or are not directed at Cliffs Minnesota.  To the extent Paragraphs 12 through 16 contain allegations that require a response from Cliffs Minnesota, Cliffs Minnesota is without knowledge or information sufficient to form a belief as to the truth or falsity of such allegations, and on that basis denies them.

B.     **Debtors' Plan of Reorganization and Events Subsequent to Confirmation:
Paragraphs 17 through 27**

**ANSWER:**     Paragraphs 17 through 27 are based on actions that occurred before Cliffs Minnesota was in existence or are not directed at Cliffs Minnesota.  To the extent Paragraphs 17 through 27 contain allegations that require a response from Cliffs Minnesota, Cliffs Minnesota is without knowledge or information sufficient to form a belief as to the truth or falsity of such allegations, and on that basis denies them.

01:22917217.1

5

**C.**     **History of Cliffs' Ongoing Interference with Mesabi's Operations and the Relevant Market: Paragraphs 28 through 45 and footnotes 4, 5, and 6**

     **ANSWER:**     Paragraphs 28 through 45 and footnotes 4, 5, and 6 are based on actions

that occurred before Cliffs Minnesota was in existence or are not directed at Cliffs Minnesota.

To the extent Paragraphs 28 through 45 and footnotes 4, 5, and 6 contain allegations that require

a response from Cliffs Minnesota, Cliffs Minnesota refers to and incorporates herein the answers

to such allegations as stated in Defendant Cleveland-Cliffs Inc.'s Answer and Counterclaims to

Second Amended Complaint and Response to (Substantive and Non-Substantive) Objection to

Claim Nos. 55 and 224 ("Cliffs Answer and Counterclaims").

**D.**     **In the Face of Plan Consummation, Cliffs Ratchets up Its Anti-Competitive Conduct to Prevent Mesabi from Competing in the Market: Paragraphs 46 through 63 and footnotes 7 and 8**

     **ANSWER:**     Paragraphs 46 through 63 and footnotes 7 and 8 are based on actions that

occurred before Cliffs Minnesota was in existence or are not directed at Cliffs Minnesota.  To the

extent Paragraphs 28 through 45 and footnotes 4, 5, and 6 contain allegations that require a

response from Cliffs Minnesota, Cliffs Minnesota is without knowledge or information sufficient

to form a belief as to the truth or falsity of such allegations, and on that basis denies them.

**E.**     **Cliffs and Cliffs Minnesota Instigate GPIOP's Misconduct in Connection with the GPIOP Settlement, and Ultimately the Illegally Attempted, But Ineffective, Transfer to Cliffs of the Mineral Leases and Related Properties**

64.     Mesabi is party to those certain mineral leases, dated as of November 29, 2006, by and between GPIOP and/or Superior as lessors and successors in interest and Mesabi as lessee, referred to as the "MSI/BLGN Lease," "GNIOP 100% Lease," and "MSI 50% Lease," (as from time to time amended, including pursuant to the Omnibus Lease Amendment, as defined below, collectively, and with all related or ancillary documents, the "Mineral Leases").

     **ANSWER:**     In response to Paragraph 64, Cliffs Minnesota admits that Mesabi was a

party to certain leases, but avers that all such leases have since been rejected by virtue of

Mesabi's failure to meet certain conditions and reverted.

65.    The Mineral Leases are a key component of Mesabi's overall mineral rights portfolio, and as part of that portfolio are central to Mesabi's future plans for the Project.

**ANSWER:**    In response to Paragraph 65, Cliffs Minnesota is without knowledge or information sufficient to form a belief as to the truth or falsity of what constitutes "a key component of Mesabi's overall mineral rights portfolio," and on that basis denies the allegations therein.

66.    Over the course of the Mineral Leases, Mesabi has paid more than $10 million in minimum royalties, as required by section 9 of the Mineral Leases (such aggregate amounts, as accumulated prior to the commencement of mining, the "Prepaid Royalties"). The Prepaid Royalties are subject to offset by Mesabi as set forth in section 9 of the Mineral Leases.

**ANSWER:**    In response to Paragraph 66, Cliffs Minnesota is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning payments that Mesabi allegedly has made or failed to make under the Mineral Leases, and on that basis denies each and every such allegation therein.  To the extent that the allegations in Paragraph 66 purport to paraphrase or characterize the Mineral Leases, those are written documents that speak for themselves, and Cliffs Minnesota refers to each such document for a fair and accurate portrayal of its contents.  Except as so denied and referred, Cliffs Minnesota denies each and every remaining allegation in Paragraph 66.

67.    On February 2, 2017, in conjunction with filing of the then-operative version of the Plan (the "Original Plan"), the Debtors filed a notice of motion to assume unexpired mineral leases (the "Assumption Notice").  The Assumption Notice provided notice to lessors that the Original Plan incorporated and constituted a motion to assume certain executory contracts and unexpired leases of the Debtors, including but not limited to, the Mineral and Surface Leases and the Mineral Leases.

**ANSWER:**    In response to Paragraph 67, Cliffs Minnesota admits the factual allegations therein.

01:22917217.1

68.     In response to the Assumption Notice, on April 12, 2017, GPIOP filed an objection to the assumption of the Mineral Leases (the "GPIOP Objection").

        **ANSWER:**     In response to Paragraph 68, Cliffs Minnesota admits the factual

allegations therein.

69.     Following negotiations, GPIOP and the Debtors entered into a stipulation regarding assumption of the Mineral Leases (the "Stipulation").  Pursuant to the Stipulation, the Parties agreed that the assumption of the Mineral Leases would be addressed by a separate motion.  The Bankruptcy Court entered an order approving the Stipulation [D.I. 924] on April 24, 2017.

        **ANSWER:**     In response to Paragraph 69, Cliffs Minnesota admits that a Stipulation

was entered and approved [D.I. 924], but otherwise denies for lack of knowledge as to their truth

the factual allegations therein.

70.     On April 25, 2017, GPIOP withdrew the GPIOP Objection [D.I. 927].  While the Mineral Leases were not then assumed pursuant to the Plan, they remained necessary to the Project.

        **ANSWER:**     In response to Paragraph 70, Cliffs Minnesota admits that on April 25,

2017 Glacier Park filed a *Notice of Withdrawal* [D.I. 927] of its *Objection to Assumption of*

*Mineral Leases* [D.I. 888] previously filed on April 12, 2017, each of which is a written

document that speaks for itself and to which Cliffs Minnesota refers for a fair and accurate

portrayal of its contents.  Responding further, Cliffs Minnesota admits that the Mineral Leases

were not assumed pursuant to the Plan, and that Mesabi has alleged that the Mineral Leases are

"necessary to the Project."  Except as so admitted and referred, Cliffs Minnesota denies each and

every remaining allegation in Paragraph 70.

71.     On June 27, 2017, shortly after confirmation of the Plan and as contemplated in the Stipulation, the Debtors filed a motion to assume the Mineral Leases [D.I. 1056] (the "Motion to Assume"), to which GPIOP objected [D.I. 1093] on July 14, 2017.

        **ANSWER:**     In response to Paragraph 71, Cliffs Minnesota admits that the Motion [D.I.

1056] was filed on June 27, 2017 and that Glacier Park objected [D.I. 1093] on July 14, 2017,

and otherwise denies the factual allegations therein.

72.     On August 28, 2017, Chippewa, the Debtors, GPIOP, and Superior were able to reach a consensual resolution that anticipated and provided for the assumption of the Mineral Leases on the Effective Date, and entered into that certain Settlement Agreement – Glacier Park (inclusive of attachments, the "GPIOP Settlement") and the associated Omnibus Amendment of Certain Leases and Permitting Assumption Pursuant to 11 U.S.C. § 365 (the "Omnibus Lease Amendment").  The GPIOP Settlement and Omnibus Lease Amendment together were intended to identify the terms of the Restated Mineral Leases between GPIOP, Superior, and the Reorganized Debtor, preserving all rights and obligations under the Mineral Leases, as amended.

**ANSWER:**     In response to Paragraph 72, Cliffs Minnesota admits that Chippewa, the Debtors, Glacier Park, and Superior Mineral Resources, LLC ("Superior") entered into two separate and related agreements dated as of August 28, 2017, a Settlement Agreement – Glacier Park (the "Glacier Park Settlement") and an Omnibus Lease Amendment, each of which were filed with this Court on August 29, 2017 pursuant to a certification of counsel and attached as exhibits to an *Agreed Order* entered on August 30, 2017 [D.I. 1168].  The Glacier Park Settlement and the Omnibus Lease Amendment each are written documents that speak for themselves, and Cliffs Minnesota refers to each for a fair and accurate portrayal of its contents. Except as so admitted and referred, Cliffs Minnesota denies each and every remaining allegation in Paragraph 72.

73.     On August 30, 2017, this Court entered the *Agreed Order Granting Debtors' Motion Pursuant to Sections 105(a) and 365 of the Bankruptcy Code Authorizing Assumption of the GPIOP Mineral Leases, as Amended* [D.I. 1168] (the "Assumption Order") which, among other things, approved the GPIOP Settlement and the Omnibus Lease Amendment.

**ANSWER:**     In response to Paragraph 73, Cliffs Minnesota admits that on August 30, 2017 this Court entered the Agreed Order Granting Debtors' Motion Pursuant to Sections 105(a) and 365 of the Bankruptcy Code Authorizing Assumption of the GPIOP Mineral Leases, as Amended [D.I. 1168] (the "Assumption Order"), which is a written document that speaks for

01:22917217.1

9

itself, and Cliffs Minnesota refers to it for a fair and accurate portrayal of its contents.  Except as

so admitted and referred, Cliffs Minnesota denies each and every remaining allegation in

Paragraph 73.

74.     In general, the GPIOP Settlement, approved as part of the Assumption Order, provides
        for the assumption of the Mineral Leases by Mesabi upon the Effective Date of the Plan
        on the terms set forth in the GPIOP Settlement.  The GPIOP Settlement conditions such
        assumption on the occurrence of the Effective Date by October 31, 2017 and the payment
        by Mesabi to GPIOP and Superior in the aggregate amount of $600,000 to be applied to
        royalties coming due under the Mineral Leases through January 2018.  Settlement Agr.,
        ¶ 3.  Mesabi made this payment on or about September 15, 2017.

        **ANSWER:**     In response to Paragraph 74, Cliffs Minnesota admits the factual

allegations therein.  To the extent that the allegations in Paragraph 74 purport to paraphrase or

characterize the Glacier Park Settlement, it is a written document that speaks for itself, and Cliffs

Minnesota refers to it for a fair and accurate portrayal of its contents.

75.     The GPIOP Settlement separately provides that, on or prior to the Effective Date (without
        regard to when the Effective Date may occur), GPIOP, Superior, and the Reorganized
        Debtor[3] are obligated to use commercially reasonable efforts to restate the form of the
        Mineral Leases in a manner acceptable to GPIOP, Superior, and the Reorganized Debtor
        (the "Restated Mineral Leases"), "which Restated Mineral Leases shall be fully
        enforceable and effective on the Effective Date" and in substance "preserve all rights and
        obligations under the Minerals [sic] Leases, subject to the modifications described [in the
        GPIOP Settlement (inclusive of the Omnibus Amendment)], and contain terms and
        conditions substantially similar to the Mineral Leases . . . ."  *Id*. at ¶ 4(a).  In any event,
        "[t]he Mineral Leases *will* be deemed amended and restated by consent on the Effective
        Date of the Plan."  *Id.* (emphasis added).

        **ANSWER:**     In response to Paragraph 75, Cliffs Minnesota denies the allegations

therein.  To the extent that the allegations in Paragraph 75 purport to paraphrase or characterize

the Glacier Park Settlement, it is a written document that speaks for itself, and Cliffs Minnesota

refers to it for a fair and accurate portrayal of its contents.  Responding further, Cliffs Minnesota

avers that on October 31, 2017, the Mineral Leases were rejected and reverted to the lessors, who

---

3       The Reorganized Debtor is a third party beneficiary to the Settlement Agreement and will execute a joinder
        thereto on the Effective Date. *Id.* at ¶ 10.

were free to do whatever they wanted, and that the Mineral Leases were not subject to

reinstatement under Section 4 of the Glacier Park Settlement.

76.     The GPIOP Settlement states that, if the Effective Date does not occur prior to October 31, 2017 or a later date agreed by the parties (the "Rejection Condition"), the Mineral Leases will be automatically deemed rejected pursuant to 11 U.S.C. § 365. *Id.* at ¶ 3(d). However, the GPIOP Settlement does *not* provide that the Mineral Leases will be terminated as a consequence. Rather, the GPIOP Settlement permits GPIOP and Superior, as applicable, to take further actions with respect to the Mineral Leases (and underlying real property) following the Rejection Condition without regard to the automatic stay or any other provision of the Bankruptcy Code. *Id.* at ¶ 3(d). There is no corresponding waiver in the GPIOP Settlement of any state law limits on termination, including under the terms of the Mineral Leases. Indeed, paragraph 3(e) of the GPIOP Settlement provides, without qualification, that "[t]he Mineral Leases shall remain in full force and effect until the Restated Mineral Leases become fully effective and enforceable." *Id.* at ¶ 3(e).

        **ANSWER:**     In response to Paragraph 76, Cliffs Minnesota denies the allegations

therein.  To the extent that the allegations in Paragraph 76 purport to paraphrase or characterize

the Glacier Park Settlement, it is a written document that speaks for itself, and Cliffs Minnesota

refers to it for a fair and accurate portrayal of its contents.  Responding further, Cliffs Minnesota

avers that the Mineral Leases were rejected under Section 3(d) of the Glacier Park Settlement

when the Effective Date did not occur by October 31, 2017, as Mesabi concedes in Paragraph 76,

and further avers that, under the applicable rules of contract interpretation, Section 3(d)

specifically extinguished all of Mesabi's and the Reorganized Debtors' rights in the Mineral

Leases, without the need for a separate termination, by reverting the leases to Glacier Park and

Superior and confirming that Glacier Park and Superior may take "any action" thereafter.

