## IN UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------------x

|  |  |
|---|---|
| *In re:* | : Chapter 11 |
| | : |
| **ESSAR STEEL MINNESOTA LLC and** | : Case No. 16-11626 (BLS) |
| **ESML HOLDINGS INC.,**[1] | : |
| | : (Jointly Administered) |
| **Reorganized Debtors.** | : |
| | : |

-----------------------------------------------------------------x

|  |  |
|---|---|
| **MESABI METALLICS COMPANY LLC** | : Adv. Proc. No. 17-51210 (BLS) |
| **(F/K/A ESSAR STEEL MINNESOTA LLC),** | : |
| | : Related to Adv. Docket No. 18 |
| **Plaintiff,** | : |
| | : **DEFENDANTS CLEVELAND-** |
| **v.** | : **CLIFFS INC. AND CLEVELAND-** |
| | : **CLIFFS MINNESOTA LAND** |
| **CLEVELAND-CLIFFS INC. (F/K/A CLIFFS** | : **DEVELOPMENT LLC's** |
| **NATURAL RESOURCES INC.);** | : **ANSWERING BRIEF IN** |
| **CLEVELAND-CLIFFS MINNESOTA LAND** | : **OPPOSITION TO PLAINTIFF** |
| **DEVELOPMENT LLC; GLACIER PARK** | : **MESABI METALLICS** |
| **IRON ORE PROPERTIES LLC; and** | : **COMPANY LLC'S MOTION FOR** |
| **DOES 1-10,** | : **PARTIAL SUMMARY** |
| | : **JUDGMENT** |
| **Defendants.** | : |
| | : |

-----------------------------------------------------------------x

|  |  |
|---|---|
| **CLEVELAND-CLIFFS INC. (F/K/A CLIFFS** | : |
| **NATURAL RESOURCES INC.); and** | : |
| **CLEVELAND-CLIFFS MINNESOTA LAND** | : |
| **DEVELOPMENT LLC,** | : |
| | : |
| **Counterclaim-Plaintiffs,** | : |
| | : |
| **v.** | : |
| | : |
| **MESABI METALLICS COMPANY LLC** | : |
| **(F/K/A ESSAR STEEL MINNESOTA LLC);** | : |
| **CHIPPEWA CAPITAL PARTNERS, LLC; and** | : |
| **THOMAS M. CLARKE,** | : |
| | : |
| **Counterclaim-Defendants.** | : |

-----------------------------------------------------------------x

---

[1]   Essar Steel Minnesota LLC has changed its name to Mesabi Metallics Company LLC.

M. Blake Cleary (No. 3614)
Michael S. Neiburg (No. 5275)
YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:   mbcleary@ycst.com
            mneiburg@ycst.com

          -and-

Robert S. Faxon  (admitted <u>pro hac vice</u>)
Thomas Wearsch  (admitted <u>pro hac vice</u>)
Kristin S.M. Morrison  (admitted <u>pro hac vice</u>)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114.1190
Telephone:  +1.216.586.3939
Facsimile:  +1.216.579.0212
E-mail:  rfaxon@jonesday.com
            twearsch@jonesday.com
            kmorrison@jonesday.com

*Attorneys for Cleveland-Cliffs Inc. and
Cleveland-Cliffs Minnesota Land Development LLC*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... ii

I.  PRELIMINARY STATEMENT ....................................................................... 1

II. NATURE AND STAGE OF PROCEEDING ..................................................... 4

III. SUMMARY OF ARGUMENT ......................................................................... 5

IV. STATEMENT OF FACTS ................................................................................ 6

V.  ARGUMENT .................................................................................................... 7

  A.  Mesabi Is Not Entitled to Summary Judgment On Its
      Cross-Motion ........................................................................................ 7

  B.  Under The Plain Terms Of The Glacier Park Settlement,
      The Mineral Leases Were Automatically Rejected And
      Reverted And Could Not Be Assumed ................................................... 7

    1.  The Glacier Park Settlement and the Approval Order
        Are Unambiguous ......................................................................... 7

    2.  The Mineral Leases Were Automatically Rejected
        and Reverted On, and Could Not Be Assumed After,
        November 1, 2017 ......................................................................... 9

      (a)  The Requirement that the Effective Date Occur
           by October 31, 2017 is a Condition Precedent
           that Mesabi Failed to Fulfill ............................................... 9

      (b)  Because the Mineral Leases were Subject to
           a Condition Precedent that Failed, and Were
           Automatically Rejected, They Could Not Be Assumed ............... 13

      (c)  The Mineral Leases Reverted on November 1, 2017
           Without the Need for Further Action, Which
           Operates as a Termination ............................................... 15

    3.  Mesabi's Extra-Textual Arguments Fail to Get Around
        the Clear Terms of the Glacier Park Settlement ....................... 19

      (a)  Forfeiture was Bargained for in Both the Glacier
           Park Settlement and the Mineral Leases ......................... 19

      (b)  Glacier Park Did Not Waive the Protections of
           § 365(d)(4) and the Mineral Leases Did Not
           "Ride Through" the Chapter 11 Cases ........................... 23

      (c)  Section 4 Does Not Grant the Reorganized Debtor
           the Right to Ignore Section 3 ......................................... 24

VI. CONCLUSION .................................................................................................. 26

# TABLE OF AUTHORITIES

**Page**

**CASES**

1985 Robert St. Assoc. v. Menard, Inc.,
    403 N.W.2d 900 (Minn. Ct. App. 1987)..........................................................20, 21

Anda Const. Co. v. First Fed. Sav. & Loan Ass'n, Duluth,
    349 N.W.2d 275 (Minn. Ct. App. 1984).........................................................7, 8, 22

Bank Midwest, Minnesota, Iowa, N.A. v. Lipetzky,
    674 N.W.2d 176 (Minn. 2004)......................................................................7, 15, 17

Bennett v. Storz Broadcasting Co.,
    270 Minn. 525, 134 N.W.2d 892 (Minn. 1965).....................................................21

BOB Acres, LLC v. Schumacher Farms, LLC,
    797 N.W.2d 723 (Minn. Ct. App. 2011).................................................................11

C & S Acquisitions Corp. v. Northwest Aircraft, Inc.,
    153 F.3d 622 (8th Cir. 1998) ..................................................................................25

Cady v. Bush,
    166 N.W.2d 358 (Minn. 1969).................................................................................20

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)...................................................................................................7

CG v. Pennsylvania Dep't of Educ.,
    No. 1:06-CV-1523, 2011 WL 318289 (M.D. Pa. Jan. 28, 2011)...............................3

Chergosky v. Crosstown Bell, Inc.,
    463 N.W.2d 522 (Minn. 1990).................................................................................16

Cloverdale Foods of Minn., Inc. v. Pioneer Snacks,
    580 N.W.2d 46 (Minn. Ct. App. 1998) ...................................................................21

Cole v. Paulson,
    380 N.W.2d 215 (Minn. Ct. App. 1986)..................................................................17

Constr. Mortg. Inv'rs Co. v. Darrel A. Farr Dev. Corp.,
    No. A09-1960, 2010 WL 3119443 (Minn. Ct. App. Aug. 10, 2010) .......................11

01:23110826.1

Crossroads Church of Prior Lake MN v. County of Dakota,
    800 N.W.2d 608 (Minn. 2011).................................................................................10

enXco Dev. Corp. v. N. States Power Co.,
    No. 11-1171, 2013 WL 1364242 (D. Minn. Apr. 4, 2013)...............................10, 11

Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two,
    249 F.3d 1132 (9th Cir. 2001) ....................................................................................3

Harris v. Bolin,
    310 Minn. 391, 247 N.W.2d 600 (Minn. 1976) ......................................................21

Hideaway, Inc. v. Gambit Investments Inc.,
    386 N.W.2d 822 (Minn. Ct. App. 1986).................................................................21

In re Forklift LP Corp.,
    363 B.R. 388 (Bankr. D. Del. 2007) ......................................................................14

In re George,
    177 F.3d 885 (9th Cir. 1999) ..................................................................................24

