# IN UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* <br><br> **ESSAR STEEL MINNESOTA LLC and ESML HOLDINGS INC.,**[1] <br><br> Reorganized Debtors. | Chapter 11 <br><br> Case No. 16-11626 (BLS) <br><br> (Jointly Administered) |
| **MESABI METALLICS COMPANY LLC (F/K/A ESSAR STEEL MINNESOTA LLC),** <br><br> Plaintiff, <br><br> v. <br><br> **CLEVELAND-CLIFFS INC. (F/K/A CLIFFS NATURAL RESOURCES INC.); CLEVELAND-CLIFFS MINNESOTA LAND DEVELOPMENT LLC; GLACIER PARK IRON ORE PROPERTIES LLC; and DOES 1-10,** <br><br> Defendants. | Adv. Proc. No. 17-51210 (BLS) <br><br> Related to Adv. Docket Nos. 18, 46, 47, 48, and 73 <br><br> **REPLY BRIEF IN SUPPORT OF DEFENDANTS CLEVELAND-CLIFFS INC.'S AND CLEVELAND-CLIFFS MINNESOTA LAND DEVELOPMENT LLC'S JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF MESABI METALLICS COMPANY LLC'S SECOND AMENDED COMPLAINT** |
| **CLEVELAND-CLIFFS INC. (F/K/A CLIFFS NATURAL RESOURCES INC.); and CLEVELAND-CLIFFS MINNESOTA LAND DEVELOPMENT LLC,** <br><br> Counterclaim-Plaintiffs, <br><br> v. <br><br> **MESABI METALLICS COMPANY LLC (F/K/A ESSAR STEEL MINNESOTA LLC); CHIPPEWA CAPITAL PARTNERS, LLC; and THOMAS M. CLARKE,** <br><br> Counterclaim-Defendants. | |

---

[1]    Essar Steel Minnesota LLC has changed its name to Mesabi Metallics Company LLC.

01:23164391.1

M. Blake Cleary (No. 3614)
Michael S. Neiburg (No. 5275)
YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone:  (302) 571-6600
Facsimile:   (302) 571-1253
Email:    mbcleary@ycst.com
              mneiburg@ycst.com

       -and-

Robert S. Faxon  (admitted pro hac vice)
Thomas Wearsch  (admitted pro hac vice)
Kristin S.M. Morrison  (admitted pro hac vice)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114.1190
Telephone:  +1.216.586.3939
Facsimile:  +1.216.579.0212
E-mail: rfaxon@jonesday.com
              twearsch@jonesday.com
              kmorrison@jonesday.com

*Attorneys for Cleveland-Cliffs Inc. and*
*Cleveland-Cliffs Minnesota Land Development LLC*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.     PRELIMINARY STATEMENT .................................................................................1

II.    ARGUMENT................................................................................................................2

         A.     The Mineral Leases Were Automatically Rejected And Reverted, And Could Not Be Assumed, Upon Failure To Meet The Condition Precedent.................................................................................................................3

         B.     Mesabi Fails To Show That Extra-Textual Legal Principles Override The Plain Terms Of The Glacier Park Settlement .....................................................6

III.   CONCLUSION...........................................................................................................10

# TABLE OF AUTHORITIES

Page

**CASES**

Anda Const. Co. v. First Fed. Sav. & Loan Ass'n, Duluth,
    349 N.W.2d 275 (Minn. Ct. App. 1984) ........................................................................ 8

Bank Midwest, Minnesota, Iowa, N.A. v. Lipetzky,
    674 N.W.2d 176 (Minn. 2004) ..................................................................................... 3

Capistrant v. Lifetouch Nat'l Sch. Studios, Inc.,
    899 N.W.2d 844 (Minn. Ct. App. 2017) ............................................................... 3, 7, 8

Castaways Marina, Inc. v. Dedrickson,
    No. C1-02-1425, 2003 WL 1961861 (Minn. Ct. App. Apr. 29, 2003) ........................ 9

