# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>ESSAR STEEL MINNESOTA LLC and<br>ESML HOLDINGS INC.<br><br>Debtors. | Chapter 11<br>Case No. 16-11626 (BLS)<br>Jointly Administered |
| MESABI METALLICS COMPANY LLC,<br><br>    Plaintiff,<br><br>v.<br><br>CLEVELAND-CLIFFS INC. (F/K/A CLIFFS NATURAL RESOURCES INC.); CLEVELAND-CLIFFS MINNESOTA LAND DEVELOPMENT LLC; GLACIER PARK IRON ORE PROPERTIES LLC, and DOES 1-10<br><br>    Defendants. | Adv. Proc. No. 17-51210 (BLS)<br><br>**Re: Docket No. 60** |
| CLEVELAND-CLIFFS INC. (F/K/A CLIFFS NATURAL RESOURCES INC.); CLEVELAND-CLIFFS MINNESOTA LAND DEVELOPMENT LLC; and GLACIER PARK IRON ORE PROPERTIES LLC,<br><br>    Counterclaim-Plaintiffs,<br><br>v.<br><br>MESABI METALLICS COMPANY LLC,<br><br>    Counterclaim-Defendant. | |

CLEVELAND-CLIFFS INC. (F/K/A CLIFFS
NATURAL RESOURCES INC.);
CLEVELAND-CLIFFS MINNESOTA
LAND DEVELOPMENT LLC,

    Third-Party Plaintiffs

v.

CHIPPEWA CAPITAL PARTNERS, LLC;
and THOMAS M. CLARKE,

    Third-Party Defendants.

Justin R. Alberto, Esq.
BAYARD, P.A.
600 North King Street Suite 400
Wilmington, DE 19801

Craig Averch, Esq.
WHITE & CASE LLP
555 South Flower Street, Suite 2700
Los Angeles, CA 90071-2433

*Attorneys for Mesabi Metallics Company LLC, Chippewa Capital Partners, LLC, and Thomas M. Clarke*

William P. Bowden, Esq.
ASHBY & GEDDES, P.A.
500 Delaware Avenue, 8th Floor
Wilmington, DE 19899-1150

Dennis M. Ryan, Esq.
FAEGRE BAKER DANIELS LLP
90 South Seventh Street
Minneapolis, MN 55402-3901

*Attorneys for Glacier Park Iron Ore Properties, LLC*

## **OPINION**

Before the Court is a Motion to Dismiss filed by the reorganized debtor Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) (hereinafter "Mesabi"). Glacier Park Iron Ore Properties, LLC ("GPIOP") is a Defendant in this adversary and has filed Counterclaims against Mesabi for tortious interference and breach of contract. Mesabi herein seeks dismissal of each of GPIOP's Counterclaims on the ground GPIOP has failed to state a claim upon which relief can be granted.

2

For the reasons stated below, the Motion to Dismiss is GRANTED in part and DENIED in part.

I. Background[1]

Plaintiff Mesabi Metallics Company LLC is an iron ore mining and processing company with an operation in the Mesabi Iron Range in Minnesota. In 2006, Mesabi's predecessor entered into a series of mineral leases with the Great Northern Trust, the then-owner of land in the Mesabi Range ("Mineral Leases"). The Mineral Leases provided in relevant part that Mesabi, as lessee, would pay royalties based on the amount of ore it extracted from the premises. They also established a production minimum that gave the Great Northern Trust the right to terminate the Mineral Leases if Mesabi failed to mine the threshold amount of ore ("Production Threshold").

The Mineral Leases remained in effect through 2016, when GPIOP became the lessor under the Mineral Leases and a co-owner of the land with Superior Mineral Resources LLC ("Superior"). By that time, Mesabi's predecessors ESML and ESML Holdings, Inc. (collectively, the "Debtors") had filed petitions for relief under Chapter 11.

Following a dispute over whether Mesabi could assume the Mineral Leases, GPIOP, Mesabi, Superior, and Chippewa Capital Partners, LLC entered into a Settlement Agreement. [Docket No. 1168-1]. Significantly, the Settlement

---

[1] *See generally In re Essar Steel Minnesota LLC*, 590 B.R. 109 (Bankr. D. Del. 2018) [Docket No. 1541] (holding the Mineral Leases could not be assumed under the Settlement Agreement and providing background information relevant to this dispute).

Agreement provided Mesabi's assumption of the Mineral Leases was contingent on its Plan going effective no later than October 31, 2017 ("Assumption Deadline"). *See In re Essar Steel Minnesota LLC*, 590 B.R. 109 (Bankr. D. Del. 2018).

