IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re ESSAR STEEL MINNESOTA LLC and ESML HOLDINGS INC., | : : : | Chapter 11 Bankr. Case No. 16-11626-BLS (Jointly Administered) |
| Reorganized Debtors. | : : | Adv. Proc. No. 17-51210-BLS |
| MESABI METALLICS COMPANY LLC, (f/k/a ESSAR STEEL MINNESOTA LLC) | : : : | |
| Plaintiff, v. | : : : | |
| CLEVELAND-CLIFFS, INC., *et al.*, | : : : | |
| Defendants. | : : | |
| GLACIER PARK IRON ORE PROPERTIES LLC, | : : | |
| Counterclaim-Plaintiff, v. | : : : | |
| MESABI METALLICS COMPANY LLC, | : : | Misc. No. 18-261-LPS |
| Counterclaim-Defendant. | : : | |
| CLEVELAND-CLIFFS INC., *et al.*, | : : | |
| Counterclaim-Plaintiffs, v. | : : : | |
| MESABI METALLICS COMPANY LLC, *et al.*, | : : | |
| Counterclaim-Defendants. | : : | |

## <u>MEMORANDUM ORDER</u>

Having reviewed the papers submitted in connection with plaintiff Mesabi Metallics

Company LLC's ("Mesabi") motion for leave to file interlocutory appeal (D.I. 1, 13) ("Motion

for Leave") from the Bankruptcy Court's Memorandum Opinion and Order (Adv. D.I. 98, 104)[1]

(the "Interlocutory Order"), which granted Defendants' motions for partial summary judgment

and denied Mesabi's cross-motion for partial summary judgment in the above-captioned

adversary proceeding ("Adversary Proceeding"); the opposition thereto filed by defendants

Cleveland-Cliffs Inc. and Cleveland-Cliffs Minnesota Land Development LLC (together,

"Cliffs") (D.I. 5); the joinder to the opposition filed by defendant Glacier Park Iron Ore

Properties LLC ("GPIOP" and, together with Cliffs, "Defendants") (D.I. 11);

IT IS HEREBY ORDERED that the Motion for Leave (D.I. 1) is DENIED for the

reasons that follow:

1. **_Introduction._**  This dispute centers on mineral leases in the Mesabi Range in

Minnesota.  GPIOP as lessor, and Mesabi as lessee, were successors in interest to certain mineral

leases at the time of Mesabi's Chapter 11 filing.  Defendants contend that the mineral leases at

issue were rejected and that rights under those leases have been transferred to new lessee Cliffs

pursuant to newly-executed leases.  Mesabi has alleged a host of claims against Defendants in

the Adversary Proceeding, and Defendants have asserted a number of counterclaims.  Each party

filed a motion for partial summary judgment on the mineral lease-related claims asserted in the

Adversary Proceeding.  The Bankruptcy Court's Interlocutory Order granted the motions filed by

GPIOP and Cliffs and denied the motion filed by Mesabi.  Mesabi seeks leave to appeal the

Interlocutory Order.

---

[1] The docket of the adversary proceeding, *Mesabi Metallics v. Cleveland-Cliffs, Inc., et al.,* Adv. No. 17-51210-BLS (Bankr. D. Del.), is cited herein as "Adv. D.I. __." The Chapter 11 docket, *In re Mesabi Metallics Company LLC,* No. 16-11626-BLS (Bankr. D. Del.), is cited herein as "B.D.I. __."

2. ***Background.*** Plaintiff Mesabi, formerly known as Essar Steel Minnesota LLC ("Essar"), is an iron ore mining and processing company. Together with its affiliate, ESML Holdings, Inc., Mesabi filed its petition under Chapter 11 on July 8, 2016. (B.D.I. 1) GPIOP and Superior Mineral Resources, LLC ("Superior") each had mineral leases with Mesabi at the time that it filed for bankruptcy (collectively the "Mineral Leases").[2] The Mineral Leases granted the respective lessor the right to terminate if Mesabi failed to meet a minimum production threshold. (*See e.g.,* B.D.I. 888 at 2) The record reflects Mesabi's concern that its lessors might retake mineral interests on grounds that Mesabi had failed to perform under its leases. (*See* B.D.I. 14 ¶ 13) ("[T]he potential termination of these mineral leases – the core source of supply of raw material for operation of the Facility – provided an impetus for the Debtors' filing of the Chapter 11 Cases.")

