# IN UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------------x

| | |
|---|---|
| *In re:* : | **Chapter 11** |
| : | |
| : | **Case No. 16-11626 (BLS)** |
| **ESSAR STEEL MINNESOTA LLC and** : | |
| **ESML HOLDINGS INC.,**[1] : | **(Jointly Administered)** |
| : | |
| **Reorganized Debtors.** : | |

-----------------------------------------------------------------x

| | |
|---|---|
| : | |
| **MESABI METALLICS COMPANY LLC** : | **Adv. Proc. No. 17-51210 (BLS)** |
| **(F/K/A ESSAR STEEL MINNESOTA LLC),** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| **v.** : | |
| : | |
| **CLEVELAND-CLIFFS INC. (F/K/A CLIFFS** : | |
| **NATURAL RESOURCES INC.);** : | |
| **CLEVELAND-CLIFFS MINNESOTA LAND** : | |
| **DEVELOPMENT LLC; GLACIER PARK** : | |
| **IRON ORE PROPERTIES LLC; and** : | |
| **DOES 1-10,** : | |
| : | |
| **Defendants.** : | |

-----------------------------------------------------------------x

| | |
|---|---|
| : | |
| **CLEVELAND-CLIFFS INC. (F/K/A CLIFFS** : | |
| **NATURAL RESOURCES INC.); and** : | |
| **CLEVELAND-CLIFFS MINNESOTA LAND** : | |
| **DEVELOPMENT LLC,** : | |
| : | |
| **Counterclaim-Plaintiffs,** : | |
| : | |
| **v.** : | |
| : | |
| **MESABI METALLICS COMPANY LLC** : | |
| **(F/K/A ESSAR STEEL MINNESOTA LLC);** : | |
| **CHIPPEWA CAPITAL PARTNERS, LLC; and** : | |
| **THOMAS M. CLARKE,** : | |
| : | |
| **Counterclaim-Defendants.** : | |

-----------------------------------------------------------------x

---

[1]    Essar Steel Minnesota LLC changed its name to Mesabi Metallics Company LLC.

|  | : |
|---|---|
| **GLACIER PARK IRON ORE PROPERTIES LLC,** | : |
|  | : |
| **Counterclaim-Plaintiff,** | : |
|  | : |
| **v.** | : |
|  | : |
| **MESABI METALLICS COMPANY LLC** | : |
| **(F/K/A ESSAR STEEL MINNESOTA LLC)** | : |
|  | : |
| **Counterclaim-Defendant.** | : |

-----------------------------------------------------------------x

### DEFENDANTS CLEVELAND-CLIFFS INC.'S AND CLEVELAND-CLIFFS MINNESOTA LAND DEVELOPMENT LLC'S JOINT ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF MESABI METALLICS COMPANY LLC'S MOTION TO COMPEL DISCOVERY

M. Blake Cleary (No. 3614)
Michael S. Neiburg (No. 5275)
YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:   mbcleary@ycst.com
         mneiburg@ycst.com

                -and-

Robert S. Faxon (pro hac vice)
Thomas Wearsch (pro hac vice)
Kristin S.M. Morrison (pro hac vice)
Adam J. Joines (pro hac vice)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114.1190
Telephone: +1.216.586.3939
Facsimile: +1.216.579.0212
E-mail:  rfaxon@jonesday.com
         twearsch@jonesday.com
         kmorrison@jonesday.com
         ajoines@jonesday.com

Attorneys for Cleveland-Cliffs Inc. and
Cleveland-Cliffs Minnesota Land Development LLC

## <u>TABLE OF CONTENTS</u>

**Page**

I.    PRELIMINARY STATEMENT ................................................................ 1

II.   STATEMENT OF FACTS .................................................................... 5

III.  ARGUMENT ................................................................................... 7

A.    Rule 26, as amended, limits discovery to avoid abuse ........................ 8

B.    Cliffs set reasonable discovery limits from the outset that follow the proportionality requirements of the Rules....................................11

C.    Cliffs' proposed compromise positions account for the needs of this case and are proportional ...............................................................12

1.    Cliffs' proposed timeframe covers the actual allegations in this case ......13

2.    Cliffs' proposal provides relevant and proportional discovery covering Competition and Market topics...............................................16

3.    Cliffs' proposal provides relevant and proportional discovery covering Pricing topics..........................................................18

4.    Cliffs' proposal provides relevant and proportional discovery covering Production and Profit Data .......................................18

5.    Cliffs' proposal provides relevant and proportional discovery covering Mesabi and its relationship with Third Parties........................19

6.    Cliffs' proposal provides relevant and proportional discovery covering Glacier Park-related topics ....................................20

7.    Cliffs' proposal provides relevant and proportional discovery into Cliffs' Board Minutes................................................21

8.    Cliffs' proposal provides relevant and proportional discovery into Cliffs' business................................................22

9.    Cliffs' proposal provides relevant and proportional discovery into Cliffs' Antitrust Policies ..............................................22

D.    To the extent Mesabi's Requests exceed the scope of what Cliffs proposes to produce, the Requests are not proportional to the needs of this case .............23

1.    Mesabi's Requests ignore the requirement that discovery must be relevant and not overbroad .................................................23

2.    Granting Mesabi's Requests in their entirety now would be overly burdensome .........................................................26

E.    Mesabi's attempts for a threefold expansion of the custodian list should be rejected as late, not proportional to the case, and unduly burdensome...............27

IV.   CONCLUSION..................................................................................30

# TABLE OF AUTHORITIES

**Page**

CASES

Arena v. RiverSource Life Ins. Co.,
    No. 2:16-CV-5063-JLL-SCM, 2017 WL 6513056 (D.N.J. Dec. 19, 2017) ..........................24

BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.,
    No. 15 C 10340, 2018 WL 946396 (N.D. Ill. Feb. 20, 2018)................................................26

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007)..................................................................................10, 11, 12, 27

Boehringer Ingelheim Pharma GMBH & Co. KG v. Teva Pharm. USA, Inc.,
    No. CV 14-7811 (MLC), 2016 WL 11220848 (D.N.J. Aug. 5, 2016)....................................9

Capetillo v. Primecare Med., Inc.,
    No. 14-2715, 2016 WL 3551625 (E.D. Pa. June 29, 2016) ...................................................9

City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.,
    No. 12-05275, 2015 WL 5055241 (D.N.J. Aug. 21, 2015)..................................................29

Cole's Wexford Hotel, Inc. v. Highmark Inc.,
    209 F. Supp. 3d 810 (W.D. Pa. 2016) ................................................................................9

EEOC v. Univ. of Pa.,
    850 F.2d 969 (3d Cir. 1988) .............................................................................................24

Eddowes v. Dir., State Dep't of Corr.,
    No. 3:18-CV-125, 2018 WL 6413652 (M.D. Pa. Dec. 6, 2018)......................................9, 10

Fifth Third Bank v. Westwood Zamias Ltd. P'ship,
    No. 3:18-CV-143, 2019 WL 1170333 (W.D. Pa. Mar. 13, 2019) ..........................8, 9, 12, 14

Fisher v. Borden, Inc.,
    No. 92-4306 (JFG), 1994 U.S. Dist. Lexis 21271 (D.N.J. Jan. 12, 1994) .............................9

Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.,
    No. 214-CV-1327, 2018 WL 1704787 (D.N.J. Apr. 9, 2018)..............................................25

In re Chocolate Confectionary Antitrust Litig.,
    801 F.3d 383 (3d Cir. 2015) ............................................................................................23

In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.,

801 F.3d 758 (7th Cir. 2015) ...........................................................................13

In re Elevator Antitrust Litig.,
502 F.3d 47 (2d Cir. 2007) ..............................................................................23

In re Folding Carton Antitr. Litig.,
83 F.R.D. 251 (N.D. Ill. 1978) ............................................................... 9, 15, 16

In re Grabis,
No. 13-10669-JLG, 2018 WL 6132045 (Bankr. S.D.N.Y. Nov. 20, 2018) ..........................25

In re Intel Corp. Microprocessor Antitr. Litig.,
No. 05-1717-JJF, 2007 WL 137152 (D. Del. Jan. 12, 2007)...........................................9, 17

In re MiMedx Grp. Secs. Litig.,
No. 15-84-RGA, 2015 WL 5445140 (D. Del. July 17, 2015) .................................................9

Inline Packaging, LLC v. Graphic Packaging Int'l., Inc.,
No. 15-CV-3183, 2016 WL 7042117 (D. Minn. July 25, 2016) ........................10, 11, 15, 25

IQVIA, Inc. v. Veeva Sys., Inc.,
No. 2:17-CV-00177-CCC-MF, 2019 WL 3059805 (D.N.J. July 11, 2019) ........................27

Kellam Energy, Inc. v. Duncan,
616 F. Supp. 215 (D. Del. 1985) ................................................................. 15, 17

Lafate v. Vanguard Grp., Inc.,
No. 13-cv-5555, 2014 WL 4384510 (E.D. Pa. Sept. 5, 2014) .............................................13

MacDermid Printing Sols., L.L.C. v. E.I. du Pont de Nemours & Co.,
No. 07–4325 (MLC), 2008 WL 323764 (D.N.J. Feb. 5, 2008) .............................................20

