# EXHIBIT 7

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br>ESSAR STEEL MINNESOTA LLC and ESML<br>HOLDINGS INC.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 16-11626 (BLS)<br>(Jointly Administered) |
| MESABI METALLICS COMPANY LLC<br>(F/K/A ESSAR STEEL MINNESOTA LLC),<br><br>Plaintiff<br><br>v.<br><br>CLEVELAND-CLIFFS, INC. (F/K/A CLIFFS<br>NATURAL RESOURCES, INC.);<br>CLEVELAND-CLIFFS MINNESOTA LAND<br>DEVELOPMENT LLC; GLACIER PARK IRON<br>ORE PROPERTIES LLC; and DOES 1-10<br><br>Defendants. | Adv. Proc. No. 17-51210 (BLS) |
| GLACIER PARK IRON ORE PROPERTIES<br>LLC,<br><br>Counterclaim-Plaintiff<br><br>v.<br><br>MESABI METALLICS COMPANY LLC<br>(F/K/A ESSAR STEEL MINNESOTA LLC),<br><br>Counterclaim-Defendant. | |
| CLEVELAND-CLIFFS, INC. (F/K/A CLIFFS<br>NATURAL RESOURCES, INC.);<br>CLEVELAND-CLIFFS MINNESOTA LAND<br>DEVELOPMENT LLC,<br><br>Counterclaim-Plaintiffs | |

---

[1] Essar Steel Minnesota LLC has changed its name to Mesabi Metallics Company LLC. The last four digits of its federal taxpayer identification number are 8770. The last four digits of ESML Holdings Inc.'s federal taxpayer identification number are 8071.

v.

MESABI METALLICS COMPANY LLC
(F/K/A ESSAR STEEL MINNESOTA LLC)

Counterclaim-Defendant.

CLEVELAND-CLIFFS, INC. (F/K/A CLIFFS
NATURAL RESOURCES, INC.);
CLEVELAND-CLIFFS MINNESOTA LAND
DEVELOPMENT LLC,

Third-Party Plaintiffs

v.

CHIPPEWA CAPITAL PARTNERS, LLC; and
THOMAS M. CLARKE,

Third-Party Defendants.[2]

## STIPULATION REGARDING THE
## SEARCH FOR AND PRODUCTION OF DISCOVERY MATERIAL

This Stipulation ("**ESI Stipulation**") is made and entered into by and between (a) Plaintiff

Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) ("**Mesabi**"), the reorganized

debtor in the above-captioned jointly administered chapter 11 case, (b) Chippewa Capital Partners,

LLC ("**Chippewa**"), (c) Thomas M. Clarke ("**Clarke**"), (d) Cleveland-Cliffs, Inc. (f/k/a Cliffs

Natural Resources, Inc.), (d) Cleveland-Cliffs Minnesota Land Development, LLC (together with

Cleveland-Cliffs Inc., "**Cliffs**"), (e) Glacier Park Iron Ore Properties LLC ("**GPIOP**"), and (f) any

other persons or entities who become bound by this ESI Stipulation by signifying their assent

through execution below.  For convenience, and as the context may require, Mesabi, Chippewa,

Clarke, Cliffs, and GPIOP may each be referred to individually as a "**Party**" and collectively as

---

[2] Counterclaim-Plaintiffs Cleveland-Cliffs Inc. and Cleveland-Cliffs Minnesota Land Development LLC respectfully disagree that their claims against Chippewa Capital Partners, LLC and Thomas M. Clarke are third-party claims rather than counterclaims in this action.

the "**Parties**."

WHEREAS, the Parties in the captioned matter have engaged in discussions about the identification and production of electronically stored information ("**ESI**") and Hard Copy Documents (as defined below) that may be relevant to the Parties' claims and defenses to this action:

AND NOW, the parties agree to abide by this ESI Stipulation, hereinafter referred to as the "**ESI Protocol**".

NOW, THEREFORE, IT IS HEREBY STIPULATED:

1.    **DEFINITIONS**

1.1    "Archival storage" and "Archival systems" mean long-term repositories for the storage of records that preserve the content of the documents or data stored therein, prevent or track alterations to such documents or data, and control access to electronic records.

1.2    "Archival Data" means information maintained for Archival Storage that is not immediately accessible to a user of a computer system.

1.3    "Backup Media" refers to magnetic tapes, CDS, DVDS, hard drives or other storage onto which Backup Systems store electronic information.

1.4    "Backup systems" refers to computer systems used to store copies of active electronic information on Backup Media to permit recovery of the information in the event of loss or damage to the original data.

1.5    "Custodian" shall mean any individual of a Producing Party that has possession, custody, or control of information, Documents, or ESI sources potentially relevant to the captioned matters.

1.6    "Custodial data source" means any data source used for business purposes in or on which a Custodian may store ESI or Hard Copy Documents, whether or not created or generated by a Custodian, including but not limited to personal computers, laptops, tablets, email whether stored locally or centrally, shared network servers, shared or individual network folders, cloud storage systems, structured data systems, or social media.

1.7    "Document" shall have the meaning contemplated by Federal Rule of Civil Procedure 34(a)(1)(A) and includes, without limitation, all ESI (defined infra).

1.8    "Document Family" means a collection of pages or files maintained together constituting a logical single communication of information, but consisting of more than a single stand-alone record.  Examples include a fax cover, the faxed letter, and an attachment to the letter - the fax cover being the "Parent," and the letter and attachment being a "Child," or an email and associated attachments, or a presentation with embedded files.

1.9    "Email" means an electronic means for communicating written information that is deliverable to designated recipients at specific addresses associated with particular Internet domains.

1.10    "ESI" is an abbreviation of "electronically stored information" and shall have the same meaning and scope as it has in Federal Rule of Civil Procedure 34(a)(1)(A).

1.11    "Extracted text" or "Full Text" means the text extracted from a Native Document, and includes all header, footer and document body information when available.  A "Text File" is a file containing the full text of native files extracted directly from

the native file, or, in the case of paper/hard copy documents subject to OCR, a file containing the text resulting from the OCR.

1.12    "Hard copy Document" means a Document that was maintained in paper form.

1.13    "Load File" means an electronic file that is used to import all required production information into a document database, including, if available, document images, Full Text or OCR text, Native Format files where required by this ESI Protocol, and reasonably available Metadata, as well as information indicating document breaks, and document relationships such as those between an Email and its attachments.  For files produced as TIFF images, each page of a document shall be electronically saved as an image file.  The Producing Party shall produce a unitization file, a type of load file, for all produced documents in accordance with the specifications provided in Exhibit A.

1.14    "Metadata" means structured information about ESI that is created by the file system or application, embedded in the Document or Email and sometimes modified through ordinary business use.  Metadata of the ESI describes, inter alia, the characteristics, origins, usage and validity of the ESI, and includes information that is not necessarily visible on the face of the ESI.

1.15    "Native Format" means the format of ESI in the application in which such ESI was originally created and is normally viewed or modified by the user of the ESI.

1.16    "Network" or "Shared Storage Systems" shall mean any data storage device accessible to multiple users remotely over a computer network.

1.17    "Non-Custodial Data Source" means any data source that is not kept or maintained by any particular Custodian but which may contain Documents or ESI

relevant to the captioned matters, including data sources used by any department, business unit, or division of a Producing Party, and Shared Storage Systems that may contain potentially relevant information , such as electronic mail systems, backup systems or backup media, or archival systems or storage.

1.18    "OCR" means the optical character recognition technology used to read paper Documents or electronic images of Documents and output such Documents to a searchable text format.  The latter text is also referred to as the "OCR text" or simply "OCR."

1.19    "Production" or "Produced" includes any exchange of Documents or ESI by a Producing Party, whether voluntarily or in response to a formal or informal request.

1.20    "Producing Party" means any party or third party that produces Documents pursuant to this ESI Protocol.

1.21    "Receiving Party" means any party or third party that receives Documents in the captioned matters.

1.22    "Requesting Party" means any party or third party that requests Documents in the captioned matters.

1.23    "Responsive Document" means any Document that is responsive to any discovery request or subpoena served by a Requesting Party in the captioned matters, subject to the limitations set forth in the Federal Rules of Civil Procedure, the Local Rules, or Court order.

1.24    "Search Term" means a word or a combination of words or phrases designed to capture potentially relevant ESI, and includes strings of words and phrases joined by proximity and Boolean connectors or other syntax.

1.25    "Static Image" means or refers to a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems.

1.26    "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or Hard Copy Documents.

1.27    "TAR" means a process for prioritizing or coding a collection of ESI using a computerized system, using algorithms or systematic rules, that harnesses human judgments of subject matter expert(s) on a smaller set of documents and then extrapolates those judgments to the remaining documents in the collection.  TAR systems generally incorporate statistical models and/or sampling techniques to guide the process and to measure overall system effectiveness.

1.28    "Structured data" means data that resides in a fixed field within a record or file, or stored in a structured format, such as databases (such as Oracle, SQL, Access) or data sets, according to specific form and content rules as defined by each field of the database.