77.     Notwithstanding the occurrence of the Rejection Condition, the GPIOP Settlement remains effective until the Debtors withdraw the Plan or announce that the Effective Date will not occur. *See id.* at ¶ 8(a), (b). Until then, each party to the GPIOP Settlement is obligated to use its respective commercially reasonable efforts to carry out the terms of the agreement, *id.* at ¶ 16, including the negotiation and execution of the Restated Mineral Leases among the Reorganized Debtor, GPIOP, and Superior, *id.* at ¶ 4. This construct permitted the Debtors and the Reorganized Debtor to retain their rights in the

Mineral Leases notwithstanding rejection.

**ANSWER:**    In response to Paragraph 77, Cliffs Minnesota denies the allegations

therein.  To the extent that the allegations in Paragraph 77 purport to paraphrase or characterize

the Glacier Park Settlement, it is a written document that speaks for itself, and Cliffs Minnesota

refers to it for a fair and accurate portrayal of its contents.  Responding further, Cliffs Minnesota

avers that, under the applicable rules of contract interpretation, Sections 4, 8 and 16 of the

Glacier Park Settlement cannot be construed to create a separate, ongoing obligation to negotiate

and execute a restated mineral lease notwithstanding rejection as alleged in Paragraph 77.

78.    The Omnibus Lease Amendment provides for certain limited modifications of the
economic terms of the Mineral Leases.  It waives prior prepayments, changes the
minimum royalty payments and mining plan schedule and adds a cross-default provision
with respect to certain mineral leases between Mesabi and the State of Minnesota.
Otherwise, the Omnibus Lease Amendment "does not modify the terms of the Mineral
Leases, and the unamended terms of the Mineral Leases shall remain in full force and
effect."  *Id.* at ¶ 2.  Notably, the Omnibus Lease Amendment does not provide for any
special termination rights following the occurrence of the Rejection Condition.

**ANSWER:**    In response to Paragraph 78, Cliffs Minnesota denies the allegations

therein.  To the extent that the allegations in Paragraph 78 purport to paraphrase or characterize

the Omnibus Lease Amendment, it is a written document that speaks for itself, and Cliffs

Minnesota refers to it for a fair and accurate portrayal of its contents.

79.    Moreover, paragraph 3(e) of the GPIOP Settlement provides that "[a]s of the Effective
Date of the Plan, GPIOP and Superior agree that any pre-Effective Date breaches or
defaults under the Mineral Leases are cured, and if not curable, are waived."  This
provision contains no limitation as to breaches or defaults prior to the occurrence of the
Rejection Condition.

**ANSWER:**    In response to Paragraph 79, Cliffs Minnesota denies the allegations

therein.  To the extent that the allegations in Paragraph 79 purport to paraphrase or characterize

the Glacier Park Settlement, it is a written document that speaks for itself, and Cliffs Minnesota

refers to it for a fair and accurate portrayal of its contents.

01:22917217.1

80.    Finally, the Assumption Order states that the GPIOP Settlement and the Omnibus Lease Amendment are approved, id. at ¶ 2, and that

> Pursuant to sections 105(a) and 365 of the Bankruptcy Code, the Mineral Leases, as amended, *are assumed as of the effective date of the Plan.*

*Id.* at ¶ 3 (emphasis added).  This Court retained jurisdiction over the terms of the Assumption Order.  *Id.* at ¶ 6.

**<u>ANSWER:</u>**    In response to Paragraph 80, Cliffs Minnesota admits the factual allegations therein.  To the extent that the allegations in Paragraph 80 purport to paraphrase or characterize the Assumption Order, it is a written document that speaks for itself, and Cliffs Minnesota refers to it for a fair and accurate portrayal of its contents.

81.    Upon information and belief, during the time between the Plan's confirmation and the GPIOP Settlement, as Chippewa and Mesabi sought to work with GPIOP to assume the Mineral Leases, Cliffs approached GPIOP to undermine the negotiating process and try to obtain the Mineral Leases.  At certain points, Mesabi's negotiations with GPIOP became inexplicably difficult, which upon information and belief was a direct result of Cliffs' efforts to obtain the Mineral Leases.  Moreover, Mesabi believes certain terms of the GPIOP Settlement were driven by Cliff's efforts to obtain the Mineral Leases, and that certain terms of the GPIOP Settlement are worse for Mesabi as a result.

**<u>ANSWER:</u>**    In response to Paragraph 81, Cliffs Minnesota denies the allegations to the extent that they imply any wrongdoing by Cliffs Minnesota.  Responding further, Cliffs Minnesota is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 81, and on that basis denies them.

82.    These actions constitute not only a direct interference with Mesabi's leasehold and contractual interests in the Mineral Leases, but also an effort to derail the Plan as the Mineral Leases represent a material portion of the future mining plan for the Project.

**<u>ANSWER:</u>**    In response to Paragraph 82, Cliffs Minnesota denies the allegations therein.

83.    Pursuant to the terms of the GPIOP Settlement, from August 28, 2017, GPIOP was obligated to negotiate in good faith the form of and execute the Restated Mineral Leases on "terms and conditions *substantially similar* to the Mineral Leases."  GPIOP Settlement, ¶ 4(a) (emphasis added).  Indeed, paragraph 4(b) of the GPIOP Settlement states this obligation explicitly: "Each of GPIOP, Superior and the Reorganized Debtor

shall use commercially reasonable efforts to negotiate and execute the Restated Mineral Leases, and shall not unreasonably withhold, delay, or condition their consent or execution of the Restated Mineral Leases." GPIOP Settlement, ¶ 4(b). Instead, during the course of negotiations with Mesabi and the Plan Sponsor, GPIOP was focused on forcing a sale of the property related to the Mineral Leases, or negotiating substantially revised terms of a new lease. Additionally, GPIOP told David Pauker and Susan Fennessey (the CRO and COO/GC of the Debtors, respectively) directly that it was interested in selling its property interests, rather than leasing them. To date, notwithstanding the best efforts of Mesabi and the Plan Sponsor, the form of each of the Restated Mineral Leases has not been fully negotiated and the Restated Mineral Leases have not been executed. Thus, in accordance with the GPIOP Settlement, on the Effective Date, the Restated Mineral Leases will be deemed amended and restated by consent on the terms already set forth in the Mineral Leases.

**ANSWER:**    In response to Paragraph 83, Cliffs Minnesota is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Mesabi's negotiations with Glacier Park, and on that basis denies them. To the extent that the allegations in Paragraph 83 purport to paraphrase or characterize the Glacier Park Settlement, it is a written document that speaks for itself, and Cliffs Minnesota refers to it for a fair and accurate portrayal of its contents. Except as so denied and referred, Cliffs Minnesota denies each and every remaining allegation in Paragraph 83.

84.    Upon information and belief, the Plan Sponsor, GPIOP, and Superior had reached advanced stages of negotiations related to the Mineral Leases in early December 2017. Indeed, although the Effective Date had not occurred by October 31, 2017, Mesabi and the Plan Sponsor were able to secure extensions of the time to go effective from other Mineral Lessors, including the DNR, and GPIOP specifically stated to David Pauker and Susan Fennessey that it, GPIOP, intended to continue to negotiate in good faith and would not be the reason Mesabi was not able to consummate the Plan. Moreover, GPIOP went even further and assured Mesabi that it had contacted the Minnesota governor's office as well as the DNR and other interested parties and told them that they were still working with Mesabi and the Plan Sponsor in good faith and intended to execute Restated Mineral Leases. Upon information and belief, these calls were an important part of Mesabi's and the Plan Sponsor's efforts to keep all interested parties invested in the Project and moving forward toward ultimate consummation of the Plan. Furthermore, the Plan Sponsor relied on GPIOP's representations in order to continue to provide funding for the Debtors' operations; Mesabi also continued to incur administrative expenses based in part on GPIOP's reassurance that it would continue to work with the parties. The Prepetition Lenders also relied on GPIOP's representations of their continued support in

negotiations with the Plan Sponsor related to the Prepetition Lender Notes.

**ANSWER:**   In response to Paragraph 84, Cliffs Minnesota admits that "the Effective

Date had not occurred by October 31, 2017"; that "Mesabi and the Plan Sponsor were able to

secure extensions of time to go effective from other Mineral Lessors, including the DNR," by

October 31, 2017; and that Glacier Park and Superior did not agree to an extension of the

Effective Date beyond October 31, 2017.  Except as so admitted, Cliffs Minnesota denies each

and every remaining allegation in Paragraph 84.

85.   As the Court is aware, Mesabi has most recently resolved a dispute with certain
Prepetition Lenders with respect to the indenture governing the Prepetition Lender Notes
to be issued pursuant to the Plan.  This dispute stemmed from certain changes to the form
of indenture required to facilitate contemplated Exit Financing and is emblematic of the
substantial challenges Mesabi has faced in its six month push to consummate the Plan.
Resolution of this dispute on December 7, 2017,10 seemed then to have cleared the way
for the Plan to go effective and bring about a successful resolution of these Chapter 11
Cases.

**ANSWER:**   In response to Paragraph 85 and footnote 10, Cliffs Minnesota is without

knowledge or information sufficient to form a belief as to the truth or falsity of the allegations

concerning Mesabi's dispute with the Prepetition Lenders, and on that basis denies them.  To the

extent that the allegations in Paragraph 85 and footnote 10 purport to paraphrase or characterize

the document filed with this Court at D.I. 1362, this is a written document that speaks for itself,

and Cliffs Minnesota refers to it for a fair and accurate portrayal of its contents.  Except as so

denied and referred, Cliffs Minnesota denies each and every remaining allegation in Paragraph

85 and footnote 10.

86.   Unbeknownst to Mesabi, however, upon information and belief, the "negotiations"
GPIOP had with the Plan Sponsor were a pretense and GPIOP was either being unduly
influenced by Cliffs or directly conspiring with them to kill the Project and Plan by
improperly attempting to transfer lease rights to Cliffs.

**ANSWER:**    In response to Paragraph 86, Cliffs Minnesota denies the allegations

therein.

87.    A new and completely unanticipated complication was introduced on December 11, 2017.  A press release issued Cliffs that morning provides as follows:

> [Cliffs] announced today that its wholly-owned subsidiary, Cleveland-Cliffs Minnesota Land Development LLC, completed an acquisition of certain real estate interests located in Itasca County west of Nashwauk, Minnesota from [GPIOP].  The interests include a combination of undivided and whole fee interests as well as mineral and surface leases, all lying within the Biwabik Iron Formation. The acreage acquired is approximately 553 acres and the acreage being leased is approximately 3,215 acres.
>
> Cliffs expects to be able to leverage the acquired real estate interests to develop a financially sustainable plan for the site, which may be considered as other iron ore resources deplete.  The purchased properties include parcels that were formerly leased by GPIOP to [Mesabi], formerly known as Essar Steel Minnesota. [Mesabi's] lease rights terminated on October 31, 2017 when it failed to exit bankruptcy in connection with Chippewa's inability to timely secure funding and other consents for its plan to take [Mesabi] out of bankruptcy at that time.
>
> Lourenco Goncalves, Chairman, President and Chief Executive Officer, said, "We are enthused about the acquisition of this property, which came into play after Chippewa failed to follow through on its obligation to obtain financing and a bankruptcy exit for [Mesabi] by October 31.  Despite several botched attempts by others, it is now the time for [Cliffs] to sit at the table with other responsible parties and develop a realistic solution for this site." Mr. Goncalves added: "[Cliffs] has been in Minnesota for 115 years, and we currently employ approximately 1,750 people in three separate mining and pelletizing operations throughout the state. As the new owner of this real estate, we know our responsibilities and will not disappoint the people of Minnesota."

*Cleveland-Cliffs Inc. Announces Acquisition of Real Estate Interests in Itasca County, Minnesota* (Dec. 11, 2017), available at http://www.clevelandcliffs.com/English/news-center/news-releases/news-releases-details/2017/Cleveland-Cliffs-Inc-Announces-Acquisition-of-Real-Estate-Interests-in-Itasca-County-Minnesota/default.aspx (the "Cliffs Release").

**ANSWER:**    In response to Paragraph 87, Cliffs Minnesota admits that on December

11, 2017, a press release ("Cliffs' Dec. 11, 2017 Press Release") was issued to announce that it

had acquired certain real estate interests of Glacier Park in Itasca County, Minnesota, including

properties that had formerly been leased by Glacier Park to Mesabi (the "Cliffs/Glacier Park

Transaction").  Cliffs' Dec. 11, 2017 Press Release is a written document that speaks for itself,

and Cliffs Minnesota refers to it for a fair and accurate portrayal of its contents.  Except as so

admitted and referred, Cliffs Minnesota denies each and every remaining allegation in

Paragraph 87.

88.     On information and belief, all of the mineral and surface rights that are subject to the
        Mineral Leases, and were intended to be subject to the Restated Mineral Leases, are
        included in the real estate interests purportedly acquired by Cliffs Minnesota pursuant to
        the Cliffs Transaction (the "GPIOP Property Interests").  Thus, despite GPIOP's
        obligation to negotiate the form of and execute the Restated Mineral Leases, upon
        information and belief, Cliffs, through its wholly-owned subsidiary Cliffs Minnesota, has
        entered into an agreement to acquire the GPIOP Property Interests, which represent a
        material portion of the future mining plan for the Project.