In re Louttit,
    473 B.R. 663 (Bankr. W.D. Pa. 2012) ......................................................................3

In re Phelan,
    No. 1:15-BK-04101, 2017 WL 713570 (Bankr. M.D. Pa. Feb. 21, 2017) .............24

In re Seven Hills, Inc.,
    403 B.R. 327 (Bankr. D.N.J. 2009) ........................................................................21

In re Trico Marine Services, Inc.,
    450 B.R. 474 (Bankr. D. Del. 2011) ......................................................................14

In re Victory Markets, Inc.,
    221 B.R. 298 (B.A.P. 2d Cir. 1998)........................................................................13

In re WL Homes, LLC,
    452 B.R. 138 (Bankr. D. Del. 2011), aff'd sub nom., 476 B.R. 830
    (D. Del. 2012), aff'd in part sub nom., 534 F. App'x 165 (3d Cir. 2013) .................7

Lindgren v. Clearwater National Corp.,
    517 N.W.2d 574 (Minn. 1994)................................................................................25

01:23110826.1

McManus v. Duluth, C. & N.R. Co.,
    51 Minn. 30, 52 N.W. 980 (1892) ............................................................................10

Miner v. Delzer Lithograph Co.,
    No. A04-587, 2004 WL 2663541 (Minn. Ct. App. Nov. 23, 2004) ........................12

Minneapolis v. Republic Creosoting Co.,
    201 N.W. 414 (Minn. 1924) ....................................................................................17

Mrozik Const., Inc. v. Lovering Assocs., Inc.,
    461 N.W.2d 49 (Minn. Ct. App. 1990) ............................................................10, 20

Mulcahy v. Fenton Sub Parcel D, LLC,
    No. A10-23, 2010 WL 4181263 (Minn. Ct. App. Oct. 26, 2010) ..........................14

Naftalin v. John Wood Co.,
    263 Minn. 135, 116 N.W.2d 91 (Minn. 1962) ........................................................21

Polzin Inc. v. Aust,
    No. A11–1944, 2012 WL 2685114 (Minn. Ct. App. July 9, 2012) ........................18

Qwinstar Corp. v. Anthony,
    882 F.3d 748 (8th Cir. 2018), as amended (Feb. 26, 2018) ........................15, 16, 19

R.A., Inc. v. Anheuser-Busch, Inc.,
    556 N.W.2d 567 (Minn. Ct. App. 1996), review denied (Minn. Jan. 29, 1997) .....................10

Trebelhorn v. Agrawal,
    905 N.W.2d 237 (Minn. Ct. App. 2017) ............................................................8, 26

Trollen v. City of Wabasha,
    287 N.W.2d 645 (Minn. 1979) ................................................................................21

Tulalip Tribes of Washington v. Washington,
    783 F.3d 1151 (9th Cir. 2015) ..................................................................................3

Valspar Refinish, Inc. v. Gaylord's, Inc.,
    764 N.W.2d 359 (Minn. 2009) ..................................................................................9

Vesta Investa, Inc. v. Harris,
    No. CX-98-1398, 1999 WL 55649 (Minn. Ct App. Feb. 9, 1999) ..........................12

**RULES**

D. Del. Local Rule 7007-2(b)(i)(E) ............................................................................6

**STATUTES**

11 U.S.C. § 365(d)(4) ..............................................................................21, 22, 23, 24

11 U.S.C. § 1123(b)(2) ......................................................................................13, 15

Minn. Stat. § 92.72..................................................................................................18

Minn. Stat. § 93.20(28) ...........................................................................................18

Minn. Stat. § 282.01(1)(c).......................................................................................18

Minn. Stat. § 365.27................................................................................................18

Minn. Stat. § 500.09................................................................................................18

Minn. Stat. § 508A.73..............................................................................................18

Minn. Stat. § 559.21................................................................................................17

**OTHER AUTHORITIES**

8 Dunnell Minn. Digest Contracts § 8.06 (2017) ..................................................16, 17

Black's Law Dictionary (9th ed. 2009).................................................................18, 19

Restatement (Second) of Contracts § 227 (1981) .......................................................20

Defendants Cleveland-Cliffs Inc. ("Cliffs") and Cleveland-Cliffs Minnesota Land Development LLC ("Cliffs Minnesota") (collectively, the "Cliffs Defendants") respond to Plaintiff Mesabi Metallics Company LLC's ("Mesabi" or the "Reorganized Debtors," and prior to the Effective Date and together with ESML Holdings Inc., the "Debtors") Motion for Partial Summary Judgment ("Mesabi's Motion") [Adv. D.I. 51], as follows:

## I.   PRELIMINARY STATEMENT

1.   This Court should deny Mesabi's Motion because the unambiguous terms of the contracts and orders at issue establish that Mesabi holds none of the asserted property interests that it relies upon for its Claims For Relief.

2.   The parties' cross motions for summary judgment seek resolution of the same legal issue:  the current status of the Mineral Leases between Glacier Park Iron Ore Properties LLC ("Glacier Park" or "GPIOP") and the Debtors for properties that Glacier Park transferred to Cliffs Minnesota after the Mineral Leases were rejected and reverted to Glacier Park.

3.   Prior to rejection and reversion, the Mineral Leases were governed by the terms of a settlement agreement between Glacier Park and the Debtors.  This agreement extended the Debtors' deadline to assume the Mineral Leases from August 31 until October 31, 2017, conditioned on a requirement that the Plan go effective on or before that date, in exchange for finality for Glacier Park and a restoration of all its property rights if the Debtors did not satisfy the condition by going effective by the deadline.  [D.I. 1168-1 (the "Glacier Park Settlement").] When the Debtors failed to meet this express condition precedent—it is undisputed that the Effective Date did not occur by October 31—then the Mineral Leases (i) could not be assumed (id. § 3(b)), and (ii)  were "automatically rejected . . . and revert[ed] to GPIOP and Superior [Mineral Resources LLC ("Superior")], as applicable, without further Bankruptcy Court

proceedings," who thereafter could "take any action with respect to the Mineral Leases and the leased properties and interests" without violating any provision of the Bankruptcy Code (id. § 3(d)).  These unambiguous terms of the Glacier Park Settlement were submitted to the Court for approval pursuant to § 8(a), and the parties' proposed order was entered by this Court on August 30, 2017.  [D.I. 1168 (the "Approval Order")].  The Approval Order approved each term and condition in the Glacier Park Settlement without alteration.  [Id. ¶ 2.]

4.      Mesabi claims that it "was blindsided" by Glacier Park's decision to transfer the formerly leased properties to Cliffs Minnesota when the transaction was announced on December 11, 2017—more than a month after the Mineral Leases were rejected and reverted to Glacier Park.  [Adv. D.I. 51 at 2.]  It should not have been.  When the operative contracts and order are read in accord with the applicable law, there is only one obvious conclusion:  Glacier Park's transfer of its interests to Cliffs Minnesota was among the "any actions" Glacier Park could take after the Mineral Leases were rejected and reverted, and that transfer does not support any of Mesabi's asserted causes of action.  Because the Mineral Leases were rejected by the Debtors and reverted to the lessors on November 1, 2017, the Mineral Leases could not be assumed by the Debtors, and Mesabi has no rights in the Mineral Leases.

5.      Based on the clear terms of the Glacier Park Settlement, the property interests that Mesabi asserts in this dispute actually were non-existent at the time of the alleged wrongdoing by the Cliffs Defendants and Glacier Park.  Mesabi accordingly is not entitled to summary judgment in its favor on any of its Claims For Relief.