Chanhassen Lawn & Sport, Inc. v. Mkt. Square Assoc. L.P.,
    No. A08–1624, 2009 WL 1920500 (Minn. Ct. App. July 7, 2009) ............................ 9

Crossroads Church of Prior Lake MN v. County of Dakota,
    800 N.W.2d 608 (Minn. 2011) ..................................................................................... 3

enXco Dev. Corp. v. N. States Power Co.,
    No. 11-1171, 2013 WL 1364242 (D. Minn. Apr. 4, 2013),
    aff'd, 758 F.3d 940 (8th Cir. 2014) .......................................................................... 3, 6

In re Overseas Shipholding Group, Inc.,
    No. 12–20000, 2015 WL 3475727 (Bankr. D. Del. June 1, 2015) ............................. 4

In re Shelco, Inc.,
    107 B.R. 483 (Bankr. D. Del. 1989) ............................................................................ 9

McManus v. Duluth, C. & N.R. Co.,
    51 Minn. 30, 52 N.W. 980 (1892) ................................................................................ 3

Trebelhorn v. Agrawal,
    905 N.W.2d 237 (Minn. Ct. App. 2017) ...................................................................... 8

**RULES**

Fed. R. Bankr. P. 7012 ........................................................................................................ 10

D. Delaware Local Rule 7012-1 ...........................................................................................10

**STATUTES**

Minn. Stat. § 504B.291, subdivision 2................................................................................8, 9, 10

**OTHER AUTHORITIES**

Restatement (Second) of Contracts § 224 (1981) .............................................................................6

Richard A. Lord, Williston on Contracts § 38:7 (4th ed. 1990) ........................................................6

# I.   PRELIMINARY STATEMENT[2]

1. The Court should grant the Cliffs Defendants' Motion for Partial Summary Judgment because the unambiguous terms of the Glacier Park Settlement and the Approval Order show that the property interests that Mesabi purports to have in the Mineral Leases do not exist.  The Glacier Park Settlement provided a clear condition precedent:  the Effective Date must occur on or before October 31, 2017.  If it did not, the Glacier Park Settlement was equally clear about what would happen thereafter:  the Mineral Leases could not be assumed and would "be <u>automatically</u> rejected" and "revert" to Glacier Park, who could then "take any action" with respect to the Mineral Leases.  The only logical interpretation of the word "revert" is that all of Mesabi's rights under the Mineral Leases reverted to Glacier Park and could not be revived by Mesabi thereafter, either before or after the Effective Date.  The Approval Order did not alter, change, or amend this result.

2. There is only one question at issue here: what intent is manifested in the plain terms of the unambiguous Glacier Park Settlement and the Approval Order.  Mesabi attempts to redefine "revert" as merely the right to commence termination and "take any action" to mean take additional steps to end the leases.  None of these arguments overcome the intent reflected in the clear and unambiguous language in the Glacier Park Settlement and the Approval Order.

3. The parties already have presented over 185 pages to the Court debating the terms of an unambiguous contract and order.  Indeed, large portions of Mesabi's Opposition to the Cliffs Defendants' Motion [Adv. D.I. 73] comprise arguments copied-and-pasted from Mesabi's Opening Brief [Adv. D.I. 51], with little to no changes in form or substance.[3]  The Cliffs

---

[2] Each capitalized term used but not otherwise defined herein shall having the meaning ascribed to such term in the Cliffs Defendants' Opening Brief [Adv. D.I. 47].

[3] <u>Compare</u> Adv. D.I. 73 ¶¶ 28–30, 35 <u>with</u> Adv. D.I. 51 ¶¶ 40, 45, 49 n.16, 50, <u>and</u> Adv. D.I. 73 ¶¶ 40–48, 49 <u>with</u> Adv. D.I. 51 ¶¶ 26–34, 82, <u>and</u> Adv. D.I. 73 ¶¶ 66, 69, 72 <u>with</u> Adv. D.I. 51 ¶¶ 54, 56, <u>and</u>

01:23164391.1

1

Defendants in this Reply attempt to avoid repeating arguments. A chart summarizing the arguments already raised and addressed is attached hereto as Exhibit 1, and the Cliffs Defendants' arguments are focused on those points germane to the issue not previously addressed.