Mesabi failed to meet the Assumption Deadline. Believing that the Mineral Leases had been rejected, GPIOP soon thereafter conveyed mineral and surface rights (the "Land Agreement") that had been subject to the Mineral Leases to Cleveland-Cliffs Minnesota Land Development LLC ("Cliffs"). In addition, GPIOP filed a proof of claim against Mesabi. The claim encompassed $24,916,666.67 for rejection damages, an unliquidated and contingent claim arising from Debtors' obligation to indemnify GPIOP under the Mineral Leases, and "all other amounts which may be due under the GPIOP Mineral Leases." [Proof of Claim 224]. Cleveland-Cliffs, Inc. then filed a Transfer of Claim that substituted itself as the holder of the claim. [Docket No. 1371] ("Claim Transfer"). The Claim Transfer, to which GPIOP did not object, specifically identified the rejection damages claim, but not the other claims.

Mesabi commenced this adversary proceeding on September 7, 2017. In its original Complaint, Mesabi alleged numerous counts against Cliffs, including purported tortious interference and violations of the Sherman Act. Subsequently, Mesabi filed a Second Amended Complaint [AP Docket No. 18] that named additional defendants, specifically GPIOP and Cleveland-Cliffs Minnesota Land Development LLC ("Cliffs MN"). The Second Amended Complaint alleged claims for breach of contract and tortious interference against GPIOP and Cliffs MN.

4

In response, GPIOP has filed three Counterclaims against Mesabi. First, GPIOP alleges Mesabi tortiously interfered with the Land Agreement. Second, GPIOP seeks damages for Mesabi's alleged breach of the Mineral Leases when it failed to meet the Production Threshold. Lastly, GPIOP asserts Mesabi rejected the Mineral Leases when it failed to assume them by the Assumption Deadline and therefore seeks rejection damages.

Mesabi then filed the Motion to Dismiss as to each of GPIOP's Counterclaims pursuant to the Federal Rule of Civil Procedure 12(b)(6) (made applicable through Fed. R. Bankr. P. 7012(b)) [AP Docket No. 60] (the "Motion to Dismiss"). GPIOP filed its Response [AP Docket No. 80], Mesabi filed a Reply [AP Docket No. 92], and the Court took the matter under advisement.

While Mesabi's Motion to Dismiss was pending, this Court rendered a ruling in a separate, but related, matter in this adversary proceeding. In that dispute, the Court was asked to determine whether Mesabi could assume the Mineral Leases after the expiration of the Assumption Deadline under the terms of the Settlement Agreement. After the parties had submitted their final briefs in the instant matter, the Court issued its ruling on the status of the Mineral Leases [AP Docket No. 98] ("July 23 Opinion") and found Mesabi could no longer assume the Mineral Leases under the Settlement Agreement. *In re Essar Steel Minnesota LLC*, 590 B.R. 109 (Bankr. D. Del. 2018). The Court turns now to Mesabi's Motion to Dismiss the Counterclaims filed by GPIOP.

## II.     Jurisdiction

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157(b)(1). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (O).[2]

## III.    Standard

Mesabi filed its Motion under Fed. R. Civ. P. 12(b)(6) (made applicable through Fed. R. Bankr. P. 7012) for failure to state a claim upon which relief can be granted. "The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case." *Paul v. Intel Corp.* (*In re Intel Corp. Microprocessor Antitrust Litig*.), 496 F.Supp. 2d 404, 407 (D.Del 2007). When reviewing a motion to dismiss, the Court will construe the complaint "in the light most favorable to the plaintiff." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief require more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

---

[2] GPIOP disputes this matter constitutes a core proceeding. However, in its Answer GPIOP stated it consents to the entry of final orders and judgments by this Court pursuant to F. Bankr. R. 7012 and Local Bankr. R. 7012-1, GPIOP. [Docket No. 30].

6

do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations omitted).

### IV.   The Parties' Positions

Mesabi contends each of GPIOP's counterclaims should be dismissed under Rule 12(b)(6). Mesabi asserts GPIOP has offered only vague factual assertions that fall well short of asserting a cognizable claim for tortious interference. It addition, Mesabi argues GPIOP relinquished any claims it held under the Mineral Leases when it failed to object to the Claim Transfer.

In response, GPIOP argues it has articulated sufficient facts for tortious interference—namely the "threats and actions" that Mesabi allegedly undertook to interfere with the Land Agreement. Moreover, GPIOP maintains that the Claim Transfer to Cliffs applied only to the claim for rejection damages. Therefore, it posits it still holds its remaining claims for other damages that arose under the Mineral Leases.