On June 8, 2017, Mesabi filed a proposed plan of reorganization. GPIOP and Superior objected to Mesabi's assumption of their Mineral Leases under the Plan on the basis, *inter alia*, that Mesabi had not given adequate assurance of future performance. (*See e.g.,* B.D.I. 888 at 3) On August 28, 2017, Mesabi, its plan sponsor Chippewa Capital Partners, LLC, GPIOP, and Superior entered into a settlement to govern the proposed assumption of the Mineral Leases, which the Debtors submitted to the Bankruptcy Court for approval on August 29, 2017 (the "Settlement Agreement"). On August 30, 2017, the Bankruptcy Court entered an order approving "all of the[] terms and conditions of the Settlement Agreement" (the "Settlement Order"). (B.D.I. 1168) The Settlement Agreement was "a comprehensive settlement . . .

---

[2] Defendants clarify that the Mineral Leases "pertained to mineral land parcels that GPIOP and Superior held in fee jointly as co-tenants, each with an undivided 50% interest in the whole ('the MSI BLGN Indenture of Lease') and to mineral land parcels that GPIOP owned 100% in fee (the 'MSI 100% Indenture of Lease') and 50% in fee (the 'MSI 50% Indenture of Lease')." (D.I. 5 at 3)

intended to resolve the dispute regarding assumption of the [Mineral] Leases." (Opinion at 5)

Pursuant to the Settlement Agreement, Mesabi was granted an extension from August 31, 2017

to October 31, 2017 to assume the Mineral Leases. Mesabi's assumption of the Mineral Leases,

however, was specifically "contingent on the Plan going effective no later than October 31,

2017." (*Id.*; *see also* B.D.I. 1168-1, Settlement Agreement at § 3(b)) The Settlement Agreement

further provided that if the Effective Date did not occur by October 31, 2017, "the mineral leases

will be automatically rejected . . . and revert to GPIOP and Superior, as applicable, without

further Bankruptcy Court proceedings." (Settlement Agreement § 3(d)) The Settlement

Agreement provided that after rejection and reversion, "GPIOP and Superior, as applicable, may

take any action with respect to the Mineral Leases and the leased properties and interests and

such actions will not constitute a violation of the automatic stay or any other provision of the

Bankruptcy Code." (*Id.*) The interpretation of the Settlement Agreement is the focus of

Mesabi's Motion for Leave.

The October 31, 2017 deadline passed without the occurrence of the Effective Date.

Mesabi did not secure another extension or otherwise seek any clarification of its remaining

rights with respect to the Mineral Leases. On December 11, 2017, six weeks after the October

31, 2017 deadline, Cliffs announced that it had acquired GPIOP's properties that had formerly

been leased by GPIOP to Mesabi. On December 22, 2017, Mesabi caused its plan to go effective

and emerged from reorganization. (B.D.I. 1398) The same day, Mesabi filed a motion for leave

to amend its previously-filed complaint in the Adversary Proceeding, which, among other things,

added Cliffs and GPIOP as defendants and added various counts seeking determination of the

parties' respective rights under the Mineral Leases. The motion for leave to amend was granted

by the Bankruptcy Court on January 23, 2018. (Adv. D.I. 18) ("Amended Complaint")

On February 26, 2018, GPIOP filed a motion for partial summary judgment on the
Mineral Lease-related counts of the Amended Complaint.  (Adv. D.I. 31, 33)  On March 28,
2018, Cliffs filed its own motion for partial summary judgment.  (Adv. D.I. 46, 47)  Defendants
argued that the Settlement Agreement provided that Mesabi only had the right to assume the
Mineral Leases if its Plan went effective by October 31, 2017.  When the Plan did not go
effective by that date, the Settlement Agreement clearly provided that the Mineral Leases were
rejected and reverted to GPIOP.  (Adv. D.I. 47)  Subsequent to that date, GPIOP entered into
new leases with Cliffs, and, in Defendants' view, Mesabi no longer had rights remaining as to
the Mineral Leases or the underlying property.