Maritime Cinema Serv. Corp. v. Movies En Route, Inc.,
60 F.R.D. 587 (S.D.N.Y. 1973) ........................................................................16

New Park Entertainment L.L.C. v. Elec. Factory Concerts, Inc.,
No. Civ.A. 98–775, 2000 WL 62315 (E.D. Pa. Jan. 13, 2000) .............................................15

Novanta Corp. v. Iradion Laser, Inc.,
No. CV 15-1033-SLR-SRF, 2016 WL 4987110 (D. Del. Sept. 16, 2016) ........................8, 24

Oppenheimer Fund, Inc. v. Sanders,
437 U.S. 340 (1978)........................................................................................9

Public Serv. Elec. & Gas Co. v. Newport Assocs. Dev. Co.,
No. 16-8445, 2019 WL 4010780 (D.N.J. Aug. 26, 2019)....................................................16

<u>Rowan v. Sunflower Electric Power Corp.</u>,
No. 15-cv-9227-JWL-TJJ, 2016 WL 3743102 (D. Kan. July 13, 2016) ...............................12

<u>SmithKline Beecham Corp. v. Apotex Corp.</u>,
No. Civ.A.99-CV-4304, 2006 WL 279073 (E.D. Pa. Jan. 31, 2006) ................................9, 17

<u>Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.</u>,
No. CV 17-1734-RGA, 2019 WL 3369659 (D. Del. July 15, 2019) ....................................30

<u>Westfield Ins. Co. v. Icon Legacy Custom Modular Homes</u>,
321 F.R.D. 107 (M.D. Pa. 2017) ....................................................................................8, 26

<u>Williams v. CoreCivic, Inc.</u>,
No. 17-CV-2310, 2018 WL 3075867 (D. Kan. June 21, 2018) ...........................................25

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 2004 .......................................................................................................4

Fed. R. Civ. P. 26 ...................................................1, 2, 5, 8, 9, 10, 11, 12, 24, 25, 27

Fed. R. Civ. P. 12 ..............................................................................................................10

Fed. R. Civ. P. 34 ..............................................................................................................12

Del. Bankr. L.R. 7026-1(a) ...............................................................................................11

Defendants Cleveland-Cliffs Inc. and Cleveland-Cliffs Minnesota Land Development LLC (collectively, "Cliffs") respond to Mesabi Metallics Company LLC's ("Mesabi") Motion to Compel Discovery (the "Motion" or "Mot.") [Adv. D.I. 237 & 238] as follows:[2]

## I.    PRELIMINARY STATEMENT

1.      The Federal Rules allow Mesabi to seek a reasonable, proportional amount of discovery relevant to the specific allegations in its Second Amended Complaint. That is not what Mesabi is seeking here. Instead, Mesabi is asking the Court to order Cliffs to produce, without any compromise, all documents responsive to all of its 127 overlapping Requests covering every aspect of Cliffs' business over the last five to seven years, with little, if any, connection to Mesabi's Second Amended Complaint. Mesabi also asks the Court to endorse Mesabi's attempt to jettison its agreement with Cliffs regarding whose custodian files to search, which the parties negotiated and agreed upon more than ten months ago (and on which Cliffs relied to collect, review, and produce responsive documents). This would require Cliffs to start over and search the files of twenty-nine additional custodians. As discussed below, Cliffs is willing to agree to expand the scope of its Responses (as set forth in Cliffs' Ex. 1) to provide additional materials, including Cliffs' internal communications, related to Mesabi's specific allegations. That is all the Rules require. Cliffs will not accede to Mesabi's overbroad and abusive demands, however, nor does it have any legal obligation under the Rules to do so.

2.      The Rules, as amended in 2015, limit discovery to what is both "relevant" and "proportional to the needs of the case." Fed. R. Civ. P. 26(b). Mesabi's Motion, like its meet-and-confer positions, ignores the current Rules in favor of outdated cases that courts no longer rely on to define the scope of discovery. Repeating the words "relevant" and "antitrust" ad

---

[2]      Unless otherwise indicated, references to "Adv. D.I. XX" are to docket entries in the above-captioned adversarial action. References to "D.I. XX" are to docket entries in the above-captioned bankruptcy matter.

nauseam does not change the Rules, nor does it entitle Mesabi to a competitor's business information unrelated to the specific allegations in the Second Amended Complaint. To the contrary, the Rules were amended to stop precisely this kind of abuse.

3.      Cliffs did not try, and is not trying, to hide anything in its approach to discovery. Beginning in <u>October 2018</u>, Cliffs and Mesabi set up reasonable and transparent limits based on the allegations in <u>this</u> case. The parties negotiated search terms and custodians after exchanging Rule 26 initial disclosures. Mesabi agreed to Cliffs' identified custodians, which parallel Cliffs' initial disclosures. Thereafter, Cliffs disclosed the scope limits for its impending productions. Cliffs' Responses to Mesabi's First and Second Requests for Production, served on January 10, 2019 (Mot. Ex. D) and April 26, 2019 (Mot. Ex. E), respectively, stated explicitly what Cliffs would search for and produce from agreed-upon custodians, as well as any limits thereto. Cliffs then conducted a multi-million dollar review consistent with its Responses and the parties' agreed-upon search parameters and custodians. Mesabi said nothing while Cliffs collected, reviewed, and produced its documents.

4.      Mesabi's approach to discovery changed on April 19, 2019. One week before the then-applicable deadline to substantially complete document productions expired, Mesabi sent a letter purporting to identify deficiencies in some of the responses that Cliffs served in January. Then, on August 13, 2019, Mesabi sent a letter asserting "equally applicable" issues concerning some of Cliffs' Second Responses served in April. Cliffs responded to each of Mesabi's letters, explained the rationale behind its Responses, offered compromises to balance the parties' competing concerns, and asked what more Mesabi could need beyond Cliffs' proposals to address the allegations in the Second Amended Complaint. In reply, Mesabi demanded that Cliffs produce "all documents" responsive to the identified Requests, as written.

5.      In retrospect, it is now clear that, despite putting Cliffs through several rounds of back and forth letters, and hours of calls, Mesabi never intended to compromise on any of its Requests. This meet and confer process that largely took place throughout late August could have happened as early as the day after Cliffs served its responses, in January and April respectively. Mesabi's delay, and its continued demands for "all responsive documents," reveals that it never sought true compromise. Mesabi's account of the parties' meet-and-confer history also omits that, during its August 22, 2019 meet-and-confer call, Mesabi expanded its list of previous issues, raising for the first time and with no prior notice, new disputes with nearly every one of Cliffs' Responses to Mesabi's 127 Requests. (See Email from K. Morrison to J. Berman et al., Aug. 22, 2019, Cliffs' Ex. 2.) Mesabi also fails to mention that, despite identifying seventeen additional potential Cliffs' custodians in its October 2018 initial disclosures, Mesabi never sought to include any of those or other purportedly "key personnel" before its August 20 demands for additional custodians. Mesabi further omits that Cliffs committed during the parties' discussions to consider and respond to each of Mesabi's issues, tardy or not, and to try and accommodate Mesabi's ever-growing demands. (See Email from K. Morrison to M. Gustafson et al., Aug. 23, 2019, Cliffs' Ex. 2.) Mesabi filed its Motion before Cliffs could do so.

6.      Cliffs' Exhibit 1 to this Opposition outlines the offers that Cliffs would have proposed had Mesabi not abruptly terminated the parties' negotiations and filed its Motion. Exhibit 1 shows Cliffs' production offers to provide proportionate discovery that address the allegations in the Second Amended Complaint and cover all categories of Mesabi's Requests.

7.      Cliffs' proposals are not costless. Cliffs is committing to review two and a half more years of electronic documents and communications and collect four and a half more years of data to expand the scope of its productions by a meaningful—and proportionate—degree. If

the Court grants Mesabi further expanded discovery now, it would require a wholesale re-do of Cliffs' document collection, review, and production. Even Mesabi acknowledges this could cost "a few million dollars." (Mot. ¶ 37.) The unsupported speculation Mesabi offers about what it may find if allowed to fish still deeper does not justify the associated burden, setting aside that "eleventh-hour" requests like these are inappropriate. Cliffs' proposals in its Exhibit 1 should resolve the parties' disputes, and this Motion, if Mesabi were seeking discovery within any reasonable and proportional bounds.

8.      By contrast, Mesabi's Motion demands that Cliffs produce every document conceivably related to its operations, sales, contracts, and pricing, without regard for the actual allegations in the Second Amended Complaint or proportionality or burden considerations (except for a minor revision to the requested time period for some Requests). These demands are no different from the "admittedly broad, speculative, and sensitive discovery" that Mesabi's predecessor demanded from Cliffs under Fed. R. Bankr. P. 2004, seeking "all information, documents and internal communications relating to anything Cliffs personnel had to say about [Mesabi's] plant and business going back to 2007; Cliffs' customer data, and communications and pricing formulas." Letter Ruling, D.I. 355 at 2 (Sept. 21, 2016). This Court denied Mesabi's attempts to go on a "fishing expedition" because it "reflect[ed] [Mesabi's] vague hope and suspicion that the root of their troubles may lie in a competitor." Id. Three years later, Mesabi has offered no better explanation for why it should get access to that same information.