1.29    "Unstructured data" refers to free-form data which either does not have a data structure or has a data structure not easily readable by a computer without the use of a specific program designed to interpret the data, including but not limited to, word processing documents, slide presentations, email, PDFs, spreadsheets, and webpages, blogs, image files, instant messages, audio and video files, and others of similar variable format.

2.    **SCOPE**

2.1    The procedures and protocols set forth in this ESI Protocol shall govern the search, disclosure, and format of Documents and ESI produced for use in the captioned matters, to the extent available.  This ESI Protocol does not define the scope of production, nor the relevance of any particular information.  Nothing in this ESI Protocol establishes any agreement as to either the temporal or subject matter scope of discovery in any captioned matter.  With respect to ESI, the inclusion of a data type as an example of a type of ESI in the Definitions herein should not be construed as an agreement by a Producing Party that these types of ESI may be potentially relevant and/or must be collected, searched, or produced.  Similarly, the exclusion of a data type as an example of a type of ESI in the Definitions herein shall not be construed as agreement by the Requesting Party that these types of ESI are not potentially relevant and/or need not be collected, searched, or produced.  Further, the fact that a document is captured by the application of a search protocol does not mean that such document is responsive to any propounded discovery request or otherwise relevant to the captioned matters.  Nothing in this stipulation is intended to alter any Producing Party's, Receiving Party's, or Requesting Party's rights, obligations or responsibilities under Federal Rules of Civil Procedure 26(b)(2)(B), 34(a)(1), and 37.  No provision of this ESI Protocol waives any objections as to the production, discoverability, admissibility, or confidentiality of Documents and ESI. The discovery requests, objections thereto, agreements between or among the Producing Party and/or Requesting Party, and any pertinent Court orders, including

but not limited to the Stipulation and Protective Order entered in the captioned matters, shall govern the scope of documents to be produced.

2.2     Nothing in this Protocol is intended to be an exhaustive list of discovery obligations or rights of a Producing Party or a Requesting Party.  To the extent additional obligations or rights not addressed in this Protocol arise under the Federal Rules of Civil Procedure, Bankruptcy Rules, local rules, or applicable state and federal statutes, they shall be controlling.  In particular, nothing in this ESI Protocol is meant to impose any obligations on any Producing Party to search, disclose or produce information protected under the Health Insurance Portability and Accountability Act of 1996 (Pub. L. 104–191, 110 Stat. 1936, enacted August 21, 1996) (**"HIPAA"**).

2.3     The Requesting Party, Receiving Party, and Producing Party, as appropriate, shall meet and confer in accordance with Local Bankruptcy Rule 7026-1(a) in an effort to resolve any disputes that may arise under this ESI Protocol, prior to seeking assistance from the Court.  If a dispute cannot be resolved through the meet and confer process, the Producing Party and the Receiving Party may submit their respective positions to the Court pursuant to Local Bankruptcy Rule 7026-1 and Federal Rule of Civil Procedure 37.

2.4     The terms of this ESI Protocol shall be construed to ensure the cost-efficient and cost-effective exchange of information consistent with the Federal Rules of Civil Procedure, the Local Rules of this Court, and any Orders by this Court

3.   **PRODUCTION FORMAT**

3.1   <u>Format Guidelines</u>: Each Producing Party shall, to the extent reasonably and technically possible, produce Documents and ESI according to the specifications provided in **Exhibit A**.  The Requesting Party, Receiving Party, and/or Producing Party, as appropriate, agree to meet and confer in good faith if any of the technological specifications set forth in Exhibit A result in technological issues.

3.2   <u>De-Duplication</u>: Other than is expressly provided in this ESI Protocol, the Producing Party need only produce a single copy of a particular electronic Document.

　　　a)   Vertical Deduplication. A Producing Party may de-duplicate ESI vertically by Custodian, provided however, that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical.

　　　b)   Horizontal Deduplication. A Producing Party may de-duplicate ESI horizontally (globally) across the population of records.  For global de-duplication, the Producing Party must disclose to the Requesting Party that it has de-duplicated horizontally, and provide further that: (a) an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical; and (b) all Custodians who were in possession of a de-duplicated Document must be identified in the AllCustodian field specified in Exhibit A.  To

10

ensure accuracy, the AllCustodian field must be captured by an automated process and cannot be populated using a manual process. The aforementioned Metadata must be produced to the extent it exists. In the event of a rolling production of documents or ESI items, the Producing Party shall provide an overlay load file with updated AllCustodian field along with each production. The Metadata overlay may contain a full refresh of data for the AllCustodian field or be a supplement to the information previously provided for the fields. At the time of production, the Producing Party shall identify the overlay as a full refresh or a supplement. A Metadata overlay file shall be either a full refresh overlay or a supplemental overlay but shall not contain a full refresh for one Metadata field and a supplement for the other Metadata field.

c)    A Producing Party using a centralized system  (or "journaling") as a preservation and backup system for email may not possess certain Metadata, such as "AllCustodians" and "Importance." Where documents are produced from such a centralized system, in the production cover letter the Producing Party shall, to the extent practicable, identify the centralized system in the "Source" Metadata field for the documents produced from such system, or identify by Bates Number which Documents are being produced from a centralized system.

d)    Methodology. If a Producing Party elects to de-duplicate, the Producing Party shall identify ESI duplicates by using industry standard MD5 algorithms only to create and compare hash values for exact duplicates only.

Any other methodology for identification of duplicates must be discussed with the Requesting Party and approved in writing before implementation. The resulting hash value for each item shall be reflected in the HASH Value field specified in Exhibit A.

e)      The Requesting Party and Producing Party hereby agree that production of ESI documents globally de-duplicated in accordance with the provisions of this ESI Protocol shall constitute production of documents as maintained in the ordinary course of business.

3.3     <u>E-mail Thread Suppression:</u> Email threads are email communications that contain prior or lesser-included email communications that also may exist separately in the Producing Party's electronic files.  A most inclusive email thread is one that contains all of the prior or lesser-included emails and attachments, including each branch of the email thread.  The Requesting Party and Producing Party hereby agree that removal of wholly-included, prior-in-time, or lesser-included versions from potential production will reduce the production, litigation-support hosting, and document-review costs of each Requesting Party and Producing Party. Accordingly, each Producing Party may produce only the most inclusive email threads and attachments and any lesser-included emails in the thread with unique attachments, or list on any required privilege log only the most inclusive email threads.

3.4 <u>Documents Excluded From Discovery:</u>  The Parties agree that the following types of Documents are not subject to discovery in this litigation:

a)      <u>Junk Files</u>:  Certain types of ESI that are attached to emails usually contain information that is not material to an action including, for example, an email sender's "vcard" as well as an image file depicting an email sender's company logo.  Accordingly, no Party is required to produce files with a .vcf extension or any files that are less than 1,000 bytes in size with the following file extensions:  .jpeg; .gif; .png; .jpg; and .bmp.  If a party identifies any missing information in a document that provides potentially relevant information and was excluded from production under this paragraph, the Parties will meet and confer to determine if the excluded file contains material information that should be produced.

b)      <u>Deleted Files, Ephemeral Data</u>:  Absent a specific showing of need, the following categories of ESI are not discoverable in this case:  "deleted," "slack," "fragmented," or "unallocated" data on hard drives; random access memory (RAM) or other ephemeral data; and on-line access data such as temporary internet files, history, cache, cookies, etc.  If a party demonstrates a specific need for information encompassed by this section, and to the extent such information exists, the Parties shall meet and confer on whether such data should be produced, preserved on a forward-looking basis, and/or whether cost-shifting is appropriate.  However, prior to a showing of a specific need and an agreement among the Parties on the need or Court order accepting the need, there shall be no obligation to preserve such information.

c)      <u>ESI That Is Not Reasonably Accessible</u>:  Consistent with Federal Rule of

Civil Procedure 26(b)(2)(B), absent a specific showing of need, the Parties

shall not be required to preserve, search for, or produce Documents that are

not reasonably accessible without undue burden or cost, including back-up

tapes, disaster recovery systems, offline archives, deleted or residual data,

and data sources that are not used for normal business operations or require

unreasonable expense or burden to preserve, search, or produce.  The

Parties shall not be required to preserve, search for, or produce telephone

call logs, voicemails, instant messages, and mobile phone text and picture

messages.  If a Party demonstrates a specific need for information

encompassed by this section, and to the extent such information exists, the

Parties shall meet and confer on whether such data should be produced,

preserved on a forward-looking basis, and/or whether cost-shifting is

appropriate.  However, prior to a showing of a specific need and an

agreement among the Parties on the need or Court order accepting the need,

there shall be no obligation to preserve such information.