        **ANSWER:**     In response to Paragraph 88, Cliffs Minnesota admits that the

Cliffs/Glacier Park Transaction resulted in the transfer of fee simple or leasehold interests from

Glacier Park to Cliffs Minnesota for all of the properties that Glacier Park previously had leased

to Essar (now Mesabi) under the Mineral Leases.  Except as so admitted, Cliffs Minnesota denies

each and every remaining allegation in Paragraph 88.

89.     Pursuant to the Mineral Leases, however, GPIOP was obligated to "defend [Mesabi], its
        successors and assigns, in the full and peaceful possession of the leasehold estate
        established [by the Mineral Leases], against all lawful claims and demands whatsoever."

        **ANSWER:**     In response to Paragraph 89, the allegations therein purport to paraphrase

or characterize the Mineral Leases, the Glacier Park Settlement, and the Omnibus Lease

Amendment, each of which is a written document that speaks for itself, and Cliffs Minnesota

refers to each for a fair and accurate portrayal of its contents.  Except as so referred, Cliffs

Minnesota denies each and every allegation in Paragraph 89.

90.     GPIOP gave Mesabi no warning or indication that it intended to sell or lease the GPIOP
        Property Interests to Cliffs.  The first Mesabi and the Plan Sponsor learned that GPIOP
        did not intend to honor its obligations to Mesabi, including its obligation to execute the
        Restated Mineral Leases, was on December 11, 2017.  Before Mesabi and the Plan
        Sponsor saw the Cliffs Release, GPIOP abruptly announced on a conference call with the

Plan Sponsor that it was bound by a confidentiality agreement barring it from discussing the matter further.  On the basis of this purported agreement, GPIOP has refused to provide any information to the Plan Sponsor regarding the agreements and/or transactions described in the Cliffs Release (collectively, the "Cliffs Transaction") or continue discussions with the Plan Sponsor.  On information and belief, even Superior, the owner of an undivided 50% interest in much of the mineral rights that are subject to the Mineral Leases, was kept in the dark regarding the Cliffs Transaction: Superior did not participate in the Cliffs Transaction; did not consent to the Cliffs Transaction; did not know of the Cliffs Transaction before it closed; and did not transfer any of its interests to Cliffs.

**ANSWER:**    In response to Paragraph 90, Cliffs Minnesota avers that after October 31, 2017, the leases reverted and Glacier Park was free to "take any action with respect to the Mineral Leases and the leased properties and interests and such actions will not constitute a violation of the automatic stay or any other provisions of the Bankruptcy Code."  Glacier Park Settlement § 3(d).  Cliffs Minnesota admits that Superior owns "an undivided 50% interest" in certain of the properties that are part of the Cliffs/Glacier Park Transaction and did not participate in the Cliffs/Glacier Park Transaction or transfer any of its interests to Cliffs Minnesota, but denies that Superior's consent or knowledge was necessary to the Cliffs/Glacier Park Transaction.  Responding further, Cliffs Minnesota is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 90 concerning Mesabi's or the Plan Sponsor's knowledge and Glacier Park's conduct, and on that basis denies them.  Except as so admitted, denied, and averred, Cliffs Minnesota denies each and every remaining allegation in Paragraph 90.

91.    Upon information and belief, prior to and after August 28, 2017, the date of the GPIOP Settlement's execution, GPIOP was involved in discussions with Cliffs regarding Cliffs' potential acquisition of the GPIOP Property Interests.  Indeed, the due diligence and preparation that is required to close a transaction as complex as the mixed purchase and lease of nearly 4,000 acres of land and related mineral rights necessarily requires multiple months of intense negotiation and drafting before such a transaction can be completed.  Thus, on information and belief, GPIOP and Cliffs were engaged in discussions regarding the Cliffs Transaction in direct contravention of GPIOP's obligations under the GPIOP Settlement.

01:22917217.1

**ANSWER:**    In response to Paragraph 91, Cliffs Minnesota denies the allegations

therein.

92.    Upon information and belief, Cliffs Minnesota was formed by Cliffs more than three
weeks prior to the rejection trigger in the GPIOP Settlement, and conceived of even
earlier than that, for the sole purpose of acquiring the GPIOP Property Interests.

**ANSWER:**    In response to Paragraph 92, Cliffs Minnesota admits that it was formed

by Cliffs on October 9, 2017.  Except as so admitted, Cliffs Minnesota denies each and every

remaining allegation in Paragraph 92.

93.    Without access to the GPIOP Property Interests over which Cliffs and Cliffs Minnesota
have purportedly acquired control, Mesabi would likely be unable to complete the
Project.  Much of the acreage that Cliffs and Cliffs Minnesota acquired from GPIOP that
falls within the area for which Mesabi currently has a permit to mine (the "Permit to
Mine Area"), and much of what could be mined in the next several years, is surrounded
by land owned or leased by Mesabi for the Project, and is not generally accessible to
Cliffs and Cliffs Minnesota.  For a mining company to mine the Permit to Mine Area
economically, the entire group of available mineral leases within the area must be under
the mining company's control.  In other words, Cliffs and Cliffs Minnesota have acquired
acreage on which they cannot practicably perform mining activities for the foreseeable
future, unless Mesabi is forced to abandon the Project.  Furthermore, the permits granting
Mesabi the right to mine are uniquely tied to Mesabi as the permit holder and cannot be
simply transferred to Cliffs or Cliffs Minnesota.  On information and belief, these facts
were known to Defendants when the Cliffs Transaction was agreed to.

**ANSWER:**    In response to Paragraph 93, Cliffs Minnesota admits that Mesabi claims it

"would likely be unable to complete the Project" without the properties that Cliffs Minnesota

acquired in the Cliffs/Glacier Park Transaction.  Except as so admitted, Cliffs Minnesota denies

each and every remaining allegation in Paragraph 93.

94.    If effective as intended by Cliffs and Cliffs Minnesota, the foreseeable result of the Cliffs
Transaction would be to prevent Plaintiff from completing the Project and, ultimately, to
cause the Project to fail and Plaintiff to be forced to cease operations or, at least, to make
it much more expensive and time-consuming to implement.  If Plaintiff is prevented from
competing in that market, Cliffs would then maintain its monopoly in the Great Lakes
Pellet and Iron Market.  On information and belief, this was always the intention of Cliffs
and Cliffs Minnesota.

01:22917217.1

**ANSWER:**    In response to Paragraph 94, Cliffs Minnesota denies the allegations therein.

95.    Upon information and belief, Cliffs and Cliffs Minnesota have no legitimate business purpose for buying and/or leasing the GPIOP Property Interests.  Rather, their sole purpose for entering into the Cliffs Transaction, whatever it entails, is the destruction of the Project and unlawful elimination of a competitor within the Mesabi Iron Range. Notably, in Cliffs' press release announcing the Cliffs Transaction, Cliffs stated that it intended to use the acquired real estate as "leverage."  Upon information and belief, GPIOP was aware of Cliffs' intentions and knowingly participated in Cliffs' attempts to eliminate competition in the Mesabi Iron Range.

**ANSWER:**    In response to Paragraph 95, Cliffs Minnesota denies the allegations therein.   To the extent that the allegations in Paragraph 95 purport to paraphrase or characterize Cliffs' Dec. 11, 2017 Press Release, it is a written document that speaks for itself, and Cliffs Minnesota refers to it for a fair and accurate portrayal of its contents.

96.    On information and belief, the Cliffs Transaction is the latest attempt in Cliffs' broad scheme to unlawfully prevent Mesabi from competing with Cliffs in the Mesabi Iron Range in northern Minnesota.  As discussed above, Cliffs' intent to acquire Mesabi's assets existed long before its failed bid for such assets during the bankruptcy process, and has continued since.  This Court's confirmation of the Plan and subsequent implementation orders simply required Cliffs to be more creative in its anticompetitive attempts to destroy Mesabi. Notwithstanding Cliffs' varied and wrongful interferences, Mesabi is prepared to consummate the Plan and go effective.

**ANSWER:**    In response to Paragraph 96, Cliffs Minnesota denies the allegations therein.

97.    Upon information and belief, Cliffs' interference caused delay and significantly increased the cost of the Plan's consummation.

**ANSWER:**    In response to Paragraph 97, Cliffs Minnesota denies the allegations therein.

98.    Mesabi understands that the Doe Defendants acted in concert with Cliffs in certain or all of the foregoing, which actions were pursuant to a common design and scheme to pursue an unlawful object or course of action to be accomplished by unlawful means with the purpose of competing against Mesabi, to Mesabi's detriment.

**ANSWER:**    In response to Paragraph 98, Cliffs Minnesota is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations, and on that basis denies them.

## CLAIMS

### FIRST CLAIM FOR RELIEF
**(Tortious Interference with Contractual Rights)**
**(Against Cliffs and Cliffs Minnesota)**

99.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 98 of this Complaint with the same force and effect as though fully set forth herein.

**ANSWER:**    In response to Paragraph 99, Cliffs Minnesota repeats and realleges its responses to each and every allegation contained in Paragraphs 1 through 98 as if fully set forth herein.

100.    In addition to the Plan, Plaintiff and certain vendors, suppliers, and contractors are parties to valid, binding and enforceable contracts for construction of the Project.

**ANSWER:**    The allegations in Paragraph 100 are legal conclusions to which no response is required.  To the extent that the Court deems Paragraph 100 to include factual allegations that require a response, Cliffs Minnesota is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations, and on that basis denies them.

101.    At all relevant times, Cliffs and/or Cliffs Minnesota have known of the existence of Plaintiff's contracts, including the GPIOP Settlement and the Mineral Leases, and their purpose for construction, and ultimately operation, of the Project.

**ANSWER:**    In response to Paragraph 101, Cliffs Minnesota admits that it knew of the existence of the Glacier Park Settlement and the Mineral Leases.  Except as so admitted, Cliffs Minnesota denies each and every remaining allegation in Paragraph 101 that relates to Cliffs Minnesota.

102.   As described above, Cliffs and/or Cliffs Minnesota has forced and attempted to force various contract counter-parties to cease working with Plaintiff.

**ANSWER:**   In response to Paragraph 102, Cliffs Minnesota denies each and every allegation that relates to Cliffs Minnesota.

103.   On information and belief, Cliffs and/or Cliffs Minnesota tortiously interfered with the rights of Mesabi and its contract counter-parties under the existing contracts.

**ANSWER:**   The allegations in Paragraph 103 are legal conclusions to which no response is required. To the extent that the Court deems Paragraph 103 to include factual allegations that require a response, Cliffs Minnesota denies each and every allegation that relates to Cliffs Minnesota.

104.   Cliffs and/or Cliffs Minnesota intentionally acted in a way to procure the breach of and termination of Mesabi's existing contracts.

**ANSWER:**   The allegations in Paragraph 104 are legal conclusions to which no response is required. To the extent that the Court deems Paragraph 104 to include factual allegations that require a response, Cliffs Minnesota denies each and every allegation that relates to Cliffs Minnesota.

105.   Cliffs' and/or Cliffs Minnesota's conduct was not justified.

**ANSWER:**   The allegations in Paragraph 105 are legal conclusions to which no response is required. To the extent that the Court deems Paragraph 105 to include factual allegations that require a response, Cliffs Minnesota denies each and every allegation that relates to Cliffs Minnesota.

106.   As a direct and proximate result of Cliffs' and/or Cliffs Minnesota's conduct, Mesabi suffered damages due to Cliffs' and/or Cliffs Minnesota's tortious interference as alleged above and in an amount to be proven at trial.

**ANSWER:**   The allegations in Paragraph 106 are legal conclusions to which no response is required. To the extent that the Court deems Paragraph 106 to include factual

allegations that require a response, Cliffs Minnesota denies each and every allegation that relates to Cliffs Minnesota.

## SECOND CLAIM FOR RELIEF
**(Tortious Interference with Business Relations or Prospective Economic Advantage)**
**(Against Cliffs and Cliffs Minnesota)**

107.   Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 106 of this Complaint with the same force and effect as though fully set forth herein.

   **ANSWER:**   In response to Paragraph 107, Cliffs Minnesota repeats and realleges its responses to each and every allegation contained in Paragraphs 1 through 106 as if fully set forth herein.

108.   In addition to the Plan, Plaintiff and certain vendors, suppliers, and contractors are parties to valid, binding and enforceable contracts for construction of the Project.

   **ANSWER:**   The allegations in Paragraph 108 are legal conclusions to which no response is required.  To the extent that the Court deems Paragraph 108 to include factual allegations that require a response, Cliffs Minnesota is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations, and on that basis denies them.

109.   Plaintiff has business relationships and expectancies with various vendors, suppliers, and contractors, with a probability of future economic benefit to Plaintiff.

   **ANSWER:**   The allegations in Paragraph 109 are legal conclusions to which no response is required.  To the extent that the Court deems Paragraph 109 to include factual allegations that require a response, Cliffs Minnesota is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations, and on that basis denies them.

110.   At all relevant times, Cliffs and/or Cliffs Minnesota have known of the existence of Plaintiff's contracts and their purpose for construction of the Project the existence of

01:22917217.1

Plaintiff's business relationships with other vendors, suppliers, and contractors described herein.

**ANSWER:**    In response to Paragraph 110, Cliffs Minnesota denies each and every

allegation that relates to Cliffs Minnesota.

111.    On information and belief, Cliffs and/or Cliffs Minnesota tortiously interfered with Mesabi's contracts and its business relationships and expectancies with necessary vendors, suppliers, and contractors.

**ANSWER:**    The allegations in Paragraph 111 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 111 to include factual

allegations that require a response, Cliffs Minnesota denies each and every allegation that relates

to Cliffs Minnesota.

112.    As a direct and proximate result of Cliffs' and/or Cliffs Minnesota's conduct, Mesabi suffered damages due to Cliffs' and/or Cliffs Minnesota's tortious interference as alleged above and in an amount to be proven at trial.