6.      To avoid repetition, the Cliffs Defendants do not repeat the arguments made in the Opening Brief in Support of their Joint Motion for Partial Summary Judgment (the "Cliffs Defendants' Opening Brief") [Adv. D.I. 47] in which the Cliffs Defendants support their Joint

Motion for Partial Summary Judgment on the First, Second, Third, Fourth, Fifth, Sixth, Thirteenth, Fourteenth, Fifteenth, Sixteenth, Seventeenth, Twentieth, Twenty-First, Twenty-Second, Twenty-Third, and Twenty-Fourth Claims For Relief [Adv. D.I. 46].  "[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them."  Tulalip Tribes of Washington v. Washington, 783 F.3d 1151, 1156 (9th Cir. 2015) (quoting Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two, 249 F.3d 1132, 1134 (9th Cir. 2001)).[2]

7.      This Answering Brief in Opposition to Mesabi's Motion therefore addresses the additional arguments raised in Mesabi's Motion, which are deficient for at least the following reasons:  (1) the Effective Date occurring on or before October 31, 2017 was a condition precedent to assumption and a material term; (2) rejection and reversion prevented the Debtors or the Reorganized Debtor from assuming the Mineral Leases pursuant to the Approval Order and effected a termination; (3) the Glacier Park Settlement should be enforced even if doing so would result in forfeiture; (4) the Mineral Leases did not "ride through" the bankruptcy; and (5) Section 4 of the Glacier Park Settlement does not provide separate rights to the Reorganized Debtor notwithstanding Section 3 and does not contain inherent limits that save Mesabi's contrary interpretation.  For all of the reasons set forth in this Answering Brief and in the Cliffs Defendants' Opening Brief, Mesabi's Motion for Partial Summary Judgment should be denied.

---

[2]     Accord In re Louttit, 473 B.R. 663, 664 (Bankr. W.D. Pa. 2012) (consolidating analysis of cross-motions "to eliminate confusion and redundancy, since the parties argue the opposite sides of the same issue"); CG v. Pennsylvania Dep't of Educ., No. 1:06-CV-1523, 2011 WL 318289, at *3 (M.D. Pa. Jan. 28, 2011) ("Where the parties request relief on the same issue, the Court will consider the cross motions in tandem.").

## II.    <u>NATURE AND STAGE OF PROCEEDING</u>

8.    This adversary proceeding began on September 7, 2017 when the Debtors filed their first complaint against Cliffs and Does 1–10.  [Adv. D.I. 1.]  The original Complaint was amended on September 11, 2017 (the "<u>First Amended Complaint</u>").  [Adv. D.I. 3.]

9.    On December 22, 2017, the Debtors filed the Notice of Effective Date to emerge from reorganization.  [D.I. 1398.]  That same day, Mesabi filed its Motion For Leave to Amend Complaint to add new claims against Glacier Park and Cliffs Minnesota.  [Adv. D.I. 8.]

10.    On January 9, 2018, Cliffs objected to Mesabi's Motion for Leave to Amend on the grounds of bad faith and futility.  [Adv. D.I. 10.]

11.    Following a hearing on January 18, 2018, the Court granted the Reorganized Debtor's Motion to Amend on January 23, 2018.  [Adv. D.I. 17.]  In the order granting the motion to Amend, the Court suggested that Cliffs' arguments against the amendment based on competing interpretations of the relevant contractual terms may be presented again on motions for summary judgment.  That same day, the Reorganized Debtors filed the Second Amended Complaint.  [Adv. D.I. 18 ("<u>2d Am. Compl.</u>").]

12.    On February 26, 2018, the Cliffs Defendants filed separate Answers to the Second Amended Complaint and asserted joint counterclaims against Chippewa, the Reorganized Debtors, and Mr. Clarke.  [Adv. D.I. 34, 35.]

13.    On February 26, 2018, Glacier Park filed its separate Answer to the Second Amended Complaint and asserted counterclaims against Mesabi.  [Adv. D.I. 30.]  Glacier Park also filed a Motion for Partial Summary Judgment and a Declaration and Brief in Support on the same day.  [Adv. D.I. 31, 32, 33.]

14.    On March 28, 2018, the Cliffs Defendants filed a Motion for Partial Summary Judgment and a Declaration and Opening Brief in Support.  [Adv. D.I. 46, 47, 48.]  The Cliffs

Defendants' Motion seeks summary judgment in their favor on the First, Second, Third, Fourth, Fifth, Sixth, Thirteenth, Fourteenth, Fifteenth, Sixteenth, Seventeenth, Twentieth, Twenty-First, Twenty-Second, Twenty-Third, and Twenty-Fourth Claims For Relief.

15. On March 28, 2018, Mesabi filed a Motion for Partial Summary Judgment and an Opening Brief in Support of its Motion for Partial Summary Judgment and in Opposition to Defendant Glacier Park's Motion for Partial Summary Judgment. [Adv. D.I. 49, 51.]

### III.   <u>SUMMARY OF ARGUMENT</u>

16. The clear and unambiguous terms of the Glacier Park Settlement and the Approval Order preclude Mesabi from its requested relief.

17. Mesabi's Motion asks the Court to read otherwise clear terms completely out of the Glacier Park Settlement, and Mesabi argues instead that more general terms found in the Approval Order should control. The parties specifically contracted for automatic rejection and reversion of the Mineral Leases if the Effective Date of the Plan did not occur by October 31, 2017. The unequivocal terms of the Glacier Park Settlement show that the Effective Date occurring on or before October 31, 2017 was a condition precedent to assumption and a material term of the parties' agreement. Because the October 31 deadline is a condition precedent to assumption, and that deadline passed unmet, the Mineral Leases were automatically rejected and reverted and could not be assumed under the terms of the Glacier Park Settlement and the Approval Order. The only logical result of reversion is that the Mineral Leases were terminated, which allowed Glacier Park to "take any action" thereafter.

18. Mesabi argues that reversion of its lease interest was a "forfeiture." The parties specifically bargained for an end to Mesabi's interests in the Mineral Leases and wrote this potential result into the Glacier Park Settlement by providing for automatic rejection and

01:23110826.1

5

reversion if the condition precedent was not satisfied.  Under Minnesota law, the Glacier Park

Settlement therefore should be enforced as written, even if doing so would result in forfeiture.

19.     Nor did the Mineral Leases "ride through" the bankruptcy.  The Glacier Park

Settlement is clear that the Mineral Leases were automatically rejected and reverted on a date

certain.  Glacier Park therefore did not waive the protections of § 365(d)(4) of the Bankruptcy

Code.

20.     Mesabi also argues that Section 4 of the Glacier Park Settlement provides

"separate" and "wholly independent rights" to the Reorganized Debtor notwithstanding more

explicit language in Section 3.  Section 4 is not an independent source of rights that allows

Mesabi to retake the Mineral Leases after the Effective Date occurred at some future date despite

failing to satisfy the conditions in Section 3.  Chippewa's role as the Plan Sponsor and ultimate

party in control does not change the meaning of the agreement.  Rather, the plain reading of

these two sections together (and giving meaning to both) is that the parties agreed to put a new

lease in place if the Plan went effective by October 31, as Mesabi had promised it would.

21.     Based on the clear and unambiguous terms of the Glacier Park Settlement, the

property interests asserted by Mesabi were non-existent at the time of the alleged wrongdoing by

Cliffs, Cliffs Minnesota, and Glacier Park.  Nothing in the Glacier Park Settlement or the

Approval Order returned those interests to the Debtors or the Reorganized Debtors before, on, or

after the Effective Date.  Mesabi's contrary interpretation fails under Minnesota law.  Mesabi

therefore is not entitled to summary judgment in its favor.

## IV.     STATEMENT OF FACTS

22.     In accordance with Local Rule 7007-2(b)(i)(E) and to avoid repetition, the Cliffs

Defendants refer the Court to the Statement Of Facts in the Cliffs Defendants' Opening Brief

[Adv. D.I. 47 ¶¶ 20–41], which facts are incorporated herein by reference.

## V.   ARGUMENT

### A.   Mesabi Is Not Entitled To Summary Judgment On Its Cross-Motion

23.   Summary judgment may not be entered for a party, like Mesabi, "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "[T]he standard for summary judgment remains unaffected where the parties have filed cross-motions for summary judgment.  In deciding cross-motions for summary judgment, the court must consider each party's motion separately and independently." In re WL Homes, LLC, 452 B.R. 138, 143 (Bankr. D. Del. 2011) (Shannon, J.), aff'd sub nom., 476 B.R. 830 (D. Del. 2012), aff'd in part sub nom., 534 F. App'x 165 (3d Cir. 2013) (citations omitted). Mesabi has not shown that it is entitled to summary judgment on any of its Claims for Relief because each one relies on a faulty interpretation of the Glacier Park Settlement and the Approval Order.