4.    Mesabi has not, and cannot, show that it can satisfy its burden to establish the property interests and rights that it relies upon for the majority of its Claims For Relief against the Cliffs Defendants. The unambiguous terms of the Glacier Park Settlement and the Approval Order show that Mesabi does not hold the property interests and rights at issue. The Court should enter summary judgment in favor of the Cliffs Defendants on the First, Second, Third, Fourth, Fifth, Sixth, Thirteenth, Fourteenth, Fifteenth, Sixteenth, Seventeenth, Twentieth, Twenty-First, Twenty-Second, Twenty-Third, and Twenty-Fourth Claims For Relief to the extent that each of these causes of action rely upon the purported property interests and rights.[4]

## II.    ARGUMENT

5.    The only issue for the Court to decide is whether Mesabi can assert any property interests and rights after October 31, 2017, based on the plain meaning of the unambiguous language in the Glacier Park Settlement and the Approval Order. See The Cliffs Defs.' Opening Br. ¶ 44 [Adv. D.I. 47]. It cannot. The fact that Mesabi has offered a different interpretation does not preclude summary judgment in favor of the Cliffs Defendants. "[T]he mere fact [of disagreement] on the interpretation of contract language is not determinative that the contract

---

[4]    Adv. D.I. 73 ¶ 73 with Adv. D.I. 51 ¶ 61, and Adv. D.I. 73 ¶¶ 76–82 with Adv. D.I. 51 ¶¶ 78, 80, 82–86, and Adv. D.I. 73 ¶¶ 83–89, 91–94 with Adv. D.I. 51 ¶¶ 87–94, 96–97, 100–101, and Adv. D.I. 73 ¶ 95 with Adv. D.I. 51 ¶ 72.
Each of these causes of action will be resolved, in whole or in part, by the Court's determination of the correct interpretation of the Glacier Park Settlement and the Approval Order, which the Cliffs Defendants submit will establish Mesabi's lack of property interests and rights under the Mineral Leases. Mesabi therefore cannot establish key elements of each of these causes of action, and it is irrelevant whether each of these causes of action is asserted against all defendants.

01:23164391.1

2

language is ambiguous." Bank Midwest, Minnesota, Iowa, N.A. v. Lipetzky, 674 N.W.2d 176, 179 (Minn. 2004).

### A. The Mineral Leases Were Automatically Rejected And Reverted, And Could Not Be Assumed, Upon Failure To Meet The Condition Precedent.

6. A contract's language must be given its plain and ordinary meaning, even if enforcing the provisions as written could be considered "harsh." Bank Midwest, 674 N.W.2d at 179. The requirement that the Effective Date must occur on or before October 31, 2017 was a condition precedent to the Debtors, or the Reorganized Debtors, retaining any rights under both Section 3(b) and Section 3(d). See The Cliffs Defs.' Opening Br. ¶ 50 [Adv. D.I. 47]. When this condition failed, the remainder of the Glacier Park Settlement became inoperative. enXco Dev. Corp. v. N. States Power Co., No. 11-1171, 2013 WL 1364242, at *5 (D. Minn. Apr. 4, 2013) (holding that failure to fulfill a condition precedent before a specific date excuses all remaining obligations of the other party).[5] Neither the Approval Order, nor any other arguments Mesabi advances in its multiple briefs, could revive the Mineral Leases thereafter. [See Exhibit 1.]