### V.   Analysis

GPIOP has asserted three Counterclaims against Mesabi. To survive Mesabi's Motion, GPIOP must have articulated facts that, at a minimum, state a plausible claim for a right to relief for each cause of action. Each of GPIOP's Counterclaims is addressed in turn.

*a. Tortious Interference with Contractual Rights*

The parties agree that Minnesota law governs GPIOP's claim for tortious interference. Under Minnesota law, there are five elements for a claim of tortious interference with contractual rights. Namely:

(1) the existence a contract;

(2) the alleged wrongdoer's knowledge of the contract;

(3) intentional procurement of the breach of contract;

(4) without justification; and

(5) damages.

*Kallok v. Medtronic, Inc.,* 573 N.W.2d 356, 362 (Minn. 1998). For purposes of Mesabi's Motion, the parties do not dispute that GPIOP's Counterclaim properly alleged the Land Agreement is a valid contract and Mesabi knew about it. The dispute centers on whether GPIOP has alleged facts sufficient to demonstrate an intentional procurement of the breach of contract without justification.

GPIOP's Counterclaim alleges Mesabi undertook "threats and actions" that interfered with the Land Agreement, but it does not identify any specific threats or actions. GPIOP suggests Mesabi tortiously interfered with the Land Agreement when it filed its Second Amended Complaint and added GPIOP and Cliffs as defendants in this adversary. GPIOP asserts the threat of a lawsuit can be cognizable as evidence of an intentional procurement of the breach of contract, and in support cites to *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, 164 F. Supp. 3d 1117 (D. Minn. 2016).

GPIOP's argument fails for two reasons. First, the facts asserted in the Counterclaims are insufficient to raise GPIOP's right to relief "above the speculative level." *Twombly*, 550 U.S. at 555. GPIOP properly pleads the existence of a contract, but the balance of its allegations amounts to little more than a "formulaic recitation of the elements of a cause of action." *Id*. Without any supporting facts, GPIOP postulates Mesabi "has been aware of the [Land Agreement] and conveyances thereunder," that "its conduct was not justified," and that GPIOP "has suffered damages." [AP Docket No. 30]. GPIOP additionally alleges Mesabi made "threats" and undertook "actions" meant to "impair the parties' performance" of the contract, but it falls short of naming specific instances. GPIOP also fails to allege the Land Agreement was actually breached, rendering its claim for damages unsupported by facts and, ultimately, conclusory.

Second, GPIOP has not recited facts that would amount to a claim of tortious interference on the basis of Mesabi's lawsuit against Cliffs. The *Noerr-Pennington* doctrine protects Mesabi from liability for the act of filing a lawsuit against Cliffs. *E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 139 (1961). The doctrine, originally developed in the context of anti-trust cases and rooted in the First Amendment, is designed to protect the "right of the people to inform their representative in government of their desires with respect to the passage or enforcement of laws." *Noerr,* 365 U.S. at 139 (1961). To illustrate, the *Noerr* Court held that a railroad was not liable for a violation of the Sherman Act when it had engaged in a publicity campaign to influence government officials to

9

take actions adverse to its competitors. The Court opined that holding the railroad liable for its effort to influence the government would "deprive the government of a valuable source of information and, at the same time, deprive the people of their right to petition in the very instances in which that right may be of the most importance to them." *Id*. at 139. The doctrine includes "a litigant's right to bring a suit in federal or state court." *Inline*, 164 F. Supp. 3d at 1130 (D. Minn. 2016). Relevant here, the doctrine has been extended to protect a plaintiff from liability for tortious interference for filing a lawsuit. *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128 (3d Cir. 1999); *see also Trustees of Univ. of Pennsylvania v. St. Jude Children's Research Hosp.*, 940 F. Supp. 2d 233, 241 (E.D. Pa. 2013) (applying the doctrine to a tortious interference claim and reasoning "it remains black letter law that lawsuits constitute a form of protected petitioning under *Noerr–Pennington*.").

But *Noerr-Pennington* is not limitless. It does not extend immunity when the lawsuit is a "mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." *Noerr* 365 U.S. at 144 (1961). "The sham exception is narrow, and the . . . party attempting to invoke the exception bears a heavy burden of demonstrating that the [activities are] objectively meritless." *CBS Interactive Inc. v. Nat'l Football League Players Ass'n, Inc.*, 259 F.R.D. 398, 413 (D.Minn.2009).