On March 28, 2018, Mesabi filed its opposition and cross-motion for summary judgment
on substantially the same counts at issue in GPIOP's motion.  (Adv. D.I. 51) ("Cross-Motion")
In its Cross-Motion, Mesabi asked the Bankruptcy Court to undertake a multi-step analysis of the
Settlement Agreement and the Settlement Order to conclude that Mesabi's failure to go effective
by October 31, 2017 had no impact on Mesabi's ability to assume the Mineral Leases.  Mesabi
argues that the Settlement Agreement gave Mesabi an absolute right to assume the Mineral
Leases if its Plan became effective on or before October 31, 2017 – and, when that did not
happen, the Mineral Leases were rejected, but not ***terminated***.  At the center of this argument is
Mesabi's assertion that Defendants were required to take additional steps to terminate the
Mineral Leases.  Thus, Mesabi asserts, when the Plan went effective on December 22, 2017, the
Settlement Order and Settlement Agreement provided that the previously-rejected Mineral
Leases were assumed and that all pre-assumption defaults were waived.  (*Id.*)  Mesabi reasoned
that missing the October 31, 2017 deadline was merely a waivable pre-assumption fault.  Mesabi
focused on the language in the Settlement Order, entered in August 2017, which stated that
Leases "are assumed as of the Effective Date of the Plan."  Mesabi contends that this Order

governs and provides that the Mineral Leases are assumed, irrespective of when the effective

date of the Plan occurred, so long as the Plan ultimately became effective.  Separately, Mesabi

contended that, even if the Bankruptcy Court did not accept its construction of the Settlement

Agreement, Mesabi should still prevail because the alternative would result in forfeiture of the

Mineral Leases by the reorganized debtor, and such forfeiture is strongly disfavored under

prevailing Minnesota law.

After the summary judgment motions were fully briefed, the Bankruptcy Court heard oral

argument on May 15, 2018.  (Adv. D.I. 100)  The Bankruptcy Court took the matter under

advisement.  No party asked the Bankruptcy Court to deny partial summary judgment to any

other party on the grounds that there was a material fact in dispute or that the Settlement

Agreement was ambiguous.

Judge Shannon issued the Opinion on July 23, 2018.  In it he agreed with Cliffs' and

GPIOP's construction of the Settlement Agreement; specifically that the Settlement Agreement

is clear that the October 31, 2017 date was a material condition precedent to assumption.

(Opinion at 12)  Judge Shannon explained that "[w]hen November 1 arrived without Mesabi

going effective, the [Mineral] Leases were rejected, reverted to GPIOP, and GPIOP could take

'any action' thereafter, as provided for in the Settlement Agreement."  (*Id.*) (citing Settlement

Agreement § 3(d))  Judge Shannon reasoned that the parties' intent was abundantly clear: they

had negotiated for a date certain by which the rights and obligations would be determined.  (*Id.*

at 12-15)  Consequently, "the Court will not permit the parties to evade or alter the plain

consequences of what they bargained for in their Agreement."  (*Id.* at 16)  On August 15, 2018,

Judge Shannon entered the Interlocutory Order, consistent with his Opinion, rendering judgment

in Defendants' favor on Mesabi's Third, Fourth, Sixth, Thirteenth, Fourteenth, Sixteenth,

Twentieth, Twenty-First, Twenty-Second, Twenty-Third, and Twenty-Fourth Claims for Relief

6

in the Amended Complaint. (Adv. D.I. 104)  The Interlocutory Order and the underlying reasons
set forth in the Opinion are the subject of Mesabi's Motion for Leave.