9.      Finally, Mesabi's focus on the quantity of Cliffs' production misses the point. Quantity does not equal quality. As already addressed in Cliffs' Reply to its Motion to Compel, Adv. D.I. 228 at ¶ 28, Mesabi produced thousands of irrelevant documents to inflate its document count. While Mesabi boasts that its production stands at over 500,000 documents,

Cliffs estimates perhaps only 10,000 useful documents buried in the chafe of, among other things, wildlife pictures, Linked-In invitations, and emails about which type of Walmart printer to put in an engineering trailer.[3] Cliffs' productions and its current offers, in contrast, are narrowly tailored to the needs of this case because they relate to actual allegations at issue.

10.      Mesabi's demands are late and excessive, and the Court should deny the Motion.

## II.    STATEMENT OF FACTS

11.      The stage for productive and efficient discovery in this case was set nearly a year ago. Between October 22, 2018, and February 8, 2019, the parties exchanged Rule 26(a) initial disclosures and negotiated, agreed upon,[4] and executed an ESI Protocol. The Protocol specified the search terms they would use to identify responsive documents (Exhibit C) and the custodians who files they would search for documents (Exhibit B). (See ESI Protocol, Cliffs' Ex. 7.)

12.      During that time, on January 10, 2019, Cliffs served timely responses to Mesabi's First Requests for Production of Documents. (Mot. Ex. D.) Cliffs then served timely responses to Mesabi's Second Requests for Production of Documents on April 27, 2019. (Mot. Ex. E.) Cliffs' Responses included a limited number of general objections that applied to each Request and specific objections to each Request that stated exactly what Cliffs would produce.

13.      In the absence of any objections by Mesabi, Cliffs conducted a multi-million dollar document review and production, consistent with its Responses and the agreed-upon search terms and custodians specified in the ESI Protocol. All told, Cliffs collected about 3.8 million documents from its custodians. Cliffs' document vendor then removed duplicate

---

[3]      MESABI00662651 (picture of a deer), MESABI00001197 (LinkedIn notification), MESABI00024684 (discussion regarding Walmart printer). Cliffs' Exs. 3, 4, and 5.

[4]      During those negotiations, Mesabi requested that Cliffs add its CEO, Lourenco Goncalves, as an identified custodian. On January 31, 2019, Cliffs agreed. (See Email from R. Faxon to J. Berman, Jan. 31, 2019, Cliffs' Ex. 6.)

documents, applied the agreed upon search terms from the parties' ESI Protocol, and applied the date limits stated in Cliffs' Responses (July 1, 2016 to August 1, 2018), which reduced the document count to about 160,000 documents.[5] Cliffs then spent more than 2,500 attorney hours from February to May reviewing those documents.

14.     Mesabi said nothing until its letter on April 19, 2019, less than a week before the parties' deadline to substantially complete document production. (Mot. Ex. F.) Mesabi's letter "detail[ed] five categories of deficiencies" and "miscellaneous deficiencies with other specific Responses." (Id.) Mesabi objected to Cliffs' agreement to produce publicly available documents rather than "all non-privileged documents"; Cliffs' objection to producing Glacier Park materials based on the Court dismissing those claims; Cliffs' cross-references to duplicative Requests where categories of documents overlapped; the narrowed timeframe to certain Requests; and other "miscellaneous" issues. (Id.) Mesabi's letter did not raise any issues with Cliffs' custodians that the parties agreed on in February.

15.     Cliffs responded to Mesabi's April letter on May 3, 2019. (Mot. Ex. G.) Cliffs informed Mesabi on May 10, 2019 that it substantially completed its productions based on Cliffs' Responses and its review of documents to date. In the interim, Cliffs initiated a teleconference with the Court about Mesabi's document productions and responses (the subject of Cliffs' pending Motion to Compel, Adv. D.I. 218 & 219). On the May 7 teleconference, Mesabi raised Cliffs' agreement to produce only publicly available documents as a "preview" of the issues it may raise with the Court following the meet-and-confer process.[6] Then nothing happened for

---

[5]     It is unclear how Mesabi arrives at its number of 2,113 duplicates given the steps Cliffs undertook to eliminate duplicate documents. Although some duplicates may exist as attachments to different emails, for example, Cliffs does not believe it produced anywhere near the duplicate number Mesabi claims.

[6]     May 7, 2019 Hr'g Tr. at 31:25 [Adv. D.I. 207].

two more months.

16.     On July 11, 2019, Mesabi sent a ten-page response letter to Cliffs.  (Mot. Ex. H.)
Cliffs told Mesabi on a July 23, 2019 meet-and-confer call regarding Cliffs' pending Motion to
Compel, and again on July 31, that Cliffs was reviewing and would respond to Mesabi's letter.
(Email from D. Kim to A. Joines, July 31, 2019, Cliffs' Ex. 8.)  Mesabi confirmed in a July 31
email that it understood Cliffs' position and would "look forward to [Cliffs'] final response."  Id.
Then on an August 13, 2019, Mesabi for the first time raised concerns regarding Cliffs' Second
Responses, more than three months after they were served.  (Mot. Ex. E.)

17.     Cliffs responded to Mesabi's July 11 and August 13 letters on August 20 and
August 21, 2019, respectively.  Cliffs agreed to participate in a meet-and-confer call the next day
regarding any disputes that may remain following Mesabi's review of Cliffs' letters.  (Mot. Ex. L
& M.)  On the August 22 call, Mesabi for the first time asked Cliffs to walk through each of
Mesabi's 127 Requests, explain what Cliffs agreed to produce, and respond to Mesabi's questions
about the scope and timeframe for each.  (Cliffs' Ex. 2.)  The parties spoke for several hours and
then re-convened on August 26.  At Cliffs' request, Mesabi provided a written account of its
asserted issues with each of Cliffs' Responses.  (Emails from A. Lattner and D. Kim to K.
Morrison, August 23 and 26, 2019, Cliffs' Ex. 9.)  When Mesabi filed this Motion, Cliffs was
still reviewing the asserted issues and preparing proposed resolutions.

18.     On August 20, 2019, Mesabi notified Cliffs (for the first time) in a separate letter
that it also wanted to expand the number of Cliffs' custodians beyond those previously agreed
upon in February.  At present, Mesabi seeks a total of 31 additional custodians (dropping one
from the letter and adding three others).[7]

---

[7]     Compare Mot. Ex. K with Mot. Ex. B.

### III.    ARGUMENT

#### A.    Rule 26, as amended, limits discovery to avoid abuse.

19.    "The scope of discovery is not without limits."  Westfield Ins. Co. v. Icon Legacy Custom Modular Homes, 321 F.R.D. 107, 111 (M.D. Pa. 2017).  Mesabi, as the party moving to compel, "bears the initial burden of proving the relevance of the material requested."  See, e.g., Novanta Corp. v. Iradion Laser, Inc., No. CV 15-1033-SLR-SRF, 2016 WL 4987110, at *2 (D. Del. Sept. 16, 2016).  To meet this relevance burden, Mesabi must tie its discovery requests to actual allegations in its Second Amended Complaint.  Fifth Third Bank v. Westwood Zamias Ltd. P'ship, No. 3:18-CV-143, 2019 WL 1170333, at *3 (W.D. Pa. Mar. 13, 2019).  Mesabi fails to meet this burden.  If it had, then the burden would shift to Cliffs "to establish that discovery of the material requested is inappropriate."  Id. at *2.  The party resisting discovery must explain with specificity why the requested discovery is inappropriate.  Id.

20.    The Rules no longer sanction the type of broad discovery that Mesabi asks the Court to order here.  Since the amendments in 2015, Rule 26 has provided that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b) (emphasis added).  Discovery that is "overly broad and unduly burdensome" or not "tailored to the issues involved in the particular case" is inappropriate.  Westfield Ins. Co., 321 F.R.D. at 111.

21.    Mesabi relies on a prior version of Rule 26 and outdated principles that no longer guide discovery.[8]  (Mot. ¶ 20.)  Mesabi cites numerous cases that apply either the "reasonably calculated" principle or the general "subject matter" discovery principle[9]—both inaccurate ways

---

[8]    Mesabi quotes the obsolete 2006 version of Federal Rule 26(b)(1).  The relevant language was amended in 2007 and again in 2015 to add the specific proportionality requirement.  (Apr. 29, 2015, eff. Dec. 1, 2015.)

[9]    SmithKline Beecham Corp. v. Apotex Corp., No. Civ.A.99-CV-4304, 2006 WL 279073, at *3 (E.D. Pa. Jan. 31, 2006) ("reasonably calculated"); In re Intel Corp. Microprocessor Antitr. Litig., No. 05-1717-JJF, 2007 WL 137152, at *8 (D. Del. Jan. 12, 2007) ("reasonably calculated"); In re MiMedx Grp. Secs. Litig.,

to define relevance after the 2015 amendments, which reaffirmed that the scope of discovery depends on the actual allegations in the case. Fifth Third Bank, 2019 WL 1170333, at *3; Boehringer Ingelheim Pharma GMBH & Co. KG v. Teva Pharm. USA, Inc., No. CV 14-7811 (MLC), 2016 WL 11220848, at *3 (D.N.J. Aug. 5, 2016) (recognizing amendments deleted "the former provision authorizing the court, for good cause, to order discovery of any matter relevant to the subject matter involved in the action" and denying motion to compel). Courts reject attempts to rely on pre-December 2015 cases to seek expansive discovery as "inappropriate," noting specifically that Mesabi's lead-off case on relevance, Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (see Mot. ¶ 20), is no longer applicable "for the purpose of construing the scope of discovery under amended Rule 26(b)(1)." Cole's Wexford Hotel, Inc. v. Highmark Inc., 209 F. Supp. 3d 810, 823 (W.D. Pa. 2016) (reviewing amendments' history).