3.5     <u>Documents to Be Produced Natively</u>:  Except for documents to which Paragraph

3.9 of this ESI Protocol applies, a Producing Party shall produce Microsoft Excel

and other spreadsheet files, including comma or tab delimited text files, Microsoft

Access files, and video or audio files in Native Format, if available.  The production

Load Files shall contain a link to the produced Native Format files as specified in

the "Native Link" Metadata field described in Exhibit A.  Native files should be

located in their own directory (e.g., NATIVE), and the file path referenced in the

accompanying delimited text (.DAT) load file. In lieu of Bates-stamping spreadsheets produced in Native Format, the Producing Party shall title each file using a unique Bates number. Confidentiality and other annotations for individual native documents/media can be designated within the delimited text (.DAT) load file, or added to the file name. Each electronic file produced in Native Format shall be assigned a unique Bates Number as set forth in Paragraph 3.7, and the database record for that file shall include a single page TIFF image branded with this unique Bates Number, any confidentiality designation, and the phrase "PRODUCED IN NATIVE FORMAT." Additionally, where a Producing Party produces ESI in Native Format, the Producing Party shall produce whatever Metadata is necessarily attendant to the production of those Documents in Native Format (e.g., spreadsheet formulas). Notwithstanding the preceding, a Party may apply to the Court for an order requiring the production of such additional metadata as may be reasonably necessary to such Party's claims or defenses upon a showing of good cause.

3.6     <u>Unitization</u>: In scanning Hard Copy Documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records. The Producing Party shall take reasonable steps to physically and logically unitize paper documents. For example, documents stored in a binder, folder, or similar container (each, a "container") shall be produced in the same order as they appear in the container. The Producing Party shall undertake reasonable efforts to, or have its vendors, logically unitize (i.e. use cues such as consecutive numbering, report titles, similar headers and footers, and other logical cues that indicate the pages belong together) Hard Copy Documents that are not otherwise bound. The

Producing Party shall make reasonable best efforts to unitize Hard Copy Documents correctly. This provision does not obligate any Producing Party to reassemble Document Families for Hard Copy Documents that are not stored or maintained as Document Families in the location in which members of that family are found or as they are kept in the ordinary course of business. Nor shall this provision obligate any Producing Party to make whole any Document that is not stored or maintained in its complete form. Documents scanned to ESI shall be produced in accordance with the ESI protocols contained herein. The Parties reserve the right to examine the original Hard Copy Documents upon written request and notice.

3.7     <u>Bates Numbers and Confidentiality Designations for TIFF Images</u>: Each page of a Document produced in the captioned matters in TIFF file format shall have a legible numeric identifier ("**Bates Number**") electronically "burned" onto the image that must: (1) be unique across the entire document production; (2) maintain a constant length of nine numeric digits (including 0-padding) across the entire production; (3) be sequential within a given document; and (4) include a letter prefix identifying the Producing Party followed by a single-dash. The Bates Numbers shall be in a consistent font type and size. If warranted, consistent with the terms of any applicable protective order, each page of a Document shall have either "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" electronically "burned" onto the image. The Producing Party will make reasonable efforts to avoid obscuring any information originally appearing on the document.

3.8    <u>Metadata Fields and Processing</u>:  A Producing Party is not obligated to populate manually any of the fields in Exhibit A, with the exception of the following, which must always be populated for ESI:  (a) BegBates, (b) EndBates, and (c) Custodian. To the extent the fields can be automatically populated at the time of production, Record Type, Production Volume, and SourceParty shall be populated. Additionally, the Producing Party must populate the following fields in Exhibit A if applicable and reasonably and technically possible:  (a) Confidentiality, (b) PageCount, (c) AllCustodian (which is required if performing horizontal deduplication as allowed under Paragraph 3.2(b) of this ESI Protocol), (d) Redacted and (e) family designation fields sufficient to identify all members of a Document Family (e.g. BegAttach and EndAttach, or ParentBates and AttachBates, or AttachRange).  To the extent reasonably available, Metadata identified in Exhibit A shall be provided in a Concordance-format delimited file with a .DAT file extension using Concordance default delimiters, including ASCII 020 and 254 delimiters for column break and text qualifier, and new line as ASCII 174.  The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each Document.

3.9    <u>Production Media</u>:  The Producing Party shall produce Document images, Native Format files, Text and/or OCR files, Load Files, and Metadata on hard drives, CDs, DVDs, secure FTP, or other mutually agreeable media ("**Production Media**"). Production volumes may be produced via FTP or other electronic transfer system, without a separate agreement.  Productions made via FTP or other electronic transfer are not required to be supplemented with hard media containing the same

Documents.  Each piece of Production Media shall include a unique identifying label providing the identity of the Producing Party, in which the Production Media is being produced, the Production Volume name/number, delivery date, Bates range(s) produced, and incremental media numbers if applicable (e.g. DVD 1 of 2). All productions shall be checked and produced free of computer viruses.  To the extent that the Production Media includes any confidential information protected under any applicable protective order filed with the Court, the label on such Production Media shall indicate that the Production Media includes information so designated.  Further, any replacement Production Media shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Bates Number range that is being replaced.  All Production Media that is capable of write protection should be write-protected before production.  All Production Media must be encrypted, with the Producing Party to provide a decryption key at the time of production.

3.10    <u>Redacted Documents</u>:  In the event that a Document is redacted, as allowed under Paragraph 11 of this ESI Protocol, the full text may be replaced with OCR text that excludes the redacted material, Metadata fields may be redacted if they contain redactable information, and the Native Format version need not be produced in redacted form except as stated below.  When a Document is redacted, the TIFF image should show the word "redacted" where applicable and a production Load File field should be populated to indicate the Document contains a redaction.  If a Document to be produced in Native Format requires redaction, that Document may be produced in redacted TIFF format, or in redacted Native Format, at the

Producing Party's discretion, absent a request as discussed below, and to the extent reasonably and technically possible.  If redacting TIFF images, the Producing Party, or its ediscovery vendor, shall make reasonable efforts to: (1) reveal hidden rows, columns or sheets prior to converting the document to TIFF; (2) clear any filters that may conceal information; (3) adjust column widths so that numbers do not appear as "########"; (4) ensure that column and row headings print; (5) ensure that the tab name appears in the header or footer of the document; (6) process comments so that they are produced at the end of the spreadsheet; (7) process spreadsheets so that they print across then down; and (8) process presentation documents (e.g., PowerPoints) so that all speaker notes and comments are visible. If a Requesting Party receives a redacted TIFF image of a document required herein to be produced in Native Format that the Requesting Party does not believe is formatted so as to be legible (e.g., column cells display "##########" instead of the value) or if a Requesting Party wants additional information from an Excel-type spreadsheet (e.g., formulas), the Requesting Party may request from the Producing Party a legible TIFF image or a redacted native item.  At that time the Requesting Party will explain a reasonable basis for its request and will provide a specific Bates range for the ESI at issue.  Upon receiving such a request, the Producing Party shall either produce a legible TIFF image or redacted native item or disclose to the Requesting Party why it is unreasonable or unnecessary to do so.  If the Producing Party encounters Microsoft Access files or audio or video files or other file types requiring native production that contains privileged content, the Requesting Party and Producing Party shall meet and confer to determine a suitable manner of

producing the non-privileged, responsive content contained in these files. The Producing Party's failure to withhold OCR text or metadata for a redacted Document shall not be deemed a waiver of the privilege or other protection associated with that Document, and any metadata or text file containing the text of redacted portions of a redacted Document or other privileged or protected information shall be treated consistent with the terms of the Stipulation and Protective Order entered in this action.

3.11  <u>Attachments</u>:  Email attachments and embedded files must be mapped to their parent by the Document or Production number by including a "BegAttach" field designating the beginning of each such attachment and "EndAttach" field designating the end of each such attachment. If attachments and embedded files cannot be separated from their parent documents, then "BegAttach" and "EndAttach" fields listing the unique beginning and end number for each attachment or embedded document must be included. Non-substantive automatically-generated embedded files, such as logos or confidentiality legends need not be produced as separate attachments. To the extent they are maintained together, all documents in a Document Family shall be consecutively Bates Number stamped with the child-documents produced immediately after the parent-document.

3.12  <u>Text Files</u>: Each Document produced under this ESI Protocol shall be accompanied by a single, multipage text file containing all of the text for that document (as opposed to one text file per page of such document). Each text file shall be named using the Bates Number of the first page of the corresponding production item. The

text files should be placed in their own directory (e.g. TEXT) and the file path referenced in the accompanying delimited text (.DAT) load file.

(a)   <u>ESI:</u>  The text of each ESI item shall be extracted directly from the ESI native file.  To the extent that is not technically possible (e.g., the underlying native file is an image file), the text for each ESI item shall be generated by applying OCR to the native file under the provision above.  For contacts and calendars, user modifiable fields shall be extracted and produced as text. Text extracted from native text based files, such as Word documents, should have the same storage location, format and load file reference as the OCR text.

(b)   <u>OCR</u>: To the extent that documents have been run through OCR software, the full text shall be provided on a document-level basis in an appropriately formatted text file (.txt) that is named to match the first Bates Number of the document.  To the extent that a document is redacted as allowed under Paragraph 11, the text files shall not contain the text of the redacted portions, but shall indicate where the redactions were made, e.g. with the notation "REDACTED."  There is no obligation to OCR any electronic documents that do not natively exist in a text-searchable format.