**ANSWER:**    The allegations in Paragraph 112 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 112 to include factual

allegations that require a response, Cliffs Minnesota denies each and every allegation that relates

to Cliffs Minnesota.

### THIRD CLAIM FOR RELIEF
#### (Breach of Contract – GPIOP Settlement)
#### (Against GPIOP)

113.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 112 of this Complaint with the same force and effect as though fully set forth herein.

    **ANSWER:**    In response to Paragraph 113, Cliffs Minnesota repeats and realleges its responses to each and every allegation contained in Paragraphs 1 through 112 as if fully set forth herein.

Cliffs Minnesota refers to the allegations in Paragraphs 114 through 119 of the Second Amended Complaint.

    **ANSWER:**    In response to Paragraphs 114 through 119, Cliffs Minnesota states that the Third Claim for Relief is not asserted against Cliffs Minnesota, and thus no response is required.

### FOURTH CLAIM FOR RELIEF
#### (Breach of Contract – Mineral Leases)
#### (Against GPIOP)

120.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 119 of this Complaint with the same force and effect as though fully set forth herein.

    **ANSWER:**    In response to Paragraph 120, Cliffs Minnesota repeats and realleges its responses to each and every allegation contained in Paragraphs 1 through 119 as if fully set forth herein.

Cliffs Minnesota refers to the allegations in Paragraphs 121 through 129 of the Seconded Amended Complaint.

    **ANSWER:**    In response to Paragraphs 121 through 129, Cliffs Minnesota states that the Fourth Claim for Relief is not asserted against Cliffs Minnesota, and thus no response is required.

01:22917217.1

25

## <u>FIFTH CLAIM FOR RELIEF</u>
**(Breach of Implied Covenant of Good Faith and Fair Dealing – GPIOP Settlement)**
**(Against GPIOP)**

130.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 129 of this Complaint with the same force and effect as though fully set forth herein.

      **<u>ANSWER:</u>**    In response to Paragraph 130, Cliffs Minnesota repeats and realleges its

responses to each and every allegation contained in Paragraphs 1 through 129 as if fully set forth

herein.

Cliffs Minnesota refers to the allegations in Paragraphs 131 through 136 of the Second Amended Complaint.

      **<u>ANSWER:</u>**    In response to Paragraphs 131 through 136, Cliffs Minnesota states that

the Fifth Claim for Relief is not asserted against Cliffs Minnesota, and thus no response is

required

## <u>SIXTH CLAIM FOR RELIEF</u>
**(Breach of Implied Covenant of Good Faith and Fair Dealing – Mineral Leases)**
**(Against GPIOP)**

137.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 136 of this Complaint with the same force and effect as though fully set forth herein.

      **<u>ANSWER:</u>**    In response to Paragraph 137, Cliffs Minnesota repeats and realleges its

responses to each and every allegation contained in Paragraphs 1 through 136 as if fully set forth

herein.

Cliffs Minnesota refers to the allegations in Paragraphs 138 through 143 in the Second Amended Complaint.

      **<u>ANSWER:</u>**    In response to Paragraphs 138 through 143, Cliffs Minnesota states that

the Sixth Claim for Relief is not asserted against Cliffs Minnesota, and thus no response is

required.

01:22917217.1

**SEVENTH CLAIM FOR RELIEF**
**(Violation of Section 1 of the Sherman Act – Agreements in Restraint of Trade)**
**(Against Cliffs, Cliffs Minnesota, and GPIOP)**

144.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 143 of this Complaint with the same force and effect as though fully set forth herein.

**ANSWER:**     In response to Paragraph 144, Cliffs Minnesota repeats and realleges its responses to each and every allegation contained in Paragraphs 1 through 143 as if fully set forth herein.

145.     Cliffs possesses substantial market power in the Great Lakes Pellet and Iron Market, as demonstrated by, among other things, Cliffs' high market share, barriers to entry, its actual exclusion of competition, and its ability to charge supracompetitive prices in the Great Lakes Pellet and Iron Market.

**ANSWER:**     The allegations in Paragraph 145 are legal conclusions to which no response is required.  To the extent that the Court deems Paragraph 145 to include factual allegations that require a response, Cliffs Minnesota denies them.

146.     As alleged above, Cliffs, using its market power as leverage and as a threat, has entered into agreements with the customers and third parties identified above, among others, including without limitation the Cliffs Transaction with GPIOP, on its own and/or through Cliffs Minnesota, with the purpose and effect of unreasonably restraining trade and commerce in the Great Lakes Pellet and Iron Market.

**ANSWER:**     The allegations in Paragraph 146 are legal conclusions to which no response is required.  To the extent that the Court deems Paragraph 146 to include factual allegations that require a response, Cliffs Minnesota denies them.

147.     Cliffs' solicitation and enforcement of the exclusionary contracts described above, including any such conduct engaged in through Cliffs Minnesota, constitute unlawful agreements, contracts, and concerted activity that unreasonably restrain trade in the Great Lakes Pellet and Iron Market in violation of Section 1 of the Sherman Act.

**ANSWER:**     The allegations in Paragraph 147 are legal conclusions to which no response is required.  To the extent that the Court deems Paragraph 147 to include factual

01:22917217.1

allegations that require a response, Cliffs Minnesota denies them.

148.    Cliffs' exclusionary contracts, including contracts entered into through Cliffs Minnesota, have foreclosed a substantial share of competitors and had anticompetitive effects in the Great Lakes Pellet and Iron Market.

    **ANSWER:**    The allegations in Paragraph 148 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 148 to include factual

allegations that require a response, Cliffs Minnesota denies them.

149.    Cliffs' exclusionary contracts have no procompetitive benefit or justification.  The anticompetitive effects of its exclusionary contracts outweigh any purported procompetitive justifications.

    **ANSWER:**    The allegations in Paragraph 149 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 149 to include factual

allegations that require a response, Cliffs Minnesota denies them.

150.    As a result of Cliffs' conduct and, among other things, GPIOP's complicity in and agreement to that conduct where applicable, the harm to competition caused by that conduct, Plaintiff has suffered substantial injuries to its business and property in an amount to be proven at trial and automatically trebled, as provided by 15 U.S.C. § 15. Moreover, Plaintiff will suffer further injury unless the Court enjoins Cliffs from its unlawful conduct and continuing violations of the antitrust laws under 15 U.S.C. § 26. Such injunctive relief should include, but not be limited to, to the extent necessary to protect the Debtors' and the Reorganized Debtor's rights under and interests in the GPIOP Settlement, the Mineral Leases, and the Restated Mineral Leases, unwinding the Cliffs Transaction.

    **ANSWER:**    The allegations in Paragraph 150 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 150 to include factual

allegations that require a response, Cliffs Minnesota denies them.

151.    Plaintiff is also entitled to recover from Cliffs, Cliffs Minnesota, and/or GPIOP the costs of this suit, including reasonable attorney fees, as provided by 15 U.S.C. §§ 15 and 26.

    **ANSWER:**    The allegations in Paragraph 151 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 151 to include factual

allegations that require a response, Cliffs Minnesota denies them.

## EIGHTH CLAIM FOR RELIEF
### (Violation of Section 2 of the Sherman Act – Monopolization)
### (Against Cliffs and Cliffs Minnesota)

152.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 151 of this Complaint with the same force and effect as though fully set forth herein.

**ANSWER:**    In response to Paragraph 152, Cliffs Minnesota repeats and realleges its responses to each and every allegation contained in Paragraphs 1 through 151 as if fully set forth herein.

153.    Cliffs has monopolized the relevant market in violation of Section 2 of the Sherman Act.

**ANSWER:**    The allegations in Paragraph 153 are legal conclusions to which no response is required.  To the extent that the Court deems Paragraph 153 to include factual allegations that require a response, Cliffs Minnesota denies them.

154.    The relevant product market in this case is the Great Lakes Pellet and Iron Market, as defined and described above.

**ANSWER:**    The allegations in Paragraph 154 are legal conclusions to which no response is required.  To the extent that the Court deems Paragraph 154 to include factual allegations that require a response, Cliffs Minnesota denies them.

155.    The relevant geographic market in this case is the Great Lakes region, which includes the Mesabi Iron Range in Minnesota.

**ANSWER:**    The allegations in Paragraph 155 are legal conclusions to which no response is required.  To the extent that the Court deems Paragraph 155 to include factual allegations that require a response, Cliffs Minnesota denies them.

156.    At all relevant times, Cliffs possessed monopoly power in the Great Lakes Pellet and Iron Market, as demonstrated by, among other things, Cliffs' high market share and admitted control over pricing.  As noted above, Cliffs charges prices for its products at levels that allow it to achieve profit margins of more than four times the prevailing profit margins in

the industry.  In addition, Cliffs' high market share, barriers to entry, and Cliffs' actual exclusion of competition have cemented Cliffs' monopoly power.

**ANSWER:**    The allegations in Paragraph 156 are legal conclusions to which no response is required.  To the extent that the Court deems Paragraph 156 to include factual allegations that require a response, Cliffs Minnesota denies them.

157.    Plaintiff is informed and believes, and on that basis alleges, Cliffs has implemented the anticompetitive scheme set forth above with the specific intent to maintain its monopoly over the Great Lakes Pellet and Iron Market.  Cliffs' anticompetitive conduct, includes, but is not limited to (a) its agreements with the parties identified above, and other parties, on its own and/or through Cliffs Minnesota, that attempt to lock Mesabi out of the iron ore business; (b) Cliffs' threats to parties currently doing business with Mesabi or contemplating doing business with Mesabi; and (c) exclusive or otherwise restrictive agreements with potential customers of Mesabi, including but not limited to ArcelorMittal, in an attempt to lock competitors and potential competitors such as Mesabi out of the market for years to come.  Cliffs' scheme constitutes exclusionary conduct within the meaning of Section 2 of the Sherman Act.

**ANSWER:**    The allegations in Paragraph 157 are legal conclusions to which no response is required.  To the extent that the Court deems Paragraph 157 to include factual allegations that require a response, Cliffs Minnesota denies them.

158.    Through the scheme described above, including by blackballing vendors, threatening potential customers, buying/leasing properties with no legitimate business purpose and with the sole purpose of preventing rivals from competing, and other conduct likely to be revealed in discovery, Cliffs has willfully and unlawfully maintained and enhanced its monopoly power.  Cliffs' scheme constitutes exclusionary conduct within the meaning of Section 2 of the Sherman Act.

**ANSWER:**    The allegations in Paragraph 158 are legal conclusions to which no response is required.  To the extent that the Court deems Paragraph 158 to include factual allegations that require a response, Cliffs Minnesota denies them.

159.    Cliffs' scheme has suppressed competition and produced anticompetitive effects in the Great Lakes Pellet and Iron Market, including causing Plaintiff's antitrust injury and damages.

**ANSWER:**    The allegations in Paragraph 159 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 159 to include factual

allegations that require a response, Cliffs Minnesota denies them.

160.    Cliffs' conduct has no procompetitive benefit or justification.  The anticompetitive effects
        of its behavior outweigh any purported procompetitive justifications.

        **ANSWER:**     The allegations in Paragraph 160 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 160 to include factual

allegations that require a response, Cliffs Minnesota denies them.

161.    As a result of Cliffs' conduct, on its own and/or through Cliffs Minnesota, and the harm
        to competition caused by that conduct, Plaintiff has suffered substantial injuries to its
        business and property in an amount to be proven at trial and automatically trebled, as
        provided by 15 U.S.C. § 15.  Moreover, Plaintiff will suffer further injury unless the
        Court enjoins Cliffs from its unlawful conduct and continuing violations of the antitrust
        laws under 15 U.S.C. § 26.  Such injunctive relief should include, but not be limited to,
        the extent necessary to protect the Debtors' and the Reorganized Debtor's rights under and
        interests in the GPIOP Settlement, the Mineral Leases, and the Restated Mineral Leases,
        unwinding the Cliffs Transaction.

        **ANSWER:**     The allegations in Paragraph 161 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 161 to include factual

allegations that require a response, Cliffs Minnesota denies them.

162.    Plaintiff is also entitled to recover from Cliffs costs of suit, including reasonable attorney
        fees, as provided by 15 U.S.C. §§ 15 and 26.

        **ANSWER:**     The allegations in Paragraph 162 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 162 to include factual

allegations that require a response, Cliffs Minnesota denies them.

## NINTH CLAIM FOR RELIEF
### (Violation of Section 2 of the Sherman Act – Attempted Monopolization)
### (Against Cliffs and Cliffs Minnesota)

163.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 162 of this Complaint with the same force and effect as though fully set forth herein.

    **ANSWER:**    In response to Paragraph 163, Cliffs Minnesota repeats and realleges its

responses to each and every allegation contained in Paragraphs 1 through 162 as if fully set forth

herein.

164.    Cliffs has attempted to monopolize the Great Lakes Pellet and Iron Market in violation of Section 2 of the Sherman Act.

    **ANSWER:**    The allegations in Paragraph 164 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 164 to include factual

allegations that require a response, Cliffs Minnesota denies them.

165.    At all relevant times, Cliffs has possessed substantial monopoly power in the Great Lakes Pellet and Iron Market, as demonstrated by Cliffs' power over pricing, high market share, and manipulation of its strong position in the U.S. markets to secure volumes and improve profitability.

    **ANSWER:**    The allegations in Paragraph 165 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 165 to include factual

allegations that require a response, Cliffs Minnesota denies them.