### B.   Under the Plain Terms of the Glacier Park Settlement the Mineral Leases Were Automatically Rejected and Reverted and Could Not Be Assumed

#### 1.   The Glacier Park Settlement and the Approval Order are Unambiguous

24.   When a contract is unambiguous and the "terms of the contract may be given their plain and ordinary meaning, construction of the contract is a matter for the court." See Bank Midwest, Minnesota, Iowa, N.A. v. Lipetzky, 674 N.W.2d 176, 179 (Minn. 2004).[3]  Courts should not "create or add exceptions to [an unambiguous] contract or to remake it on behalf of either of the contracting parties," especially where each party is sophisticated and capable of understanding the terms of its agreement.  Anda Const. Co. v. First Fed. Sav. & Loan Ass'n, Duluth, 349 N.W.2d 275, 279 (Minn. Ct. App. 1984) (declining to "set aside a [contract]

---

[3]   As stipulated in the Glacier Park Settlement § 18, Minnesota law governs.

provision that was considered and agreed upon between the parties" when the challenging party was a sophisticated party that "had extensive dealings in real estate") (citation omitted).

25.    No party contends that the Glacier Park Settlement or the Approval Order is ambiguous.  [See Adv. DI. 51 ¶ 25.]  As a result, extrinsic "facts" may not be used to argue for an interpretation that is at odds with unambiguous contract language, notwithstanding assertions that the parties' intent is shown through conduct after the fact.  See, e.g., Trebelhorn v. Agrawal, 905 N.W.2d 237, 243 (Minn. Ct. App. 2017) ("Extrinsic evidence beyond the four corners of a contract is inadmissible to explain the meaning of a contract that is unambiguous.").  Mesabi nevertheless attempts to use facts that are outside the record to support its Motion.  For example, Mesabi asserts that Glacier Park and Superior took no action to force Mesabi off the leased properties on or after rejection and reversion on November 1, 2017.  [Adv. D.I. 51 ¶¶ 15, 47 n.15, 56, & 57.]  Even if these facts were relevant, they do not help Mesabi.  Mesabi's claim that Glacier Park took no action is belied by the fact that Glacier Park sold the property free and clear on December 9, 2017, consistent with its right under the Glacier Park Settlement to "take any action" with its property after the rejection and reversion.  More telling, Mesabi ignores that Glacier Park provided Mesabi a "Limited License Agreement" that specifically provided Mesabi access to the leased properties after November 1, 2017 only for purposes of transiting to adjacent lands, maintaining existing structures, and storing vehicles and equipment on the land, which license was needed so that Mesabi could remain on the land after rejection and reversion of the Mineral Leases.[4]  Mesabi's attempt to insert its purported "facts" into the record does not help its

---

[4]    [See Limited Warranty Deed, Ex. B: Permitted Liens, Doc. No. T000064041, Itasca Cty. Registrar of Title (recorded Dec. 12, 2017) (listing the Limited License Agreement with Mesabi); see also 2d Am. Compl. ¶ 259 (acknowledging recording) [Adv. D.I. 18]; Cliffs' Ans. ¶ 259 [Adv. D.I. 34]; Cliffs Minnesota's Ans. ¶ 259 [Adv. D.I. 35]; Glacier Park's Ans. ¶ 127 (responding to 2d Am. Compl. ¶ 259) [Adv. D.I. 30].]

arguments, and more importantly bears no relevance because such "facts" are not part of the contractual language that all parties admit is unambiguous.

2.   **The Mineral Leases Were Automatically Rejected and Reverted On, and Could Not Be Assumed After, November 1, 2017**

(a)   **The Requirement that the Effective Date Occur by October 31, 2017 is a Condition Precedent That Mesabi Failed to Fulfill**

26.   The Mineral Leases were automatically rejected when the stipulated October 31, 2017 date passed without the Plan going effective.  Mesabi concedes this.  [Adv. D.I. 51 ¶ 15, 37, 79.]

27.   Mesabi also concedes that Section 3(b)(i) of the Glacier Park Settlement "conditions such assumption on the occurrence of the Effective Date by October 31, 2017." See 2d Am. Compl. [Adv. D.I. 18 ¶ 74.]

28.   These concessions combine with the language of the Glacier Park Settlement to establish that the occurrence of the Effective Date by October 31, 2017 was a condition precedent to assumption of the Mineral Leases.

29.   Mesabi argues that the condition precedent to assumption was "not the Effective Date occurring by October 31, 2017," but merely occurrence of the Effective Date on any date. [Adv. D.I. 51 ¶ 54.]  This reading would require the Court to ignore the date set forth in Section 3(b)(i).  Mesabi acknowledges that the Court "should not re-write, modify, or limit [the] effect [of an unambiguous contractual provision] by a strained construction."  [Adv. D.I. 51 ¶ 85 (citing Valspar Refinish, Inc. v. Gaylord's, Inc., 764 N.W.2d 359, 364–65 (Minn. 2009)).]  The Cliffs Defendants agree, yet Mesabi's interpretation would require the Court to do just that—and completely disregard the date set forth in the Glacier Park Settlement.

30.   Minnesota law rejects Mesabi's argument that the requirement that the Effective Date occur by October 31, 2017 could not be a condition precedent because its failure is "a mere

lapse of time."  [Adv. D.I. 51 ¶ 53.]  Minnesota courts have long held that failure to fulfill a

condition precedent before a specific date excuses all remaining obligations of the other party.

enXco Dev. Corp. v. N. States Power Co., No. 11-1171, 2013 WL 1364242, at *5 (D. Minn. Apr.

4, 2013) (holding that under Minnesota law when one party did not meet all conditions precedent

on or before a specific date the other party's remaining obligations were excused); Crossroads

Church of Prior Lake MN v. County of Dakota, 800 N.W.2d 608, 615 (Minn. 2011) (holding that

failure of party to fulfill conditions precedent before the specified date prevented enforcement of

the contract); McManus v. Duluth, C. & N.R. Co., 51 Minn. 30, 52 N.W. 980, 981 (1892)

(holding that by the clear "terms of the law and of the contract, the completion of the road by the

time specified was a condition precedent, and that by reason of its failure to comply therewith

the [party lost its rights to the benefits of the contract]").

    31.    Mesabi argues that conditions precedent are disfavored "as a general matter,"

[Adv. D.I. 51 ¶ 53], but when written into contracts in clear and unambiguous terms, conditions

precedents are enforced under Minnesota law.  R.A., Inc. v. Anheuser-Busch, Inc., 556 N.W.2d

567, 570 (Minn. Ct. App. 1996) (holding contract is unenforceable when a condition precedent

does not occur), review denied (Minn. Jan. 29, 1997).  Minnesota courts will find and enforce

conditions precedent where, like here, the language "unequivocally express[es] an intent of the

parties to establish a condition precedent."  Mrozik Const., Inc. v. Lovering Assocs., Inc., 461

N.W.2d 49, 52 (Minn. Ct. App. 1990).  Mrozik explained that conditions precedent are

disfavored only "when the obligee has no control over the occurrence of the event in question."

Id.  There can be no dispute here that the occurrence of the Effective Date was within the

Debtors' control.  The condition precedent in the Glacier Park Settlement is not "disfavored."