7. The plain language of Section 3(d) of the Glacier Park Settlement states that "in the event the Effective Date of the Plan does not occur by October 31, 2017" the "Mineral Leases will be <u>automatically rejected</u> pursuant to Section 365 of the Bankruptcy Code <u>and revert</u>." Glacier Park Settlement § 3(d) (emphases added). Mesabi asserts that automatic rejection and reversion gave Glacier Park "the power to force the Debtors to make their Plan go effective within thirty days of notice after October 31, 2017." [Adv. D.I. 73 ¶ 35.] The exact language of

---

[5]  See also Crossroads Church of Prior Lake MN v. County of Dakota, 800 N.W.2d 608, 615 (Minn. 2011) (holding that failure of party to fulfill conditions precedent before the specified date prevented enforcement of the contract); McManus v. Duluth, C. & N.R. Co., 51 Minn. 30, 52 N.W. 980, 981 (1892) (holding that by the clear "terms of the law and of the contract, the completion of the road by the time specified was a condition precedent, and that by reason of its failure to comply therewith the [party lost its rights to the benefits of the contract]"). Mesabi's rebuttal to enXco's holding is to rely on Capistrant v. Lifetouch Nat'l Sch. Studios, Inc., 899 N.W.2d 844, 856 (Minn. Ct. App. 2017). [Adv. D.I. 73 ¶ 55.] As will be explained more fully below, Mesabi's reliance on Capistrant is misplaced.

01:23164391.1

3

the condition, however, was that the Plan go effective <u>by</u> October 31, 2017—not within 30 days <u>after</u> Glacier Park took some <u>additional</u> action not stated in the Glacier Park Settlement. Mesabi mischaracterizes the October 31, 2017 date as "an artificial deadline with little meaning," or a "secondary condition of negligible importance," in an attempt to deemphasize the importance of this date certain. [Adv. D.I. 73 ¶¶ 64, 66.] The plain meaning of the clear terms in Section 3(d), however, is that the parties intended to create a strict condition that gave rise to specific rights if it was not met. When Mesabi failed to meet the condition precedent by the date stated, and did not get an extension, Glacier Park received all of its property interests and rights back as of that date. This result is not harsh or inequitable; it is the clear intention of the parties' use of the terms "automatically rejected" and "revert," which must be given their plain and ordinary meaning.

8.    Mesabi's arguments are also inconsistent. Mesabi admits that "reversion is what happens to real property interests when leases terminate," [Adv. D.I. 73 ¶ 29], but still attempts to argue that the Mineral Leases did not terminate. Mesabi repeatedly relies on a cherry-picked quote from one case that states if the parties "had intended a termination . . . they would have used that language." [Adv. D.I. 51 ¶¶ 40, 46; Adv. D.I. 73 ¶¶ 28, 37 (citing <u>In re Overseas Shipholding Group, Inc.</u>, No. 12–20000, 2015 WL 3475727, at *3 (Bankr. D. Del. June 1, 2015)).] That case is inapplicable, as the lease at issue therein did not use the word "revert." The obvious import of the use of "revert" is that the parties intended that the Mineral Leases would terminate upon the failure of the condition precedent. <u>See</u> The Cliffs Defs.' Answering Br. ¶¶ 45–48 [Adv. D.I. 72]. The law simply does not support Mesabi's interpretation of the word "revert," or its attempts to read the term out of the contract. <u>See</u> <u>id.</u>

01:23164391.1

4

9. Contrary to Mesabi's arguments, the second sentence in Section 3(d) retains meaning under the Cliffs Defendants' interpretation. Glacier Park still needed relief from the automatic stay in order to re-let the Mineral Leases that were previously subject to the bankruptcy action. Mesabi repeatedly insists that Glacier Park needed to take some additional action following automatic rejection and reversion, but this argument ignores the most obvious meaning of the phrase "take <u>any</u> action." Glacier Park Settlement § 3(d) (emphasis added). Mesabi argues that if revert meant terminate, the second sentence would be meaningless "because the Mineral Leases would be gone and there would be no further action" for the lessors to take. [Adv. D.I. 73 ¶ 33.] This is not true. The Mineral Leases were not gone, they reverted to Glacier Park. The second sentence of Section 3(d) meant exactly what it states, that Glacier Park could "take any action"—including re-letting the Mineral Leases and/or selling its property interests to the Cliffs Defendants.