GPIOP has not alleged any facts that would suggest Mesabi's lawsuit is objectively meritless. GPIOP's claim for tortious interference states in a conclusory fashion that through "threat and actions . . . Mesabi tortiously interfered with and

attempted to impair the parties' performance of the [Land Agreement]." [AP Docket No. 30]. Such a vague allegation of wrongdoing falls short of articulating of facts that suggest Mesabi's actions fall into the "sham litigation" exception to *Noerr-Pennington*. GPIOP has therefore failed to state a claim for tortious interference.[3]

### b. *Breach of Contract for Failure to Meet Production Threshold*

GPIOP's second Counterclaim asserts a claim for Mesabi's failure to meet the Production Threshold under the Mineral Leases. Mesabi maintains that pursuant to the Claim Transfer, GPIOP no longer has standing to litigate this cause of action. As described above, GPIOP filed a proof of claim that encompassed rejection damages, indemnification claims, and "all other amounts which may be owed under the GPIOP Mineral Leases." [Claim 224]. Cliffs filed a Claim Transfer that referenced the claim number and the $24.9 million claim for rejection damages, but not the unliquidated damages for indemnity and "all other amounts."

GPIOP has satisfied its burden for purposes of 12(b)(6). GPIOP has alleged facts sufficient to form the basis of an action for breach of contract for Mesabi's alleged failure to meet the Production Threshold. Construing all facts in favor of GPIOP, it appears GPIOP transferred only the claim for rejection damages to Cliffs and maintains standing to pursue other claims related to the Mineral Leases.

---

[3] The Court notes dismissal herein is without prejudice with leave to replead. However, the *Noerr-Pennington* doctrine requires GPIOP demonstrate the litigation was objectively meritless. Having recently addressed substantive issues in this adversary in the July Opinion, the Court notes GPIOP would carry a heavy burden in establishing that the proceedings commenced by Mesabi were nothing more than a sham (even in light of the Court's ultimate determination that the Plaintiff would not prevail on the merits on certain counts of the Complaint). [AP Docket No. 98].

11

Additionally, GPIOP has adequately pled each of the elements of a breach of contract.

In the alternative, Mesabi also argues that GPIOP waived its claim for damages under the Mineral Leases when it signed the Settlement Agreement. The Settlement Agreement contains a provision whereby GPIOP "agree[d] that any pre-Effective Date breaches or defaults under the Mineral Leased are cured, and if not curable, are waived." [Settlement Agreement at ¶ 3 (the "Claim Waiver")]. Mesabi argues the Claim Waiver is still in effect, despite Mesabi's failure to meet the Assumption Deadline. But in light of the Court's prior ruling, this argument is unavailing. This Court addressed the question of whether the Assumption Deadline was a condition precedent in the July 23 Opinion and found "the binding effect of the Settlement Agreement's terms, including those subsequent to ¶ 3, were contingent on the Plan going effective by the [Assumption Deadline]." Consistent with that ruling, GPIOP has not waived its damages claim. The Claim Waiver was contingent on Mesabi meeting the Assumption Deadline. It failed to do so, and the Settlement Agreement therefore did not extinguish GPIOP's claim.

### c. *Breach of Contract and Rejection Damages*

As described above, GPIOP filed a proof of claim that encompassed rejection damages, indemnification claims, and "all other amounts which may be owed under the GPIOP Mineral Leases." [Claim 224]. Cliffs filed a Claim Transfer that referenced only the claim number and the $24.9 million claim for rejection damages, but not the unliquidated damages for indemnity and "all other amounts." GPIOP

did not object to the Claim Transfer and admitted in its Response that it did in fact transfer the rejection claim. [AP Docket No. 80].

In light of the Claim Transfer, GPIOP's failure to object to the Claim Transfer, and its admission that it transferred the rejection damages claim, the Court finds GPIOP does not have standing to pursue its claim for rejection damages. Under Fed. R. Civ. P. 17(a)(1),[4] "an action must be prosecuted in the name of the real party in interest." By its own admission, GPIOP relinquished its claim to Cliffs and no longer has an interest in the outcome of litigation for a breach of contract claim for rejection damages.

## VI. CONCLUSION

For the foregoing reasons, the Court will GRANT the Motion without prejudice in part and DENY the Motion in part. The parties are requested to confer and provide a written form of order to the Court within 14 days of the date hereof in accordance with this ruling.

Dated: December 12, 2018
       Wilmington, Delaware

                                                       Brendan Linehan Shannon
                                                       United State Bankruptcy Judge

---

[4] Made applicable through F. R. Bankr. P. 7017(a)(1).