      **3.  *Applicable Standards.*** This Court has jurisdiction to hear appeals "with leave of the
court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and
proceedings referred to the bankruptcy judges under section 157 of this title." 28 U.S.C.
§ 158(a)(3). Section 158(a) does not identify the standard district courts should use in deciding
whether to grant such an interlocutory appeal. *See id.* "Typically, however, district courts
follow the standards set forth under 28 U.S.C. § 1292(b), which govern interlocutory appeals
from a district court to a court of appeals." *In re AE Liquidation, Inc.*, 451 B.R. 343, 346 (D.
Del. 2011).[3]

      Under the standards of § 1292(b), an interlocutory appeal is permitted only when the
order at issue (1) involves a controlling question of law upon which there is (2) substantial
ground for difference of opinion as to its correctness, and (3) if appealed immediately, may
materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b); *Katz v.
Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974). Entertaining review of an interlocutory
order under § 1292(b) is appropriate only when the party seeking leave to appeal "establishes
exceptional circumstances [to] justify a departure from the basic policy of postponing review
until after the entry of final judgment." *In re Del. and Hudson Ry. Co.*, 96 B.R. 469, 472-73 (D.
Del. 1989), *aff'd*, 884 F.2d 1383 (3d Cir. 1989). In part, this stems from the fact that
"[p]iecemeal litigation is generally disfavored by the Third Circuit." *In re SemCrude, L.P.*, 2010
WL 4537921, at *2 (D. Del. Oct. 26, 2010) (citing *In re White Beauty View, Inc.*, 841 F.2d 524,

---

[3] *See also In re Philadelphia Newspapers, LLC,* 418 B.R. 548, 556 (E.D. Pa. 2009) ("Based upon
the decision of the Third Circuit in *Bertoli v. D'Avella (In re Bertoli)*, 812 F.2d 136, 139 (3d Cir.
1987), courts within this Circuit confronted with the decision whether to grant leave to allow an
interlocutory appeal are informed by the criteria in 28 U.S.C. § 1292(b).").

526 (3d Cir. 1988)). Further, leave for interlocutory appeal may be denied for "entirely unrelated reasons such as the state of the appellate docket or the desire to have a full record before considering the disputed legal issue." *Katz*, 496 F.2d at 754.

**4. *Analysis.*** Mesabi asserts that its appeal of the Interlocutory Order involves three controlling questions of law as to which substantial ground for difference of opinion exists:

> Issue 1: Whether the Bankruptcy Court erred "in determining that the language of the Settlement Agreement was unambiguous . . . notwithstanding conflicting language in the [Settlement] Order, the Settlement Agreement, and the Mineral Leases;"
>
> Issue 2: Whether the Bankruptcy Court erred in "construing the Settlement Agreement as terminating Mesabi's rights in the [Mineral L]eases on October 31, 2017, when it failed to bring its chapter 11 plan effective as of that date;" and
>
> Issue 3: Whether the Bankruptcy Court erred in "concluding that the occurrence of the Plan Effective Date by October 31, 2017 was material as a matter of law, despite reasonable inferences to the contrary."

(D.I. 1 at 11-12)

**A.    *Controlling Question of Law***

A controlling question of law is one that (1) "would be reversible error on final appeal" or (2) is "serious to the conduct of the litigation, either practically or legally." *Katz*, 496 at 755. "[O]n the practical level, saving of time of the district court and of expense to the litigants [has been] deemed . . . to be a highly relevant factor." *Id.* (internal citation omitted).