22.    The proportionality requirement is not met merely by alleging "antitrust" and high damages. Proportionality determinations are to be made on a case-by-case basis using the factors listed in Rule 26(b)(1), and "no single factor is designed to outweigh the other factors." Capetillo v. Primecare Med., Inc., No. 14-2715, 2016 WL 3551625, at *2 (E.D. Pa. June 29, 2016) (limiting time and scope). A party can "run afoul of the rule of proportionality" by demanding "decades worth of documents that are unrelated to the specific . . . concerns described in th[e] lawsuit" and delaying objections to the more limited scope. Eddowes v. Dir., State Dep't of Corr., No. 3:18-CV-125, 2018 WL 6413652, at *3 (M.D. Pa. Dec. 6, 2018); see also Boehringer, 2016 WL 11220848, at *5 (denying motion for expanded production as

---

No. 15-84-RGA, 2015 WL 5445140, at *4 (D. Del. July 17, 2015) (stating that "discovery requests may be deemed relevant if there is any possibility that the information may be relevant to the general subject matter of the action") (emphases in original); In re Folding Carton Antitr. Litig., 83 F.R.D. 251, 254 (N.D. Ill. 1978) ("subject matter of the action"); Fisher v. Borden, Inc., No. 92-4306 (JFG), 1994 U.S. Dist. Lexis 21271, at *9 (D.N.J. Jan. 12, 1994) (stating Rule 26(b)(1)'s "key phrase" is "relevant to the subject matter involved in the pending action," relying on Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).

disproportional given its "marginal relevance," "burden likely associated with its production, and the five month delay in . . . raising any objection to the time limitation").

23.    That this case includes antitrust claims does not relieve Mesabi's burden to establish relevance and proportionality.  Mesabi concedes that granting its Motion could cost Cliffs "a few million dollars."  (Mot. ¶ 37(2).)  The ever-escalating costs of abusive antitrust discovery motivated the Supreme Court to tighten Rule 12's pleading requirements.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 546 (2007) ("It is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive.").  "[I]n the wake of Twombly courts have limited the subject matter scope of discovery to evidence concerning only specific products and entities that a plaintiff identifies in its complaint."  Inline Packaging, LLC v. Graphic Packaging Int'l., Inc., No. 15-CV-3183 (ADM/LIB), 2016 WL 7042117, at *6 (D. Minn. July 25, 2016).

24.    The Inline case Mesabi cites illustrates this point.  There, the plaintiff in an antitrust and tortious interference case moved to compel discovery that exceeded the bounds of its complaint so that it could find facts and then try to fit those facts to its desired claims, like Mesabi does here.  Specifically, the plaintiff sought "discovery concerning . . . instances of conduct for which [plaintiff] has not already provided specific allegations in its Complaint," arguing "that it is not required to identify" the specific topics on which it sought discovery "without the benefit of taking discovery because it needs discovery to determine which . . . instances of conduct relate to its claims."  Id. at *5.  The court disagreed and limited the requested discovery to only anticompetitive conduct specifically alleged.  The court recognized that Twombly "[c]ite[d] a need to cabin the trend towards expensive and burdensome antitrust discovery" and that amended Rule 26(b)(1) "clarif[ies] that the scope of discovery is limited to

evidence that is relevant to claims or defenses already existing in the case." Id. at *5–6.  For an antitrust and tortious interference case, like here, the scope is limited to the particular "entities and instances of anti-competitive conduct specific[ally] alleged in support of the claims or defenses identified in the pleadings." Id. at *6.

**B.      Cliffs set reasonable discovery limits from the outset that follow the proportionality requirements of the Rules.**

25.      Mesabi's arguments that Cliffs' Responses are improper ignore the principles that underlie discovery under the amended Rules: discovery is not limitless, parties can raise legitimate objections to disproportionately broad requests, and parties are to work cooperatively to try to reach a reasonable compromise on the scope of discovery. See, Fed. R. Civ. P. 26(b)(1); Del. Bankr. L.R. 7026-1(a).  Mesabi asserts that Cliffs "unilaterally rewrote the Requests" to "only produce a narrow set of documents responsive to its artificially restricted version of the request" and that its Responses "are unclear about what documents it is actually producing . . . because the responses frequently refer back to prior responses." (Mot. ¶¶ 9, 23.)  Not so.

26.      Cliffs never hid or "strategically excluded" anything with its Responses. (Mot. at 2–3, ¶¶ 19, 39–40.)  The exact opposite is true—Cliffs stated specifically what it would search for and produce and how and why the scope of Mesabi's Requests should be narrowed based on Cliffs' objections.  Cliffs' Responses set forth clear answers regarding what Cliffs would provide. (Mot. Exs. D, E.)  Mesabi should not be surprised by the content of Cliffs' productions, as Cliffs stated exactly what documents it would provide and any scope limitations (id.), and the parties negotiated the search terms to be applied with the ESI Protocol (see Cliffs' Ex. 7).

27.      Cliffs further explained to Mesabi during the meet-and-confer process that "Cliffs did not restrict the scope of its review or production based on the fact that a requested category of documents is duplicative." (Mot. Ex. L at 7–8.)  Mesabi concedes that its Requests contain "a

good deal of overlap" (Mot. Ex. F at 2) and that several Requests ask for slight variations of the exact same types of information using different words or phrases (Mot. ¶¶ 7(1)–(7), 9 n.7). Where requests overlap or seek duplicative information, all documents responsive to one overlapping or duplicative request also would be responsive to the other.

28.    Cliffs' Responses and its positions in the attached Exhibit 1 are tailored to the identified entities and actual allegations and time periods in the Second Amended Complaint; Cliffs properly objected to discovery beyond that scope. This is all the Rules' proportionality requirement and the Supreme Court's guidance both allow and require. See Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 34(b)(2)(C) (requiring party to "state whether any responsive materials are being withheld on the basis of [an] objection" and allow production of unobjectionable documents); Twombly, 550 U.S. at 546; Fifth Third Bank, 2019 WL 1170333, at *3; Rowan v. Sunflower Electric Power Corp., No. 15-cv-9227-JWL-TJJ, 2016 WL 3743102, at *5 (D. Kan. July 13, 2016) ("An objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been 'withheld.'").

**C.    Cliffs' proposed compromise positions account for the needs of this case and are proportional.**

29.    Mesabi asserts that it has not received sufficient discovery covering "(i) Cliffs' dealings with vendors and other third parties; (ii) information related to the market for iron ore pellets; (iii) Cliffs' analysis of potential competition, pricing, other data relevant to Cliffs' market share; and (iv) information related to Cliffs' non-public strategies and plans to prevent competitors – and Mesabi in particular – from entering the Great Lakes market." (Mot. ¶ 37(5).) Yet, instead of engaging in a reasonable discussion with Cliffs to see if the parties could agree upon a reasonable scope of discovery that would provide this information, Mesabi took a scorched-earth approach to the parties' negotiations. Mesabi insisted on nothing short of "all

responsive non-privileged documents," as it does in the Motion. That is inappropriate for the overwhelming majority of the Requests at issue, which overlap, are not specifically tailored to the allegations in this case, and seek essentially every document in Cliffs' business.

30.    Mesabi is not entitled to <u>all</u> documents concerning Cliffs' business, because such requests amount to nothing more than an unacceptable attempt either "to cast a wider net with the apparent hope that, with it, [Mesabi will] uncover direct evidence of conspiracy," <u>In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.</u>, 801 F.3d 758, 766 (7th Cir. 2015), or to get a look at how an operational mining company actually is run. The Rules prohibit the use of discovery to explore amorphous potential claims rather than to test the allegations actually made in the litigation. <u>Lafate v. Vanguard Grp., Inc.</u>, No. 13-cv-5555, 2014 WL 4384510, at *7–8 (E.D. Pa. Sept. 5, 2014). "Discovery should not serve as a fishing expedition." <u>Id.</u>

31.    Cliffs is prepared to provide a reasonable, proportional amount of additional discovery to meet Mesabi's asserted discovery needs within the limits of the Rules. Cliffs' full proposals outlined in its Exhibit 1, which it was preparing when Mesabi pre-emptively filed its Motion, properly limit the production of documents to categories related to the actual allegations and relevant entities. Cliffs' proposed resolutions will provide documents and information covering all categories of Mesabi's Requests that it asserts are lacking.[10] Further explanations of Cliffs' compromise positions for the issues raised in the Motion are below.