3.13   <u>Password Protected Files</u>: The Producing Party shall make reasonable efforts to ensure that all encrypted or password-protected Documents are successfully processed for review and production under the requirements of this ESI Protocol, and the decrypted Document is produced.  To the extent encrypted or password-protected Documents are successfully processed according to the requirements of

this ESI Protocol, the Producing Party has no duty to identify the prior encrypted status of such Documents. To the extent such Documents are not successfully processed, the Producing Party agrees to: (a) produce a slipsheet for each encrypted or password protected Document that cannot be successfully processed indicating that the Document cannot be decrypted; and (b) provide the metadata for the Document required by Exhibit A to the extent it can be reasonably extracted from the file in its encrypted form. Notwithstanding the preceding sentence, a Producing Party need not produce a slipsheet or provide metadata for standalone files that are encrypted, but do not appear reasonably likely to contain responsive material. The Requesting Party, Receiving Party, and/or Producing Party, as appropriate, shall meet and confer regarding any requests that a Producing Party undertake additional efforts to decrypt files after production.

3.14    <u>Compressed and Container Files</u>: Compression file types (e.g., .CAB, .GZ, .RAR. .ZIP), shall be decompressed to ensure that a compressed file within a compressed file are decompressed into the lowest possible compression resulting in individual folders and/or files. Original compression files and container files need not be produced, provided the responsive content files are produced in accordance with the specifications of this ESI Protocol.

3.15    <u>Custodian or Originating Source</u>: The custodian or originating source shall be identified in the Custodian field of the database load files, as provided in Exhibit A. Documents found in the possession of a natural person (or on a natural person's hardware or storage media) shall be produced in such fashion as to identify the natural person. Documents found in the possession of a department, group, entity,

or other common facility (e.g., office, file room, archive, network storage, file share, back-up, hard drive, etc.) shall be produced in such a fashion as to identify the department, group, entity, or facility.  A Producing Party shall use a uniform description of a particular custodian across productions.

3.16    The Parties have individually identified, consistent with the Federal Rules of Civil Procedure, the applicable Local Rules of this Court, and any Orders by this Court, the custodians likely to have access to, control over, or responsibility for potentially responsive ESI.  The custodians initially identified are reflected in **Exhibit B** (the "Custodians").  The Parties each reserve the right to supplement or seek the expansion of the Custodian list reflected in Exhibit B as reasonably necessary to obtain relevant discovery materials as the discovery process progresses, as specified further below.  Each Party's agreement to collect and search a Custodian's ESI is without prejudice to its rights to object to the production of any documents or information collected from a Custodian on the grounds of relevance or otherwise.

3.17    Each Party may designate additional custodians of its own based upon its review of documents produced in the case, but such designation must occur no later than thirty (30) days prior to the deadline for requests for production of documents described in § 3.c.2 of the Discovery Plan and Scheduling Order [Adv. D.I. 120]. This ESI Protocol does not prohibit a Party from seeking ESI of additional custodians of another Party; provided however, that a Party requesting the inclusion of additional custodians identify the specific basis for the request, but is not required to reveal work product in making such request.  If the Parties are unable to resolve any dispute concerning this issue, then on any motion practice concerning

this issue, the Party from whom discovery is sought shall bear the burden of establishing that the additional custodian's ESI is not reasonably accessible because of undue burden or cost.

3.18    If any limits or restrictions are discovered that would preclude a Party from searching ESI of the Custodians or other custodians requested to be searched by another Party pursuant to Paragraph 3.17, within seven (7) days of discovery, the Party shall notify all other parties of the limit or restriction and shall propose an alternative method for collecting information in the control of that custodian. The Party with the restriction will agree to meet and confer in good faith to discuss alternative methods of discovery.

4.    **ENTERPRISE LEVEL DATABASES:**

4.1    Where a discovery request requires production of Structured Data, in lieu of producing the native database or TIFF images of database content, the Producing Party shall identify such Structured Data sources within a reasonable period after receiving the discovery request, and the Requesting Party and Producing Party, as appropriate, shall meet and confer on the content and format of a data extraction from such Structured Data Source. The Requesting Party and Producing Party, as appropriate, shall, in good faith, make disclosures necessary to ensure the meet and confer discussions regarding content and format of the production are meaningful.

5.    **PROCESSING SPECIFICATIONS**

5.1    The Producing Party shall collect and process Documents using reasonable methods that preserve available data. To the extent reasonably feasible upon

collection, the Producing Party shall use the following specifications when converting ESI from its Native Format into TIFF image files prior to production:

(a)    All tracked changes shall be maintained as last saved, to the extent reasonably feasible upon collection, so that all changes to a Document are evident, unless redactions were necessary to remove privileged material.

(b)    All Word Documents shall include and show field codes for auto-date and auto-time fields.

(c)    Author comments shall remain or be made visible, unless redactions were necessary.

(d)    Presenter notes within a presentation shall be made visible, to the extent reasonably feasible upon collection and unless redactions were necessary.

(e)    ESI shall be processed with a single time zone and date and time setting that is consistent across each Producing Party's productions ("**Chosen Time Zone**").  If a time zone other than UTC/GMT time zone is used for the Chosen Time Zone, a Producing Party shall notify the Requesting Party in the cover letter accompanying each production.  The date and time reflected in the fields in Exhibit A, and on any TIFF image will include the Chosen Time Zone.  TIFF images may optionally show the local date and time if they display the offset to the Chosen Time Zone.

(f)    To the extent technically feasible, ESI items shall be processed in a manner that maintains and displays all hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes and comments (i.e., shall force on hidden columns or rows, hidden work sheets, track changes, can

25

comments). If the file ordinarily to be produced as a TIFF under this ESI Protocol that cannot be expanded, the Receiving Party may request that the native be produced with the image file.

(g) Productions should be in black and white. If the Receiving Party reasonably believes that a Document originally produced in black and white needs to be produced in color, it shall notify the Producing Party. The Parties agree to meet and confer in good faith concerning the re-production of documents in color or in Native Format.

(h) ESI items shall be processed so as to maintain the date/time shown in the document as it was last saved by the custodian or end user, not the date of collection or processing (i.e., shall force off Auto Data).

(i) If a Document otherwise subject to production in TIFF under this ESI Protocol cannot be converted to TIFF without error due to corruption or some other issue that renders the document unreviewable, password protection, or some other issue, an image placeholder labeled "Document Cannot be Rendered" shall be produced in its place.

5.2 If the Producing Party withholds a Document, as allowed under Paragraph 11 of this ESI Protocol, that is a part of a Document Family containing responsive Documents that are produced, the Producing Party shall produce a placeholder TIFF image for the Document withheld in lieu of producing it. All documents in a Document Family that are (a) responsive and/or the "parent" document to a responsive document, and (b) not subject to withholding under Paragraph 11 shall be produced. The placeholder shall state the basis on which the document is

withheld.  Placeholder images shall also be branded with a unique Bates Number as set forth in Paragraph 3.6.  If a Producing Party, for any reason, subsequently produces a Document previously withheld and place-holder or redacted pursuant to this Paragraph, the Producing Party shall produce, to the extent reasonably and technically feasible, that Document pursuant to the production format specifications of this ESI Protocol that would have been applicable to the Document had it been produced initially, except that the Producing Party shall apply an appropriate numerical suffix to the Bates number of the file to account for instances where the produced version of the file occupies more pages than the original placeholder image for the file.  If the Producing Party's production software does not support the required numerical suffix, the Producing Party may, at the time of the production of the withheld Document, produce such Document with a new Bates number so long as a cross reference chart from the original Bates number to the new Bates numbers is provided in Excel format.  As an example, if a Producing Party initially withholds a five-page Word document as non-responsive and provides a placeholder image branded with the number ABC-000000001, the subsequently produced version of that five-page Word document shall be branded ABC-000000001.001 through ABC-000000001.005.

6.    **DESIGNATED LIAISON**

6.1    Each Requesting Party, Receiving Party, and Producing Party shall designate individual(s) to act as e-discovery liaison(s) for purposes of meeting, conferring, and attending court hearings on the subject (**"Designated ESI Liaison"**).  In

addition to and consistent with the requirements of Local Rule 7026-3(c), the Designated ESI Liaison(s) shall:

(a)    be prepared to participate in e-discovery discussions and dispute resolution;

(b)    be knowledgeable about his or her respective Requesting Party's, Receiving Party's, or Producing Party's e-discovery efforts;

(c)    be, or have reasonable access to those who are, familiar with his or her respective Requesting Party's, Receiving Party's, or Producing Party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and

(d)    be, or have reasonable access to those who are, knowledgeable about the technical aspects of e-discovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

6.2    Parties may change or add Designated ESI Liaison(s) on written notice to one another.

7.    **ADDITIONAL ISSUES**

7.1    English Language:  If no English version of a Document is available, the Producing Party has no obligation to produce an English translation of that Document and does not have an obligation to render that document text searchable via OCR or other means.  The Producing Party shall make reasonable efforts to ensure that all technologies and processes used to collect, process and produce the text of any document – including all TIFF conversion and OCR processes, and the extraction of text from native files – preserves all foreign language text, punctuation and other

characteristics as they exist in the source native file.  To the extent reasonably and technically possible, foreign language text files shall be delivered in UTF-8 and be Unicode compliant, with the correct encoding to enable the preservation of the documents' original language.