166.    Plaintiff is informed and believes, and on that basis alleges, Cliffs has implemented the anticompetitive scheme set forth above with the specific intent to monopolize the Great Lakes Pellet and Iron Market.  Cliffs' anticompetitive conduct, includes, but is not limited to (a) its agreements with the parties identified above, and other parties, on its own and/or through Cliffs Minnesota, that attempt to lock Mesabi out of the iron ore business; (b) Cliffs' threats to parties currently doing business with Mesabi or contemplating doing business with Mesabi; and (c) exclusive or otherwise restrictive agreements with potential customers of Mesabi, including but not limited to ArcelorMittal, in an attempt to lock competitors and potential competitors such as Mesabi out of the market for years to come.  Cliffs' scheme constitutes exclusionary conduct within the meaning of Section 2 of the Sherman Act.

**ANSWER:**    The allegations in Paragraph 166 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 166 to include factual

allegations that require a response, Cliffs Minnesota denies them.

167.    Upon information and belief, Cliffs' scheme has suppressed competition and produced anticompetitive effects in the Great Lakes Pellet and Iron Market, including causing Plaintiff's antitrust injury and damages.

**ANSWER:**    The allegations in Paragraph 167 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 167 to include factual

allegations that require a response, Cliffs Minnesota denies them.

168.    Upon information and belief, there is a dangerous probability that Cliffs will succeed in unlawfully extending its monopoly in the Great Lakes Pellet and Iron Market through its anticompetitive scheme.  Cliffs' scheme has suppressed competition and has produced anticompetitive effects in the Great Lakes Pellet and Iron Market, including Plaintiff's antitrust injury and damages, based on the statements and conduct described above.

**ANSWER:**    The allegations in Paragraph 168 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 168 to include factual

allegations that require a response, Cliffs Minnesota denies them.

169.    Cliffs' conduct has no procompetitive benefit or justification.  The anticompetitive effects of Cliffs' behavior outweigh any purported procompetitive justifications.

**ANSWER:**    The allegations in Paragraph 169 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 169 to include factual

allegations that require a response, Cliffs Minnesota denies them.

170.    As a result of Cliffs' conduct, on its own and/or through Cliffs Minnesota, and the harm to competition caused by that conduct, Plaintiff has suffered substantial injuries to its business and property in an amount to be proven at trial and automatically trebled, as provided by 15 U.S.C. § 15.  Moreover, Plaintiff will suffer further injury unless the Court enjoins Cliffs from its unlawful conduct and continuing violations of the antitrust laws under 15 U.S.C. § 26.  Such injunctive relief should include, but not be limited to, to the extent necessary to protect the Debtors' and the Reorganized Debtor's rights under and interests in the GPIOP Settlement, the Mineral Leases, and the Restated Mineral Leases, unwinding the Cliffs Transaction.

**ANSWER:**    The allegations in Paragraph 170 are legal conclusions to which no response is required.  To the extent that the Court deems Paragraph 170 to include factual allegations that require a response, Cliffs Minnesota denies them.

171.    Plaintiff is also entitled to recover from Cliffs costs of suit, including reasonable attorney fees, as provided by 15 U.S.C. §§ 15 and 26.

**ANSWER:**    The allegations in Paragraph 171 are legal conclusions to which no response is required.  To the extent that the Court deems Paragraph 171 to include factual allegations that require a response, Cliffs Minnesota denies them.

**TENTH CLAIM FOR RELIEF**
**(Violation of Minn. Stat. § 325D.52 – Monopolization)**
**(Against Cliffs and Cliffs Minnesota)**

172.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 171 of this Complaint with the same force and effect as though fully set forth herein.

**ANSWER:**    In response to Paragraph 172, Cliffs Minnesota repeats and realleges its responses to each and every allegation contained in Paragraphs 1 through 171 as if fully set forth herein.

173.    As alleged above, Plaintiff is informed and believes, and on that basis alleges, Cliffs has monopolized the Great Lakes Pellet and Iron Market in violation of Section 325D.52 of the Minnesota Statutes ("Minn. Stat.").

**ANSWER:**    The allegations in Paragraph 173 are legal conclusions to which no response is required.  To the extent that the Court deems Paragraph 173 to include factual allegations that require a response, Cliffs Minnesota denies them.

174.    At all relevant times, Cliffs has possessed substantial monopoly power in the Great Lakes Pellet and Iron Market, as demonstrated by Cliffs' high market share and manipulation of its strong position in the U.S. markets to secure volumes and improve profitability.

**ANSWER:**    The allegations in Paragraph 174 are legal conclusions to which no

01:22917217.1

34

response is required.  To the extent that the Court deems Paragraph 174 to include factual

allegations that require a response, Cliffs Minnesota denies them.

175.    Plaintiff is informed and believes, and on that basis alleges, Cliffs has implemented the
        anticompetitive scheme set forth above with the specific intent to monopolize the Great
        Lakes Pellet and Iron Market.  Cliffs' scheme constitutes exclusionary conduct within the
        meaning of Minn. Stat. § 325D.52.

        **ANSWER:**    The allegations in Paragraph 175 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 175 to include factual

allegations that require a response, Cliffs Minnesota denies them.

176.    Upon information and belief, Cliffs' scheme has suppressed competition and produced
        anticompetitive effects in the Great Lakes Pellet and Iron Market, including causing
        Plaintiff's antitrust injury and damages.

        **ANSWER:**    The allegations in Paragraph 176 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 176 to include factual

allegations that require a response, Cliffs Minnesota denies them.

177.    Cliffs' conduct has no procompetitive benefit or justification.  The anticompetitive effects
        of Cliffs' behavior outweigh any purported procompetitive justifications.

        **ANSWER:**    The allegations in Paragraph 177 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 177 to include factual

allegations that require a response, Cliffs Minnesota denies them.

178.    As a result of Cliffs' conduct, on its own and/or through Cliffs Minnesota, and the harm
        to competition caused by that conduct, Plaintiff has suffered substantial injuries to its
        business and property in an amount to be proven at trial and automatically trebled, as
        provided by Minn. Stat. § 325D.57.  Moreover, Plaintiff will suffer further injury unless
        the Court enjoins Cliffs from its unlawful conduct and continuing violations of the
        antitrust laws under Minn. Stat. § 325D.58.  Such injunctive relief should include, but not
        be limited to, to the extent necessary to protect the Debtors' and the Reorganized Debtor's
        rights under and interests in the GPIOP Settlement, the Mineral Leases, and the Restated
        Mineral Leases, unwinding the Cliffs Transaction.

        **ANSWER:**    The allegations in Paragraph 178 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 178 to include factual

allegations that require a response, Cliffs Minnesota denies them.

## ELEVENTH CLAIM FOR RELIEF
### (Violation of Minn. Stat. § 325D.52 – Attempted Monopolization)
### (Against Cliffs and Cliffs Minnesota)

179.   Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1
       through 178 of this Complaint with the same force and effect as though fully set forth
       herein.

       **ANSWER:**     In response to Paragraph 179, Cliffs Minnesota repeats and realleges its

responses to each and every allegation contained in Paragraphs 1 through 178 as if fully set forth

herein.

180.   As alleged above, Plaintiff is informed and believes, and on that basis alleges, Cliffs has
       attempted to monopolize the Great Lakes Pellet and Iron Market in violation of Minn.
       Stat. § 325D.52.

       **ANSWER:**     The allegations in Paragraph 180 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 180 to include factual

allegations that require a response, Cliffs Minnesota denies them.

181.   At all relevant times, Cliffs has possessed substantial monopoly power in the Great Lakes
       Pellet and Iron Market, as demonstrated by Cliffs' high market share and manipulation of
       its strong position in the U.S. markets to secure volumes and improve profitability.

       **ANSWER:**     The allegations in Paragraph 181 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 181 to include factual

allegations that require a response, Cliffs Minnesota denies them.

182.   Plaintiff is informed and believes, and on that basis alleges, Cliffs has implemented the
       anticompetitive scheme set forth above with the specific intent to monopolize the Great
       Lakes Pellet and Iron Market.  Cliffs' scheme constitutes exclusionary conduct within the
       meaning of Minn. Stat. § 325D.52.

       **ANSWER:**     The allegations in Paragraph 182 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 182 to include factual

01:22917217.1

allegations that require a response, Cliffs Minnesota denies them.

183.   Upon information and belief, Cliffs' scheme has suppressed competition and produced anticompetitive effects in the Great Lakes Pellet and Iron Market, including causing Plaintiff's antitrust injury and damages.

   **ANSWER:**   The allegations in Paragraph 183 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 183 to include factual

allegations that require a response, Cliffs Minnesota denies them.

184.   Cliffs' conduct has no procompetitive benefit or justification.  The anticompetitive effects of Cliffs' behavior outweigh any purported procompetitive justifications.

   **ANSWER:**   The allegations in Paragraph 184 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 184 to include factual

allegations that require a response, Cliffs Minnesota denies them.

185.   As a result of Cliffs' conduct, on its own and/or through Cliffs Minnesota, and the harm to competition caused by that conduct, Plaintiff has suffered substantial injuries to its business and property in an amount to be proven at trial and automatically trebled, as provided by Minn. Stat. § 325D.57.  Plaintiff will suffer further injury unless the Court enjoins Cliffs from its unlawful conduct and continuing violations of the antitrust laws under Minn. Stat. § 325D.58.  Such injunctive relief should include, but not be limited to, to the extent necessary to protect the Debtors' and the Reorganized Debtor's rights under and interests in the GPIOP Settlement, the Mineral Leases, and the Restated Mineral Leases, unwinding the Cliffs Transaction.

   **ANSWER:**   The allegations in Paragraph 185 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 185 to include factual

allegations that require a response, Cliffs Minnesota denies them.

## TWELFTH CLAIM FOR RELIEF
### (Civil Contempt for Violation of the Automatic Stay)
### (Against Cliffs, Cliffs Minnesota, and Does 1-10)

186.   Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 185 of this Complaint with the same force and effect as though fully set forth herein.

   **ANSWER:**   In response to Paragraph 186, Cliffs Minnesota repeats and realleges its

responses to each and every allegation contained in Paragraphs 1 through 185 as if fully set forth

herein.

187.     Upon the commencement of the Chapter 11 Cases on July 8, 2016, Plaintiff triggered the
         protections of section 362 of the Bankruptcy Code (the "Automatic Stay").

         **ANSWER:**     In response to Paragraph 187, Cliffs Minnesota admits the factual

allegations therein.

188.     The Automatic Stay prohibits, among other things, "any act to obtain possession of
         property of the estate or of property from the estate" and "any act to collect, assess, or
         recover a claim against the debtor that arose before the commencement of the case under
         [the Bankruptcy Code]." 11 U.S.C. § 362(a)(3) & (a)(6).

         **ANSWER:**     In response to Paragraph 188, Cliffs Minnesota admits that the allegations

appear to set forth a portion of section 362 of the Bankruptcy Code.  Responding further, Cliffs

Minnesota states that section 362 of the Bankruptcy Code speaks for itself and, on that basis,

denies any allegations in Paragraph 188 inconsistent therewith.

189.     Cliffs is, and has been, aware that Mesabi had initiated the Chapter 11 Cases, and, upon
         information and belief, is and has been aware of the ongoing developments during the
         Chapter 11 Cases.

         **ANSWER:**     In response to Paragraph 189, Cliffs Minnesota is without knowledge or

information sufficient to form a belief as to the truth or falsity of the allegations, and on that

basis denies them.

190.     Plaintiff is informed and believes, and on that basis alleges, that the Defendants
         intentionally violated the automatic stay with malice and oppression, knowing that their
         actions would cause substantial harm to Plaintiff and with a willful and conscious
         disregard of Plaintiff's rights.  Plaintiff seeks compensatory damages and an award of
         exemplary or punitive damages in an amount sufficient to punish all Defendants and
         deter similar conduct in the future.

         **ANSWER:**     The allegations in Paragraph 190 are legal conclusions and general

characterizations regarding Mesabi's claims to which no response is required.  To the extent that

the Court deems Paragraph 190 to include factual allegations that require a response, Cliffs

Minnesota denies them.

191.   Plaintiff also requests that the Court issue an order holding all Defendants in contempt of
court for their violation of the Automatic Stay and issue appropriate sanctions as a result
of their contempt pursuant to Section 105 of the Bankruptcy Code.

   **ANSWER:**   In response to Paragraph 191, Cliffs Minnesota admits that Mesabi

purports to request that this Court issue an order and sanctions based on allegations that contain

legal conclusions and general characterizations regarding Mesabi's claims to which no response

is required.  To the extent that the Court deems Paragraph 191 to include factual allegations that

require a response, Cliffs Minnesota denies them.

### THIRTEENTH CLAIM FOR RELIEF
**(Declaratory Relief)**
**(Against Cliffs, Cliffs Minnesota, and Does 1-10)**

192.   Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1
through 191 of this Complaint with the same force and effect as though fully set forth
herein.

   **ANSWER:**   In response to Paragraph 192, Cliffs Minnesota repeats and realleges its

responses to each and every allegation contained in Paragraphs 1 through 191 as if fully set forth

herein.

193.   On information and belief, in engaging in the Cliffs Transaction Defendants intentionally
sought to obtain possession of property of the Debtors' estates, with malice and
oppression, knowing that their actions would cause substantial harm to Plaintiff and with
a willful and conscious disregard of Plaintiff's rights.

   **ANSWER:**   The allegations in Paragraph 193 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 193 to include factual

allegations that require a response, Cliffs Minnesota denies them.

194.   Plaintiff requests that this Court declare that Defendants violated the Automatic Stay in
engaging in the Cliffs Transaction.

01:22917217.1

**ANSWER:**     In response to Paragraph 194, Cliffs Minnesota admits that Mesabi purports to request that this Court issue a declaration based on allegations that contain legal conclusions and general characterizations regarding Mesabi's claims to which no response is required.  To the extent that the Court deems Paragraph 194 to include factual allegations that require a response, Cliffs Minnesota denies them.