32.     Mesabi mischaracterizes the date included in the Glacier Park Settlement as a mere covenant and not a condition.  But the cases Mesabi cites are inapposite.  See Constr. Mortg. Inv'rs Co. v. Darrel A. Farr Dev. Corp., No. A09-1960, 2010 WL 3119443, at *6 (Minn. Ct. App. Aug. 10, 2010); BOB Acres, LLC v. Schumacher Farms, LLC, 797 N.W.2d 723, 728 (Minn. Ct. App. 2011).  In both of these cases the relevant language was found within the recitals section, not the substantive contract provisions.  The Minnesota Court of Appeals logically reasoned that because "recitals cannot create binding obligations, they cannot create conditions precedent."  See Constr. Mortg. Inv'rs Co., 2010 WL 3119443, at *6; see also BOB Acres, LLC, 797 N.W.2d at 729 (holding that "the bare recital that 'time is of the essence'" did not make failure to abide by the closing date a material breach).  The condition set forth in Section 3(b) of the Glacier Park Settlement is not found within a bare recital and cannot fairly be characterized as a mere covenant.

33.     Mesabi also argues that the October 31, 2017 date was not material.  But this argument misses the mark, for "'[u]nlike a mere contract term, the breach of which must be material before it excuses another party from performing, one party's failure to fulfill a condition precedent entirely excuses any remaining obligations of the other party.'"  enXco Dev. Corp., 2013 WL 1364242, at *6 (citation omitted).  The record shows that establishing a date certain was the entire reason for the Glacier Park Settlement.  Glacier Park twice objected to the Debtors' attempts to assume the Mineral Leases with the Plan in large part because the Debtors had not shown substantial progress toward satisfying the conditions to go effective and thus could not provide adequate assurance of future performance nor any certainty as to when they may begin to operate.  [D.I. 888 at ¶¶ 12-15; D.I. 1093 at ¶¶ 22-28.]  The Glacier Park Settlement was entered after months of negotiation over how and when the Debtors could affect assumption,

if at all.  [D.I. 1161.]  The Glacier Park Settlement expressly stipulated that rejection would be automatic upon Mesabi's failure to fulfill the condition precedent when the October 31, 2017 date passed.  The Debtors received an extension to October 31 on the promise of finality. Mesabi would have the Court read the specific date out of Section 3(b) and 3(d) because it is now unhappy that Glacier Park exercised the rights reserved to it after that date passed.  But a contract's "language must be given its plain and ordinary meaning and will be enforced by the courts even if the results are harsh."  <u>Miner v. Delzer Lithograph Co.</u>, No. A04-587, 2004 WL 2663541, at *2 (Minn. Ct. App. Nov. 23, 2004) (citation omitted).  Here, the results are not harsh—they are exactly what Mesabi bargained for.

34.    Where, like here, the parties have negotiated for a specific date that gives rise to specific rights, "it is hard to imagine a term more significant than [a date] deadline."  <u>See</u> <u>Vesta Investa, Inc. v. Harris</u>, No. CX-98-1398, 1999 WL 55649, at *3 (Minn. Ct App. Feb. 9, 1999) (holding that inclusion of a deadline was material because the "parties could have negotiated for a different closing date or agreed to give appellant additional time to close or, in fact, the parties could have agreed to simply close the transaction in a commercially reasonably manner as soon as was practical.").  The parties included a specific date after which assumption could not occur and upon which rejection and reversion occurred, and this date was a significant term.  No matter what else occurred, the Glacier Park Settlement provided that "Section 3(d) of this Agreement (the '<u>Surviving Section</u>') shall be fully effective and enforceable on the date on which each of the Parties shall have executed and delivered counterpart signature pages of this Agreement, and shall remain fully effective and enforceable regardless of whether the Bankruptcy court enters an order approving this Agreement."  Glacier Park Settlement § 8(a).

      **(b)**      **Because the Mineral Leases were Subject to a Condition Precedent that Failed, and were Automatically Rejected, They Could Not Be Assumed**

35.      Once the Mineral Leases were rejected under Section 3(d) of the Glacier Park Settlement they could not be assumed.  A debtor may not assume a contract that has been rejected without consent.  See, e.g., In re Victory Markets, Inc., 221 B.R. 298, 304 (B.A.P. 2d Cir. 1998) (refusing to allow a debtor to assume, and thus deeming rejected, a non-residential real property lease, after the debtor failed to satisfy the conditions precedent); 11 U.S.C. § 1123(b)(2) ("Subject to [1123(a)], a plan may . . . subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section.") (emphasis added).

36.      Mesabi argues that assumption occurred notwithstanding this principle because paragraph 3 of the Approval Order either controls or amends the Glacier Park Settlement.  Mesabi's attempt to elevate paragraph 3 of the Approval Order as the controlling provision or an amendment would require the Court to ignore the plain terms of the Glacier Park Settlement.

37.      The plain language of Section 8(a) of the Glacier Park Settlement is evidence that the Approval Order was intended only to approve the Debtors' obligations as laid out in the Glacier Park Settlement—not change them.  See Glacier Park Settlement § 8(a) ("The Debtors shall seek a Bankruptcy Court order approving their obligations under this Agreement under certification of counsel within 1 business day of full execution hereof by the Parties.").  Because the Approval Order was only later in time by operation of Section 8(a), timing alone does not make paragraph 3 of the Approval Order controlling.

38.      Mesabi's analogy that "confirmation orders are to plans as the Assumption Order is to the Glacier Park Settlement" is incorrect.  [Adv. D.I. 51 ¶ 28.]  In the case on which Mesabi attempts to rest this argument, Judge Walsh explained that a confirmation order controls over

contrary terms of a plan as a matter of law because "[a] plan of reorganization has no effect

without a court's confirmation."  See In re Forklift LP Corp., 363 B.R. 388, 396 (Bankr. D. Del.

2007).  But the Glacier Park Settlement Agreement, by its own terms, did have effect without the

Court's confirmation.  According to Section 8(a) of the Glacier Park Settlement:

> Section 3(d) of this Agreement (the "Surviving Section") shall be
> fully effective and enforceable on the date on which each of the
> Parties shall have executed and delivered counterpart signature
> pages of this Agreement, and shall remain fully effective and
> enforceable **regardless of whether the Bankruptcy Court enters
> an order** approving this Agreement.

Glacier Park Settlement § 8(a) (bold underline emphasis added).  Thus, the terms and conditions

of Section 3(d) are intended to survive, and not be affected by, a court order in any way.

39.    To read paragraph 3 of the Approval Order as controlling over paragraph 2, and

consequently also controlling over the terms and conditions in Section 3(d), would require the

Court to wholly disregard paragraph 2 and render it meaningless, an interpretation that the Court

should avoid.  Mulcahy v. Fenton Sub Parcel D, LLC, No. A10-23, 2010 WL 4181263, at *6

(Minn. Ct. App. Oct. 26, 2010) (contract constructions that render provisions, including

conditions precedent, meaningless should be avoided).  As this Court has noted, general contract

interpretation principles apply to interpretation of orders submitted by the parties, with the

ultimate goal being "to determine the rights, duties, and reasonable expectations of the parties, as

disclosed to and blessed by the Court."  In re Trico Marine Services, Inc., 450 B.R. 474, 482

(Bankr. D. Del. 2011) ("[t]he paramount goal of contract interpretation is to determine the intent

of the parties").  The record shows that the parties added paragraph 2 to ensure that the specific

terms and conditions of the Glacier Park Settlement would be approved.  [See D.I. 1161 ¶ 3

(stating the parties "have agreed upon the form of the revised proposed order (the '**Agreed

Order**'), authorizing assumption of the GPIOP Mineral Leases, as the GPIOP Mineral Leases are

amended pursuant to the Settlement Agreement" with the revision shown in Exhibit B attached as D.I. 1161-2); D.I. 1161-2 (adding paragraph 2 to the Agreed Order).]  This is consistent with the unambiguous language of the Approval Order.  In paragraph 2, the Court approved the specific terms and conditions required for assumption set forth in the Glacier Park Settlement, and this specific provision controls over the more general.  See Bank Midwest, 674 N.W.2d at 181 n.8 ("[M]ore specific language takes precedence over the more general language.")