10. Section 3(b) provides that the Mineral Leases shall be assumed only upon "the occurrence of the Effective Date of the Plan on or before October 31, 2017." Glacier Park Settlement § 3(b)(i). This date certain created a strict condition precedent that must be met prior to assumption. In an attempt to support its argument that the Mineral Leases were assumed notwithstanding Section 3(b), Mesabi asserts that "Section 8(a) provides that <u>all obligations</u> under the [Glacier Park] Settlement [] could be fully enforced only upon this Court's approval." [Adv. D.I. 73 ¶ 42.] This is incorrect. The actual language of Section 8(a) provides only that "<u>the Debtors' obligations</u>" are subject to Court approval, not "<u>all obligations</u>." Glacier Park Settlement § 8(a) (emphases added). Additionally, Section 8(a) specifically states that Section 3(d) is "fully effective" with or without a Court order. Mesabi ignores these points in an attempt to elevate the status of the Approval Order over the more specific terms set out in the Glacier

Park Settlement. As the Cliffs Defendants have already shown, the Approval Order neither controls nor amends the Glacier Park Settlement, and the Court should decline to hold otherwise. See The Cliffs Defs.' Answering Br. ¶¶ 36–40 [Adv. D.I. 72].

11. Mesabi also is incorrect that Section 3(e) or any other provision could excuse Mesabi's failure to meet the condition precedent in Sections 3(b) and 3(d). [Adv. D.I. 73 ¶¶ 37, 37 n.11, 67–68.] The failure of a condition precedent is effective to relieve the obligor of any continuing obligations under the remainder of the contract. enXco Dev. Corp., 2013 WL 1364242, at *6 (citing Richard A. Lord, Williston on Contracts § 38:7 (4th ed. 1990); Restatement (Second) of Contracts § 224 (1981)). This failure thus affects the entire contract without having to be repeated in every possible provision. See id. (holding that "one party's failure to fulfill a condition precedent entirely excuses any remaining obligations of the other party.") (emphasis added).

### B. Mesabi Fails To Show That Extra-Textual Legal Principles Override The Plain Terms Of The Glacier Park Settlement

12. Mesabi's remaining arguments rely on inapplicable legal principles that do not overcome the unambiguous contract terms.

13. Mesabi argues that "equity abhors forfeiture," but concedes that this only applies when the parties did not bargain for the result. [Adv. D.I. 73 ¶¶ 52–56.] The general sentiment is inapplicable here, because the parties specifically bargained that the Mineral Leases would "revert" if the Effective Date did not occur on or before October 31, 2017. See The Cliffs Defs.' Answering Br. ¶¶ 50–56 [Adv. D.I. 72]. Thus, if this is a "forfeiture," it is one for which the parties bargained.

14. Mesabi implores the Court to forgive its failure to meet the condition precedent in order to avoid a forfeiture. To support this plea, Mesabi invites the Court to rely on Mesabi's

carefully chosen set of cases that support the general principle, but which are wholly inapposite to the matter at hand. In particular, Mesabi places the lion's share of its argument on <u>Capistrant v. Lifetouch National School Studios, Inc.</u>, 899 N.W.2d 844 (Minn. Ct. App. 2017). [Adv. D.I. 73 ¶¶ 55, 56, 58, 70, 74, 75.] This reliance is misplaced.

15. First, <u>Capistrant</u> concerns whether forfeiture of deferred compensation can be allowed as a remedy for breach of a restrictive covenant in an employment agreement. The agreement permitted the employer to terminate its remaining obligations where the employee's performance of all obligations was a condition precedent to receiving payments. Second, the wording of the forfeiture clause in <u>Capistrant</u> stated that "[i]f at any time [the employee] breaches the provisions of Paragraph 11 of the Agreement, in addition to Lifetouch's other remedies, Lifetouch <u>shall be entitled to terminate</u> Lifetouch's obligation to make any payments of Residual Commission that have not yet been paid." <u>Capistrant</u>, 899 N.W.2d at 850 (emphasis added). Lifetouch sought to enforce this clause to avoid paying a retired employee potentially $2.6 million because the employee failed to "immediately deliver to Lifetouch all of Lifetouch's property" on the last day of his employment. <u>Id.</u> at 849.