Mesabi argues that the appeal presents purely legal questions which, if the Bankruptcy Court answered erroneously, are reversible on appeal. (D.I. 1 at 13-14) According to Mesabi, Issues 1 and 3 address whether the Bankruptcy Court properly reached its conclusion as a matter of law. "In order to conclude that the Settlement Agreement terminated all of Mesabi's rights in the Mineral Leases on November 1, 2017 as a matter of law, the Bankruptcy Court necessarily found that the Settlement Agreement was unambiguous." (*Id.*) (citing Opinion at 9) Whether an agreement is ambiguous is a question of law. *See Mack Trucks, Inc. v. Borgwarner Turbo Sys.*,

508 F. App'x 180, 183 (3d Cir. 2012) ("Whether a contract is ambiguous is a question of law to be decided by the court.") (citing *Allegheny Int'l, Inc. v. Allegheny Lundlum Steel Corp.*, 40 F.3d 1416, 1424 (3d Cir. 1994)).  Mesabi argues that Issue 2 addresses whether, as a matter of law, the Bankruptcy Court properly interpreted the Settlement Agreement and related documents. (D.I. 1 at 15-16)  Mesabi adds that, while other courts may disagree, this Court has accepted that contract interpretation can constitute a controlling question of law for the purposes of 28 U.S.C. § 1292(b) analysis.  (*See id.*) (citing *EMSI Acquisition, Inc. v. RSUI Indem. Co.,* 2018 WL 2316633, at *3 (D. Del. May 22, 2018))

Conversely, Defendants contend that even if contract interpretation may present a controlling question of law, "[c]ourts in this Circuit and others recognize that § 1292(b) was not designed to secure interlocutory appellate review of the Court's interpretation of unambiguous contractual provisions."  (*See* D.I. 5 at 9) (citing *Great Am. Ins. Co. of N.Y. v. Int'l Custom Prods., Inc.*, 2011 WL 7037123, at *4  (W.D. Pa. Oct. 31, 2011))

The Court assumes, without deciding, that the issues on which Mesabi seeks review could be considered controlling questions of law.  Because Mesabi has failed to satisfy the other prerequisites for interlocutory review, the Court need not determine whether Mesabi has also failed to meet this first requirement of § 1292(b).

## B.    *Substantial Ground for Difference of Opinion*

The "controlling question of law" also must be one as to which there is "substantial ground for difference of opinion."  28 U.S.C. § 1292(b).  This calls for more than mere disagreement with the ruling of the Bankruptcy Court.  To satisfy this standard, "the difference of opinion must arise out of genuine doubt as to the correct legal standard." *Hulmes v. Honda Motor Co.*, 936 F. Supp. 195, 208 (D.N.J. 1996), *aff'd,* 141 F.3d 1154 (3d Cir. 1998); *see also In re Physiotherapy Holdings, Inc.,* 2017 WL 6524524, at *6 (D. Del. Dec. 21, 2017) (same).

9

Conflicting and contradictory opinions may provide substantial grounds for a difference of opinion. *See White v. Nix,* 43 F.3d 374, 378 (8th Cir. 1994). Additionally, the absence of controlling law on a particular issue can constitute substantial grounds. *See Chase v. Manhattan Bank v. Iridium Africa Corp.,* 324 F. Supp. 2d 540, 545 (D. Del. 2004). This factor may also be met when "the bankruptcy court's decision is contrary to well-established law." *In re Marvel Entm't Grp., Inc.*, 209 B.R. 832, 837 (D. Del. 1997).

Here, there is no genuine disagreement as to the correct legal standard, which was identified by the Bankruptcy Court. Each party argued that summary judgment on the Mineral Lease-related claims was appropriate based on the plain language of the unambiguous agreements, and it was undisputed among the parties that the Settlement Agreement was governed by the laws of the State of Minnesota. (Opinion at 11-16 & n.10) "Minnesota common law on contract interpretation is consistent with well-settled general principles" and required the Bankruptcy Court to give language its plain and ordinary meaning, to read contractual terms in the context of the entire agreement, to construe the terms so as not to lead to a harsh and absurd result, and to interpret the contract in such a way as to give meaning to all of its provisions. (*Id.* at 12-13) To determine, pursuant to the principles of contract interpretation under Minnesota law, the effect of Mesabi's failure to go effective with its Plan by October 31, 2017, the Bankruptcy Court "simply applied traditional contract interpretations" to the agreements at issue. *EMSI*, 2018 WL 2316633 at *3. "Thus, while there may be grounds for differences of opinion, [Mesabi] has not demonstrated that those grounds are substantial." *Id.; see also Fed.-Mogul Corp. v. Ins. Co. of Pa.,* 2015 WL 13037139, at *2 (E.D. Mich. Dec. 22, 2015) (denying request for certification under § 1292(b) where court's "order applied well-established contract interpretation principles to the insurance policy at issue").