### 1.    Cliffs' proposed timeframe covers the actual allegations in this case.

32.    Where, like here, the "Complaint's allegations were limited [in] timeframe," a motion to compel seeking materials outside that timeframe should be denied as "beyond the scope of discovery." <u>Fifth Third Bank</u>, 2019 WL 1170333, at *3. Mesabi's Requests originally

---

[10]    Cliffs' slightly different and smaller groupings are consistent with its Responses to the Requests and the meet-and-confer correspondence and cover all the purported concerns in Motion ¶¶ 23–31 and 37(5).

sought information for a more than seven-year period, January 1, 2012 through the "present," with limited exceptions, notwithstanding that its allegations focus on the alleged impact of Cliffs' conduct on Mesabi once it entered bankruptcy (on July 8, 2016) and following confirmation of its Plan (on June 13, 2017). Cliffs stated in its Responses that it would limit its productions to the time period covering the relevant allegations in the Second Amended Complaint as more proportional to the needs of this case: from July 8, 2016, the petition date, to August 1, 2018, the beginning of the month immediately following this Court's July 23, 2018 decision on the parties' Partial Motions for Summary Judgment, almost a year into this litigation.

33.     Mesabi now seeks to have the general time period established as "January 1, 2014 to the present for [its] requests regarding communications with third parties"; as "January 1, 2012 through the present" for "transactional data and a few other discrete categories such as Cliffs' contracts"; and from January 1, 2007 to the present for documents and communications related to life of mine issues in Minnesota. (Mot. ¶¶ 33–34.) Mesabi offered these reduced timeframe demands for the first time during the parties' August 22 meet-and-confer discussion, and Cliffs agreed to consider the revised timeframes. (Cliffs' Ex. 2, Mot. Ex. N.)

34.     Cliffs is willing to agree to most of Mesabi's revised timeframe demands, with a few exceptions. Cliffs' proposed resolutions include applying the requested uniform start date of January 1, 2014 for custodian documents and communications (internal and with third parties) and the requested uniform start date of January 1, 2012 for transactional data and Requests that can be satisfied with a discrete set of data or documents, to the extent available. Cliffs also proposes to produce corporate-level documents back to January 1, 2007 related to life of mine issues in Minnesota as requested, to the extent available. The ending date for Cliffs' production agreements remains August 1, 2018. (Cliffs' Ex. 1 at 1.)

35.    The only remaining dispute over the start date for discovery is the extent to which Mesabi's requests for "all documents and things" seek individual custodian documents and communications back to January 1, 2012 for Request Nos. 5, 6, 7, 8, 15, 16, 17, 19, 82, 86, 89, 90, 91, 97, 98, 105, 106, 107, 108, 111, 112, 113, 114, and 115, as Mesabi's Exhibit A indicates. Mesabi's citation to the allegation in paragraph 44(h) of the Second Amended Complaint—that Cliffs flew aircraft over the Project in 2014—does not justify extending discovery into individual custodian documents and communications beyond January 1, 2014. Mesabi's position is further undercut by the fact that the person it alleges to have spearheaded Cliffs' anticompetitive actions, Cliffs' CEO Lourenco Goncalves, did not join Cliffs until August 2014. For these reasons and those discussed below, <u>infra</u> Section D.2, collecting and searching for responsive individual custodian documents and communications back to January 1, 2012, is disproportionate.

36.    As for the ending date, Mesabi provides no support for its insistence that discovery must include documents after August 1, 2018 or "to the present." Forward-looking documents are not relevant because there are no specific allegations in the Second Amended Complaint about ongoing conduct. Mesabi's references to other antitrust cases that allowed a generally broad scope of discovery. The discovery sought in each of those cases <u>pre-dated</u> the complaint or the alleged start of anticompetitive activity and "specific factual allegations or other specific indications in the record" justified expanding the time period. <u>Inline</u>, 2016 WL 7042117, at *6 (allowing discovery pre-dating complaint back to alleged market entry).[11] Despite general allegations of future harm and a purported need for "prompt action . . . to

---

[11]    <u>See also</u> <u>Kellam Energy, Inc. v. Duncan</u>, 616 F. Supp. 215, 218 (D. Del. 1985) (allowing discovery before statute of limitations period based on specific allegations); <u>New Park Entertainment L.L.C. v. Elec. Factory Concerts, Inc.</u>, No. Civ.A. 98–775, 2000 WL 62315, at *3 (E.D. Pa. Jan. 13, 2000) (allowing discovery pre-dating complaint based on allegations that conspiracy began years earlier); <u>In re Folding Carton</u>, 83 F.R.D. at 254 (allowing discovery pre-dating complaint from years before and after alleged conspiracy); <u>Maritime Cinema Serv. Corp. v. Movies En Route, Inc.</u>, 60 F.R.D. 587, 590 (S.D.N.Y. 1973) (allowing discovery on conduct pre-dating complaint when alleged damages occurred).

remediate harm caused by the Defendants to date, prevent jeopardy to the confirmed Plan and the success of the Reorganized Debtor, and avoid future damage to Mesabi and its current and former creditors that could result from Cliffs' established course of conduct" (2d Am. Compl. at 5, Adv. D.I. 18), Mesabi has never sought an injunction to stop any alleged continuing conduct, reflecting the irrelevance of post-complaint documents.

37.    Cliffs' proposed timeframe limit is reasonable and will avoid unnecessary collection and review of materials that post-date the Second Amended Complaint by more than two years and are unlikely to yield new, unique documents. The Third Circuit cautions that courts are required to limit discovery if what is sought is "unreasonably cumulative or duplicative." Public Serv. Elec. & Gas Co. v. Newport Assocs. Dev. Co., No. 16-8445, 2019 WL 4010780, at *4 (D.N.J. Aug. 26, 2019). Cliffs' proposed timeframe covers the actual allegations in this case. Mesabi's Requests for more recent documents should be denied.

### 2.    Cliffs' proposal provides relevant and proportional discovery covering Competition and Market topics.

38.    Mesabi asserts that thirty-four of its Requests seek documents relating to the market or competition and "other issues." (Mot. ¶ 23, n.21.) In its Responses, Cliffs committed to produce documents covering each of these Requests, with the exception of wholly objectionable Requests based on legal conclusions (Nos. 86, 95, 96). Noting the overlap among many of these Requests, Cliffs' Responses stated it would produce, among other things, non-privileged documents "concerning competition for sales of iron ore pellet products produced by Cliffs in the United States and concerning competitors for the sale of Cliffs' iron ore pellet products in the United States." (Mot. Ex. D, Cliffs' Response to Request No. 6.) Mesabi now seems to claim it is unsure whether Cliffs will produce sufficient documents covering the scope

sought, but otherwise does not explain why Cliffs' prior offers were insufficient.[12]   (Mot. ¶ 24.)

Cliffs explained the scope of its Responses to each of these thirty-four separate Requests during

the parties' meet-and-confer and committed to consider Mesabi's requests to expand the scope.

39.     Cliffs is prepared to offer to produce documents and communications that cover

each of the categories within Mesabi's thirty-four Requests, as explained in Cliffs' Ex. 1 at 2–6,

which breaks these Requests into more defined subgroups as follows:

    a.   Competition and Market Share (Request Nos. 5–8, 17, 75, 87–91, 97, 98, 111, and 114).

    b.   Pricing (Request Nos. 9, 12, 16, 19, and 29).

    c.   Iron Ore Production, including Costs, Profit, Capacity, and Facilities (Request Nos. 10, 79, 116, and 118).

    d.   Iron Ore Sales and Revenue Data (Request Nos. 11 and 13–15).

    e.   Iron Ore Customers, including the identification, retention and solicitation of customers for Iron Ore Pellets or HBI (Request Nos. 112 and 113).

    f.   Agreements with Customers or Third Parties (Request Nos. 20, 120, and 121).

40.     Cliffs' offer thus will provide documents related to the market or any analysis by

Cliffs about competition in the market, as requested by Mesabi.  (Mot. ¶ 23.)  Generally

speaking, Cliffs' proposal will provide documents and communications related to these topics

from the custodians from January 1, 2014 to August 1, 2018, and data and other discrete sets of

documents sought in these categories from January 1, 2012 to August 1, 2018.  As already

---

[12]   Mesabi's cases that say market-related documents generally are relevant in antitrust cases are dated and inapposite to the parties' dispute, which is about scope, not relevance.  (See Mot. Ex. F & H.)  Even so, these cases do not support discovery "beyond the market as defined in the complaint" (Mot. ¶ 24), as market definition was not at issue in most of these cases.  See In re Intel Corp., 2007 WL 137152, at *8 & n.11 (recognizing the "parties do not dispute[] the relevant geographic market," "[i]t is unclear whether there is a real dispute as to the relevant product market," and "[n]owhere in its opposition to [the] motion to compel does [the opposing party] challenge . . . the relevant market"); SmithKline, 2006 WL 279073, at *3 (void of any comment on market definition; recognizing that because "communications between a corporation and a standard-setting organization can form the basis of antitrust claim" in the pharmaceutical industry, "[t]he mere fact that [those organizations] are foreign entities should not preclude [the] discovery").  Mesabi's reliance on Kellam Energy, Inc. v. Duncan, 616 F. Supp. 215, 218 (D. Del. 1985), (Mot. ¶ 24) is misplaced.  The court in Kellam only expanded discovery regarding the relevant market from local to regional.  Cliffs does not dispute that regional discovery is appropriate here.

explained above, Mesabi's general request for competition and market-related documents back to 2012 rather than 2014 is not proportional to the needs of this case.