8.    **SEARCH METHODOLOGIES FOR UNSTRUCTURED DATA**

8.1    The Parties agree to the search terms reflected in **Exhibit C** to be initially run against ESI for the Custodians (the "Search Terms").  After running the Search Terms, the Producing Party may object to any search term on the grounds that it is overly broad or unduly burdensome.  The Producing Party shall provide search term hit reports to the Receiving Party which identify the number of unique documents that hit upon each identified search term objected to by the Producing Party.  The Parties will meet and confer in an effort to resolve objections to any search term and to reach an agreement limiting or modifying the Search Terms as appropriate.  This search term process will be iterative and therefore might require several iterations of revised search terms and hit reports.  The Parties reserve the right to seek the Court's intervention with respect to such issues if they are unable to reach agreement regarding limiting or modifying the Search Terms as appropriate.

8.2    The Parties further agree that the documents collected by applying the Search Terms shall serve as the initial pool of potentially responsive ESI for review, but also recognize that there may be certain limited categories of ESI that are not able to be easily collected by the application of search terms.  The Parties agree to manually collect such ESI where necessary in order to fully respond to Requests

for Production, in a manner consistent with their obligations pursuant to the Federal Rules of Civil Procedure and the applicable Local Rules of this Court.

8.3    A Producing Party shall disclose the custodians whose ESI will be searched using Search Terms and a description of the Custodial and Non-Custodial Data Sources against which the limiters and/or Search Terms shall be run.

8.4    The Requesting Party and Producing Party hereby agree that negotiations regarding Search Terms and other limiters is intended to be a cooperative and iterative process, involving a good faith exchange of information and proposals to facilitate the negotiations for the captioned matters, as appropriate.

8.5    Technology Assisted Review ("**TAR**") and Similar Advanced Analytics:   If a Producing Party elects to use TAR or similar advanced analytics as a means of including or excluding documents to be reviewed for responsiveness or of culling or otherwise limiting the volume of information to be reviewed for responsiveness, prior to use of such tool the Requesting Party and Producing Party shall meet and confer as to (1) the Custodial and non-Custodial Data Sources against which TAR will be run; (2) the TAR or advanced analytics vendor and methodology being deployed; and (3) the quality control measures used to validate the results of the TAR methodology or similar advanced analytics.  If Search Terms are used to pre-cull ESI, prior to application of TAR and/or advanced analytics, the provisions of Paragraph 8 apply.  If the Requesting Party and Producing Party are unable to agree on the TAR and/or advanced analytics technology and methods being proposed after meeting and conferring in good faith, the Requesting Party and Producing Party shall notify the Court of their unresolved dispute(s) and seek resolution by

the Court. Nothing in this ESI Protocol shall limit the use of Advanced Analytics, Machine Learning, Continuous Active Learning, or TAR by a Requesting Party, Receiving Party, or Producing Party for the purpose of accelerating review pace, prioritizing review, and quality checking review, or other work product purposes, in which case, no disclosures need be made by either the Requesting Party, Receiving Party, or Producing Party as to its use.

9.    **AMENDMENT OF ORDER**

9.1    Nothing herein shall preclude any Requesting Party, Receiving Party, or Producing Party from seeking to amend this ESI Protocol in writing, provided, however, that no Requesting Party, Receiving Party, and/or Producing Party may seek relief from the Court concerning compliance with the ESI Protocol until that Requesting Party, Receiving Party, and/or Producing Party has met and conferred in good faith with the other Requesting Party, Receiving Party, and/or Producing Party involved in the dispute.

9.2    Any Requesting Party, Receiving Party, or Producing Party added or joined in the captioned matters after the date of this ESI Protocol that seeks to deviate from this ESI Protocol must obtain leave of Court to do so unless every affected Requesting Party, Receiving Party, and Producing Party consent to the proposed deviation in writing. Before seeking Court intervention, every affected Requesting Party, Receiving Party, and Producing Party shall meet and confer in good faith regarding any modification.

9.3    In light of the disparate data systems and architectures employed by various entities, variations from this ESI Protocol may be required. In the event that any Requesting

Party, Receiving Party, or Producing Party identifies a circumstance where application of this ESI Protocol is not technologically possible, would be unduly burdensome or impractical, or when another process would satisfy the objective and reach the same result with less burden, the Requesting Party, Receiving Party, or Producing Party will notify the affected Requesting Party, Receiving Party, or Producing Party of the exception and, before implementing an alternative, specify an alternative procedure that is not unduly burdensome or impractical that will be employed, if one exists. Upon request by any affected Requesting Party, Receiving Party, or Producing Party, those affected Requesting Parties, Receiving Parties, and/or Producing Parties will meet and confer regarding the circumstances and proposed alternative approaches.

9.4     Nothing in this ESI Protocol waives the right of any Producing Party to petition the Court for an Order modifying the terms of this ESI Protocol upon sufficient demonstration that compliance with such terms is either (1) unexpectedly or unreasonably burdensome, or (2) impossible, provided, however, that counsel for such Producing Party must first meet and confer with counsel for the Requesting Party, and Producing Party shall use reasonable best efforts to negotiate an exception from or modification to this ESI Protocol prior to seeking relief from the Court.

10.    **ASSERTIONS OF PRIVILEGE**

10.1    Pursuant to Rule 26(b)(5) of the Federal Rules of Civil Procedure, and in accordance with any applicable Stipulation and Protective Order in the captioned matters, the Requesting Party, Receiving Party, and Producing Party hereby agree

that a Producing Party may withhold or redact a document if the document withheld is protected by attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity from disclosure.

10.2    If a Producing Party identifies portions of a document and redacts such portions of the document pursuant to Paragraph 11 of this ESI Protocol, the Producing Party must log the fact of redaction as required under Paragraph 11 of this ESI Protocol.

10.3    Privilege Logs:  Privilege logs shall be provided in native Excel format and contain the following information for each responsive document withheld or redacted:

a)    a sequential number associated with each privilege log record;

b)    the date of the document;

c)    the Bates numbers of documents redacted or a numerical or other identifier for each document withheld;

d)    the identity of all persons who sent (and, if different, the identity of all persons who authored, if known) the document and the addressees, recipients, copies, and blind copies (with senders, authors, addressees/recipients, copies, and blind copies, each separately identified by those categories), and identification of which of them are attorneys, if known or reasonably knowable;

e)    the subject matter of the document and basis for assertion of privilege (without revealing information itself that is privileged);

f)      the type or nature of the privilege asserted (i.e., attorney-client privilege or work product doctrine), and if such other privilege or immunity is asserted it shall be separately identified.

10.4    For ESI, as an alternative to manually entering the information required under Paragraph 10.3 (a)-(d) of this ESI Protocol, all or a portion of each Producing Party's privilege log may be generated by exporting objective Metadata from the review tool used to identify privileged or work-product protected documents where the objective Metadata provides the information required under those subparagraphs, provided, however, that: the Metadata are reasonably understandable and legible.

a)      Such Metadata shall include the following:

1.      A unique privilege log identifier and, in the case of redacted documents, the Bates number assigned to such document;

2.      AllCustodian

3.      File Name

4.      FolderPath

5.      Email Subject (where applicable)

6.      Author

7.      From

8.      To

9.      CC

10.     BCC

11.     Date Sent

      12.     Date Received

      13.     Date Created

b)    With respect to the "Email Subject" or "File Name" field, the Producing Party may substitute a description of the document where the contents of these fields may reveal privileged information. In the Privilege Log(s), the Producing Party shall identify each instance in which it has modified the content of the "Email Subject" or "File Name" field.

c)    A Metadata export pursuant to Paragraph 10.4 will not relieve the Producing Party of its obligation to provide, for each Document for which privilege is claimed, the subject matter of the Document, basis for assertion of privilege (without revealing information itself that is privileged), and type or nature of the privilege asserted under Paragraph 10.3 (e)-(f) of this ESI Protocol.

10.5   The Producing Party shall produce a key showing the job title(s) for all attorneys identified on that Producing Party's privilege log.

10.6   Should a Receiving Party be unable to ascertain whether or not a document contained on the log is privileged or have reason to believe a particular entry on the log is responsive and does not reflect privileged information, the Receiving Party may request a meet and confer, and the Requesting Party, Receiving Party, and/or Producing Party, as appropriate, shall meet and confer about such deficiencies. The Producing Party shall provide additional information necessary for the Receiving Party to determine if the document has been properly withheld or redacted. If the Requesting Party, Receiving Party, and/or Producing Party, as appropriate, cannot

agree on the provision of such additional information, the Receiving Party will promptly move the Court for resolution.

10.7    Privilege logs shall be produced within a reasonable time following production of the first production volume and shall be supplemented within a reasonable time following each subsequent production where production occurs on a rolling basis, or by another date upon agreement of the Requesting Party and the Producing Party. The Requesting Party, Receiving Party, and/or Producing Party, as appropriate, shall meet and confer to reach agreement regarding what constitutes such reasonable time for that privilege log production.  Notwithstanding the foregoing, all privilege logs shall be produced no later than 45 days prior to the close of fact discovery.

10.8    Documents Presumptively Excluded from Privilege Logs: The following documents presumptively need not be included on a privilege log:

a)    Communications with, or work product prepared by, outside counsel to the parties provided that the document or, if an email chain, every email within the chain, is created or sent after August 1, 2018; and

b)    The internal working files of outside counsel.