195.     Plaintiff further requests that this Court declare that the Cliffs Transaction is void, as an action taken in order to obtain possession of property of the estate or of property from the estate, in violation of the Automatic Stay as set forth in Section 362 of the Bankruptcy Code.

**ANSWER:**     In response to Paragraph 195, Cliffs Minnesota admits that Mesabi purports to request that this Court issue a declaration based on allegations that contain legal conclusions and general characterizations regarding Mesabi's claims to which no response is required.  To the extent that the Court deems Paragraph 195 to include factual allegations that require a response, Cliffs Minnesota denies them.

**FOURTEENTH CLAIM FOR RELIEF**
**(Civil Contempt for Violation of a Court Order)**
**(Against Cliffs, Cliffs Minnesota, and GPIOP)**

196.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 195 of this Complaint with the same force and effect as though fully set forth herein.

**ANSWER:**     In response to Paragraph 196, Cliffs Minnesota repeats and realleges its responses to each and every allegation contained in Paragraphs 1 through 195 as if fully set forth herein.

197.     The Assumption Order was entered by the Bankruptcy Court on August 30, 2017.

**ANSWER:**     In response to Paragraph 197, Cliffs Minnesota admits the factual allegations therein.

198.    Plaintiff is informed and believes, and on that basis alleges, that the Defendants intentionally violated the Assumption Order, knowing that their actions would cause substantial harm to Plaintiff, and with a willful and conscious disregard of Plaintiff's rights.

**ANSWER:**    The allegations in Paragraph 198 are legal conclusions to which no response is required.  To the extent that the Court deems Paragraph 198 to include factual allegations that require a response, Cliffs Minnesota denies them.

199.    Plaintiff seeks compensatory damages and an award of exemplary or punitive damages in an amount sufficient to punish Defendants and deter similar conduct in the future.

**ANSWER:**    In response to Paragraph 199, Cliffs Minnesota admits that Mesabi purports to seek damages based on allegations that contain legal conclusions and general characterizations regarding Mesabi's claims to which no response is required.  To the extent that the Court deems Paragraph 199 to include factual allegations that require a response, Cliffs Minnesota denies them.

200.    Plaintiff also requests that the Court issue an order holding all Defendants in contempt of court for their violation of the Assumption Order and issue appropriate sanctions as a result of their contempt, pursuant to Section 105 of the Bankruptcy Code.

**ANSWER:**    In response to Paragraph 200, Cliffs Minnesota admits that Mesabi purports to request that this Court issue an order and sanctions based on allegations that contain legal conclusions and general characterizations regarding Mesabi's claims to which no response is required.  To the extent that the Court deems Paragraph 200 to include factual allegations that require a response, Cliffs Minnesota denies them.

## FIFTEENTH CLAIM FOR RELIEF
### (Avoidance and Recovery of Fraudulent Transfers - 11 U.S.C. § 548(a)(1)(B))
### (Against GPIOP)

201.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 200 of this Complaint with the same force and effect as though fully set forth herein.

**ANSWER:**    In response to Paragraph 201, Cliffs Minnesota repeats and realleges its

responses to each and every allegation contained in Paragraphs 1 through 200 as if fully set forth

herein.

Cliffs Minnesota refers to the allegations in Paragraphs 202 through 207 in Mesabi's Second Amended Complaint.

**ANSWER:**    In response to Paragraphs 202 through 207, Cliffs Minnesota states that

the Fifteenth Claim for Relief is not asserted against Cliffs Minnesota, and thus no response is

required.

## SIXTEENTH CLAIM FOR RELIEF
### (Avoidance of Unauthorized Post-Petition Transfers – 11 U.S.C. § 549)
### (Against Cliffs, Cliffs Minnesota, and GPIOP)

208.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 207 of this Complaint with the same force and effect as though fully set forth herein.

**ANSWER:**    In response to Paragraph 208, Cliffs Minnesota repeats and realleges its

responses to each and every allegation contained in Paragraphs 1 through 207 as if fully set forth

herein.

209.    Under section 549 of the Bankruptcy Code, a debtor in possession "may avoid a transfer of property of the estate – (1) that occurs after the commencement of the case; and (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or (B) that is not authorized under the Bankruptcy Code or by the Court." 11 U.S.C. § 549(a).

**ANSWER:**    In response to Paragraph 209, Cliffs Minnesota admits that the allegations

appear to set forth a portion of section 549 of the Bankruptcy Code.  Responding further, Cliffs

Minnesota states that section 549 of the Bankruptcy Code speaks for itself and, on that basis,

denies any allegations in Paragraph 209 inconsistent therewith.

210.   By enacting the Cliffs Transaction, GPIOP transferred Mesabi's property rights under the
       Mineral Leases and the Omnibus Lease Amendment to Cliffs and/or Cliffs Minnesota.
       The Cliffs Transaction constitutes a transfer of interests of Mesabi in property that was
       made after the Petition Date.

       **ANSWER:**    In response to Paragraph 210, Cliffs Minnesota denies the allegations

therein.

211.   The Cliffs Transaction was never authorized by the Bankruptcy Code, the order
       approving the GPIOP Settlement, or any other order of this Court.  The Cliffs Transaction
       was, in fact, prohibited by section 8 of the Omnibus Lease Amendment.

       **ANSWER:**    In response to Paragraph 211, Cliffs Minnesota denies the allegations

therein.

212.   Pursuant to section 549 of the Bankruptcy Code, Plaintiff is entitled to avoid the Cliffs
       Transaction.

       **ANSWER:**    The allegations in Paragraph 212 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 212 to include factual

allegations that require a response, Cliffs Minnesota denies them.

### SEVENTEENTH CLAIM FOR RELIEF
**(Recovery of Avoided Transfers – 11 U.S.C. § 550)**
**(Against Cliffs, Cliffs Minnesota, and GPIOP)**

213.   Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1
       through 212 of this Complaint with the same force and effect as though fully set forth
       herein.

       **ANSWER:**    In response to Paragraph 213, Cliffs Minnesota repeats and realleges its

responses to each and every allegation contained in Paragraphs 1 through 212 as if fully set forth

herein.

214.   Section 550(a) of the Bankruptcy Code provides that, to the extent that a transfer is
       avoided under, among others, sections 548 and 549 of the Bankruptcy Code, Plaintiff is

01:22917217.1

entitled to recover, for the benefit of its estate, the property transferred or, if the court so orders, the value of such property from (a) the initial transferee of such transfer or the entity for whose benefit such transfer was made or (b) any immediate or mediate transferee of such initial transferee.  11 U.S.C. § 550(a).

**ANSWER:**     In response to Paragraph 214, Cliffs Minnesota admits that the allegations appear to set forth a portion of section 550 of the Bankruptcy Code.  Responding further, Cliffs Minnesota states that section 550 of the Bankruptcy Code speaks for itself and, on that basis, denies any allegations in Paragraph 214 inconsistent therewith.

215.   Defendants Cliffs and/or Cliffs Minnesota were the initial transferees of the Cliffs Transaction or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Cliffs Transaction was made.

**ANSWER:**     The allegations in Paragraph 215 are legal conclusions to which no response is required.  To the extent that the Court deems Paragraph 215 to include factual allegations that require a response, Cliffs Minnesota denies them.

216.   Defendant GPIOP was the initial transferee of the Avoidable Royalties, or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Royalties were paid.

**ANSWER:**     The allegations in Paragraph 216 are legal conclusions to which no response is required.  To the extent that the Court deems Paragraph 216 to include factual allegations that require a response, Cliffs Minnesota denies them.

217.   Pursuant to 11 U.S.C. § 550(a), Plaintiff is entitled to recover from Defendants Cliffs and/or Cliffs Minnesota the Cliffs Transaction and from Defendant GPIOP the Avoidable Royalties, plus costs of this action.

**ANSWER:**     The allegations in Paragraph 217 are legal conclusions to which no response is required.  To the extent that the Court deems Paragraph 217 to include factual allegations that require a response, Cliffs Minnesota denies them.

## EIGHTEENTH CLAIM FOR RELIEF
### (Disallowance of Claim Nos. 55 and 224 – 11 U.S.C. § 502(d))
### (Against Cliffs)

218.   Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 217 of this Complaint with the same force and effect as though fully set forth herein.

**ANSWER:**   In response to Paragraph 218, Cliffs Minnesota repeats and realleges its responses to each and every allegation contained in Paragraphs 1 through 217 as if fully set forth herein.

Cliffs Minnesota refers to the allegations in Paragraphs 219 through 225 of Mesabi's Second Amended Complaint.

**ANSWER:**   In response to Paragraphs 219 through 225, Cliffs Minnesota states that the Eighteenth Claim for Relief is not asserted against Cliffs Minnesota, and thus no response is required.

## NINETEENTH CLAIM FOR RELIEF
### (Injunctive Relief)
### (Against Cliffs and Does 1-10)

226.   Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 225 of this Complaint with the same force and effect as though fully set forth herein.

**ANSWER:**   In response to Paragraph 226, Cliffs Minnesota repeats and realleges its responses to each and every allegation contained in Paragraphs 1 through 225 as if fully set forth herein.

227.   Plaintiff requests that Cliffs be enjoined from (i) contacting or threatening any existing contractors, employees or consultants working on the Project or being engaged to work on the Project, regarding the Project, or threatening their relationship or prospective relationship with Cliffs based on their work on the Project, (ii) threatening any potential contractors, employees, or consultants who may be engaged to work on the Project including  by threatening to discontinue their relationship or prospective relationship with Cliffs if they work on the Project; (iii) interfering with state, local, or other governmental approvals related to the Project, (iv) interfering with debt or equity financing sources for the consummation of the Plan, and (v) any other actions designed to prevent

consummation of the Plan and implementation of the Mesabi's construction and business plan.

**ANSWER:**    In response to Paragraph 227, Cliffs Minnesota states that the Nineteenth

Claim for Relief is not asserted against Cliffs Minnesota, and thus no response is required.

## TWENTIETH CLAIM FOR RELIEF
### (Injunctive Relief)
### (Against All Defendants)

228.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 227 of this Complaint with the same force and effect as though fully set forth herein.

**ANSWER:**    In response to Paragraph 228, Cliffs Minnesota repeats and realleges its

responses to each and every allegation contained in Paragraphs 1 through 227 as if fully set forth

herein.

229.    Plaintiff requests that Defendants be enjoined from taking any further action to implement the Cliffs Transaction, including, but not limited to, any action in furtherance of the recording or perfection of any interest in property or otherwise, associated with the Cliffs Transaction, and/or in furtherance of any purported termination of the Mineral Leases.

**ANSWER:**    In response to Paragraph 229, Cliffs Minnesota admits that Mesabi

purports to request injunctive relief based on allegations that contain legal conclusions and

general characterizations regarding Mesabi's claims to which no response is required.  To the

extent that the Court deems Paragraph 229 to include factual allegations that require a response,

Cliffs Minnesota denies them.

## TWENTY-FIRST CLAIM FOR RELIEF
### (Declaratory Relief – 28 U.S.C. §§ 2201 et seq.)
### (Against All Defendants)

230.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 229 of this Complaint with the same force and effect as though fully set forth herein.

**ANSWER:**    In response to Paragraph 230, Cliffs Minnesota repeats and realleges its

responses to each and every allegation contained in Paragraphs 1 through 229 as if fully set forth

herein.

231.    Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., this Court
        has the power to declare the rights, status and other legal relations of the parties whether
        or not further relief could be claimed.

    **ANSWER:**    In response to Paragraph 231, Cliffs Minnesota admits that the allegations

purport to paraphrase or characterize a portion of the Uniform Declaratory Judgment Act, 28

U.S.C. §§ 2201 *et seq*.  Responding further, Cliffs Minnesota states that the Uniform Declaratory

Judgment Act speaks for itself and, on that basis, denies any allegations in Paragraph 231

inconsistent therewith.

232.    A real and substantial justiciable controversy exists between Plaintiff and the Defendants
        as to whether the Mineral Leases are terminated.

    **ANSWER:**    The allegations in Paragraph 232 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 232 to include factual

allegations that require a response, Cliffs Minnesota denies them.

233.    Cliffs asserted in the Cliffs Release that the properties subject of the Cliffs Transaction
        "include parcels that were formerly leased by GPIOP to [Mesabi] . . . .  [Mesabi's] lease
        rights terminated on October 31, 2017 when it failed to exit bankruptcy . . . ."

    **ANSWER:**    In response to Paragraph 233, Cliffs Minnesota admits that the allegations

purport to paraphrase or characterize Cliffs' Dec. 11, 2017 Press Release, which is a written

document that speaks for itself, and Cliffs Minnesota refers to it for a fair and accurate portrayal

of its contents and, on that basis, denies any allegations in Paragraph 245 inconsistent therewith.

234.    Plaintiff disputes that the Mineral Leases are terminated.

    **ANSWER:**    In response to Paragraph 234, Cliffs Minnesota admits the factual

allegations therein.

235.   On information and belief, the basis for Cliffs' assertion that "[Mesabi's] lease rights
       terminated on October 31, 2017 when it failed to exit bankruptcy . . . ." is the GPIOP
       Settlement which provides for the automatic rejection of the Mineral Leases as of
       October 31, 2017 if the Plan's Effective Date did not occur by such date and permits
       GPIOP to thereafter take any action with respect to the Mineral Leases and the related
       real property notwithstanding any provisions of the Bankruptcy Code, including the
       automatic stay imposed pursuant to 11 U.S.C. § 362(a).