40.     This construction of the Approval Order does not make paragraph 3 meaningless as Mesabi contends.  [Adv. D.I. 51 ¶ 34.]  If conditions approved in the preceding paragraph 2 were satisfied, then paragraph 3 would operate to effectuate the terms of the Glacier Park Settlement.  That is, had Mesabi met the condition precedent it specifically agreed to in Section 3 of the Glacier Park Settlement, it could have assumed the Mineral Leases and paragraph 3 of the Approval Order would have been needed for the Court to approve the assumption.  See 11 U.S.C. § 1123(b)(2).

**(c)     The Mineral Leases Reverted on November 1, 2017 Without The Need for Further Action, Which Operates As A Termination**

41.     Section 3(d) of the Glacier Park Settlement explicitly states that the Mineral Leases would revert to Glacier Park and Superior if the Effective Date did not occur by October 31, 2017.  Mesabi's motion for summary judgment repeatedly urges the Court to read this provision out of the clear terms of the Glacier Park Settlement by refusing to acknowledge the effect of the word "reversion" in Section 3(d).  The parties specifically contracted so rejection and reversion would be automatic if the Effective Date did not occur by October 31, 2017. To ignore the use of the word "reversion" would require the Court to violate the maxim that courts should avoid interpretations that would render a contract provision meaningless.  Qwinstar

Corp. v. Anthony, 882 F.3d 748, 755 (8th Cir. 2018), as amended (Feb. 26, 2018) (quoting

Chergosky v. Crosstown Bell, Inc., 463 N.W.2d 522, 526 (Minn. 1990)).

42.     The parties agreed that after automatic rejection and reversion, Glacier Park and

Superior "may take any action with respect to the Mineral Leases and the leased properties and

interests."  Glacier Park Settlement § 3(d) (emphasis added).  Mesabi nevertheless continues to

read reversion out of Section 3(d) and to insert a limit that is not included in the plain language

of Section 3(d).  Rejection did not mean, as Mesabi contends, that "GPIOP and Superior were

free to respond to such breach in accordance with the terms of the Mineral Leases."  [Adv. D.I.

51 at 3 (emphasis added).]  Automatic rejection and reversion meant exactly what the Glacier

Park Settlement states—that Glacier Park could "take any action" because it was no longer

bound by any terms of the Mineral Leases.

43.     Mesabi argues that reversion could not have been intended to be tantamount to

termination because the underlying Mineral Leases contained termination provisions that

required separate termination notices.  This argument ignores the plain language of Section 3.

Section 3 is entitled "Amendments to . . . Mineral Leases," and Section 3(a) specifically

characterizes the Glacier Park Settlement as an amendment to the Mineral Leases.  Section 3(d)

thus operated as an amendment to the general provisions for termination in the Mineral Leases.

Even further, Mesabi admits that later stipulations control, and the Glacier Park Settlement, as

approved by the Court on August 30, 2017, was later in time to the amended Mineral Leases

from January 2017.[5]  See 8 Dunnell Minn. Digest Contracts § 8.06 (2017) ("Where there is

---

[5]     Additionally, the Mineral Leases that Mesabi attached to its Motion do not include all of the amendments and forbearance agreements that the parties have agreed to, including those occurring as late as January 2017.  The Cliffs Defendants do not have access to all of these agreements, and to avoid duplication refer to the comprehensive versions of the Mineral Leases that it understands will be provided to the Court by Glacier Park.

inconsistency in the related documents constituting a contract, the later stipulations will control."); <u>Minneapolis v. Republic Creosoting Co.</u>, 201 N.W. 414, 418 (Minn. 1924).

44.     Mesabi's argument would make rejection and reversion illusory.  Under Mesabi's strained reading, as long as the Plan went effective within the cure period then rejection and reversion would mean nothing.  The October 31, 2017 date was a <u>final</u> date for the effectiveness of the Plan—if the Plan was not effective on or before that date, nothing further needed to happen to divest the Debtors of all rights under the Mineral Leases.  Section 3(e) cannot fix Mesabi's failure to satisfy the condition explicitly agreed to in Sections 3(b) & (d).  Reading it any other way renders the provisions in Sections 3(b) & (d) of the Glacier Park Settlement meaningless.  If Glacier Park had to send a notice of termination under Minnesota State law, certainly Mesabi would refuse to vacate the leased premises, and thus the whole point of the Glacier Park Settlement—the certainty of <u>automatic</u> rejection and reversion on the October 31, 2017 date—would be lost.[6]  Glacier Park knew that the property would be free to be transferred or re-let following that date, because the agreement specifically said that Glacier Park could take "any action."

45.     Mesabi's interpretation—that "reversion" in this context "refers to . . . the right to commence termination of the Mineral Leases" [Adv. D.I. 51 ¶ 48]—ignores the most obvious meaning of the term "reversion":  "[t]he interest that is left after subtracting what the transferor has parted with from what the transferor originally had; specif., a future interest in land arising by operation of law whenever an estate owner grants to another a particular estate such as a life

---

[6]     Mesabi cites Minnesota Statute § 559.21 in an attempt to impose a cure period not agreed to by the parties.  Section 559.21 applies to contracts for the sale of real estate—not leases, <u>see</u> <u>Cole v. Paulson</u>, 380 N.W.2d 215, 218 (Minn. Ct. App. 1986).  The parties specifically contracted so that rejection and reversion would be <u>automatic</u>.  The Court should disregard a Minnesota statute that does not even apply to leases, and follow the plain terms of the Glacier Park Settlement, even if the results are harsh.  <u>Bank Midwest</u>, 674 N.W.2d at 181 n.8.

estate or a term of years, but does not dispose of the entire interest." Black's Law Dictionary 1434 (9th ed. 2009). Minnesota courts have adopted this definition. See Polzin Inc. v. Aust, No. A11–1944, 2012 WL 2685114, at *4 (Minn. Ct. App. July 9, 2012).

46.    The use of the word "revert" in Section 3(d) meant that all of Mesabi's rights to the properties conveyed by the Mineral Leases returned to Glacier Park on the failure of the condition precedent. An interest can only revert if the grantor parted with it in the first place. Mesabi cannot return something to which it never had a right. Because Glacier Park never granted Mesabi a right to terminate the Mineral Leases—that right arose only by operation of the Bankruptcy Code—that right could never revert back to Glacier Park. When it entered into the Mineral Leases, Glacier Park granted Mesabi the right to extract certain minerals from the premises; and, upon the termination of that lease, the right to extract those minerals reverts back to Glacier Park.

47.    Contrary to Mesabi's assertion that "reversion" only relates to contract rights and not the underlying property interests, the term "reversion" is commonly used to refer to the conveyance back of an estate in land. See, e.g., Black's Law Dictionary 1434 (9th ed. 2009); Polzin, 2012 WL 2685114, at *4. In fact, the Minnesota Statutes repeatedly use the terms "revert" and "reversion" in connection with the conveyance of a real property interest.[7] See, e.g., Minn. Stat. §§ 84.65; 89.41; 92.72; 93.20(28)(3); 161.16; 163.11(5); 163.11(5a); 216G.09; 282.01(1)(c); 306.55; 365.27; 465.02; 500.09; 508.73; 508A.73; 609.908.

---

[7]    Mesabi also is wrong in its statement that Minn. Stat. §§ 93.001 et seq., governing state mineral lands and leases, contain "no reference to the terms 'revert' or 'reversion.'" [Adv. D.I. 51 ¶ 45.] Section 93.20(28)(3) reads as follows (emphasis added):

> Land conveyed to the state upon condition that it shall be used for the storage of iron ore or other materials having present or potential value belonging to the state, subject to termination or reversion of title when no longer needed or used for that purpose, shall be deemed suitable and available therefor.

48.     Mesabi's argument that the underlying property interests did not revert collapses under its own weight.  [Adv. D.I. 51 ¶ 46.]  The Glacier Park Settlement provided for reversion. Mesabi admits that reversion is a consequence of termination [Adv. D.I. 51 ¶ 44], yet attempts to argue that there was no termination.  Mesabi's interpretation would mean the use of the word revert in the Glacier Park Settlement has no effect.  That interpretation cannot stand under Minnesota law.  Qwinstar, 882 F.3d at 755 (noting that courts presume "that the parties intended the language used to have effect.").