16. The <u>Capistrant</u> court held, based on the structure of a contract that required continual performance of several enumerated obligations without breach for a period of 6 years, that the failure to comply "immediately" with a one-time obligation in a "hanging provision" did not trigger the forfeiture clause. Because of this, the court reasoned that there was not "clear and unmistakable proof of the parties' intent with respect to forfeiture." <u>Id.</u> at 854–57. The court also found that the forfeiture would be disproportionate because Lifetouch's confidential information would remain protected by several other provisions even if the court excused the non-occurrence of the condition precedent within the timeframe stated. <u>Id.</u>

17. Here, the Glacier Park Settlement language did not state that Glacier Park was "entitled to terminate" the Mineral Leases for "breaches." It stated that if the express condition precedent failed, assumption could not become enforceable and effective and provided for <u>automatic</u> rejection and reversion. Glacier Park Settlement §§ 3(b), 3(d).[6] This express condition precedent is tied directly to the required performance and rights that would be lost. <u>Capistrant</u> involved wholly distinguishable contract language and situations, and is inapplicable here. <u>See also</u> The Cliffs Defs.' Answering Br. ¶ 53 nn.8 & 9 (addressing Mesabi's additional forfeiture cases) [Adv. D.I. 72].

18. Mesabi's remaining arguments amount to pleading with the Court to rewrite the Glacier Park Settlement by relying on its equitable powers to avoid forfeiture. [<u>See, e.g.</u>, Adv. D.I. 73 ¶¶ 60–65 (explaining why the Mineral Leases are important).] Mesabi has no support for its interpretation as a matter of law, and the Court should decline to rewrite the provisions agreed to by sophisticated parties. <u>Anda Const. Co. v. First Fed. Sav. & Loan Ass'n, Duluth</u>, 349 N.W.2d 275, 279 (Minn. Ct. App. 1984).

19. Mesabi also cannot rely on an inapplicable Minnesota statute to insert a cure period not found anywhere in the language of the Glacier Park Settlement. Mesabi argues that its "rights in the Mineral Leases are fully protected" because Minnesota law allows redemption of the Mineral Leases prior to any eviction pursuant to Minnesota Statute section 504B.291, subdivision 2. [Adv. D.I. 73 ¶¶ 95–97.] Minnesota courts have held that "the protections of 30

---

[6] Mesabi's reliance on <u>Capistrant</u> is further belied by the fact that the court in <u>Capistrant</u> specifically reasoned that forfeiture should be avoided because the company was "adequately protected by other provisions in the [] agreement." <u>Capistrant</u>, 899 N.W.2d at 857. As the Cliffs Defendants already explained in their Answering Brief, Glacier Park is not similarly protected. [Adv. D.I. 72 ¶ 55.] Mesabi argues that Glacier Park was "adequately protected under the Settlement Agreement against risks stemming from the short delay in going effective." [Adv. D.I. 73 ¶¶ 59, 64–65.] But Mesabi both fails to explain how Glacier Park supposedly was adequately protected and relies on extrinsic evidence that the delay was going to be short, an inadmissible fact not in evidence. The Court should decline to consider this inadmissible extrinsic fact. <u>Trebelhorn v. Agrawal</u>, 905 N.W.2d 237, 243 (Minn. Ct. App. 2017) ("Extrinsic evidence beyond the four corners of a contract is inadmissible to explain the meaning of a contract that is unambiguous.").