10

Mesabi asserts that its appeal arises not from mere disagreement with the Bankruptcy

Court's conclusion but rather from "manifestly conflicting language in the applicable

agreements," which (according to Mesabi) "preclude[ed] judgment in defendants' favor as a pure

matter of law." (*Id.* at 16-17)  Mesabi adds that certain provisions in the Settlement Agreement,

Settlement Order, and Mineral Leases are inconsistent, rendering the agreement among the

parties ambiguous as a matter of law.  (*Id.* at 16-19)  Mesabi argues that the Bankruptcy Court

erroneously ignored these inconsistent provisions in its analysis.[4]

The Court is not persuaded that the Bankruptcy Court's identification or application of

principles of contract interpretation was in any way contrary to well-established law.  Mesabi

merely seeks a different interpretation of the relevant agreements, taking the position that the

Mineral Leases could not have been rejected unless the contracts were ambiguous or relevant

provisions were ignored.   It is clear from the Opinion that the Bankruptcy Court did not ignore

inconsistent provisions.  Rather, the Bankruptcy Court determined that the provisions at issue

were unambiguous, were not inconsistent, and that the Settlement Agreement was not overridden

---

[4] Mesabi's principal argument in this regard is that the Settlement Agreement, which provides
that Mesabi could not assume the Mineral Leases if the Effective Date occurred after October 31,
2017, conflicts with paragraph 3 of the Settlement Order, which states that "the Mineral Leases
. . . are assumed as of the effective date of the Plan." (D.I. 1 at 16-17)  Mesabi argues that
paragraph 3 of the Settlement Order is not subject to a deadline for the Plan's effectiveness, is
dispositive of its rights, and that the Bankruptcy Court "ignored paragraph 3 entirely in favor of
the general approval language in paragraph 2."  (*Id.*)  In fact, the Bankruptcy Court, interpreting
its own prior order, rejected this argument:

> The Settlement Order "approved" the "terms and conditions" contained in
> the Settlement Agreement.  Settlement Order, ¶ 2.  It did not function to
> modify the terms agreed to by the parties.  Thus, the terms of the
> Settlement Agreement still control on these issues.

(Opinion at 10 n.9)

11

by the Settlement Order. (Opinion at 11-16 & nn. 9, 12-15)  The Bankruptcy Court further

determined that Mesabi's extra-contractual arguments, such as forfeiture, were inapplicable to

the unambiguous agreement entered into among sophisticated parties. (*Id.* at 15-16 & nn. 15-16)

The Court agrees with Defendants.  If Mesabi's request for interlocutory appeal were

granted, the Court would apply the same law applied by the Bankruptcy Court.  Mesabi has not

shown the required substantial ground for difference of opinion.

> ### C.    *Whether Immediate Appeal Will Materially Advance Termination of Litigation*

Mesabi argues that resolution of the appeal now will materially advance the termination

of the litigation. (D.I. 1 at 19)  According to Mesabi, at the time it filed its motions, discovery in

the Adversary Proceeding had yet to commence,[5] and "[r]esolution of the appeal now, rather than

awaiting trial on the remaining related claims, would allow the parties to avoid repetition of

discovery in the event of a remand." (*Id.*)

Defendants counter that allowing the requested interlocutory appeal to proceed would

only inject uncertainty into the case, leaving the parties to engage in a debate over whether there

should be any discovery allowed on the issues that the Opinion resolved. (D.I. 5 at 13)