### 3.    Cliffs' proposal provides relevant and proportional discovery covering Pricing topics.

41.    Mesabi separately discusses its Requests regarding pricing.  (Mot. ¶ 25.)  Mesabi's recounting of the parties' meet-and-confer on these Requests and Cliffs' offers, however, misrepresents what Cliffs already explained and agreed to produce or consider.  Cliffs' proposed agreements to produce documents related to Cliffs' and others' pricing—documents and communications related to these topics from the individual custodians from January 1, 2014 to August 1, 2018, and data and other discrete sets of documents sought in these categories from January 1, 2012 to August 1, 2018—will cover Mesabi's Requests for pricing-related documents. (Cliffs' Ex. 1 at 4.)  Any insistence that Cliffs produce more in the form of "price lists," "pricing plans," or "pricing policies" reflects Mesabi's refusal to accept that such documents do not exist, ███████████████████████████████████████ (Mot. Ex. A at 10, 17, 21–22.)  As discussed, forward-looking discovery on these topics is neither relevant nor proportional to why Mesabi says its needs price-related documents: to determine whether Cliffs' pricing decisions were inspired by an anticompetitive motive.  (Mot. Ex. A at 6–7.)  If that were true, which Cliffs denies, Cliffs' offer to produce price-related custodian communications and documents from January 1, 2014 to August 1, 2018 would encompass any such documents.

### 4.    Cliffs' proposal provides relevant and proportional discovery covering Production and Profit Data.

42.    Mesabi argues that its Request Nos. 10 and 11 ask for "production/profit data," showing "Cliffs' iron ore production, capacity, capacity utilization, costs, profits and margins and related information" that are necessary to show "Cliffs' monopoly power in the region." (Mot. ¶ 27, Ex. A at 7.)  The language of Mesabi's Request Nos. 10 and 11, and the related Request

Nos. 13, 15, 116, and 118, however, ask only for "documents and data . . . sufficient to show" this information.  (Mot. Ex. D, Mesabi's Requests at 18.)  Cliffs' Responses, in an attempt to provide discovery proportional to the actual needs of the case, agreed to produce documents that would be "sufficient to show" the information sought, including publicly available documents for Request Nos. 10, 11, 15, and 118 specifically.  (Mot. Ex. D, Cliffs' Responses at 19–20; Mot. Ex. E, Cliffs' Responses at 15.)  During the meet and confer process Mesabi never explained why Cliffs' production would not be "sufficient to show" this information.  Mesabi's Motion adds only that it "does not believe that publicly available data will be sufficiently detailed."  (Mot. ¶ 27.)

43.    Nevertheless, Cliffs proposes to produce monthly capacity and financial information from 2012–2018, sales forecasts and business plan documents from 2012–2018, transactional data for customer purchases from 2012–2018, and Cliffs' custodian communications and documents from January 1, 2014 to August 1, 2018 related to Cliffs' business operations, strategies, and plans concerning its mining activities in the United States, including sales, revenue, production, costs, profit, capacity, facilities, or financials.[13]  (See Cliffs' Ex. 1 at 5–6, 14.)  This offer meets the Motion's request to see this data from 2012 forward and on a monthly basis where appropriate.  (Mot. ¶ 27.)  Cliffs maintains its objections to produce data and documents from August 1, 2018 through the present, as stated above.

### 5.    Cliffs' proposal provides relevant and proportional discovery covering Mesabi and its relationship with Third Parties.

44.    Mesabi requests all communications regarding Mesabi with any third parties or internal to Cliffs, claiming that "Mesabi cannot know all of the parties with whom Cliffs interfered—that is the purpose of discovery."  (Mot. ¶ 28.)  But "[t]he discovery rules are

---

[13]    Cliffs groups these Requests into two separate categories for Iron Ore Production and Iron Ore Sales and Revenue Data.

designed to assist a party to prove a claim that it reasonably believes to be viable <u>without discovery</u>, not to find out if it has any basis for a claim." <u>MacDermid Printing Sols., L.L.C. v. E.I. du Pont de Nemours & Co.</u>, No. 07–4325 (MLC), 2008 WL 323764, at *1 (D.N.J. Feb. 5, 2008) (emphasis in original) (internal quotation omitted). Nevertheless, before Mesabi's Motion, Cliffs was prepared to offer all communications with third parties <u>regarding Mesabi</u> and internal communications <u>regarding Mesabi</u> from January 1, 2014 to August 1, 2018, shown in Cliffs' Ex. 1 in the following groupings:

    a.  Mesabi itself (Request Nos. 26, 59, 60, 64, 83, 84, and 94–96).

    b.  Third Party Vendors (Request Nos. 48–58, 61–63, 124, and 125).

    c.  Minnesota State Government (Request Nos. 31–41, 78, 92, and 93).

    d.  Mesabi's Lenders (Request Nos. 42–47).

    e.  ArcelorMittal (Request Nos. 27 and 28).

    f.  ERP, Magnetation, or Miranda (Request Nos. 30 and 65).

45.    Mesabi states it needs these documents for its "allegations that Cliffs interfered with Mesabi's relationship[s]." (Mot. Ex. A at 34.) To the extent that any such interference actually happened, which Cliffs denies, Cliffs' proposed offer meets Mesabi's requests, with the exception of the most recent period, which remains objectionable for the reasons stated above.

**6.    Cliffs' proposal provides relevant and proportional discovery covering Glacier Park-related topics.**

46.    Mesabi's Requests seek <u>all</u> documents relating to Glacier Park concerning a wide array of topics because Mesabi argues it could use such documents to pursue its antitrust claims and establish an unlawful purpose for a lawful transaction. (Mot. Ex. A at 46 (claiming such documents will show Cliffs' anticompetitive purpose)). Mesabi's Requests seek documents that far exceed the scope of the specific antitrust-related allegation, however, and its demands for production are inconsistent with the Court's dismissal of claims related to Cliffs' purchase of land rights from Glacier Park because this Court's decision on the parties' cross-motions for Partial

Summary Judgment last July properly narrowed that dispute. Adv. D.I. 98. Cliffs initially did not produce documents regarding the Glacier Park transaction on these bases.

47.     Mesabi's arguments regarding the Glacier Park underscore how Mesabi is litigating with scorched earth tactics rather than any reasonable approach to what discovery it actually needs to support its remaining claims. Nevertheless, before Mesabi preemptively moved on this issue, Cliffs was prepared to offer Glacier Park-related custodian communications and documents from January 1, 2014 to August 1, 2018. (Cliffs' Ex. 1 at 12.) Cliffs maintains it is not necessary to produce any documents post August 1, 2018, a date that is _after_ the Court's decision on the Glacier Park transaction. Communications with Glacier Park post August 1, 2018, cannot be relevant to Mesabi's claims regarding that transaction in the fall of 2017.

### 7.     Cliffs' proposal provides relevant and proportional discovery into Cliffs' Board Minutes.

48.     Mesabi concedes that Cliffs agreed to produce relevant board minutes (Mot. ¶ 30 n.23), but Mesabi wants more. Mesabi's broad Request for "[a]ll of Cliffs' board minutes from any Cliffs' entity meeting from January 1, 2012 to the present" is emblematic of Mesabi's approach to discovery—asking for "all documents" without narrowly tailoring its Request to what it actually needs to prove its case. (Mot. Ex. D Request No. 3.) Mesabi's argument that such minutes show "Cliffs' corporate thinking and motives" that will prove "Cliffs' conduct towards the market" (Mot. ¶ 30), does not entitle it to all of Cliffs' board minutes, which contain some of the most sensitive and confidential information to business operations and future plans and cannot be shared wholesale with an admitted competitor.

49.     Cliffs is producing non-privileged board minutes that concern Mesabi _or_ the allegations in the Second Amended Complaint from January 1, 2014 to August 1, 2018. (Cliffs' Ex. 1 at 13.) Mesabi states that Cliffs cannot limit the board minutes to the specific third-parties

named in Mesabi's Second Amended Complaint.   (Mot. ¶ 30 n.23.)  Mesabi ignores that Cliffs'

offer will also provide board minutes related <u>to Mesabi itself</u>.  If any board minutes reflect any

interference <u>with Mesabi</u>, they will be produced.  Cliffs' offer is proportional for this case, as it

will produce documents related to Mesabi or the actual allegations.   Mesabi is not entitled to <u>all</u>

of Cliffs' sensitive business information, including information that is unrelated to its allegations.

### 8.    Cliffs' proposal provides relevant and proportional discovery into Cliffs' business.

50.    Mesabi asserts that Cliffs is refusing to produce "highly relevant documents"

related to third party contracts and other aspects of Cliffs' business requested in twenty-four

separate Requests.  (Mot. ¶ 31.)  This is an inaccurate representation of Cliffs' Responses and its

positions during the parties' meet-and-confer discussions.   Regardless, Cliffs' proposed offers

satisfy the categories of materials sought in these Requests.  (<u>See</u> Cliffs' Ex. 1 (Request Nos. 20,

120, 121 (<u>see</u> Agreements with Customers or Third Parties); Nos. 21–25, 115, 117 (<u>see</u> HBI);

No. 27 (<u>see</u> ArcelorMittal);  No. 78 (<u>see</u> Minnesota State Government);  No. 79 (<u>see</u> Iron Ore

Production);  Nos. 80–82, 105–108 (<u>see</u> Iron Ore Mine Planning / Exhaustion);  Nos. 99, 100 (<u>see</u>

Mesabi's Bankruptcy);  Nos. 124, 125 (<u>see</u> Third Party Vendors)).)