10.9    In the interest of time, and to minimize litigation costs, the Requesting Party and Producing Party may in good faith negotiate the exclusion of categories, in addition to those identified in Paragraph 10.8 herein, of Documents that while technically responsive are relatively irrelevant to the issues in the litigation and likely to be privileged or protected by the work-production doctrine.

10.10   Production of Privileged Materials. The production of documents and ESI pursuant to this ESI Protocol shall be without prejudice to and shall not waive, for the purpose of the Proceedings or otherwise, any attorney-client privilege, work product protection, or other privilege or immunity from production ("**Privilege**") that otherwise would apply, subject to the provisions of the Stipulation and Protective Order entered in the captioned matters. _Production of Privileged Materials shall be governed by the Stipulation and Protective Order entered in the matter.

## 11. REDACTIONS AND WITHHOLDING DOCUMENTS

11.1   Pursuant to Rule 26(b)(5)(A), a party may redact or withhold responsive documents only on grounds of (1) attorney-client privilege; (2) protection under the work-product doctrine; and (3) any other privilege or immunity available under applicable law.  If any member of a Document Family is responsive, the Producing party shall produce all family members of that document that are not independently protected as Privileged, unless producing the non-Privileged document(s) would reveal the privileged communication.  Additionally, because of the risk of irreparable harm to individuals, such as identity theft: (1)   an otherwise responsive document that contains personal medical or health records not relevant to this litigation or protected by HIPAA, personal credit card or personal bank account numbers, social security numbers, or tax identification numbers of individual Plaintiffs, individual employees or agents of the Parties, or individuals not a Party to this litigation (together, "sensitive personally identifying information" or "**SPII**") may be redacted to exclude

SPII; (2) a document that is a member of a family that includes one or more responsive documents may be withheld if it contains exclusively SPII.

11.2     To the extent documents are redacted or withheld on the above grounds, the redaction legends or placeholder document for a withheld family member should indicate the reason for the redaction as follows: 1) REDACTED – PRIVILEGED or WITHHELD - PRIVILEGED; 2) REDACTED – WORK PRODUCT or WITHHELD –WORK PRODUCT; 3) REDACTED – OTHER PRIVILEGE; or 4) REDACTED – SPII or WITHHELD – SPII.

## 12. SUBJECT MATTER WAIVER

12.1     The Parties hereby incorporate paragraph 21 of the Stipulation and Protective Order entered in this action regarding inadvertent production.  Further, the Parties agree that no subject matter waiver of attorney-client privilege, work product protection, or any other legally recognized privilege, immunity, or protection from discovery is made or implied by such inadvertent production.  In addition, if a Document that is subject to a claim of attorney-client privilege, work product protection, or any other legally recognized privilege, immunity, or protection from discovery or ground on which production of that information should not be made to any Party ("Inadvertent Production Material") is inadvertently produced to that Party or Parties, such inadvertent production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of attorney-client privilege, work product, or other privilege or immunity.

12.2     A claim of inadvertent production shall constitute a representation by the Producing Party that the Inadvertent Production Material has been reviewed by an attorney for

such Producing Party and that there is a good faith basis for such claim of inadvertent production.

**SO STIPULATED BY:**

Date:   February 6, 2019

   /s/ Adam J. Joines
M. Blake Cleary (DE No. 3614)
Michael S. Neiburg (DE No. 5275)
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

   -and-

JONES DAY
Robert S. Faxon (admitted *pro hac vice*)
Thomas Wearsch (admitted *pro hac vice*)
Kristin S.M. Morrison (admitted *pro hac vice*)
Adam Joines (admitted *pro hac vice*)
North Point
901 Lakeside Avenue
Cleveland, OH  44114.1190
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

*Attorneys for Cleveland-Cliffs Inc. and
Cleveland-Cliffs Minnesota Land Development
LLC*

Date:   February 6, 2019

   /s/ F. Troupe Mickler IV
William P. Bowden (DE No. 2553)
F. Troupe Mickler IV (DE No. 5361)
ASHBY & GEDDES, P.A.
500 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899-1150
Telephone: (302) 654-1888
Facsimile: (302) 654-2067

   -and-

FAEGRE BAKER DANIELS LLP
Dennis M. Ryan (admitted *pro hac vice*)
Christopher J. Harayda (admitted *pro hac vice*)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
Telephone:  (612) 766-7000
Facsimile:  (612) 766-1600

*Attorneys for Glacier Park Iron Ore
Properties LLC*

Date:  February 7, 2019

  _/s/ Daniel N. Brogan_____
Justin R. Alberto (DE No. 5126)
Daniel N. Brogan (DE No. 5723)
600 N. King Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395

        -and-

WHITE & CASE LLP
Thomas E Lauria (admitted *pro hac vice*)
Southeast Financial Center, Suite 4900
200 South Biscayne Blvd.
Miami, FL 33131
Telephone:  (305) 371-2700
Facsimile:  (305) 358-5744

Joshua A. Berman (admitted *pro hac vice*)
Joshua D. Weedman (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020-1095
Telephone:  (212) 819-8200
Facsimile:  (212) 354-8113

Craig H. Averch (admitted *pro hac vice*)
Ronald K. Gorsich (admitted *pro hac vice*)
555 South Flower Street, Suite 2700 Los
Angeles, CA 90071
Telephone: (213) 620-7700
Facsimile: (213) 452-2329

Charles Moore (*pro hac vice* pending)
701 Thirteenth Street, NW
Washington, District of Columbia, 20005-3807
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Attorneys for Mesabi Metallics Company LLC,*
*Chippewa Capital Partners, LLC, and Thomas*
*M. Clarke*

**EXHIBIT A**

1. **COVER LETTER**

A cover letter shall be included with each production and shall include information sufficient to identify all accompanying media (hard drive, thumb drive, DVD or CD), shall identify each production on such media by assigning a Production Volume name or number, and shall include the Bates range for the documents produced in each volume.

2. **PRODUCTION LOAD FILES**

There will be two Load/Unitization files accompanying all productions of ESI.

• The first will be a Metadata import file, in Concordance-format delimited file with a .DAT file extension, that contains the agreed upon Metadata fields in UTF-8 or UTF – 16 encoding.
• The second will be a cross-reference file that contains the corresponding image information identifying document breaks. The acceptable format for the cross-reference files are .log and .opt.

• **Image Load Files**

  1. The name of the image load file shall mirror the name of the delivery volume, and shall have the appropriate extension (e.g., ABC001.OPT).
  2. The volume names shall be consecutive (e.g., ABC001, ABC002, *et seq*.).
  3. There shall be one row in the load file for every TIFF image in the production.
  4. Every image in the delivery volume shall be cross-referenced in the image load file.
  5. The imageID key shall be named the same as the Bates number of the page.
  6. Load files shall not span across media (e.g., CDs, DVDs, hard drives, etc.), *i.e.*, a separate volume shall be created for each piece of media delivered.
  7. Files that are the first page of a logical document shall include a "Y" flags where appropriate.  The subsequent pages of a document shall include a blank in the appropriate position.

• **Concordance Data Load Files**:

  1. Data load files shall be produced in Concordance .DAT format.
  2. The data load file shall use standard Concordance delimiters:
     o Comma - ¶ (ASCII 20);
     o Quote - þ (ASCII 254);
     o Newline - ® (ASCII174).
  3. The first line of the .DAT file shall contain the field names arranged in the same order as the data is arranged in subsequent lines.
  4. All date fields shall be produced in mm/dd/yyyy format.
  5. All attachments shall sequentially follow the parent document/email.
  6. Use carriage-return to indicate the start of the next record.

7. Load files shall not span across media (e.g., CDs, DVDs, hard drives, etc.); a separate volume shall be created for each piece of media delivered.
8. The name of the data load file shall mirror the name of the delivery volume, and shall have a .DAT extension (e.g., ABC001.DAT).
9. The volume names shall be consecutive (e.g., ABC001, ABC002, *et seq.*).
10. If foreign language / Unicode text exists, the .DAT file shall be in UTF-8 or UTF-16 format where appropriate, consistent with this Order Regarding the Production of Discovery Material.

- **OCR/Extracted Text Files**

  1. OCR or Extracted Text files shall be provided in a separate \TEXT\ directory containing Document level text files.
  2. If Foreign Language/Unicode text exists, TEXT files shall be in appropriate UTF-8 or UTF-16 format

**3.    IMAGES**

- Produce Documents in Single Page Group IV TIFF black and white files.
- Image Resolution of 300 DPI.
- If a Receiving Party reasonably deems the quality of the Document produced in TIFF format to be insufficient, the Parties will meet and confer in good faith to determine whether the Producing Party must produce the Document in Native Format, or as color JPEG image files.
- If a Receiving Party reasonably believes that a Document originally produced in black and white needs to be produced in color, it shall notify the Producing Party. The Parties agree to meet and confer in good faith concerning the re-production of such Document(s) in color or in Native Format.
- File Naming Convention:  Match Bates Number of the page.
- Insert placeholder image for files produced in Native Format (see ESI Order).
- Original Document orientation or corrected orientation shall be retained, unless unduly burdensome.