       **ANSWER:**   In response to Paragraph 235, Cliffs Minnesota admits that Mesabi's lease

rights terminated on October 31, 2017 pursuant to the terms of the Glacier Park Settlement,

which is a written document that speaks for itself, and Cliffs Minnesota refers to it for a fair and

accurate portrayal of its contents and, on that basis, denies any allegations in Paragraph 235

inconsistent therewith.  Except as so admitted, denied, and referred, Cliffs Minnesota denies each

and every remaining allegation in Paragraph 235.

236.   The Plan's Effective Date did not occur by October 31, 2017.

       **ANSWER:**   In response to Paragraph 236, Cliffs Minnesota admits the factual

allegations therein.

237.   Rejection pursuant to 11 U.S.C. § 365 constitutes a breach but not a termination.

       **ANSWER:**   The allegations in Paragraph 237 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 237 to include factual

allegations that require a response, Cliffs denies them.

238.   The breach resulting from rejection pursuant to 11 U.S.C. § 365 is non-monetary in
       nature.

       **ANSWER:**   The allegations in Paragraph 238 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 238 to include factual

allegations that require a response, Cliffs denies them.

239.   Under the terms of the Mineral Leases, GPIOP may terminate on the basis of a non-
       monetary default only by giving thirty (30) days' notice to cure (subject to tolling
       pursuant to a valid arbitration demand by Plaintiff) and only if Plaintiff fails to cure its

default prior to the expiration of the cure period.

**ANSWER:**    In response to Paragraph 239, Cliffs Minnesota admits that the allegations

purport to paraphrase or characterize the Mineral Leases, which are written documents that speak

for themselves, and Cliffs Minnesota refers to them for a fair and accurate portrayal of their

contents and, on that basis, denies any allegations in Paragraph 245 inconsistent therewith.

240.    GPIOP took no action to terminate the Mineral Leases after October 31, 2017, including,
without limitation, by issuing a notice to cure to Plaintiff stemming from its breach
pursuant to 11 U.S.C. § 365 or otherwise.

**ANSWER:**    In response to Paragraph 240, Cliffs Minnesota denies that Glacier Park

was required to take any action to terminate the Mineral Leases after October 31, 2017 pursuant

to the terms of the Glacier Park Settlement, and denies the remaining allegations in Paragraph

240.

241.    Plaintiff is entitled to a declaration that the Mineral Leases are not terminated.

**ANSWER:**    The allegations in Paragraph 241 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 241 to include factual

allegations that require a response, Cliffs Minnesota denies them.

### TWENTY-SECOND CLAIM FOR RELIEF
**(Declaratory Relief – 28 U.S.C. §§ 2201 et seq.)**
**(Against All Defendants)**

242.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1
through 241 of this Complaint with the same force and effect as though fully set forth
herein.

**ANSWER:**    In response to Paragraph 242, Cliffs Minnesota repeats and realleges its

responses to each and every allegation contained in Paragraphs 1 through 241 as if fully set forth

herein.

243.    A real and substantial justiciable controversy exists between Plaintiff and the Defendants
as to whether the Mineral Leases were or shall be assumed pursuant to 11 U.S.C. § 365 as

of the Effective Date.

**ANSWER:**     The allegations in Paragraph 243 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 243 to include factual

allegations that require a response, Cliffs Minnesota denies them.

244.    As heretofore alleged, the Defendants have asserted that the Mineral Leases are
        terminated, which assertion is incompatible with Plaintiff's assumption of such leases as
        of the Effective Date.

**ANSWER:**     In response to Paragraph 244, Cliffs Minnesota admits the factual

allegations therein.

245.    Pursuant to the Assumption Order, "[p]ursuant to sections 105(a) and 365 of the
        Bankruptcy Code, the Mineral Leases, as amended, are assumed as of the effective date
        of the Plan."

**ANSWER:**     In response to Paragraph 245, Cliffs Minnesota admits that the allegations

purport to paraphrase or characterize the Assumption Order, which is a written document that

speaks for itself, and Cliffs Minnesota refers to it for a fair and accurate portrayal of its contents

and, on that basis, denies any allegations in Paragraph 245 inconsistent therewith.

246.    The Assumption Order is a writing agreed by GPIOP, Superior, and the Debtors and
        entered as an order by the Bankruptcy Court.

**ANSWER:**     In response to Paragraph 246, Cliffs Minnesota admits that the allegations

purport to paraphrase or characterize the Assumption Order, which is a written document that

speaks for itself, and Cliffs Minnesota refers to it for a fair and accurate portrayal of its contents

and, on that basis, denies any allegations in Paragraph 246 inconsistent therewith.

247.    The GPIOP Settlement provides that "[a]s of the Effective Date of the Plan, GPIOP and
        Superior agree that any pre-Effective Date breaches or defaults under the Mineral Leases
        are cured, and if not curable, are waived."

**ANSWER:**     In response to Paragraph 247, Cliffs Minnesota admits that the allegations

purport to paraphrase or characterize the Glacier Park Settlement, which is a written document

that speaks for itself, and Cliffs Minnesota refers to it for a fair and accurate portrayal of its

contents and, on that basis, denies any allegations in Paragraph 247 inconsistent therewith.

248.    Plaintiff is entitled to a declaration that the Mineral Leases are or were assumed on the
        Effective Date of the Plan.

        **ANSWER:**    The allegations in Paragraph 248 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 248 to include factual

allegations that require a response, Cliffs Minnesota denies them.

## TWENTY-THIRD CLAIM FOR RELIEF
### (Declaratory Relief – 28 U.S.C. §§ 2201 et seq.)
### (Against All Defendants)

249.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1
        through 248 of this Complaint with the same force and effect as though fully set forth
        herein.

        **ANSWER:**    In response to Paragraph 249, Cliffs Minnesota repeats and realleges its

responses to each and every allegation contained in Paragraphs 1 through 248 as if fully set forth

herein.

250.    A real and substantial justiciable controversy exists between Plaintiff and the Defendants
        as to whether the Reorganized Debtor is entitled to succeed to the rights of the Debtors
        under the Mineral Leases as of the Effective Date.

        **ANSWER:**    The allegations in Paragraph 250 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 250 to include factual

allegations that require a response, Cliffs Minnesota denies them.

251.    As heretofore alleged, the Defendants have asserted that the GPIOP Mineral Leases are
        terminated, which assertion is incompatible with the Reorganize Debtor's succession to
        Plaintiff's rights under such leases as of the Effective Date.

        **ANSWER:**    In response to Paragraph 251, Cliffs Minnesota admits the factual

allegations therein.

01:22917217.1

252.    The GPIOP Settlement provides that:

> On or prior to the Effective Date of the Plan, GPIOP, Superior and the Reorganized Debtor shall negotiate and execute amended and restated agreements to supersede the Mineral Leases in their entirety (the "Restated Mineral Leases"), which Restated Mineral Leases shall become fully effective and enforceable on the Effective Date. The Restated Mineral Leases shall be in form and substance acceptable to GPIOP, Superior and the Reorganized Debtor, preserve all rights and obligations under the Minerals Leases, subject to the modifications described herein, and contain terms and conditions substantially similar to the Mineral Leases unless otherwise agreed by GPIOP, Superior and the Reorganized Debtor. The Mineral Leases will be deemed amended and restated by consent on the Effective Date of the Plan.

**ANSWER:**    In response to Paragraph 252, Cliffs Minnesota admits that the allegations purport to paraphrase or characterize the Glacier Park Settlement, which is a written document that speaks for itself, and Cliffs Minnesota refers to it for a fair and accurate portrayal of its contents and, on that basis, denies any allegations in Paragraph 252 inconsistent therewith.

253.    The GPIOP Settlement agreement is in full force and effect and is binding on GPIOP, the Debtors, the Reorganized Debtor and Superior.  The Reorganized Debtor is specifically named as a third party beneficiary of the GPIOP Settlement.

**ANSWER:**    The allegations in Paragraph 253 are legal conclusions to which no response is required.  To the extent that the Court deems Paragraph 253 to include factual allegations that require a response, Cliffs Minnesota denies them.

254.    Plaintiff is entitled to a declaration that the Mineral Leases, as amended by the Omnibus Lease Amendment, are deemed amended and restated by consent of GPIOP and Superior as of the Effective Date, with the Reorganized Debtor succeeding to all rights of the Debtors thereunder.

**ANSWER:**    The allegations in Paragraph 254 are legal conclusions to which no response is required.  To the extent that the Court deems Paragraph 254 to include factual allegations that require a response, Cliffs Minnesota denies them.

## TWENTY-FOURTH CLAIM FOR RELIEF
### (Declaratory Relief – 28 U.S.C. §§ 2201 et seq.)
### (Against All Defendants)

255.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 254 of this Complaint with the same force and effect as though fully set forth herein.

**ANSWER:**    In response to Paragraph 255, Cliffs Minnesota repeats and realleges its

responses to each and every allegation contained in Paragraphs 1 through 254 as if fully set forth

herein.

256.    A real and substantial justiciable controversy exists between Plaintiff and the Defendants as to whether Cliffs enjoys superior rights in the GPIOP Property Interests to the rights of Plaintiff and the Reorganized Debtor.

**ANSWER:**    The allegations in Paragraph 256 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 256 to include factual

allegations that require a response, Cliffs Minnesota denies them.

257.    As heretofore alleged, the Defendants have implied they enjoy superior rights in the GPIOP Property Interests.

**ANSWER:**    In response to Paragraph 257, Cliffs Minnesota denies the factual

allegations therein.

258.    Plaintiff's rights in the GPIOP Property Interests, to which the Reorganized Debtor succeeded on the Effective Date of the Plan as heretofore alleged, are established of record with the Itasca County Registrar of Titles as Document No. T000050412 and recorded with the Itasca County Recorder as Document No. A0000605819 on or about December 7, 2006, as amended by Registrar of Titles Document No. T000056156.

**ANSWER:**    In response to Paragraph 258, Cliffs Minnesota admits that the documents

described in Paragraph 258 exist in the record of the Itasca County Recorder or the Itasca County

Registrar of Title.  Except as so admitted, Cliffs Minnesota denies each and every remaining

allegation in Paragraph 258.

259.    Cliffs' interests in the GPIOP Property Interests, if any, were acquired on or about December 11, 2017 and established of record December 13, 2017, as Document No. T000064047.

**ANSWER:**    In response to Paragraph 259, Cliffs Minnesota admits that it acquired leasehold interests from Glacier Park on December 9, 2017, and evidence of such interests was recorded with the Itasca County Registrar of Title on December 13, 2017, as Document No. T000064047, and with the Itasca County Recorder on December 13, 2017, as Document No. A000718601.  Responding further, Cliffs Minnesota states that it acquired fee simple interests from Glacier Park on December 9, 2017, and evidence of such interests was recorded with the Itasca County Registrar of Title on December 12, 2017, as Document No. T000064041.  Each of these recorded documents is a written document that speaks for itself, and Cliffs Minnesota refers to each for a fair and accurate portrayal of its contents.  Except as so admitted, denied, and referred, Cliffs Minnesota denies each and every remaining allegation in Paragraph 259.

260.    At the time that Cliffs acquired its interests in the GPIOP Property Interests, if any, it had constructive notice of Plaintiff's and the Reorganized Debtor's interests.

**ANSWER:**    The allegations in Paragraph 260 are legal conclusions to which no response is required.  To the extent that the Court deems Paragraph 260 to include factual allegations that require a response, Cliffs Minnesota denies them.

261.    At the time that Cliffs acquired its interests in the GPIOP Property Interests, if any, it had actual notice of Plaintiff's and the Reorganized Debtor's interests.

**ANSWER:**    The allegations in Paragraph 261 are legal conclusions to which no response is required.  To the extent that the Court deems Paragraph 261 to include factual allegations that require a response, Cliffs Minnesota denies them.

262.    Plaintiff is entitled to a declaration that its interests in the GPIOP Property Interests, to which the Reorganized Debtor succeeded on the Effective Date, are superior to the interests of Cliffs, if any, in the GPIOP Property Interests.

**ANSWER:**    The allegations in Paragraph 262 are legal conclusions to which no response is required.  To the extent that the Court deems Paragraph 262 to include factual allegations that require a response, Cliffs Minnesota denies them.

## TWENTY-FIFTH CLAIM FOR RELIEF
### (Civil Conspiracy)
### (Against All Defendants)

263.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 262 of this Complaint with the same force and effect as though fully set forth herein.

**ANSWER:**    In response to Paragraph 263, Cliffs Minnesota repeats and realleges its responses to each and every allegation contained in Paragraphs 1 through 262 as if fully set forth herein.

264.    Defendants acted in concert and pursuant to a common design and scheme to pursue an unlawful object or course of action to be accomplished by unlawful means, with the purpose of preventing Mesabi from competing against Cliffs, to Mesabi's detriment.

**ANSWER:**    The allegations in Paragraph 264 are legal conclusions to which no response is required.  To the extent that the Court deems Paragraph 264 to include factual allegations that require a response, Cliffs Minnesota denies them.

265.    Defendants committed acts in furtherance of the conspiracy, including, not limited to, tortious interference with Mesabi's contractual rights, tortious interference with Mesabi's business relationships, violation of the Automatic Stay, and anti-trust claims, without a reasonable or lawful excuse.  All Defendants were willful participants in this joint activity.

**ANSWER:**    The allegations in Paragraph 265 are legal conclusions to which no response is required.  To the extent that the Court deems Paragraph 265 to include factual allegations that require a response, Cliffs Minnesota denies them.

266.    As a direct and proximate result of these unlawful acts, Mesabi has suffered damages as alleged above and in an amount to be proven at trial.