49.     Based on the unambiguous terms of the Glacier Park Settlement, the Mineral Leases reverted on November 1, 2017.  Therefore, the property interests asserted by Mesabi in the Second Amended Complaint were non-existent at the time of the alleged wrongdoing by Cliffs, Cliffs Minnesota, and Glacier Park.  Mesabi has failed to meet its burden and is not entitled to summary judgment.

### 3.     Mesabi's Extra-Textual Arguments Fail to Get Around the Clear Terms of the Glacier Park Settlement

#### (a)     Forfeiture was Bargained For in Both the Glacier Park Settlement and the Mineral Leases

50.     In its latest attempts to avoid the plain language of the Glacier Park Settlement, Mesabi puts forth several unpersuasive arguments.  First, Mesabi attempts to use the general sentiment that "equity abhors a forfeiture," [Adv. D.I. 51 ¶ 60], to ignore that termination and reversion was specifically bargained for and written into the Glacier Park Settlement.  The parties specifically stipulated that Mesabi's rights to the Mineral Leases would revert, and thus be forfeited, if the Effective Date did not occur by October 31, 2017.  Forfeiture is defined as the "deprivation of some estate or right because of the failure to perform some contractual obligation or condition."  Black's Law Dictionary 722 (9th ed. 2009).  That is precisely what happened here.

01:23110826.1

The Debtors failed to perform the condition precedent in the Glacier Park Settlement, so they lost their rights to the Mineral Leases.

51.     "Where a contract clearly and expressly provides for forfeiture, the provision will be strictly construed." 1985 Robert St. Assoc. v. Menard, Inc., 403 N.W.2d 900, 901 (Minn. Ct. App. 1987) (holding there was no excusable delay and allowing for forfeiture because provisions in the lease clearly established the right to terminate the lease upon default of the lease covenants).  The Restatement, adopted by Minnesota courts, provides that if "the event [that is a condition] is within the obligee's control or the circumstances indicate that he has assumed the risk," then the condition should be enforced as written even though there is a risk of forfeiture. Restatement (Second) of Contracts § 227 (1981), cited in Mrozik Const., 461 N.W.2d at 51. This is because "[t]he policy favoring freedom of contract requires that, within broad limits (see § 229), the agreement of the parties should be honored even though forfeiture results." Id. § 227 cmt. b.  Courts should not "interfere[] with the contract rights of parties as evidenced by their writings which purport to express their full agreement.  Nor is it within the province of equity to rewrite or abrogate contracts to protect parties from consequences . . . ." Cady v. Bush, 166 N.W.2d 358, 362 (Minn. 1969).

52.     The Glacier Park Settlement expressly provided for a forfeiture by stipulating that the Mineral Leases would be automatically rejected and revert.  Glacier Park Settlement § 3(d). The Mineral Leases themselves also specifically contemplate forfeiture.  The operating agreements associated with each of the MSI 50% lease, the MSI-BLGN lease, and the MSI-100% lease all state that "if Lessee fails to keep, observe and perform any of the other covenants, agreements and conditions . . . Lessor shall have the right at its election . . . to declare . . . the

rights and privileges of Lessee hereunder and thereunder forfeited and terminated." See

Mesabi's Appendix [Adv. D.I. 52] at Ex. B-2 at A112; Ex. C-2 at A177; Ex. A-2 at A39.

53.    If a contract expressly provides for forfeiture, it will be strictly construed. See

Menard, 403 N.W.2d at 901. Mesabi admits this, [Adv. D.I. 51 ¶ 61], and each of the cases it

cites either concerns contract provisions and situations that have no application to the issues

here[8] or directly supports enforcing unambiguous contract language that provides for forfeiture,

like here.[9] The combination of the unambiguous language in Section 3(d) and the explicit

provisions providing for forfeiture of the Mineral Leases certainly qualifies as an express

manifestation that forfeiture is permitted.

54.    If that were not enough, the Bankruptcy Code also specifically provides for

forfeiture. Section 365(d)(4) states that,

> an unexpired lease of nonresidential real property under which the
> debtor is the lessee shall be deemed rejected, and the trustee shall
> **immediately surrender** that nonresidential real property to the

---

[8]    See Harris v. Bolin, 310 Minn. 391, 393, 247 N.W.2d 600, 602 (Minn. 1976) ("This court, however, has held that forfeitures [of employees' vested interests] under covenants against competition are not favored and those claiming them must show that the equities on their side.") (citing Naftalin v. John Wood Co., 263 Minn. 135, 116 N.W.2d 91 (Minn. 1962); Bennett v. Storz Broadcasting Co., 270 Minn. 525, 134 N.W.2d 892 (Minn. 1965)) (emphasis added); Naftalin v. John Wood Co., 263 Minn. 135, 147-48, 116 N.W.2d 91, 100 (Minn. 1962) (applying general principle against forfeiture to restrictive covenant in noncompetition agreement where purchaser requested forfeiture of all payments previously made as remedy for breach); In re Seven Hills, Inc., 403 B.R. 327, 335 (Bankr. D.N.J. 2009) ("The Court does not find that [the debtor] Seven Hills forfeited its right to renew the Lease [after giving timely notice to renew despite defaults], when § 365 permits Seven Hills to assume the Lease and cure pre- and post-petition defaults."); Cloverdale Foods of Minn., Inc. v. Pioneer Snacks, 580 N.W.2d 46, 48 (Minn. Ct. App. 1998) (noting court could consider equities to relieve tenant from provision that gave landlord "the option to declare the lease agreement forfeited and its term ended" on ten days' notice for failure to cure defaults on any lease conditions because the alleged defaults were not material breaches).

[9]    See Trollen v. City of Wabasha, 287 N.W.2d 645, 648 (Minn. 1979) (holding court could consider equities to excuse lessee from "mere neglect" in failure to comply with condition precedent in renewal provision that required six months' advance notice in writing where lessee gave lessor oral notice and lessor did not alert lessee to written notice requirement, among other equitable considerations "when the delay has been slight, the loss to the lessor small, and when not to grant relief would result in such hardship to the tenant as to make it unconscionable to enforce literally the condition precedent of the lease"); Hideaway, Inc. v. Gambit Investments Inc., 386 N.W.2d 822, 824 (Minn. Ct. App. 1986) ("[T]the forfeiture of a right of action through the operation of a condition subsequent, as in this case, will be enforced only where the right to such forfeiture is plain.").

> lessor, if the trustee does not assume or reject the unexpired lease
> by the earlier of--(i) the date that is 120 days after the date of the
> order for relief; or (ii) the date of the entry of an order confirming a
> plan.

11 USC § 365(d)(4) (bold underline emphasis added).  The Glacier Park Settlement refers to

Section 365 and thus specifically contemplates forfeiture of nonresidential real property leases.

See Glacier Park Settlement § 3(d) (providing for rejection "pursuant to Section 365 of the

Bankruptcy Code").

55.     Despite Mesabi's attempts to evade the clear terms of the Glacier Park Settlement

it signed, the parties are protected by the terms they bargained for.  The Court should not "create

or add exceptions to [an unambiguous] contract or [] remake it on behalf of either of the

contracting parties."  Anda Const. Co., 349 N.W.2d at 279.  Mesabi did not meet the

requirements to keep the Mineral Leases, and the Court should not rewrite the contract to excuse

the resulting forfeiture.  Mesabi argues that the forfeiture provided for here should not be

enforced because "the one seeking the forfeiture is adequately protected without the forfeiture."

[Adv. D.I. 51 ¶¶ 60, 74-77.]  But Glacier Park is not "adequately protected without the

forfeiture" because it did not get what it bargained for—finality on October 31, 2017.  Glacier

Park did not get any "windfall" at all.  Each of the actions done by Mesabi that it claims provided

a supposed "improvement" of Glacier Park's interests and position were done by Mesabi to

benefit its own position and rectify its own prior failures.  [Id. ¶ 74.]  In fact, Glacier Park's

position was not improved but merely restored to what it should have been had Mesabi not failed

and gone into bankruptcy.[10]  The parties expressly contracted for a forfeiture, and forfeiture is

appropriate here.