01:23164391.1

days' notice and an opportunity to cure [in section 504B.291, subdivision 2] apply only if an eviction action is brought under section 504B.291, subdivision 1," which is "only when an eviction action for nonpayment of rent is brought." Chanhassen Lawn & Sport, Inc. v. Mkt. Square Assoc. L.P., No. A08–1624, 2009 WL 1920500, at *5 (Minn. Ct. App. July 7, 2009). Where a party seeks to enforce lease provisions that allow for termination and end the lessee's rights to continue to occupy the premises, a court cannot "essentially amend[] the terms of the lease" by applying section 504B.291. Id. at *5-6 (reversing the district court's decision to apply section 504B.291 rather than enforce the lease terms allowing for termination and rejecting the argument that enforcement "constitutes a de facto eviction, since it would, in effect, terminate [Chanhassen Lawn's] rights to occupy the premises").

20.     There was no such eviction action brought here, and the statute neither applies nor allows the Court to amend the clear terms of the Glacier Park Settlement. The parties wrote a contract that specifically provided that the Mineral Leases would revert without a need for a separate eviction proceeding. Even if Glacier Park had to start statutory eviction proceedings—which it did not—the statute would not apply because the eviction would be for violation of the condition precedent in the Glacier Park Settlement, not for nonpayment of rent.[7] See, e.g., id. ("Because the terms of the lease give the landlord specific remedies in the case of tenant's default, because Market Square exercised its remedy, and because the lease does not provide Chanhassen Lawn the opportunity to cure its default, we conclude that Market Square's motion to terminate the lease should have been granted."); Castaways Marina, Inc. v. Dedrickson, No. C1-02-1425, 2003 WL 1961861, at *3, *4 (Minn. Ct. App. Apr. 29, 2003) (reviewing eviction of

---

[7]    Mesabi's cite to In re Shelco, Inc., 107 B.R. 483, 483 (Bankr. D. Del. 1989) [Adv. D.I. 73 ¶ 96], a case for termination following nonpayment of rent, similarly fails. Mesabi continues to try to apply cases with situations that have no application to the issues at hand. See also The Cliffs Defs.' Answering Br. ¶ 53 n.8 [Adv. D.I. 72].

01:23164391.1

tenant from boat slip under 99 year lease and holding § 504B.291 does not apply where the eviction is brought for a material violation of the lease).  The Court should decline to amend the clear terms of the Glacier Park Settlement to provide a cure period not agreed to by the parties.

### III.    CONCLUSION

21.    For all the above reasons, and the reasons previously laid out in the Cliffs Defendants' prior briefs [Adv. D.I. 47, 72], the Court should grant the Cliffs Defendants' Motion.

22.    After further review and assessment, the Cliffs Defendants agree that this narrow issue—the status of Mesabi's purported property interests and rights in the Mineral Leases under the terms of the Glacier Park Settlement and the Approval Order—is a core matter.  The Cliffs Defendants maintain their non-consent to entry of final orders or judgments of the Bankruptcy Court in connection with all other matters in this Adversary Proceeding pursuant to Bankruptcy Rule 7012 and Local Rule 7012-1.

*[Signature page follows]*

| | |
|---|---|
| Dated: May 2, 2018 | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
| | |
| | /s/ *Michael S. Neiburg* |
| | M. Blake Cleary (No. 3614) |
| | Michael S. Neiburg (No. 5275) |
| | Rodney Square |
| | 1000 North King Street |
| | Wilmington, DE 19801 |
| | Telephone: (302) 571-6600 |
| | Facsimile: (302) 571-1253 |
| | Email: mbcleary@ycst.com |
| | mneiburg@ycst.com |
| | |
| | -and- |
| | |
| | JONES DAY |
| | Robert S. Faxon (admitted pro hac vice) |
| | Thomas Wearsch (admitted pro hac vice) |
| | Kristin S.M. Morrison (admitted pro hac vice) |
| | North Point |
| | 901 Lakeside Avenue |
| | Cleveland, OH 44114.1190 |
| | Telephone: +1.216.586.3939 |
| | Facsimile: +1.216.579.0212 |
| | E-mail: rfaxon@jonesday.com |
| | twearsch@jonesday.com |
| | kmorrison@jonesday.com |
| | |
| | *Attorneys for Cleveland-Cliffs Inc. and* |
| | *Cleveland-Cliffs Minnesota Land Development LLC* |