Defendants point out that the parties brought these issues to Judge Shannon for early resolution

on cross-motions for partial summary judgment, persuading him that the issues were ripe for

resolution and would limit the remaining issues in the case by eliminating several causes of

action. (*See id.*)

The Court agrees with Defendants.  An interlocutory appeal should not be granted if it

"will not advance the overall progress of the [adversary] action, which consists of [additional]

---

[5] According to the amended scheduling order entered by the Bankruptcy Court on May 31, 2019, discovery remains in its early stages and will conclude, at the earliest, in July of 2020. (*See* Adv. D.I. 216)

claims" unaffected by the appeal. *In re Greenfield Energy*, 2017 WL 6524525, at *6 (D. Del. Dec. 21, 2017). Under these present circumstances, an immediate appeal of one or all of these issues "would only promote piecemeal determination of the questions raised in the adversary action and would likely create unnecessary delay." *AE Liquidation*, 451 B.R. at 348.

### D.   *Whether Exceptional Circumstances Justify Immediate Appeal*

Because an interlocutory appeal represents a deviation from the basic judicial policy of deferring review until after the entry of final judgment, the party seeking leave to appeal an interlocutory order must also demonstrate that exceptional circumstances exist. *See In re Advanced Marketing Services, Inc.*, 2008 WL 5680878 (D. Del. Apr. 3, 2008). "Interlocutory appeal is meant to be used sparingly and only in exceptional cases where the interests cutting in favor of immediate appeal overcome the presumption against piecemeal litigation." *AE Liquidation*, 451 B.R. at 349 (internal quotation marks omitted).

Mesabi argues that its prospects for a successful reorganization depend, in substantial part, on the outcome of an interlocutory appeal. (*See* D.I. 1 at 20; D.I. 13 at 1-3) This is because Mesabi's alleged rights under the Mineral Leases are critical to its reorganization, "as they comprise the heart of Mesabi's state-approved mining plan." (D.I. 13 at 2) To Mesabi, these exceptional circumstances justify immediate appeal because "the longer Mesabi's rights in the Mineral Leases remain in dispute, the more likely it is that Mesabi's reorganization efforts . . . will fail. (D.I. 1 at 21)

According to Defendants, Mesabi's purported need for a quick ruling does not qualify as sufficiently exceptional to justify granting the extraordinary remedy of an interlocutory appeal in a post-confirmation proceeding. (D.I. 5 at 14) Defendants argue that resolution of the issues raised in Mesabi's Motion for Leave cannot affect its reorganization because Mesabi has already gone effective with its Plan and emerged from Chapter 11. Defendants further assert that

Mesabi's choice to raise the issue in the Adversary Proceeding through claims added on the day it emerged from bankruptcy protection and completed its reorganization is inconsistent with the harm it claims; if timing were truly a concern, Mesabi could have raised the issue of its lease rights during the course of its main Chapter 11 proceedings through a motion for clarification. (*See id.* at 16)

It is correct that issues threating the success of a debtor's reorganization can constitute an exceptional circumstance post-effective date. Circumstances that threaten the success of a debtors' reorganization may be sufficient to "distinguish[] the case from the procedural norm and establish[] the need for immediate review."[6] However, the Court is not convinced such circumstances exist here.

**5. *Conclusion.*** For the reasons explained above, Mesabi has not demonstrated the presence of the factors of § 1292(b). Accordingly, the Court will deny its Motion for Leave to appeal the Interlocutory Order.[7]

IT IS FURTHER ORDERED that the Clerk of Court is directed to CLOSE this case.

September 10, 2019
Wilmington, Delaware

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE

---

[6] *In re Magic Rests., Inc.*, 202 B.R. 24, 26-27 (D. Del. 1996).

[7] Because the Court concludes that Mesabi has not met the § 1292(b) requirements for interlocutory appeal, the Court does not consider Defendants' additional waiver argument. (*See* D.I. 5 at 16-20)