### 9.    Cliffs' proposal provides relevant and proportional discovery into Cliffs' Antitrust Policies.

51.    Mesabi also demands "all documents and things" related to Cliffs' antitrust

policies or "any allegation by any person" of anticompetitive conduct, including communications

about an antitrust policy, or drafts of the policy, to look for "evidence regarding potential

antitrust violations" or general "anticompetitive intent and conduct." (Mot. ¶ 31, Ex. A at 58–59

(Request No. 85), 74–75 (Request No. 109).)  First, Cliffs agrees to produce its antitrust policies

that were in existence from 2012–2018.   (Cliffs' Ex. 1 at 15.)  Second, the requests for drafts of

the policy and communications related to the policy or potential complaints are objectionable as

seeking privileged information and based on rank speculation not tied to specific allegations in this case. Mesabi's relevance explanations essentially ask for any document or communication where the word "antitrust" is mentioned to look for "potential antitrust violations." (Mot. Ex. A at 74–75; see also id. at 58.) This discovery is improper, as courts reject the use of evidence of other potential, or even proved, antitrust violations to support a later antitrust case absent a link between the prior anticompetitive conduct and the conduct alleged, which Mesabi does not have. See, e.g., In re Chocolate Confectionary Antitrust Litig., 801 F.3d 383, 402–07 (3d Cir. 2015) (following In re Elevator Antitrust Litig., 502 F.3d 47 (2d Cir. 2007), and leading treatise).

> **D.    To the extent Mesabi's Requests exceed the scope of what Cliffs proposes to produce, the Requests are not proportional to the needs of this case.**

52.    Mesabi wants the Court to ignore the Rules and order Cliffs "simply [to] produce all responsive non-privileged documents for each request." (Mot. ¶¶ 19, 33.) This is not reasonable. Mesabi's Requests seek "all communications with" several entities (many unnamed) and "all" documents relating to general topics that pry into every aspect Cliffs' confidential business strategy for the last seven years and on an ongoing basis. The concepts described in Mesabi's Requests permeate nearly every facet of Cliffs' business. If read as broadly as Mesabi suggests, every document Cliffs maintains could be considered responsive to one or more of these Requests. Cliffs would need to review literally millions of documents, most of which it would need to produce, if it responded to these Requests as written. Still, Mesabi has refused to propose an alternative. Cliffs is willing to produce documents relevant to the actual allegations in the Second Amended Complaint. With everything that Cliffs is prepared to produce, the remainder of the discovery requested in Mesabi's Motion is excessive, intrusive, and extremely burdensome, placing it outside the scope of the Rules.

> **1.    Mesabi's Requests ignore the requirement that discovery must be relevant and not overbroad.**

53.     Relevance is a longstanding, mandatory requirement for discovery, not just a suggestion. See EEOC v. Univ. of Pa., 850 F.2d 969, 979 (3d Cir. 1988) ("Perhaps the single most important word in Rule 26(b) is 'relevant' for it is only relevant matter that may be subject to discovery."). As discussed, Cliffs is willing to agree to produce additional documents sought in Mesabi's Requests that are relevant and reasonable in scope. Mesabi's stated scope of what is "relevant" for each of its Requests, however, amounts to any data, document, or communication concerning Cliffs' business over the last five to seven years based on the possibility it could show anticompetitive behavior. This scope goes beyond the allegations in the Second Amended Complaint, which makes it overly burdensome and disproportional because, at a minimum, it is unrelated to any potentially relevant information.

54.     Discovery is not limitless, and courts routinely reject requests like Mesabi's for "all" documents as not narrowly tailored or proportional. Novanta Corp., 2016 WL 4987110, at *4 (denying motion to compel). Even when "there is the potential that some corporate records will help Plaintiff to establish [its] claims, the document request[s]" must be "narrowly tailored or proportional to the . . . claims in the pending suit," not seeking "general corporate documents" or "covering all aspects" of the party's business. Id. Requesting "every corporate record is in itself overbroad and burdensome." Id.; see also Arena v. RiverSource Life Ins. Co., No. 2:16-CV-5063-JLL-SCM, 2017 WL 6513056, at *6 (D.N.J. Dec. 19, 2017) (denying requests for all documents "relating to the general way in which [a party] conducts its business" which could "be read to demand every document [it] has ever produced during the conduct of its . . . business").

55.     Short of providing every document in its business, Cliffs cannot tell what Mesabi would accept, making these Requests overbroad. "A request is overly broad on its face 'if it is couched in such broad language as to make arduous the task of deciding which of numerous

documents may conceivably fall within its scope.'" <u>Williams v. CoreCivic, Inc.</u>, No. 17-CV-2310, 2018 WL 3075867, at *2 (D. Kan. June 21, 2018) (internal quotation marks omitted).

56.    Mesabi does nothing to tie precedent granting broad discovery in certain antitrust actions to the actual monopoly and interference allegations in this case. (<u>See</u> Mot. ¶¶ 20–21.) Repetitive citations to outdated antitrust cases do not allow Mesabi to seek discovery beyond what is proportional and relevant to the needs of this specific case. <u>See, e.g.</u>, Fed. R. Civ. P. 26(b)(1); <u>Inline</u>, 2016 WL 7042117, at *6 (recognizing amendments to Rule 26 "clarify that the scope of discovery is limited to evidence that is relevant to the claims or defenses already existing in the case"). Mesabi never says why this case needs the additional broad discovery covering every aspect of Cliffs' business, and its failure to explain that relevance is fatal to its Motion. <u>See</u> <u>Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.</u>, No. 214-CV-1327, 2018 WL 1704787, at *4 (D.N.J. Apr. 9, 2018) (denying request for discovery in antitrust matter where moving party did not establish relevance to specific action).

57.    Further, Mesabi's requests for communications with any entity with which Cliffs has ever done business, even if not named in the Second Amended Complaint, are improper. (Mot. ¶ 28.) Discovery in adversary proceedings is not a sanctioned "fishing expedition" that allows Mesabi to collect broad categories of documents and then try to find something that might fit a case theory it could pursue in any potential antitrust case in the abstract. <u>See, e.g.</u>, <u>In re Grabis</u>, No. 13-10669-JLG, 2018 WL 6132045, at *13 n.32 (Bankr. S.D.N.Y. Nov. 20, 2018) ("Courts have held that litigants may not use discovery under Rule 26 to engage in 'fishing expeditions' in order to find support for baseless or speculative allegations."). "Phrased differently, 'fishing expeditions' in discovery are prohibited because the information being sought is ultimately not 'relevant.'" <u>BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.</u>, No. 15

C 10340, 2018 WL 946396, at *4 (N.D. Ill. Feb. 20, 2018) ("Unless the requestor can

demonstrate that the materials sought are relevant, judges should not hesitate to exercise

appropriate control over the discovery process.").

### 2.    Granting Mesabi's Requests in their entirety now would be overly burdensome.

58.    An "'eleventh-hour' request[] to enlarge the scope and timeframe of discovery" is

inappropriate. Westfield Ins. Co., 321 F.R.D. at 118.  Courts deny motions "tainted by

timeliness concerns" based on burden, such as when "certain of the requested evidence stems

from responses made nearly one year prior to the filing of the motion to compel." Id.

59.    Mesabi's delay until this stage of the case to insist that discovery must include

"all" materials as originally requested greatly adds to Cliffs' burden.  Prior to any objections by

Mesabi, Cliffs was well into its document review.  To date, Cliffs has spent over $1 million on

its document collection and review, which included reviewing 158,961 documents collected

from the current custodians that were within the timeframe specified in Cliffs' Responses and hit

on the agreed-upon search terms.  Cliffs is prepared to go further to collect and review the

materials needed to meet the additional production offers in its proposals in Cliffs' Ex. 1.  Cliffs'

compromise positions, including large collections of transaction data and an expanded scope and

timeframe for individual custodian documents and communications, would add at least 260,000

documents, requiring at least 5,000 hours of attorney time and at least $830,000 in additional

costs.[14]  All in, Cliffs will have spent nearly $2 million to satisfy Mesabi's fact discovery

requests within the scope of what Cliffs has agreed to produce.

---

[14]    The initial costs to collect and process materials from the current individual custodians will not be incurred again.  Materials within the initial July 8, 2016–August 1, 2018 timeframe that hit on the agreed-upon search terms were issue-tagged with general responsiveness categories as part of the initial review and should require mostly second-level reviews for relevance and privilege.  Other materials will require first-level reviews for responsiveness, privilege, and confidentiality, followed by second-level reviews.