**4.    ESI (AND PAPER TO THE EXTENT APPLICABLE) PRODUCTION METADATA FIELDS**

| Field Name | Description |
|---|---|
| BegBates | Beginning Bates Number. |
| EndBates | Ending Bates Number. |
| BegAttach | Beginning Bates Number of the first Document in a Document family range.  Documents that are part of Document families, i.e., containing parents and attachments, should receive a value. |

| Field Name | Description |
| --- | --- |
| EndAttach | Ending Bates number of the last document in attachment range in a document family range.  Documents that are part of document families, i.e., containing parents or attachments, should receive a value. |
| Custodian | Name of the Custodian of the Document Produced, to the extent reasonably and technically available. |
| AllCustodian | The AllCustodian field shall reference the Name(s) of all Custodian(s) who were in possession of a de-duplicated document, to the extent reasonably and technically available. |
| FileName | Filename of the original source ESI. |
| NativeLink | Relativity path and filename to produced Native Format file (see ESI Order.). |
| EmailSubject | Subject line extracted from an Email. |
| Importance | Email importance flag to the extent reasonably and technically available |
| Title | Title field extracted from the Metadata of a non-Email. |
| Author | Author field extracted from the Metadata of a non-Email. |
| From | From or Sender field extracted from an Email. |
| To | To or Recipient field extracted from an Email. |
| CC | CC or Carbon Copy field extracted from an Email. |
| BCC | BCC or Blind Carbon Copy field extracted from an Email. |
| DateSent | Sent date of an Email (mm/dd/yyyy format). |
| TimeSent | Time of an Email (hh:mm:ss format). |
| DateReceived | Received date of an Email (mm/dd/yyyy format). |
| TimeReceived | Received time of an Email (hh:mm:ss format). |
| DateCreated | Creation date of a file (mm/dd/yyyy format). |
| TimeCreated | Creation time of a file (hh:mm:ss format). |
| DateLastModified | Last modification date (mm/dd/yyyy format). |
| TimeLastModified | Last modification time (hh:mm:ss format). |
| DateLastPrinted | The date the document was last printed. |
| DateAccessed | The last accessed date of the document. |
| File Extension | File extension of Document (.msg, .doc, .xls, etc.). |
| Full Text | Relative file path to full text/OCR File. |
| Confidentiality | "Confidential" or "Highly Confidential," if a Document has been so designated under any Stipulated Protective Order, or ESI Protocol filed with the Court; otherwise, blank. |
| Message-ID | The Outlook Message ID assigned by the Outlook mail server, if applicable. |
| ConversationIndex | Unique alphanumeric identifier for an email conversation, which may be populated by the e-mail client for each outgoing message. |
| HASHValue | MD5 |
| FolderPath | The path to the original folder in which the document was located. |

| Field Name | Description |
|---|---|
| FileSize (in bytes) | Size of the file in bytes. |
| PageCount | The number of pages in the file. |
| AttachRange | Bates number of the first page of the parent item and the Bates number of the last page of the last attachment "child" item, separated by a hyphen - |
| RecordType | To indicate "Paper," "Hard Copy," or "HC" if a hard copy document and "Edoc," "Edoc – Attachment," "Email," Or "Email Attachment" if it is an ESI item. |
| Application | Indicates software application that generated the ESI item (e.g., Outlook, Word). |
| Production Volume | Production volume name or number |
| Redacted | User-generated field that will indicate redactions.  "X," "Y," "Yes," "True," are all acceptable indicators that the document is redacted.  Otherwise, blank. |
| SourceParty | The producing party |
| Number of Attachments | Number of attachments included with email |

## 5.   SYSTEM FILES

Common system files defined by the N1ST library (http://www.nsrl.nist.gov/) need not be produced.

**EXHIBIT B**

**A.    MESABI METALLICS COMPANY LLC'S INITIAL CUSTODIANS**

1.    Dave Sorby
      Senior Manager – Projects

2.    William Everett
      Chief Mine Engineer

3.    Jeffrey Price
      Manager – Mine Safety

4.    Ryan Heule
      Environmental Coordinator

5.    Steven Rutherford
      Former Director – Projects

6.    Robb Bigelow
      Former Mesabi Chief Operating Officer

7.    Thomas M. Clarke
      Former Mesabi Chief Executive Officer

8.    Matthew Stock
      Former Mesabi Chief Executive Officer

**B.    CLEVELAND-CLIFFS INC. AND CLEVELAND-CLIFFS MINNESOTA LAND DEVELOPMENT LLC'S INITIAL CUSTODIANS**

1.    David Cartella
      Vice President, Government & Environmental Affairs

2.    Terry Fedor
      Executive Vice President, United States Iron Ore

3.    Matt Holihan
      Controller, United States Iron Ore

4.    Craig Filizetti
      Director, Supply Chain & Asset Management

5.    Clifford Smith
      Executive Vice President, Business Development

6.    Terrence Mee
      Executive Vice President, Global Commercial

7.    Matthew Zajac
      Iron Ore Sales Associate

8.    Benjamin Jonozzo
      Sales Manager

9.    Gabriel Johnson
      Senior Manager of Land Administration

10.   Jesse Dunsmoor
      Minnesota Land Administrator

11.   Lourenco Goncalves
      Chairman, President, and Chief Executive Officer

**C.**     **GLACIER PARK IRON ORE PROPERTIES LLC'S INITIAL CUSTODIANS**

1.     David Schlagel
       President

2.     Shawn Rosenzweig
       Chief Legal Officer

**D.      CHIPPEWA CAPITAL PARTNERS, LLC'S INITIAL CUSTODIANS**

1.      John Oram
        Chief Financial Officer

2.      Thomas M. Clarke
        Former Chippewa Chief Executive Officer

**E.**      **THOMAS M. CLARKE'S INITIAL CUSTODIANS**

1.      Thomas M. Clarke

**EXHIBIT C**

**Search Terms to be searched by Cliffs, Cliffs Minnesota, and Glacier Park:**
Mesabi Name
Mesabi List
Common List

**Search Terms to be searched by Mesabi, Chippewa, and Thomas Clarke:**
Cliffs Name
Cliffs List
Glacier Park Name
Common List

**Search Terms**

*To be searched by Cliffs, Cliffs Minnesota, and Glacier Park (in addition to the Common List)*

| Mesabi Name: | Mesabi List: |
|---|---|
| 1. Mesabi | 1. "Department of Natural Resources" AND (Essar OR Mesabi OR ESML OR Nashwauk OR Butler) |
| 2. Chippewa | 2. DNR AND (Essar OR Mesabi OR ESML OR Nashwauk OR Butler) |
| 3. "Vencer Capital" | 3. *@state.mn.gov ((in fields: To/From/CC/BCC) AND (Essar OR Mesabi OR ESML OR Nashwauk OR Butler) |
| 4. Merida | |
| 5. Miranda | |
| 6. Pocahontas | 4. Barr AND (Essar OR Mesabi OR ESML OR Nashwauk OR Butler) |
| 7. "Virginia Conservation Legacy Fund" | 5. ArcelorMittal AND (Essar OR Mesabi OR ESML OR Nashwauk OR Butler) |
| 8. Clarke | 6. "Environmental Law Group" AND (Essar OR Mesabi OR ESML OR Nashwauk OR Butler) |
| 9. Bigelow | |
| 10. Luther | 7. ELG AND (Essar OR Mesabi OR ESML OR Nashwauk OR Butler) |
| 11. Jennifer /5 Bell | 8. "U.S. Steel" AND (Essar OR Mesabi OR ESML OR Nashwauk OR Butler) |
| 12. John /5 Oram | |
| 13. Heasley | 9. Nashwauk AND project |
| 14. Fennessey | 10. Chewbacca |
| 15. Pauker | 11. Neverland |
| 16. Heule | 12. "Hot briquetted iron" AND (Essar OR Mesabi OR ESML OR Nashwauk OR Butler) |
| 17. Brunfelt | |
| 18. Matthew AND Stock | 13. HBI AND (Essar OR Mesabi OR ESML OR Nashwauk OR Butler) |
| 19. Sorby | |
| 20. Ellis | 14. "Direct reduced iron" AND (Essar OR Mesabi OR ESML OR Nashwauk OR Butler) |
| 21. Ray AND Jones | |
| 22. William AND Everett | 15. DRI AND (Essar OR Mesabi OR ESML OR Nashwauk OR Butler) |
| 23. Oja | |
| 24. Mattson | 16. "Liberty House" |
| 25. Beauregard | 17. SPL |
| 26. Ramakrishnan | |
| 27. Jeffrey AND Price | |
| 28. Rutherford | |
| 29. Swanger | |
| 30. *@essar.com (in fields: To/From/CC/BCC) | |
| 31. *@mesabimetallics.com (in fields: To/From/CC/BCC) | |
| 32. *@kissito.org (in fields: To/From/CC/BCC) | |
| 33. *@clarkeinvestments.com (in fields: To/From/CC/BCC) | |
| 34. *@dsainvestments.com (in fields: To/From/CC/BCC) | |