**ANSWER:**    The allegations in Paragraph 266 are legal conclusions to which no

response is required.  To the extent that the Court deems Paragraph 266 to include factual

allegations that require a response, Cliffs Minnesota denies them.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Mesabi prays for relief and judgment against Defendants as follows:

A.    Enter judgment in favor of Plaintiff and against the Defendants in this action on each claim;

B.    Enjoin Defendants from (i) contacting or threatening any existing contractors, employees or consultants working on the Project or being engaged to work on the Project, regarding the Project, or threatening their relationship or prospective relationship with Cliffs based on their work on the Project, (ii) threatening any potential contractors, employees, or consultants who may be engaged to work on the Project including  by threatening to discontinue their relationship or prospective relationship with Cliffs if they work on the Project; (iii) interfering with state, local, or other governmental approvals related to the Project, (iv) interfering with debt or equity financing sources for the consummation of the Plan, and (v) any other actions designed to prevent consummation of the Plan and implementation of Mesabi's construction and business plan.

C.    Avoid the Cliffs Transaction and direct the Defendants to unwind the transactions related thereto and return to Plaintiff the property that is subject of the Cliffs Transaction, pursuant to 11 U.S.C. §§ 549 and 550, plus the costs and expenses of this action, including, without limitation, attorneys' fees;

D.    Disallow any claims held or filed by the Defendants against Plaintiff until the Defendants return the Cliffs Transaction to Plaintiff pursuant to 11 U.S.C. § 502(d);

E.    Award general and compensatory damages in favor of Plaintiff on all claims against the Defendants to those claims, jointly and severally, for all damages sustained by Mesabi, in an amount to be proven at trial, plus prejudgment interest;

F.    Award treble damages as allowed by law;

G.    Award all appropriate equitable remedies, including injunctive relief, as by law, in favor of Plaintiff on all claims against the Defendants, including but not limited to an order enjoining Cliffs and Cliffs Minnesota from entering into exclusive or restrictive arrangements with purchasers of pellet products, an order enjoining the other anticompetitive conduct described above, an order enjoining Cliffs, Cliffs Minnesota, and GPIOP from taking any further action to implement the Cliffs Transaction, including, but not limited to, any action in furtherance of the recording or perfection of any interest in property or otherwise, associated with the Cliffs Transaction, and/or in furtherance of any purported termination of the Mineral Leases;

H.    Award punitive damages and prejudgment interest in favor of Plaintiff as allowed by law;

I.      Award any declaratory relief that may be necessary and appropriate, including but not limited to an order declaring (i) that the Mineral Leases are not terminated and are or were assumed on the Effective Date of the Plan, (ii) that the Mineral Leases, as amended by the Omnibus Lease Amendment, are deemed amended and restated by consent of GPIOP and Superior as of the Effective Date, with the Reorganized Debtor succeeding to all rights of the Debtors thereunder, and (iii) that Mesabi's interests in the GPIOP Property Interests, to which the Reorganized Debtor succeeded on the Effective Date, are superior to the interests of Cliffs and/or Cliffs Minnesota, if any, in the GPIOP Property Interests.

J.      Award Plaintiff its attorneys' fees, costs, and other expenses incurred in this action, as allowed by law; and

K.      Grant Plaintiff such other and further relief as the Court considers appropriate.

**ANSWER:**    In response to the "Prayer for Relief" and "Wherefore" paragraph, including subparts A through K, Cliffs Minnesota denies that Mesabi is entitled to any relief and denies all allegations contained therein.

## JURY DEMAND

Pursuant to Bankruptcy Rules 9015 and 5005, Cliffs Minnesota demands a jury trial on each count of the Second Amended Complaint.

## RULE 7012(B) STATEMENT

Pursuant to Bankruptcy Rule 7012(b), Cliffs Minnesota hereby gives notice that it does not consent to entry of final orders or judgment by the bankruptcy court.

## AFFIRMATIVE DEFENSES

Cliffs Minnesota sets forth below its affirmative defenses. Each defense is asserted as to all claims against Cliffs Minnesota. By setting forth these affirmative defenses, Cliffs Minnesota does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Mesabi. Moreover, nothing stated herein is intended or shall be

01:22917217.1

construed as an admission that any particular issue or subject matter is relevant to Mesabi's allegations.

As separate and distinct affirmative defenses, Cliffs Minnesota alleges as follows:

### First Affirmative Defense:

The Second Amended Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense:

Mesabi's claims are barred, in whole or in part, by the express terms of the Glacier Park Settlement, the Mineral Leases, or the Assumption Order.

### Third Affirmative Defense:

Mesabi's claims are barred, in whole or in part, to the extent that there is no cognizable legal injury and Mesabi has suffered no damages.

### Fourth Affirmative Defense:

Mesabi's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, laches, and unclean hands.

### Fifth Affirmative Defense:

Mesabi's claims are barred, in whole or in part, for failure of Mesabi to satisfy the condition(s) precedent in the Glacier Park Settlement, the Mineral Leases, or the Assumption Order.

### Sixth Affirmative Defense:

Mesabi's claims are barred, in whole or in part, on the ground that any conduct of Cliffs Minnesota was based on its economic interest or was otherwise justified.

### Seventh Affirmative Defense:

Mesabi's claims are barred, in whole or in part, on the ground that any conduct of Cliffs Minnesota was privileged.

01:22917217.1

## **Eighth Affirmative Defense:**

Mesabi's claims are barred, in whole or in part, on the ground that Mesabi has failed to mitigate damages.

## **Ninth Affirmative Defense:**

Mesabi is barred from recovery because it materially breached the contract(s) on which it has based its claims, including but not limited to any contracts on which it bases its First and Second Claims for Relief.

## **Tenth Affirmative Defense:**

Mesabi's claims are barred, in whole or in part, because its alleged contract counterparties have fully performed, including but not limited to any counterparties to the contracts on which it bases its First and Second Claims for Relief.

## **Eleventh Affirmative Defense:**

Mesabi's claims are barred, in whole or in part, by the doctrine of impossibility of performance, including but not limited to the impossibility of performance by any counterparties to the contracts on which it bases its First and Second Claims for Relief.

## **Twelfth Affirmative Defense:**

Mesabi's claims are barred, in whole or in part, by the doctrine of avoidance, including but not limited to the avoidance of any contracts on which it bases its First and Second Claims for Relief.

## **Thirteenth Affirmative Defense:**

Mesabi's claims are barred, in whole or in part, on the ground that any conduct engaged in by Cliffs Minnesota has been reasonable, based upon independent business and economic justifications, without any purpose or intent to injure competition.

### Fourteenth Affirmative Defense:

Mesabi's claims are barred, in whole or in part, because Cliffs Minnesota's actions were taken in pursuit of its own economic interests, not by wrongful means.

### Fifteenth Affirmative Defense:

If Mesabi has suffered or will suffer damages, such damages were not caused by Cliffs Minnesota but are solely due to the fault, negligence, or other conduct of Mesabi or other parties or individuals for which Cliffs Minnesota has no responsibility.  There is no causal relationship between the losses alleged, if any, and any alleged wrongful acts or omissions by Cliffs Minnesota.

### Sixteenth Affirmative Defense:

Any injury suffered by Mesabi is not an injury which the antitrust laws are designed to prevent, or which flows from anything which would make Cliffs Minnesota's alleged conduct unlawful under the antitrust laws.

### Seventeenth Affirmative Defense:

Mesabi's claims are barred, in whole or in part, because Cliffs Minnesota's conduct did not lessen competition in any relevant properly defined market.

### Eighteenth Affirmative Defense:

Mesabi's claims are barred, in whole or in part, because none of Cliffs Minnesota's challenged actions or omissions substantially lessened competition within any properly defined market.

### Nineteenth Affirmative Defense:

All or some of Mesabi's claims are barred by the Noerr-Pennington doctrine.

01:22917217.1

### Twentieth Affirmative Defense:

Mesabi's claims against Cliffs Minnesota are barred to the extent any actionable conduct was committed by any individual acting ultra vires.

### Twenty-first Affirmative Defense:

Mesabi's claims are barred to the extent they are based on alleged acts, conduct, or statements of Cliffs Minnesota that are specifically permitted by law.

### Twenty-second Affirmative Defense:

Mesabi's claims are barred to the extent any injuries or damages Mesabi may have suffered were caused solely and proximately by the acts and omissions of others, and not by Cliffs Minnesota.

### Twenty-third Affirmative Defense:

Mesabi's claims are barred, in whole or in part, because Cliffs Minnesota is not liable for the acts of any other defendant.

### Twenty-fourth Affirmative Defense:

Mesabi's claims for injunctive relief are barred to the extent that Mesabi has available an adequate remedy at law.

### Twenty-fifth Affirmative Defense:

The Second Amended Complaint, in whole or in part, fails to state an adequate basis for an award of treble damages.

### Twenty-sixth Affirmative Defense:

Mesabi's claims are barred, in whole or in part, because Cliffs Minnesota did not interfere with the business relations between Mesabi and any third-party.

01:22917217.1

### Twenty-seventh Affirmative Defense:

Mesabi's claims are barred, in whole or in part, because Cliffs Minnesota did not act with the purpose of harming Mesabi nor did Cliffs Minnesota's conduct constitute a crime or an independent tort.

### Twenty-eighth Affirmative Defense:

Cliffs Minnesota has not knowingly and intentionally waived any applicable affirmative defenses and reserves the right to raise additional affirmative defenses as they become known to it through discovery in this matter.  Cliffs Minnesota further reserves the right to amend its answer and/or affirmative defenses accordingly and/or to delete affirmative defenses that it determines are not applicable during the course of subsequent discovery.

**WHEREFORE,** Defendant Cliffs Minnesota respectfully requests that this Court enter proposed facts and conclusions of law to the District Court recommending entry of a judgment in Cliffs Minnesota's favor and against Plaintiff Mesabi by adjudging and decreeing that:

A.    Mesabi's claims as to Cliffs Minnesota be dismissed with prejudice;

B.    Cliffs Minnesota has not violated Sections 1 or 2 of the Sherman Act, 15 U.S.C. §§ 1, 2;

C.    Cliffs Minnesota has not violated any applicable state unfair competition laws;

D.    Cliffs Minnesota has not violated any orders of this Court;

E.    Mesabi is not entitled to any relief under 11 U.S.C. §§ 549 and 550;

F.    Mesabi is not entitled to any relief under 11 U.S.C. § 502;

G.    Mesabi is not entitled to recover any damages from Cliffs Minnesota;

H.    Mesabi is not entitled to punitive damages;

I.    Mesabi is not entitled to equitable relief;

01:22917217.1

J.      Cliffs Minnesota recover its costs of this suit, including reasonable attorneys' fees

as provided by law; and

K.      Cliffs Minnesota receive such other or further relief as may be just and proper.

## **COUNTERCLAIMS**

Cliffs Minnesota hereby joins Cliffs (together, the "Cliffs Counterclaim-Plaintiffs") in the Counterclaims contained in Cliffs Answer and Counterclaims.  Cliffs Minnesota repeats and realleges paragraphs 1 through 148 under the header "Counterclaims" in the Cliffs Answer and Counterclaims as if fully set forth herein.

## **PRAYER FOR RELIEF**

**WHEREFORE,** the Cliffs Counterclaim-Plaintiffs request that this Court enter proposed findings of fact and conclusions of law to the District Court, recommending the entry of a judgment against Counterclaim-Defendants Mesabi, Chippewa, and Clarke that grants relief as follows:

A.     Recommending entry of a judgment in favor of the Cliffs Counterclaim-Plaintiffs and against Counterclaim-Defendants Mesabi, Chippewa, and Clarke on each counterclaim;

B.     Recommending entry of an award of general and compensatory damages in favor of the Cliffs Counterclaim-Plaintiffs on each counterclaim against the Counterclaim-Defendants to each counterclaim, jointly and severally as applicable, for all damages sustained by the Cliffs Counterclaim-Plaintiffs in an amount to be determined at trial, including pre- and post-judgment interest, as allowed by law;

C.     Recommending entry of injunctive or equitable relief;

D.     Recommending entry of an award of the Cliffs Counterclaim-Plaintiffs' attorneys' fees, costs, and other expenses incurred in this counterclaim action, as allowed by law; and

E.      Recommending the granting of Counterclaim-Plaintiff Cliffs Minnesota such

other and further relief as this Court deems appropriate.

## JURY DEMAND

Pursuant to Bankruptcy Rules 9015 and 5005, the Cliffs Counterclaim-Plaintiffs demand

a jury trial on each count of the Counterclaims.

## RULE 7012(B) STATEMENT

Pursuant to Bankruptcy Rule 7012(b), and Local Rule 7012-1, the Cliffs Counterclaim-

Plaintiffs hereby give notice that they do not consent to entry of final orders or judgment by the

bankruptcy court with respect to their Counterclaims.

01:22917217.1

Dated:        February 26, 2018                Respectfully submitted,
              Wilmington, Delaware

                                        */s/ M. Blake Cleary*
                                        M. Blake Cleary (No. 3614)
                                        YOUNG CONAWAY STARGATT
                                        & TAYLOR, LLP
                                        Rodney Square
                                        1000 North King Street
                                        Wilmington, DE 19801
                                        Telephone:  (302) 571-6600
                                        Facsimile:   (302) 571-1253
                                        Email: mbcleary@ycst.com

                                                -and-

                                        Robert S. Faxon (admitted pro hac vice)
                                        Thomas Wearsch (admitted pro hac vice)
                                        JONES DAY
                                        North Point
                                        901 Lakeside Avenue
                                        Cleveland, OH  44114.1190
                                        Telephone:  +1.216.586.3939
                                        Facsimile:  +1.216.579.0212
                                        E-mail:  rfaxon@jonesday.com
                                                 twearsch@jonesday.com

                                        *Attorneys for Defendants and Counterclaim-*
                                        *Plaintiffs Cleveland-Cliffs Inc. and*
                                        *Cleveland-Cliffs Minnesota Land*
                                        *Development LLC*