---

[10]     Mesabi also attempts to argue that finding for Glacier Park would provide Glacier Park with a windfall
because Mesabi had pre-paid more than $10 million in royalties to Glacier Park and its predecessors.  [Id.
¶¶ 74, 77, 98 n.22.] This is factually wrong, as the Cliffs Defendants understand will be described in more

56.     Further, the act that created the forfeiture—the Plan not going effective on October 31, 2017—was completely within Mesabi's control.  Mesabi is incorrect in its statements that "the Parties agreed to effectuate the Plan by October 31, 2017" and that "the [Glacier Park] Settlement Agreement does not evince an intent of the Parties that a failure to meet that covenant [condition] would result in complete forfeiture of the Mineral Leases and rights under the Restated Mineral Leases."  [Adv. D.I. 51 ¶ 62.]  That is precisely what the Glacier Park Settlement says.  Because Glacier Park had no part in whether or when the Plan went effective, it bargained for a specific date on which the property rights conveyed by the Mineral Leases would automatically <u>revert</u>.  Mesabi cannot escape the implications of the word revert, despite its attempts at persuading the Court to rely on the general sentiment that equity abhors forfeiture.  Forfeiture was bargained for—and the Court should allow it.

### (b)    Glacier Park Did Not Waive the Protections of § 365(d)(4) and the Mineral Leases Did Not "Ride Through" the Chapter 11 Cases

57.     Glacier Park did not waive the protections of Section 365(d)(4) of the Bankruptcy Code.  Glacier Park agreed to extend the Debtors' deadline to assume the Mineral Leases, and to tie that deadline to going effective, but the extension provided a date certain for both assumption and rejection.  This is a right that the Bankruptcy Code specifically gives the lessor.  <u>See</u> 11 USC § 365(d)(4)(B)(ii).  Section 365(d)(4)(B)(ii) of the Bankruptcy Code states that the deadline to assume or reject can be extended once, for cause, but every other extension may be granted only with the "prior written consent of the lessor."  Mesabi's interpretation would mean that providing this consent under Section 365(d)(4)(B) would be a waiver of the protections of Section 365(d)(4)(A).  This cannot be correct.

---

detail in Glacier Park's Answering Brief.

58.     Indeed, in the two cases Mesabi cites to support its waiver argument, the court did not conclude that wavier was appropriate.  In re George, 177 F.3d 885, 889 (9th Cir. 1999) (holding that "the City did not waive its rights to enforce the rejection" of the commercial lease); In re Phelan, No. 1:15–BK–04101, 2017 WL 713570, at *5 (Bankr. M.D. Pa. Feb. 21, 2017) (acknowledging "that a lessor can waive the automatic rejection of § 365(d)(4) through certain post rejection conduct" but declining to decide the issue).

59.     Moreover, Mesabi has failed to give the Court any reason to discount the protections of Section 365(d)(4).  Ride through does not operate in the context of non-residential real property leases, and Mesabi concedes this.  [Adv. D.I. 51 ¶ 84.]

60.     Mesabi's argument that Glacier Park waived its rights under Section 365(d)(4)(A) is lacking any support, and the Court should disregard it.

### (c)    Section 4 Does Not Grant the Reorganized Debtor The Right to Ignore Section 3

61.     Mesabi continues to ignore the terms of Section 3 of the Glacier Park Settlement in its myopic reliance on Section 4.  Section 4 of the Glacier Park Settlement does not purport to give the Reorganized Debtor greater rights that would allow it to avoid the conditions set forth in Section 3.  Section 4 states that the parties will negotiate, and the restated Mineral Leases will still be "subject to the modifications described herein."  Such modifications were the amendments made to the Mineral Leases in Section 3.  Mesabi relies on the phrase included in Section 4 that the restated Mineral Leases shall "preserve all rights and obligations under the Mineral Leases" but omits the second half of the sentence—"subject to the modifications described herein."  Glacier Park Settlement § 4(a).  If the Reorganized Debtors were able to regain "wholly independent rights" to the Mineral Leases upon the Effective Date, regardless of the Mineral Leases having been rejected and reverted by operation of the modifications in

Section 3, then Glacier Park would have received nothing in exchange for its concessions in the Glacier Park Settlement.

62.    Mesabi alleges that the Reorganized Debtors were granted "wholly independent rights" but points to no explicit language in the agreement that supports that.  The only "right" found within Section 4 is the right to negotiate.  This created only an agreement to negotiate, which is unenforceable under Minnesota law.  See, e.g., Lindgren v. Clearwater National Corp., 517 N.W.2d 574, 574 (Minn. 1994); C & S Acquisitions Corp. v. Northwest Aircraft, Inc., 153 F.3d 622, 626 (8th Cir. 1998).

63.    Mesabi argues against the unavoidable conclusion that Section 4 could not revive the rejected and reverted Mineral Leases by arguing that Chippewa would not have allowed that result, and therefore Section 4 must provide separate protections for the Reorganized Debtors that obligated Glacier Park to give Mesabi "all benefits under the Mineral Leases" whenever the Effective Date occurred.  [Adv. D.I. 51 ¶¶ 88–91, 96–98.]  Mesabi does not contest that its construction of Section 4 would require an agreement that binds Glacier Park in perpetuity. Instead, Mesabi attempts to insert facts not in the record to show that there was no intention for the obligations in Section 4 to go on into perpetuity.  Mesabi states that Section 4 would never reach into perpetuity because Chippewa would not fund the Plan into perpetuity, meaning there must be an end date in the near-term.  [Adv. D.I. 51 ¶ 98.]  This factual gloss attempts to eliminate the absurdity of the logical conclusion of Mesabi's arguments.  Without this additional, unsupported fact, Mesabi's construction of Section 4 would require an agreement in perpetuity, in addition to wholly ignoring the provisions in Section 3.  The Court should decline to consider this inadmissible extrinsic evidence, and rely on the clear terms within the four corners of the contract.  Trebelhorn, 905 N.W.2d at 243.

64.      Mesabi does get one point correct in its argument: "Section 3 is also not redundant to Section 4 because Section 4 could not operate after an effective termination pursuant to the terms of the Mineral Leases."  [Adv. D.I. 51 ¶ 97.]  Because reversion under Section 3(d) was an effective termination of the Mineral Leases—based on the plain meaning of the word "revert" as used in Section 3(d) and because Section 3 amended the Mineral Leases— Section 4 could not be invoked after November 1, 2017.

## VI.    <u>CONCLUSION</u>

65.      Based on the foregoing, the Cliffs Defendants respectfully request that this Court deny Mesabi's Motion for Partial Summary Judgment in its entirety.

01:23110826.1

Dated: April 16, 2018                    YOUNG CONAWAY STARGATT & TAYLOR, LLP

                                         */s/ M. Blake Cleary*
                                         M. Blake Cleary (No. 3614)
                                         Michael S. Neiburg (No. 5275)
                                         Rodney Square
                                         1000 North King Street
                                         Wilmington, DE 19801
                                         Telephone:  (302) 571-6600
                                         Facsimile:   (302) 571-1253
                                         Email: mbcleary@ycst.com
                                                 mneiburg@ycst.com

                                                 -and-

                                         JONES DAY
                                         Robert S. Faxon (admitted pro hac vice)
                                         Thomas Wearsch (admitted pro hac vice)
                                         Kristin S.M. Morrison  (admitted pro hac vice)
                                         North Point
                                         901 Lakeside Avenue
                                         Cleveland, OH  44114.1190
                                         Telephone:  +1.216.586.3939
                                         Facsimile:  +1.216.579.0212
                                         E-mail:  rfaxon@jonesday.com
                                                 twearsch@jonesday.com
                                                 kmorrison@jonesday.com

                                         *Attorneys for Cleveland-Cliffs Inc. and*
                                         *Cleveland-Cliffs Minnesota Land Development LLC*

01:23110826.1