60.     To expand the scope of fact discovery even further and comply with the full scope of Mesabi's Requests for "all communications with" certain entities and "all documents" relating to general topics would require thousands of additional attorney hours and significant associated costs. Cliffs would need to re-review collected materials for first-level responsiveness and confidentiality, followed by second-level reviews for relevance and privilege. The cost for this endeavor would exceed Cliffs' $830,000 estimate associated with its compromise position, even without considering the costs and time required to collect, process, and review materials from additional document custodians. The costs associated with reviewing materials for each additional custodian likely would be over $100,000 per custodian. Expanding the scope of discovery in the manner Mesabi's Motion seeks would add over $3.4 million to this already multi-million dollar discovery endeavor. (See Cliffs' Ex. 10, Decl. of A. Joines.)

61.     Contrary to Mesabi's argument, burden and cost considerations do matter in antitrust litigation. The Supreme Court affirmed this in <u>Twombly</u>, which post-dates the cases Mesabi relies upon to argue otherwise. (Mot. ¶ 37.) The amount in controversy does not sanction all potential discovery without considering proportionality limits. In a case Mesabi cites (Mot. ¶ 25), the court found that even where the "amount in controversy [is] hundreds of millions of dollars," Rule 26's proportionality requirements support limiting discovery to documents "sufficient to show" the requested categories. <u>IQVIA, Inc. v. Veeva Sys., Inc.</u>, No. 2:17-CV-00177-CCC-MF, 2019 WL 3059805, at *2, 7 (D.N.J. July 11, 2019). Mesabi is not seeking relevant, proportional discovery; it wants to conduct a court-sanctioned fishing expedition.

**E.      Mesabi's attempts for a threefold expansion of the custodian list should be rejected as late, not proportional to the case, and unduly burdensome.**

62.     Mesabi asks the Court to order Cliffs to add thirty-one document custodians to this case more than a year after fact discovery opened, arguing (1) that "Cliffs produced

27

documents from a meager 11 custodians" and "left out innumerable personnel in key departments"; (2) that Mesabi learned that "key personnel" were omitted "only in the course of reviewing Cliffs' scant production to date"; and (3) that Cliffs "refus[ed] to provide additional information needed for Mesabi to identify appropriate custodians." (Mot. at 4, ¶ 39.) Each of these arguments is based on inaccuracies, and none justifies Mesabi's late request.

63.    First, Cliffs' productions identify <u>fourteen</u> document custodians, including thirteen individuals—the <u>eleven</u> listed in Exhibit B to the ESI Protocol, David Cartella, Terry Fedor, Matt Holihan, Craig Filizetti, Clifford Smith, Terrence Mee, Matthew Zajac, Benjamin Jonozzo, Gabriel Johnson, Jesse Dunsmoor, Lourenco Goncalves, <u>plus</u> P. Kelly Tompkins and Timothy Flanagan, whom Mesabi's Motion still requests—and "Cleveland-Cliffs" as the custodian for corporate-level documents. Cliffs has produced documents from each in this case.[15] Cliffs' thirteen individual custodians cover its highest executives[16] who had strategic and decision-making authority for issues relevant to this case, as well as several mid-level employees who Cliffs believed would have additional unique and relevant information. (<u>See</u> Cliffs' Exs. 11 (CLIFFS_000001142), 12 (CLIFFS_000001144), and 13 (CLIFFS_000001145), highlighting custodians on Cliffs' organizational charts.) Mesabi's unsupported speculation that relevant and unique documents exist outside the custodial files for these individuals does not justify the additional time and expense associated with expanding from fourteen to over forty custodians.

64.    A drastic increase in document custodians, even if timely, is inappropriate and likely to yield duplicative information. <u>City of Sterling Heights Gen. Emps.' Ret. Sys. v.</u>

---

[15]    For P. Kelly Tompkins, Cliffs already produced 175 documents, and another 131,953 were removed during the de-duplication process because they also existed in the other custodian's files. For Timothy Flanagan Cliffs already produced 63 documents, and another 8,615 were removed during the de-duplication process.

[16]    The exceptions are the Executive Vice President, Human Resources, Maurice Harapiak, who can hardly be argued as relevant to an antitrust and tortious interference case, and the Executive Vice President, Chief Legal Officer & Secretary, James Graham, whose only role is as in-house counsel.

Prudential Fin., Inc., No. 12-05275, 2015 WL 5055241, at *3 (D.N.J. Aug. 21, 2015). Mesabi

cites this case as allowing additional custodians for a total of 76 (Mot. ¶ 41), but the court only

allowed ten of the Plaintiff's requested "22–45" additional custodians, rejecting Plaintiff's

argument that the Defendant was a "large corporation with substantial resources." Id. The court

recognized that, with such a large increase in custodians, "a vast majority of the proposed

custodians[]" would yield duplicative information and "the Court should not be–and is not–

insensitive to" the "sizeable costs" associated with "each additional custodian." Id.

65. Second, Mesabi cannot claim "key personnel" were undisclosed prior to Cliffs'

document productions—completed by May 10—because nine of the thirty-one custodians

Mesabi seeks now were included in Mesabi's initial disclosures in October 2018 when the

parties' negotiations regarding the document custodians started. Mesabi identified twenty current

or former Cliffs' employees as "likely to have discovery information" relevant to its claims in its

initial disclosures on October 26, 2018. (Cliffs' Ex. 14, Mesabi's Initial Disclosures.) Only three

names on Mesabi's list overlapped with Cliffs' initial disclosures served the same day identifying

eleven current and one former Cliffs' employees.[17]  (Cliffs' Ex. 15, Cliffs' Initial Disclosures.)

66. Third, Cliffs never refused to provide information to Mesabi about potential

custodians. At no point between October 2018, when Mesabi identified seventeen other Cliffs'

individuals in Mesabi's initial disclosures, and August 20, 2019, its only letter to Cliffs on the

topic, did Mesabi ask Cliffs to add custodians or provide any information on these thirty-one

individuals or any others. Mesabi filed this Motion barely three weeks later, before Cliffs had

sufficient time to respond or otherwise discuss the drastically expanded list with Mesabi.

67. Mesabi acknowledges that it could and did negotiate the custodian list with Cliffs

---

[17]    The overlapping individuals were Lourenco Goncalves, Terry Fedor, and Jesse Dunsmoor. Compare Cliffs'
Ex. 15 (Cliffs' Initial Disclosures) with Cliffs' Ex. 14 (Mesabi's Initial Disclosures).

(Mot. ¶ 13), yet it never asked for any of the thirty-one individuals it now wants, or even any of the seventeen other individuals from its initial disclosures. When the parties exchanged their custodian lists during the ESI Protocol negotiations, Cliffs proposed ten document custodians selected from its initial disclosures. (See Email from A. Joines to D. Kim, Dec. 21, 2018, Cliffs' Ex. 16.) Mesabi requested that Cliffs add its CEO, Lourenco Goncalves, as a custodian and Cliffs agreed. (Cliffs' Ex. 6.) On February 8, 2019, the parties finalized the ESI Protocol, including Cliffs' list of eleven custodians. (Cliffs' Ex. 7.) Cliffs then proceeded with its document review.

68.     No expansion of the custodian list is warranted here for these reasons. Mesabi's delay is inexcusable, and highly prejudicial to Cliffs, who already completed a substantial document review from February to May 2019. Additionally Mesabi's request to add three in-house attorneys should also be denied because the potential benefit from receiving any non-privileged materials from these attorney custodians is outweighed by the burden of collection and review, as any unique documents are likely privileged. See, e.g., Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc., No. CV 17-1734-RGA, 2019 WL 3369659, at *1 (D. Del. July 15, 2019) (denying motion to compel because "the burden to [defendant] in gathering the ESI, filtering through the ESI for what is privileged, and then cataloging it . . . [was] outweighed by the $100,000 or more [defendant] would have to spend on creating a privilege log if [in-house counsel] is an ESI custodian").

## IV.    CONCLUSION

For these reasons, Mesabi's Motion should be denied.

Dated: October 11, 2019                    YOUNG CONAWAY STARGATT & TAYLOR, LLP

                                           /s/ Michael S. Neiburg
                                           M. Blake Cleary (No. 3614)
                                           Michael S. Neiburg (No. 5275)
                                           Rodney Square
                                           1000 North King Street
                                           Wilmington,  DE 19801
                                           Telephone:  (302) 571-6600
                                           Facsimile:   (302) 571-1253
                                           Email:  mbcleary@ycst.com
                                                       mneiburg@ycst.com

                                                   -and-

                                           JONES DAY
                                           Robert S. Faxon (admitted pro hac vice)
                                           Thomas Wearsch (admitted pro hac vice)
                                           Kristin S.M. Morrison  (admitted pro hac vice)
                                           Adam J. Joines  (admitted pro hac vice)
                                           JONES DAY
                                           North Point
                                           901 Lakeside Avenue
                                           Cleveland, OH 44114.1190
                                           Telephone:  +1.216.586.3939
                                           Facsimile:  +1.216.579.0212
                                           E-mail:  rfaxon@jonesday.com
                                                       twearsch@jonesday.com
                                                       kmorrison@jonesday.com
                                                       ajoines@jonesday.com

                                           Attorneys for Cleveland-Cliffs  Inc. and
                                           Cleveland-Cliffs  Minnesota  Land Development  LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 11, 2019, I electronically filed the foregoing document

with the Clerk of the Court using CM/ECF and that the foregoing document is being served this

day on counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.


/s/ __ Michael S. Neiburg_____