## Search Terms

*To be searched by Mesabi, Chippewa, and Mr. Clarke (in addition to the Common List)*

| Cliffs Name: | Glacier Park Name: |
|---|---|
| 1. Cliff* | 1. "Glacier Park" |
| 2. CLF | 2. GP |
| 3. CNR | 3. GPIOP |
| 4. *@cliffsnr.com (in fields: To/From/CC/BCC) | 4. GNIOP |
| 5. *@cleveland-cliffs.com (in fields: To/From/CC/BCC) | 5. Schlagel |
| 6. *@clevelandcliffs.com (in fields To/From/CC/BCC) | 6. Rosenzweig |
| 7. CMLD | 7. *@nrc-inc.com (in fields: To/From/CC/BCC) |
| 8. Lourenco | 8. *@gpiop.com (in fields: To/From/CC/BCC) |
| 9. Goncalves | 9. *@mccombshq.com (in fields: To/From/CC/BCC) |
| 10. Terry | |
| 11. Terrence | |
| 12. Mee | |
| 13. Tompkins | |
| 14. Graham | |
| 15. Cliff AND Smith | |
| 16. Flanagan | |
| 17. Fedor | |
| 18. Cartella | |
| 19. Croswell | |
| 20. Filizetti | |
| 21. Forrester | |
| 22. Holihan | |
| 23. Persico | |
| 24. Adam | |
| 25. Munson | |
| 26. Patrick | |
| 27. Bloom | |
| 28. Karnowski | |
| 29. Gabriel | |
| 30. Gabe | |
| 31. Zajac | |
| 32. Jonozzo | |
| 33. Finan | |
| 34. Harapiak | |
| 35. Maurice | |
| 36. Romani | |
| 37. Dunsmoor | |
| 38. Jesse | |
| 39. Orobona | |
| 40. Gitzlaff | |
| 41. Eliason | |

**Search Terms**

| | |
|---|---|
| 42. Aultman<br>43. Latendresse<br>44. Carlson<br>45. Asgaard<br>46. Gischia<br>47. Michael AND Long<br>48. Aagenes<br>49. Hess<br>50. Lubben<br>51. McQue<br>52. Scher | |
| **Cliffs List:**<br>1.  "Department of Natural Resources" AND (Essar OR Mesabi OR ESML OR Nashwauk OR Butler OR Cliffs OR Lourenco OR Goncalves OR Terry OR Mee OR Fedor OR Dave OR Cartella OR Kelly OR Tompkins OR Cliff OR Smith OR James OR Graham)<br>2.  DNR AND (Essar OR Mesabi OR ESML OR Nashwauk OR Butler OR Cliffs OR Lourenco OR Goncalves OR Terry OR Mee OR Fedor OR Dave OR Cartella OR Kelly OR Tompkins OR Cliff OR Smith OR James OR Graham)<br>3.  *@state.mn.gov ((in fields: To/From/CC/BCC) AND (Essar OR Mesabi OR ESML OR Nashwauk OR Butler OR Cliffs OR Lourenco OR Goncalves OR Terry OR Mee OR Fedor OR Dave OR Cartella OR Kelly OR Tompkins OR Cliff OR Smith OR James OR Graham)<br>4.  Barr AND (Essar OR Mesabi OR ESML OR Nashwauk OR Butler OR Cliffs OR Lourenco OR Goncalves OR Terry OR Mee OR Fedor OR Dave OR Cartella OR Kelly OR Tompkins OR Cliff OR Smith OR James OR Graham)<br>5.  ArcelorMittal AND (Essar OR Mesabi OR ESML OR Nashwauk OR Butler OR Cliffs OR Lourenco OR Goncalves OR Terry OR Mee OR Fedor OR Dave OR Cartella OR Kelly OR Tompkins OR Cliff OR Smith OR James OR Graham)<br>6.  "Environmental Law Group" AND | |

**Search Terms**

| | |
|---|---|
| (Essar OR Mesabi OR ESML OR Nashwauk OR Butler OR Cliffs OR Lourenco OR Goncalves OR Terry OR Mee OR Fedor OR Dave OR Cartella OR Kelly OR Tompkins OR Cliff OR Smith OR James OR Graham)<br>7. ELG AND (Essar OR Mesabi OR ESML OR Nashwauk OR Butler OR Cliffs OR Lourenco OR Goncalves OR Terry OR Mee OR Fedor OR Dave OR Cartella OR Kelly OR Tompkins OR Cliff OR Smith OR James OR Graham)<br>8. "U.S. Steel" AND (Essar OR Mesabi OR ESML OR Nashwauk OR Butler OR Cliffs OR Lourenco OR Goncalves OR Terry OR Mee OR Fedor OR Dave OR Cartella OR Kelly OR Tompkins OR Cliff OR Smith OR James OR Graham) | |

**Search Terms**

*To be searched by all Parties*:

| Common List: | |
|---|---|
| 1.  Jess /5 Richards | 88.  Hammerlund |
| 2.  Dayton | 89.  "Harris Davis" |
| 3.  Polasky | 90.  "Core and Main" |
| 4.  Clevenstine | 91.  HD Supply Waterworks" |
| 5.  Enzler | 92.  "Hoover Construction" |
| 6.  Engstrom | 93.  "Idea Drilling" |
| 7.  Lewis | 94.  Ingersoll |
| 8.  Landwehr | 95.  "Iowa Trenchless" |
| 9.  Naramore | 96.  "Ironman Concrete" |
| 10. Mark /5 Phillips | 97.  "ISCO Industries" |
| 11. Steve /5 Peterson | 98.  Jamar |
| 12. Hiti | 99.  Fellman; |
| 13. Tomassoni | 100.Sundbom; |
| 14. Bakk | 101.Jasper |
| 15. Eichorn | 102."JC Custom Welding" |
| 16. Sandstede | 103."JK Mechanical" |
| 17. Metsa | 104.JPJ |
| 18. Layman | 105."K Building Components" |
| 19. Essar | 106.KGM |
| 20. ESML | 107.Konecranes |
| 21. Madhu | 108.Lakehead |
| 22. Vuppuluri | 109.Macki; |
| 23. Sanjay | 110."Lake Superior Consulting" |
| 24. Bhartia | 111.LeJeune |
| 25. Prashant | 112.Lerch |
| 26. Ruia | 113.Lexicon |
| 27. Anshuman | 114."Prospect Steel" |
| 28. Nubai | 115.Lind |
| 29. DSA | 116.Machinewell |
| 30. Riverdale | 117.Met-Chem |
| 31. Mercuria | 118.Meso |
| 32. ENCECO | 119."Minnesota Industries" |
| 33. ERP | 120.Nagle |
| 34. "Effective Date" | 121.Noramco |
| 35. Vespa | 122."North Engineering" |
| 36. Quist | 123."Northern Industrial Insulation" |
| 37. Ziemba | 124."Northern Mining Services" |
| 38. Superior | 125."OM Freight" |
| 39. Hecimovich | 126.Parsons |
| 40. Lindahl | 127."Piping Service" |
| 41. Snyder | 128."Range Cornice" |
| 42. Kiewit | 129."Rice Lake Construction" |
| 43. Tenova | 130."River Consulting" |
| 44. Kohlberg | 131."River Town Ironworks" |

**Search Terms**

45. Knorr
46. Martinand
47. Doug /5 Johnson
48. Madnani
49. "Northern Industrial Erectors"
50. NIE
51. Greenhouse
52. Jonathon AND Bloomberg
53. James AND Payne
54. Midrex
55. "Kobe Steel"
56. Woody
57. Montague
58. Stegink
59. StratMine
60. Sysverud
61. "Iron Range Building & Construction Trades Council"
62. "Iron Range Building And Construction Trades Council"
63. Kuettel
64. Agra
65. Austin /5 Powder
66. "Ambassador Steel"
67. AMI
68. Amptek
69. Lance /5 Johnson
70. Baldor
71. Bell-Camp
72. "Benchmark Engineering"
73. "Border States"
74. Bougalis
75. "Braun Intertec"
76. Brown-Campbell
77. "Champion Charter"
78. Contech
79. "Crane 1"
80. "Custom Fabrication
81. Dawes
82. Dearborn
83. Donaldson
84. Dyno
85. "Edwards Oil"
86. "Falcon Technical"
87. FLSmidth

132. "Road Machinery & Supplies"
133. "Saginaw Power"
134. "Schneider Electric"
135. Schenck
136. Seppi
137. Hendrickson
138. "Sim Supply"
139. Sondex
140. Swanson
141. Tristan
142. TrueNorth
143. TSC
144. Ulland
145. "Van Ert"
146. Veyance
147. WesTech
148. Ziegler
149. Burnes
150. Cornella
151. Trunt;
152. Tinquist;
153. Ives
154. DeNucci
155. Skyles
156. Heyblom
157. Dale /5 Adams
158. Skelton
159. Lislegard
160. Cannata
161. Weikum
162. Skalko
163. Cuffe
164. King
165. Giorgi
166. Zupancich
167. Novak
168. Hagen
169. Tuorila
170. Nygaard
171. Josh /5 Carlson
172. Robert /5 Stein
173. Radinovich
174. Stauber
175. Nolan