# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>ESSAR STEEL MINNESOTA LLC and ESML HOLDINGS INC.,[1]<br><br>     Debtors. | Chapter 11<br><br>Case No. 16-11626 (BLS)<br><br>(Jointly Administered) |
| MESABI METALLICS COMPANY LLC (F/K/A ESSAR STEEL MINNESOTA LLC),<br><br>     Plaintiff<br><br>  v.<br><br>CLEVELAND-CLIFFS, INC. (F/K/A CLIFFS NATURAL RESOURCES, INC.); CLEVELAND-CLIFFS MINNESOTA LAND DEVELOPMENT LLC; GLACIER PARK IRON ORE PROPERTIES LLC; and DOES 1-10<br><br>     Defendants. | Adv. Proc. No. 17-51210 (BLS) |
| GLACIER PARK IRON ORE PROPERTIES LLC,<br><br>     Counterclaim-Plaintiff<br><br>  v.<br><br>MESABI METALLICS COMPANY LLC (F/K/A ESSAR STEEL MINNESOTA LLC),<br><br>     Counterclaim-Defendant. | |

---

[1] Essar Steel Minnesota LLC has changed its name to Mesabi Metallics Company LLC.  The last four digits of its federal taxpayer identification number are 8770.

CLEVELAND-CLIFFS, INC. (F/K/A CLIFFS
NATURAL RESOURCES, INC.);
CLEVELAND-CLIFFS MINNESOTA LAND
DEVELOPMENT LLC,

> Counterclaim-Plaintiffs

v.

MESABI METALLICS COMPANY LLC
(F/K/A ESSAR STEEL MINNESOTA LLC)

> Counterclaim-Defendant.

CLEVELAND-CLIFFS, INC. (F/K/A CLIFFS
NATURAL RESOURCES, INC.);
CLEVELAND-CLIFFS MINNESOTA LAND
DEVELOPMENT LLC,

> Third-Party Plaintiffs

v.

CHIPPEWA CAPITAL PARTNERS, LLC; and
THOMAS M. CLARKE,

> Third-Party Defendants.

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
DISCOVERY FROM ADDITIONAL DOCUMENT CUSTODIANS FROM PLAINTIFF**

AMERICAS 106684984

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................... 1

STATEMENT OF FACTS ................................................................................ 5

I.  Cliffs Was Intimately Familiar with Mesabi and Its Employees When It Agreed to Mesabi's Custodians ................................................................. 5

II.  Cliffs Only Requested Additional Custodians After Being Forced to Add Its Own .............................................................................................. 8

III.  The Motion Rehashes Cliffs' Prior Request for the Six Repeat Custodians, Which Cliffs Failed to Support and Lost ................................. 9

IV.  Cliffs' Motion Seeks Documents from Several Custodians It Has Never Requested Before ........................................................................... 11

ARGUMENT ................................................................................................. 12

I.  Cliffs' Motion for Reconsideration Is Months Late and Utterly Meritless ......... 12

A.  Cliffs' Motion Is a Motion for Reconsideration for the Six Repeat Custodians ................................................................................... 12

B.  Cliffs Offers No Good Basis to Reconsider the Court's October 2020 Order ....................................................................................... 14

1.  Cliffs Has Known of the Proposed Custodians and Their Roles for Years ....................................................................... 14

2.  Cliffs Chose to Not Cite Documents in the July Motion .............. 16

3.  Cliffs Had the Documents Cited in the Motion Before July 2020 (or Their Equivalents) ................................................. 17

4.  Mesabi's Interrogatory Responses Are Old News ...................... 18

C.  Cliffs Waited Too Long to Request Reconsideration ............................. 18

II.  Cliffs' Motion Is Untimely ................................................................. 20

A.  Cliffs Was Required to Ask Mesabi for the Eleventh-Hour Custodians Before Filing This Motion – But It Did Not ............................ 20

B.  Cliffs' Request Is Untimely Because It Sat on Its Hands for More Than a Year Before Requesting These Custodians .................................. 21

AMERICAS 106684984

III.    The Requested Discovery Is Not Proportional to the Needs of the Case ............. 24

    A.    The Requested Discovery Would Be Hugely Expensive and Time-Consuming ................................................................................................ 24

    B.    The Requested Discovery Is Cumulative of What Mesabi Has Produced 25

    C.    The Requested Discovery Is of Limited Relevance.................................. 31

CONCLUSION .................................................................................................................... 34

AMERICAS 106684984

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### CASES

*Brown v. Mace-Liebson*,
  779 F. App'x 136 (3d Cir. 2019) .................................................................................13, 18

*Bruno v. Bozzuto's, Inc.*,
  127 F. Supp. 3d 275 (M.D. Pa. 2015) ...................................................................................18

*Clair v. Bank of Am., N.A.*,
  No. 17-5618, 2017 U.S. App. LEXIS 22922 (6th Cir. Nov. 14, 2017) ..................................12

*EEOC v. United States Steel Corp.*,
  No. 10-1284, 2011 U.S. Dist. LEXIS 149198 (W.D. Pa. Dec. 29, 2011) ..............................19

*Enslin v. Coca-Cola Co.*,
  No. 2:14-cv-06476, 2016 U.S. Dist. LEXIS 193556 (E.D. Pa. June 8, 2016)............13, 16, 26

*Floyd v. Ada Cty.*,
  No. 1:17-cv-00150-DCN, 2020 U.S. Dist. LEXIS 74937 (D. Idaho Apr. 27,
  2020) ....................................................................................................................................22

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
  297 F.R.D. 99 (S.D.N.Y. 2013) ............................................................................................25

*Ganpat v. E. Pac. Shipping, PTE, Ltd.*,
  No. 18-13556, 2020 U.S. Dist. LEXIS 37259 (E.D. La. Mar. 4, 2020) ................................19

*Golden v. The Guardian (In re Lenox Healthcare, Inc.)*,
  366 B.R. 292 (Bankr. D. Del. 2007) .....................................................................................16

*Halperin v. Moreno (In re Green Field Energy Servs.)*,
  Nos. 13-12783 (KG), 15-50262 (KG), 2018 Bankr. LEXIS 491 (Bankr. D.
  Del. Feb. 23, 2018) ...............................................................................................................13

*Herndon v. City of Henderson*,
  No. 2:19-cv-00018-GMN-NJK, 2020 U.S. Dist. LEXIS 237573 (D. Nev. Dec.
  16, 2020) ...............................................................................................................................22

*Hostetler v. Johnson Controls, Inc.*,
  No. 3:15-CV-226 JD, 2017 U.S. Dist. LEXIS 137685 (N.D. Ind. Aug. 28,
  2017) ................................................................................................................................13, 16

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  No. MDL No 1917, 2015 U.S. Dist. LEXIS 139387 (N.D. Cal. July 9, 2015) ......................31

v

AMERICAS 106684984

*In re Sulfuric Acid Antitrust Litig.*,
　231 F.R.D. 331 (N.D. Ill. 2005)........................................................................23

*Lai v. Quality Loan Serv. Corp.*,
　No. CV 10-2308 PSG, 2010 U.S. Dist. LEXIS 61120 (C.D. Cal. June 2, 2010) ...................13

*LaRiviere, Grubman & Payne, LLP v. Phillips*,
　No. 07-cv-01723-WYD-CBS, 2010 U.S. Dist. LEXIS 45657 (D. Colo. Mar.
　31, 2010) ........................................................................................................13

*Lauris v. Novartis AG*,
　No. 1:16-cv-00393-LJO-SAB, 2016 U.S. Dist. LEXIS 170203 (E.D. Cal. Dec.
　7, 2016) .................................................................................................... passim

*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*,
　43 F.3d 922 (4th Cir. 1995) ............................................................................23

*Nautilus Ins. Co. v. Iliamna Dev. Corp.*,
　No. 3:10-cv-0008-HRH, 2011 U.S. Dist. LEXIS 174545 (D. Alaska June 22,
　2011) ..............................................................................................................22

*Naviant Mktg. Sols., Inc. v. Larry Tucker, Inc.*,
　339 F.3d 180 (3d Cir. 2003)............................................................................21

*Pac. Coast Steel v. Stoddard*,
　No. 11cv2073 H(RBB), 2013 U.S. Dist. LEXIS 199213 (S.D. Cal. Feb. 15,
　2013) ..............................................................................................................13

*Russell v. Richardson*,
　No. 15-49, 2018 U.S. Dist. LEXIS 96961 (D.V.I. June 5, 2018) ..........................................19

*SAI v. FCC*,
　No. 20-1314 (UNA), 2020 U.S. Dist. LEXIS 116828 (D.D.C. July 1, 2020) ........................12

*Sec'y United States Dep't of Labor v. Koresko*,
　726 F. App'x 127 (3d Cir. 2018) ....................................................................13

*Texas Alliance for Retired Americans v. Hughes*, No. 20-40643 (5th Cir. Mar. 11,
　2021) ..............................................................................................................12

*United States v. Balice*,
　No. 14-3937 (KM)(JBC), 2016 U.S. Dist. LEXIS 42772 (D.N.J. Jan. 15,
　2016) ..............................................................................................................13

*Williams v. AMTRAK*,
　No. 18cv7070 (DLC), 2019 U.S. Dist. LEXIS 178107 (S.D.N.Y. Oct. 15,
　2019) ..............................................................................................................19

AMERICAS 106684984

## STATUTES AND RULES

Bankr. D. Del. L.R. 7026-1(d) ................................................................................................... 21

Fed. R. Civ. P. 37(a)(1) ............................................................................................................ 21

AMERICAS 106684984

Plaintiff Mesabi Metallics Company LLC ("Mesabi"),[2] hereby files this opposition ("Opposition") to Defendant Cleveland-Cliffs Inc.'s ("Cliffs") Motion to Compel Discovery from Additional Document Custodians from Plaintiff Mesabi Metallics Company LLC (the "Motion"). D.I. 458.[3]

## PRELIMINARY STATEMENT

More than two years after discovery started, approximately one year after Mesabi produced its *one millionth* document, and on the doorstep of fact depositions, Cliffs has filed a motion seeking massive additional discovery from Mesabi – ten new document custodians. A party making such a burdensome, costly, and disruptive demand would face an extremely high bar in any circumstance – requiring far greater justification than Cliffs offers here – but Cliffs' Motion is particularly objectionable for at least two reasons.

**Cliffs is seeking reconsideration of its earlier, denied motion**. First, the Court has already denied Cliffs' request for six of the ten custodians it is now re-demanding (the "Repeat Custodians"). Cliffs inexplicably does not even acknowledge its prior request in its new Motion, proceeding as if it is seeking the relief for the first time. The proof, however, is right there on the docket. In July 2020, Cliffs asked the Court to compel Mesabi to produce documents from the six Repeat Custodians (the "July Motion"). D.I. 348. And in October 2020, the Court rejected that request. D.I. 377.

Cliffs' reluctance to draw attention to its July Motion is understandable. Despite the millions of pages Mesabi had produced by the time of that motion, the July Motion did not cite a

---

[2] Mesabi is formerly known as Essar Steel Minnesota LLC. For consistency and ease of understanding, this brief at times uses "Mesabi" to refer to the entity while it was still known as Essar Steel Minnesota LLC.

[3] The Motion was accompanied by Defendant Cleveland-Cliffs Inc.'s Memorandum of Law in Support of Its Motion to Compel Discovery from Additional Document Custodians from Plaintiff Mesabi Metallics Company LLC (the "Brief"). D.I. 459.

single document to justify its custodian request – even though Mesabi **warned** Cliffs before Cliffs

filed that July Motion that it needed to provide documentary support for its request.  While Mesabi

is confident that it would have prevailed on the merits regardless of how many documents Cliffs

had identified, one can imagine that Cliffs is now second-guessing its decision to forego citing any

evidence.  But regardless of how badly Cliffs would like a do-over, Cliffs does not get to take up

more of the Court's and Mesabi's time just because it now has misgivings about its tactical

decisions.  When a party seeks reconsideration of an earlier ruling, as in this Motion, it can prevail

only if it identifies new material facts, changes in the law, or legal errors.

     **No new developments justify the Motion**.  The law on discovery disputes has not changed

since last summer, and there can be no question that the Court applied that law faithfully when

deciding the July Motion, so neither of those factors warrants reconsideration.  That leaves the

facts as Cliffs' only possible salvation.  But unfortunately for Cliffs, Mesabi has been exceedingly

forthcoming throughout discovery – in particular through its voluminous document production.

Mesabi produced nearly 90% of its documents before July 2020, and none of the documents

produced after that date have meaningfully altered the factual landscape.

     Additionally, Cliffs' documents show that, even independent of discovery in this case,

Cliffs' knowledge of Mesabi runs deep.  Much of that knowledge comes from public information,

but Cliffs also ███████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Cliffs' long-running familiarity with Mesabi is yet another reason Cliffs cannot claim that its

Motion is based on facts unavailable to it in July 2020.

AMERICAS 106684984

The Motion itself confirms that Cliffs is not relying on new evidence to support its demand for additional custodians. Cliffs repeatedly identifies obvious and commonplace facts to justify its request, such as the proposed custodians' titles and tenures. Additionally, most of the documents cited by Cliffs were produced long before July 2020, and even the later documents are not substantively new. In short, at the time of its July Motion, Cliffs knew all of the facts it relies on now, it just elected to not include them. And that decision means that Cliffs cannot use them now to seek the same discovery (although they are insufficient anyway).

**Cliffs never asked Mesabi to add the other custodians before filing its Motion**. The second factor making Cliffs' Motion especially indefensible is that Cliffs brought the Motion without even asking Mesabi for four of the custodians, namely the four who were not included in the July Motion (the "Eleventh-Hour Custodians" and, with the Repeat Custodians, the "Proposed Custodians"). That failure to speak with Mesabi violates Cliffs' obligation to confer about a possible discovery dispute before raising it with the Court.

It also highlights just how unimportant the Eleventh-Hour Custodians are to Cliffs' case. Cliffs first approached Mesabi about adding new custodians in January 2020. Each of the Eleventh-Hour Custodians were known to Cliffs at that time – Cliffs even included three of the four *in its own Rule 26 disclosures*. If those individuals were truly needed, it would not have taken Cliffs a year to mention them, especially given the hoard of documents available to Cliffs during that time.

But even if Cliffs had good arguments for adding the custodians (it does not), Cliffs waited too long to ask for them. At this point in discovery, Cliffs' request for the Eleventh-Hour Custodians is untimely.

3

**The requested discovery is grossly disproportional to the needs of the case**.  Even ignoring the above deficiencies, the requested discovery must be rejected as overly burdensome, particularly at this late stage of discovery.

Mesabi has produced about 1.2 million documents in this case at a cost of millions of dollars.  Cliffs' Motion would more than double the number of Mesabi custodians, adding millions more dollars to Mesabi's document production tab.

In addition to the sheer cost, complying with the Motion would do great harm to Mesabi's ability to prosecute its claims in a timely manner.  Indeed, Cliffs' Motion seems intended to cause maximum disruption.  Cliffs filed the Motion just a month before the parties were scheduled to start depositions and just a few months after Cliffs produced the bulk of its documents.

There is no reason Cliffs could not have filed the Motion sooner, even as to the October ruling Cliffs asks the Court to reconsider.  Cliffs first claimed to need many of the custodians over a year ago, and Cliffs has known all the facts it cites in support for at least that long.  The timing of Cliffs' Motion is particularly galling because Mesabi worked very hard to produce most of its documents early in the discovery period, while Cliffs delayed producing the majority of its documents until the last possible date in October 2020.  The bottom line is that the only thing that stopped Cliffs from filing this Motion many months ago is Cliffs itself.

**The Proposed Custodians are cumulative of Mesabi's existing custodians**.  Setting aside the mammoth costs and time burdens that would be imposed by the requested discovery, the Motion should be denied because Mesabi's existing custodians are more than adequate.  Those custodians cover at least the last decade of the Project, from 2010 to the present, and they represent all relevant areas of Mesabi's business, including each area that Cliffs identifies as important, such as negotiations with the State of Minnesota, financing, vendor negotiations, and the like.

4

The redundancy of the Proposed Custodians is confirmed by the number of times they appear in Mesabi's produced documents – in the hundreds of thousands.  Indeed, Cliffs cites Ray Jones as a prime example of a Proposed Custodian whose documents are absent from Mesabi's production, but Mesabi estimates that he appears on more than 50,000 produced Mesabi documents.

**This case is fundamentally about Cliffs and its conduct**.  Cliffs suggests that the parties' discovery burdens should be identical, but that is wrong for two reasons:  (1) the companies are very different in size and scale, and (2) Cliffs is the company that has engaged in wrongdoing.  Discovery confirms all of the key allegations in Mesabi's second amended complaint, including: Cliffs acquired property to undermine the Project, Cliffs bullied vendors that assisted Mesabi, and Cliffs locked up customers so that Mesabi would have no one to buy its products.  Indeed, discovery has revealed even more Cliffs' anticompetitive conduct than Mesabi realized when it filed its complaint.  As much as Cliffs wants to deflect attention from its actions, at the end of the day this case is about what Cliffs has done.

For these and other reasons explained below, the Motion should be denied.

## STATEMENT OF FACTS

### I.    Cliffs Was Intimately Familiar with Mesabi and Its Employees When It Agreed to Mesabi's Custodians

Cliffs and Mesabi negotiated custodians in late 2018 and early 2019, and they reached a final agreement on custodians in February 2019.  *See* Stipulation Regarding the Search for and Production of Discovery Material, Feb. 7, 2019 (the "ESI Protocol").  At the time of their negotiations, Cliffs was well-informed about Mesabi and its employees.  For instance, months before finalizing custodians, on October 26, 2018, Mesabi and Cliffs exchanged Rule 26 disclosures.  Cliffs' *own* Rule 26 disclosures include four of the ten Proposed Custodians (as

5

shown in the table below).   *See* Cliffs' Rule 26(a)(1) Initial Disclosures (Oct. 26, 2018).  Mesabi's Rule 26 disclosures also identified four of the ten proposed custodians.  *See* Mesabi's Initial Disclosures Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure (Oct. 26, 2018). Altogether, seven of the ten Proposed Custodians are included in the parties' Rule 26 disclosures (served over twenty-eight months ago).

In addition, just days after serving its Rule 26 disclosures, on October 30, 2018, Mesabi provided Cliffs with ESI disclosures pursuant to the Court's Local Bankruptcy Rules 7026-3(b)(i)-(v).  In those disclosures, Mesabi identified candidates to be its document custodians and described their job responsibilities.  Those candidates included four of Cliffs' Proposed Custodians.  *See* Mesabi's Submission with Respect to Local Bankruptcy Rules 7026-3(b)(i)-(v), Oct. 30, 2018 (the "ESI Disclosures").

And on December 14, 2018, Mesabi served Rule 26 disclosures relating to Cliffs' counterclaims in this case.  Those disclosures listed one of Cliffs' requested custodians.  *See* Mesabi, Chippewa Capital Partners LLC, and Thomas M. Clarke's Initial Disclosures Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure with Respect to Counterclaims Alleged by Cliffs and Cleveland-Cliffs Minnesota Land Development LLC, Dec. 14, 2018.

In the months before finalizing their custodians, Cliffs and Mesabi also negotiated search terms.  The search terms were designed to find documents relevant to the litigation, and the parties based numerous terms on the names of employees.  *See* ESI Protocol Ex. C.  For example, ***Cliffs*** asked that each party search its documents for "Madhu" and "Vuppuluri" as well as "Sanjay" and "Bhartia," demonstrating that Cliffs was well aware of their involvement in the Project.  *See* Ex. B (Email from A. Joines to D. Kim (Dec. 21, 2018)) (attaching Cliffs' edits to proposed search terms).  In total, the agreed search terms incorporated the names of nine of the ten Proposed

6

Custodians.

The below chart shows which of Cliffs' Proposed Custodians is identified in each of the sources discussed above, all of which Cliffs created or received two-plus years ago.

| Proposed Custodian | Cliffs R. 26 Disclosures | Mesabi R. 26 Disclosures | Mesabi ESI Disclosures | Mesabi Counterclaim Disclosures | Agreed Search Terms |
|---|---|---|---|---|---|
| Jennifer Bell | X | | | X | X |
| Sanjay Bhartia | | | | | X |
| Mitchell Brunfelt | X | | | | X |
| Gary Heasley | X | X | X | | X |
| Ray Jones | | X | X | | X |
| Jamie Nelson | | | | | |
| Neal Oja | | X | X | | X |
| John Oram | X | | | | X |
| Narasimhan Ramakrishnan | | X | X | | X |
| Madhu Vuppuluri | | | | | X |

Cliffs' knowledge of these individuals is by no means limited to information obtained in this litigation. Because Mesabi is the sole threat to Cliffs' monopoly, Cliffs has long been fixated on Mesabi and closely tracks the company – through both public and surreptitious means. ████

████████████████████████████████████████████████

████████████████    ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████    ████████████████

████████████████

As a result of such efforts, Cliffs has known about the Proposed Custodians for years, certainly by the time of the July Motion, but even well before that when the parties discussed custodians. That knowledge extended to Cliffs' counsel, which negotiated the ESI Protocol.

Sanjay Bhartia is a good example. To support its request to make Mr. Bhartia a custodian,

7

Cliffs cites a public declaration he submitted in the bankruptcy. ███████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████    ███████████████████████████    ████████████

███████████████████

Other examples are legion.  For instance, Cliffs carefully followed interactions between

Mesabi and the Minnesota government. ██████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████

## II.    Cliffs Only Requested Additional Custodians After Being Forced to Add Its Own

On September 18, 2019, Mesabi filed a motion to compel Cliffs to add custodians.[4]  At the

time, Cliffs vehemently opposed additional discovery and argued that the request for more

custodians was untimely because it was "more than a year after fact discovery opened."  D.I. 251

at 27.

---

[4] Mesabi initially filed the motion on September 11, 2019, then withdrew it.  D.I. 236.  Mesabi filed its brief in support of its motion on September 18, 2019, and the motion on September 19, 2019.  D.I. 244; D.I. 247.

AMERICAS 106684984

After the Court granted Mesabi's motion in part (ordering Cliffs to add seven custodians), Cliffs changed its tune, suddenly deciding that Mesabi, too, should produce from more people. On January 30, 2020, Cliffs asked Mesabi to add eight custodians. *See* Ex. C (Letter from K. Morrison to J. Berman (Jan. 30, 2020)). Although Cliffs now claims that it based its request for new custodians on "Mesabi's admission during a December 2019 hearing that its original custodians could not cover all of the topics in Cliffs' RFPs," Br. at 3, Cliffs did not make the request until seven weeks after that alleged "admission." Moreover, the letter Cliffs cites (which it declined to attach) offers no support for Cliffs' claim. In that letter, Cliffs gives only a boilerplate justification for its custodian request, claiming it needs them "to ensure that Cliffs receives sufficient materials covering the relevant topics of discovery." Ex. C (Letter from K. Morrison to J. Berman (Jan. 30, 2020)).

Mesabi declined to add the custodians, viewing Cliffs' request as an attempt to seek retribution after the Court ordered Cliffs to add custodians, particularly given Cliffs' generic explanation for why it believed the additional custodians were needed. *See* Ex. D (Letter from J. Berman to K. Morrison (July 16, 2020)) ("That Cliffs is only asking for additional Mesabi custodians after being ordered to produce from additional custodians itself suggests that its demand is an exercise in tit-for-tat discovery and not based on genuine need.").

III. **The Motion Rehashes Cliffs' Prior Request for the Six Repeat Custodians, Which Cliffs Failed to Support and Lost**

About half a year after first claiming it needed more custodians, in July 2020, Cliffs asked the Court to order Mesabi to produce documents from numerous individuals. *See* D.I. 348. That July Motion included a request for six of the ten Proposed Custodians:

- Sanjay Bhartia

- Gary Heasley

- Neal Oja

- John Oram

- Narasimhan Ramakrishnan

- Madhu Vuppuluri

Although the July Motion was seven single-spaced pages and included thirteen more pages of exhibits, Cliffs offered minimal detail about why it believed the named individuals should be custodians. For example, Cliffs did not cite a single document, even though Mesabi had produced over one million documents by that time, including most of the Mesabi documents cited by Cliffs in its current Motion.

Cliffs' failure to support its request for new custodians is particularly surprising for at least two reasons. First, when Mesabi moved for additional custodians in 2019, Mesabi attached a chart describing, on an individual basis, why each proposed custodian is appropriate. *See* D.I. 244 at Ex. A. Thus, Cliffs had Mesabi's motion to use as a template. Second, before Cliffs filed its July Motion, Mesabi *urged* Cliffs to provide more support for its custodian requests, including citations to documents. *See* Ex. D (Letter from J. Berman to K. Morrison (July 16, 2020)) ("Cliffs must explain the basis for its custodian requests on a custodian-by-custodian basis," and "Cliffs must clarify the basis for its demand, including with citations to Mesabi's extensive document production"). Cliffs declined to heed Mesabi's advice.

On October 5, 2020, the Court issued a letter ruling that "address[ed] each matter" in the July Motion (the "October 5 Order"). D.I. 377. Expressly taking up "Cliffs' request for discovery from up to twelve additional custodians," the Court declined to grant the request. *Id.*

Cliffs, however, was undeterred, immediately resuming its demand for more Mesabi custodians. In an attempt to bolster its position, Cliffs went so far as to distort the Court's ruling,

10

claiming that the Court had ordered Mesabi to "'produce responsive documents in its possession' from *each of the custodians Cliffs requested*." *See* Ex. E (Letter from K. Morrison to D. Suggs (Oct. 8, 2020)) (emphasis added).  While Mesabi assumed that Cliffs had just used imprecise wording, Cliffs soon doubled down on that interpretation.  *See* Ex. F (Letter from K. Morrison to D. Suggs (Oct. 16, 2020)).  Of course, that was not the Court's ruling, and Mesabi advised Cliffs that it would not agree to produce from Cliffs' requested custodians.  *See* Ex. G (Letter from D. Suggs to K. Morrison (Oct. 23, 2020)).

Cliffs then waited more than four months before filing this Motion.

## IV.    Cliffs' Motion Seeks Documents from Several Custodians It Has Never Requested Before

Although Cliffs' Motion is notable because it again seeks documents from the six Repeat Custodians, it is at least as notable for the fact that it also asks for the four Eleventh-Hour Custodians despite never raising them with Mesabi before:

- Jennifer Bell

- Mitchell Brunfelt

- Ray Jones

- Jamie Nelson

In other words, for *thirteen months*, from the time Cliffs decided it needed more Mesabi custodians until the date Cliffs filed this Motion, Cliffs never asked Mesabi for documents from these four individuals – despite knowing each of them well, going so far as to identify three of them in its Rule 26 disclosures.  During that time, Cliffs sent Mesabi numerous letters about Mesabi's custodians and also filed the July Motion, and not once did Cliffs even mention Jennifer

11

Bell, Mitchell Brunfelt, or Ray Jones.[5]  Cliffs referenced Jamie Nelson a single time, on February

9, 2021, and that was only to inquire about one document, not to request he be added as a custodian.

*See* Ex. H (Letter from B. Bell to D. Suggs (Feb. 9, 2021)).

## ARGUMENT

**I.      Cliffs' Motion for Reconsideration Is Months Late and Utterly Meritless**

### A.      Cliffs' Motion Is a Motion for Reconsideration for the Six Repeat Custodians

In its Motion, Cliffs completely ignores both its earlier July Motion and the Court's

October 5 Order.  Although surprising, to say the least,[6] there can be no denying that this is the

second time Cliffs has filed a motion seeking documents from the six Repeat Custodians:

- Sanjay Bhartia

- Gary Heasley

- Neal Oja

- John Oram

- Narasimhan Ramakrishnan

- Madhu Vuppuluri

Accordingly, the Motion should be analyzed as a motion for reconsideration.  *See Clair v. Bank of*

*Am.*, N.A., No. 17-5618, 2017 U.S. App. LEXIS 22922, at *3 (6th Cir. Nov. 14, 2017) (finding

second motion for recusal "effectively sought reconsideration"); *SAI v. FCC*, No. 20-1314 (UNA),

2020 U.S. Dist. LEXIS 116828, at *1 (D.D.C. July 1, 2020) (construing motion as motion to

---

[5] *See* Ex. C (Letter from K. Morrison to J. Berman (Jan. 30, 2020)); Ex. I (Letter from K. Morrison to J. Berman & D. Suggs (Mar. 12, 2020)); Ex. J (Letter from R. Faxon to D. Suggs (Apr. 17, 2020)); D.I. 341 (Letter from K. Morrison to J. Shannon (June 23, 2020)); D.I. 348 (Letter from R. Faxon to J. Shannon (July 21, 2020)); Ex. E (Letter from K. Morrison to D. Suggs (Oct. 8, 2020)); Ex. F (Letter from K. Morrison to D. Suggs (Oct. 16, 2020)); Ex. K (Letter from B. Grube to D. Suggs (Nov. 18, 2020)); Ex. L (Letter from B. Grube to D. Suggs (Dec. 3, 2020)); Ex. M (Letter from B. Grube to D. Suggs (Dec. 11, 2020)); Ex. N (Letter from B. Grube to D. Suggs (Feb. 1, 2021)) (asserting that Cliffs "will raise [the issue of additional custodians] separately with the Court").

[6] Litigants' "failure to disclose the earlier denial of their motion violated their duty of candor to the court." *Texas Alliance for Retired Americans v. Hughs*, No. 20-40643 (5th Cir. Mar. 11, 2021).

AMERICAS 106684984

reconsider because it seeks "identical relief"); *Hostetler v. Johnson Controls, Inc.*, No. 3:15-CV-226 JD, 2017 U.S. Dist. LEXIS 137685, at *7 (N.D. Ind. Aug. 28, 2017) ("Plaintiffs' motion is in essence a motion for reconsideration: it seeks the same relief as the previous motion, for the same reasons."); *United States v. Balice*, No. 14-3937 (KM)(JBC), 2016 U.S. Dist. LEXIS 42772, at *3 (D.N.J. Jan. 15, 2016) (determining that motion seeking same relief "is, in substance, a motion for reconsideration").[7]

A motion for "[r]econsideration is an extraordinary remedy which courts should grant 'sparingly.'" *Halperin v. Moreno (In re Green Field Energy Servs.)*, Nos. 13-12783 (KG), 15-50262 (KG), 2018 Bankr. LEXIS 491, at *7 (Bankr. D. Del. Feb. 23, 2018) (citing *In re Tribune Co.*, 464 B.R. 208, 213 (Bankr. D. Del. 2011)); *see also Sec'y United States Dep't of Labor v. Koresko*, 726 F. App'x 127, 131-32 (3d Cir. 2018). "Courts tend to grant motions for reconsideration . . . only upon the grounds traditionally available under [Federal Rule of Civil Procedure] 59(e)." *Enslin v. Coca-Cola Co.*, No. 2:14-cv-06476, 2016 U.S. Dist. LEXIS 193556, at *4 (E.D. Pa. June 8, 2016) (internal citation omitted). Specifically, the party seeking reconsideration can obtain relief only if it identifies "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Id*. (quoting *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010)). It is not enough to cite just any new evidence to support a motion to reconsider; the evidence must be material. *See Brown v. Mace-Liebson*, 779 F. App'x 136, 142 (3d Cir. 2019) (affirming denial of motion for

---

[7] *See also Pac. Coast Steel v. Stoddard*, No. 11cv2073 H(RBB), 2013 U.S. Dist. LEXIS 199213, at *26-27 (S.D. Cal. Feb. 15, 2013) (holding motion is one for reconsideration because it "in part, is seeking the same relief previously denied by this Court"); *Lai v. Quality Loan Serv. Corp.*, No. CV 10-2308 PSG, 2010 U.S. Dist. LEXIS 61120, at *5 (C.D. Cal. June 2, 2010) ("Both the earlier request and the current application seek the same relief. Thus, the Court construes this application as a request for reconsideration."); *LaRiviere, Grubman & Payne, LLP v. Phillips*, No. 07-cv-01723-WYD-CBS, 2010 U.S. Dist. LEXIS 45657, at *15 (D. Colo. Mar. 31, 2010) (finding that "this motion should properly be treated as a motion for reconsideration" because it "essentially seeks the same relief as the motion" previously denied).

AMERICAS 106684984

reconsideration where movant "failed to show that the new evidence was material" and "not merely cumulative").

### B.    Cliffs Offers No Good Basis to Reconsider the Court's October 2020 Order

Cliffs falls far short of satisfying the demanding standard for a motion for reconsideration. Indeed, almost nothing has changed since Cliffs filed its July Motion. Certainly Cliffs has identified no change in the law or a clear error of law. Nor could it. The legal standard for resolving discovery disputes is long-established, and the Court complied with that standard when it ruled on the July Motion.

Cliffs likely will claim that it has uncovered new evidence since July, but any such argument is meritless. As an initial matter, as detailed above, at the time of its July Motion Cliffs had access not only to the parties' discovery disclosures but also millions and millions of pages of Mesabi documents (about 88% of the documents Mesabi has produced). Those materials were more than sufficient for Cliffs to make the same arguments that it has made in the present Motion.

### 1.    Cliffs Has Known of the Proposed Custodians and Their Roles for Years

Most of Cliffs' arguments to add the Repeat Custodians are based on those individuals' positions and tenures. For instance:

- Cliffs contends it needs documents from Madhu Vuppuluri and Gary Heasley because they "served as Mesabi's CEO before and after the two former Mesabi CEOs whose documents Mesabi has produced." Br. at 10.

- Cliffs also asserts Neal Oja should be a custodian because he is "Mesabi's long-time Manager of Procurement" and ████████████████████████████████ ████████ Br. at 11.

- Likewise, Cliffs argues Mesabi should produce documents from individuals who were CFO and Controller, namely John Oram, Sanjay Bhartia, and Narasimhan Ramakrishnan, because ███████ ████████████ Br. at 12.

But in July 2020 these facts were either publically available, included in Mesabi's

14

documents and disclosures, or patently obvious (and likely all three). ███████████
██████████████████████████████████████████████████ Even if that were not the

case, Cliffs cannot credibly claim to have been ignorant of these facts, because, as noted, for years

Cliffs has been employing all possible means to gather intelligence about Mesabi, carefully

following the development of Mesabi's Project, its management, its financing, and the like.

Similarly flawed is Cliffs' argument about Mesabi's personnel turnover and gaps in the

tenures of its custodians. *See* Br. at 3-4, 10-11. Cliffs knew of that turnover well before July 2020,

both from the public documents cited in the Motion ████████████ *See* Br. at 3-4 (citing

public declaration); ████████████████████████████████████████████

████████████████████. Indeed, Cliffs argues that it "should be self-evident

why Cliffs needs documents covering the entire relevant period." Br. at 10. If so, it was also self-

evident when Cliffs filed its July 2020 Motion – and when the parties agreed to custodians in 2019

– but Cliffs declined to raise the matter then.

The obviousness and mundanity of Cliffs' "evidence" is perhaps most apparent in Exhibit

2 of the Brief. It includes such revelations as:

- ████████████████████████████████████████████

- ████████████████████████████████████████████

Yet anyone who knows anything about an upstart business could have told you that Mesabi's CEO

is involved in ████████████████████████████████████████████

████████

Likewise, it no secret that Messrs. Oram and Bhartia, as CFOs, would have had ████

████████████████████████████████████ and that Mr. Ramakrishnan,

the Controller, was involved with ██████████████████████████ Nor would

anyone be surprised to learn that the Manager of Procurement, Planning, and Scheduling, Mr. Oja,

has documents about ████████████████████████████

### 2.    Cliffs Chose to Not Cite Documents in the July Motion

While Cliffs cites documents in this Motion that it did not identify in its July Motion, that

is the product of *Cliffs' decisions*.   For reasons known only to it, Cliffs *elected* to cite *no*

*documents* to support its July request for custodians.   Cliffs made that choice even though it bore

the burden to demonstrate a need for the additional custodians and despite Mesabi's warnings that

Cliffs had not done enough to support its demand.   *See* Ex. D (Letter from J. Berman to K. Morrison

(July 16, 2020)).   Although Cliffs may regret its tactical decision, that is no basis to grant its

Motion.   Indeed, Cliffs' Motion should be denied precisely because it is forcing the Court and

Mesabi to expend substantial resources to address points that Cliffs should have made in its first

motion (though Cliffs' arguments would have been insufficient then, just as they are now).   *See*

*Enslin*, 2016 U.S. Dist. LEXIS 193556, at *4-7 (denying motion for reconsideration where movant

had "[a]mple opportunity" at original argument to present evidence supporting request for more

custodians and holding motion for reconsideration may not be used "as a means to argue new facts

or issues that inexcusably were not presented to the court in the matter previously decided");

*Golden v. The Guardian (In re Lenox Healthcare, Inc.)*, 366 B.R. 292, 295 (Bankr. D. Del. 2007)

(denying motion for reconsideration that was an "attempt to have the Court consider arguments

that should have been included" in the prior briefing); *Hostetler*, 2017 U.S. Dist. LEXIS 137685,

at *7, 10 (denying motion for reconsideration where "[t]here [wa]s no reason the [movant] could

not have submitted that same evidence in the first instance" and stating "a re-do of a matter that

has already received the court's attention is seldom a productive use of taxpayer resources").

AMERICAS 106684984

### 3. Cliffs Had the Documents Cited in the Motion Before July 2020 (or Their Equivalents)

Even Cliffs' newly cited documents underscore that Cliffs is not relying on new evidence, as shown in the attached chart. *See* Ex. A. For instance, of the 35 documents produced in the case that Cliffs cites in the present Motion, 24 were produced *before* the July Motion.[8] *See id.* That number is particularly high because Mesabi has repeatedly objected to Cliffs' custodian requests on the ground that the Court ruled on – and denied – Cliffs' July Motion. Thus, Cliffs no doubt tried to rely exclusively on documents produced after that date, but it was unable to do so.

In any event, the documents Mesabi produced after July 2020 do not reveal any material information that was unavailable to Cliffs before that date. *See id.* To take a couple examples (in alphabetical order):

- Sanjay Bhartia. All of the documents that Cliffs cites in support of adding Mr. Bhartia as a custodian were produced by August 2019 – eleven months before Cliffs filed the July Motion ███████████ ████████████████████████████. In addition, as noted, Cliffs cites Mr. Bhartia's first-day declaration in its Motion, ████████ .

- Gary Heasley. ██████████████████████████████████████████ ████████████ Furthermore, of the three documents about Mr. Heasley on which Cliffs relies, Mesabi produced one before 2020 ██████████████ ██ █ █ █ ████ █ ██ █ ██ ██ ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

---

[8] The documents that Cliffs cites were produced by Mesabi, Cliffs, and nonparty Superior Mineral Resources. In some cases, Mesabi produced other iterations of the cited documents before July 2020.

17

### 4.    Mesabi's Interrogatory Responses Are Old News

Cliffs also depicts Mesabi's responses to six interrogatories as some sort of game changer because Mesabi identified Cliffs' proposed custodians – among dozens of others – as people who have "material information," "information most relevant," or "the most responsive knowledge" about certain topics.  But it is not plausible for Cliffs to suggest that a general description of the Repeat Custodians as knowledgeable on various topics suddenly caused Cliffs to realize that they are critical to its case.  Those descriptions add nothing of substance to the wealth of information available to Cliffs in July 2020, including Cliffs' own disclosures, three sets of Mesabi disclosures, the parties' discovery negotiations, public information, and the million-plus documents Mesabi had produced.  Why else did Cliffs request these six custodians *before* Mesabi served its interrogatory responses?

In addition, these six interrogatories demonstrate, as explained further below, that Mesabi's existing custodians more than cover the waterfront for the topics that Cliffs has identified.  All nine of Mesabi's current custodians are named in response to five of those six interrogatories, and Mesabi's current custodians comprise 44% of the individuals identified in response to the sixth.

In short, Cliffs' Motion is based on elementary facts available to Cliffs in July 2020, not material new evidence as is required.  *See Brown*, 779 F. App'x at 142.  The Motion should be denied as to the six Repeat Custodians.

### C.    Cliffs Waited Too Long to Request Reconsideration

Because Cliffs delayed over four months after the Court's October 5 Order before again asking the Court to compel Mesabi to add the Repeat Custodians, its Motion should be denied as untimely.  Numerous courts in this Circuit and others recognize that parties should be precluded from requesting reconsideration after similarly lengthy periods – or even less.  *See, e.g.*, *Bruno v.*

AMERICAS 106684984

*Bozzuto's, Inc.*, 127 F. Supp. 3d 275, 279 (M.D. Pa. 2015) (denying motion to reconsider spoliation order as untimely because filed 109 days after order); *Ganpat v. E. Pac. Shipping, PTE, Ltd.*, No. 18-13556, 2020 U.S. Dist. LEXIS 37259, at *7 (E.D. La. Mar. 4, 2020) (denying as untimely motion for reconsideration of discovery order because not filed within 28 days); *Williams v. AMTRAK*, No. 18cv7070 (DLC), 2019 U.S. Dist. LEXIS 178107, at *1 (S.D.N.Y. Oct. 15, 2019) (denying motion to reconsider order granting discovery sanctions because filed four weeks after order); *Russell v. Richardson*, No. 15-49, 2018 U.S. Dist. LEXIS 96961, at *3-4 (D.V.I. June 5, 2018) (holding motion to reconsider discovery order untimely because filed three months after order); *EEOC v. United States Steel Corp.*, No. 10-1284, 2011 U.S. Dist. LEXIS 149198, at *33 (W.D. Pa. Dec. 29, 2011) (construing motion about case schedule as motion for reconsideration and denying motion because it was filed "approximately six months after" original order).

In the separate motion that Cliffs filed on the same day as this Motion, Cliffs briefly discussed the July Motion and the Court's resulting order. D.I. 461 at 6-7. It does not appear Cliffs intended that discussion to inform this Motion, because Cliffs did not cross-reference it in this Motion and Cliffs filed this Motion first. While the discussion in the other motion is oblique, Cliffs appears to suggest that the Court failed to grant Cliffs' request for the Repeat Custodians because the Court simply forgot about or overlooked that request. *See id.* ("Cliffs raised Mesabi's refusal to add these [Repeat Custodians] ahead of the July 2020 status conference, . . . but the arguments before the Court focused on whether Mesabi should have to produce from Essar Global custodians").

In the event Cliffs defends the timeliness of its Motion on the ground that the Court never ruled on its July request for the Repeat Custodians, Cliffs ignores the plain language of the October 5 Order, which "address[ed] each matter" presented in the July Motion, including "Cliffs' request

for discovery from up to twelve additional custodians." *See* October 5 Order.

Moreover, if Cliffs in fact believed the Court had overlooked its request for the Repeat Custodians, it was on Cliffs to bring that to the Court's attention promptly, not after nearly five months, for at least three reasons. First, while it is unclear exactly whom Cliffs is blaming for the fact that "arguments before the Court focused on whether Mesabi should have to produce from Essar Global custodians," it was Cliffs' responsibility as an advocate to clearly present its position to the Court. Second, Mesabi advised Cliffs numerous times – beginning less than three weeks after the October 5 Order – that it viewed the matter of the Repeat Custodians resolved. *See* Ex. G (Letter from D. Suggs to K. Morrison (Oct. 23, 2020)) ("[T]he Court addressed 'Cliffs' request for discovery from up to twelve additional custodians' . . . and it denied the request."); Ex. O (Letter from D. Suggs to B. Grube (Dec. 1, 2020)) ("The Court denied Cliffs' request [for additional custodians]. . . . Cliffs has identified no change in law or newly available evidence to justify deviating from the Court's order."). Third, Cliffs surely knew that every day that passed would increase the prejudice to Mesabi, and granting the Motion now would blow out Mesabi's costs and upend its trial preparation.

## II. **Cliffs' Motion Is Untimely**

### A. **Cliffs Was Required to Ask Mesabi for the Eleventh-Hour Custodians Before Filing This Motion – But It Did Not**

At no point before filing this Motion did Cliffs ever ask Mesabi to produce documents from any of the Eleventh-Hour Custodians:

- Jennifer Bell

- Mitchell Brunfelt

- Ray Jones

- Jamie Nelson

20

Given Cliffs' silence about these individuals – despite countless opportunities to inquire about them – it is quite surprising that Cliffs has included them in this Motion.  And it is even more surprising, to say the least, that Cliffs certified to the Court that it "made a reasonable attempt to reach an agreement with counsel for Mesabi" about this matter.  D.I. 458 at 4.

Mesabi disagrees that Cliffs made any "attempt to reach an agreement" to add the Eleventh-Hour Custodians, let alone a reasonable one.  The Court should deny the Motion with respect to the Eleventh-Hour Custodians because Cliffs failed to meet its conferral obligations.  *See Naviant Mktg. Sols., Inc. v. Larry Tucker, Inc.*, 339 F.3d 180, 186 (3d Cir. 2003) ("[B]efore moving to compel discovery, 'a party must first prove that it sought discovery from its opponent.'") (quoting *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1310 (3d Cir. 1995) (citing what is now Fed. R. Civ. P. 37(a)(1))); *see also* Fed. R. Civ. P. 37(a)(1) (party moving to compel discovery "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."); Bankr. D. Del. L.R. 7026-1(d) ("Except for cases or proceedings involving *pro se* parties or motions brought by nonparties, every motion under this Local Rule shall be accompanied by an averment of Delaware Counsel for the moving party that a reasonable effort has been made to reach agreement with the opposing party on the matters set forth in the motion or the basis for the moving party not making such an effort.  Unless otherwise ordered, failure to so aver may result in dismissal of the motion.").

### B.    Cliffs' Request Is Untimely Because It Sat on Its Hands for More Than a Year Before Requesting These Custodians

Although Cliffs' request for the Eleventh-Hour Custodians is not a motion for reconsideration, it is just as objectionable as the demand for the Repeat Custodians – if not more so – because Cliffs could have, and should have, included the Eleventh-Hour Custodians in its July

21

Motion. Cliffs' delay makes its Motion untimely and severely prejudices Mesabi. It also raises serious doubts about whether Cliffs genuinely needs the discovery in question, or if Cliffs has only included the Eleventh-Hour Custodians to try to (1) differentiate this Motion from the July Motion, and (2) increase the odds that the Court will order Mesabi to add some number of custodians as a compromise.

Untimeliness is a "sufficient ground, standing alone, to deny a discovery motion." *Floyd v. Ada Cty.*, No. 1:17-cv-00150-DCN, 2020 U.S. Dist. LEXIS 74937, at *32 (D. Idaho Apr. 27, 2020) (quoting *KST Data, Inc. v. DXC Tech. Co.*, 344 F. Supp. 3d 1132, 1136 n.1 (C.D. Cal. 2018)). Whether a motion is timely "is guided by whether the movant unduly delayed in seeking relief." *Herndon v. City of Henderson*, No. 2:19-cv-00018-GMN-NJK, 2020 U.S. Dist. LEXIS 237573, at *8 (D. Nev. Dec. 16, 2020). "[C]ourts will often deny Rule 37(a) motions because the moving party delayed too long." *Nautilus Ins. Co. v. Iliamna Dev. Corp.*, No. 3:10-cv-0008-HRH, 2011 U.S. Dist. LEXIS 174545, at *6 (D. Alaska June 22, 2011) (quoting 8B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2285 (3d ed. 1998)) (finding motion to compel untimely where movant "waited over three months to respond to [respondant's] objection and then waited another month and one half before filing the instant motion").

There can be no legitimate dispute that the Motion is untimely. To put Cliffs' delay in context, Cliffs' request for the Eleventh-Hour Custodians comes:

- More than two years after (1) Cliffs itself identified Ms. Bell and Mr. Brunfelt in its Rule 26 disclosures and (2) Mesabi identified Mr. Jones in both its Rule 26 disclosures and its ESI Disclosures;

- More than a year after Cliffs first claimed to need new Mesabi custodians;

- Nearly a year after Mesabi's document production exceeded one million files; and

- Just a month before the parties were scheduled to start party depositions under the Second Amended Discovery Plan. *See* D.I. 337.[9]

In addition, by the time Cliffs filed its July Motion, it already had most of the documents on which it relies to support its request for these custodians.   Specifically, before July 2020, Mesabi produced:

- All of the documents that Cliffs cites in Exhibit 2 of the Brief with respect to Jennifer Bell;

- Four of five documents cited for Ray Jones;

- Two of three documents cited for Jamie Nelson; and

- One of three documents cited for Mitchell Brunfelt.

In short, Cliffs has no excuse for not requesting this discovery sooner.   And the consequences of Cliffs' delay fall hard on Mesabi.   Granting Cliffs' motion would severely hamstring Mesabi's ability to prepare this case for trial in a timely manner.   Recall that Mesabi only received most of Cliffs' documents about four months before Cliffs filed the Motion (despite Mesabi's repeated urging that Cliffs produce documents more quickly).   In contrast, Cliffs has had the vast majority of Mesabi's production for over a year.   Now Cliffs is essentially demanding that, instead of developing its claims (including digesting Cliffs' production), Mesabi must restart document discovery from scratch.

Because Cliffs is solely responsible for its decision to wait more than a year to request the Eleventh-Hour Custodians and because Cliffs' delay would prejudice Mesabi, the Court should deny the Motion.  *See, e.g.*, *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 929 (4th Cir. 1995) (affirming denial of motion to compel because of moving party's "unwarranted delay"); *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 339 (N.D. Ill. 2005)

---

[9] The parties are negotiating a new amendment to the schedule, but that was not under discussion at the time Cliffs filed its Motion.

(holding motion to compel untimely and rejecting moving party's prejudice claim because "whatever prejudice they suffered was the result of their own inaction").

### III.   <u>The Requested Discovery Is Not Proportional to the Needs of the Case</u>

#### A.   **The Requested Discovery Would Be Hugely Expensive and Time-Consuming**

If granted, Cliffs' Motion would more than double the number of Mesabi document custodians from nine to nineteen.  Mesabi already has produced 1.2 million documents at a cost of over $3 million (a conservative figure based on contract attorney and vendor costs that does not account for a range of other expenses).  It is reasonable to assume that, to produce from ten more custodians, Mesabi would incur the same or even higher costs.  While exact estimates are impossible, it is undeniable that the costs would be massive.  Such costs far outweigh any benefits of the discovery.  Even producing from just one new custodian likely would require Mesabi to spend hundreds of thousands of dollars.

The costs of such an exercise are not just monetary.  As noted above, the timing of Cliffs' Motion is about as disruptive as it could be.  And it is hard to believe that timing is a coincidence.  Cliffs, of course, could have moved for more custodians when Mesabi did – in September 2019.  Instead, Cliffs opposed that discovery.  Then it waited ten months to file the July Motion, then it let another seven months pass before filing this Motion – when the parties were on the eve of depositions.

Indeed, one can reasonably query whether Cliffs' true objective in filing this Motion is to drain Mesabi's resources and impede its prosecution of the case.  Cliffs knows that Mesabi is a small company without operating revenue, while Cliffs is a behemoth that spent billions of dollars just last year to purchase two major steel companies.

Throughout this case, Cliffs has used its deep pockets to harass and burden Mesabi,

24

creating discovery side shows, making Mesabi jump through needless hoops, and re-litigating issues six different ways. The quintessential example is when Cliffs forced Mesabi to file a motion asking Cliffs to produce PowerPoint files in native format, even though Cliffs could have produced them for about $1,000, far less than it spent litigating the issue (and much less than it forced Mesabi to spend). *See* D.I. 391 at 4-5. But examples abound, some far more costly. To name just a few: (1) Cliffs served Mesabi with hundreds of Requests for Admission and then filed multiple motions related to those requests; (2) Cliffs has bombarded Mesabi with "discovery about discovery," asking endless questions about Mesabi's document preservation, storage, etc., despite no evidence of spoliation; and (3) Cliffs insisted that Mesabi complete a chart summarizing its responses to hundreds of document requests – what proved to be a months-long process that is ongoing – even though Mesabi has essentially agreed to produce everything Cliffs asked for verbatim.

This Motion – a request for six custodians the Court has already rejected and a new, last-minute demand for the four Eleventh-Hour Custodians – is of a piece with such discovery tactics.

## B.    The Requested Discovery Is Cumulative of What Mesabi Has Produced

Discovery is not intended to locate all relevant documents, *see Lauris v. Novartis AG*, No. 1:16-cv-00393-LJO-SAB, 2016 U.S. Dist. LEXIS 170203, at *12 (E.D. Cal. Dec. 7, 2016) ("A litigant does not have to examine every document in its voluminous files to comply with discovery obligations.") (citing *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006)), and no party is required to produce from every potential custodian just because that person might have documents that another does not, *see Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107-08 (S.D.N.Y. 2013) (refusing to compel a party to search the records of a number of additional custodians despite the fact that each had some connection to the events of the case). Where highly burdensome additional discovery would be largely cumulative of existing

25

discovery, courts refuse to grant it. *See Enslin*, 2016 U.S. Dist. LEXIS 193556, at *10-11 ("To justify an order compelling a responding party to search the records of additional custodians, the requesting party 'must demonstrate that the additional requested custodians would provide unique relevant information not already obtained.'") (internal citation omitted); *Lauris*, 2016 U.S. Dist. LEXIS 170203, at *11, 15 (holding burden of adding custodians outweighed likely benefit and stating "even the right to plainly relevant discovery is not limitless").

Those rules clearly apply here, because Mesabi's existing custodians are more than sufficient to account for the key issues in the case. They are:

- **Robb Bigelow** (Former Mesabi Chief Operating Officer)
    - Responsible for day-to-day Project operations, *see* ESI Disclosures at 3;
    - Listed in Mesabi's interrogatory responses as knowledgeable about:



- **Thomas M. Clarke** (Former Mesabi Chief Executive Officer)
    - Responsible for Mesabi's entire business post-confirmation, *see id.* at 3;
    - Listed in Mesabi's interrogatory responses as knowledgeable about:



- **Kevin (Tony) Ellis** (Head – Engineering)

26

- o Responsible for Mesabi's mine engineering at the Project, *see id.* at 2;
- o Listed in Mesabi's interrogatory responses as knowledgeable about:



- **William Everett** (Chief Mine Engineer)
  - o Responsible for mine engineering at the Project, *see id.* at 2;
  - o Listed in Mesabi's interrogatory responses as knowledgeable about:



- **Ryan Heule** (Environmental Coordinator)
  - o Responsible for the day-to-day environmental compliance at the Project, *see id.* at 2;
  - o Listed in Mesabi's interrogatory responses as knowledgeable about:



27



- **Jeffrey Price** (Manager – Mine Safety)
    - o  Responsible for Mesabi's safety efforts at the Project, *see id.* at 3;
    - o  Listed in Mesabi's interrogatory responses as knowledgeable about:

- **Steven Rutherford** (Former Director – Projects)
    - o  Responsible for managing the Project's operations, *see id.* at 3;
    - o  Listed in Mesabi's interrogatory responses as knowledgeable about:



- **Dave Sorby** (Senior Manager – Projects)
    - o  Responsible for the day-to-day operations at the Project, *see id.* at 2;
    - o  Listed in Mesabi's interrogatory responses as knowledgeable about:



- **Matthew Stock** (Former Mesabi Chief Executive Officer)

AMERICAS 106684984

- o  Responsible for Mesabi during the bankruptcy proceedings, *see id.* at 3;
- o  Listed in Mesabi's interrogatory responses as knowledgeable about:



The inescapable conclusion from the above is that the Proposed Custodians would be cumulative of Mesabi's existing custodians.  Certainly this list puts the lie to Cliffs' assertion that "Mesabi failed to collect documents from its employees responsible for on-the ground operations, financial planning, high-level day-to-day reporting, or relationships with its vendors and potential customers."  Br. at 7.  Each of those responsibilities is addressed by multiple custodians, not least the two CEOs who were responsible for overseeing Mesabi as a whole.

A closer look at Mesabi's document production confirms that the requested custodians would be cumulative.  For instance, a search for Mr. Vuppuluri's name in Mesabi's document production indicates that he appears on more than 65,000 documents.  A similar search for Ray Jones brings up over 50,000 documents.  Ironically, Cliffs identifies Ray Jones as a key "example" of an individual whose documents are *missing* from the production.  Br. at 7-8.  Given the numbers, however, he better serves as an example of the hollowness of Cliffs' assertions.

Overall, Cliffs' Proposed Custodians collectively appear on at least 154,000 documents in Mesabi's production – 337,000 when counting attachments and other files related to those

documents.[10]  Each of the proposed custodians appears in thousands of documents.[11]  The lone

exception is Mr. Nelson.  But that is to be expected given his limited role with the company during

the relevant time period, which Cliffs misleadingly describes in the Motion.   Cliffs cites a

declaration from Firdhose Coovadia to assert that Mr. Nelson "assumed 'primary responsibility

for [Mesabi's] day-to-day operations' from August 2018-present."  Br. at 12.  First, the Coovadia

declaration does not state that Mr. Nelson had such responsibility from August 2018 to the present.

It states that he had that responsibility as of the date of the declaration (*i.e.*, "presently"), which is

March 19, 2020.  Declaration of Firdhose Coovadia ("Coovadia Decl.") ¶ 5.  Mr. Nelson has not

been responsible for day-to-day operations' from August 2018 to the present; ███████████

███████████████████████████████  Second, Mr. Coovadia declares that both he and

Mr. Nelson were responsible for day-to-day operations, not that Mr. Nelson alone was responsible.

Coovadia Decl. ¶ 5.   Third, and importantly, the declaration states, "As independent outside

directors, Mr. Nelson and I also have our own business obligations," that is, Mr. Nelson does not

devote all his time to Mesabi.  *Id.*  Fourth, Mr. Nelson "reside[s] outside the United States," not

near any Mesabi location.  *Id*. ¶ 6.  In other words, Cliffs greatly exaggerates Mr. Nelson's role.

Clearly recognizing the broad ground covered by Mesabi's present custodians, Cliffs tries

to bolster its position by playing fast and loose with facts.  Citing a discovery letter, Cliffs claims

that "Mesabi has conceded that it did not consider the extent of withheld materials in restricting

its initial search to only these nine original custodians."  Br. at 15.  It appears that Cliffs concocted

this claim based on Mesabi's response to an inquiry about why ***two documents*** are not in Mesabi's

---

[10] The search terms are:  Sanjay OR Bhartia OR Heasley OR Oja OR Oram OR Narsimham OR Ramkrishnan OR Krish OR Madhu OR Vuppuluri OR (Jen* w/3 Bell) OR Brunfelt OR (Ray* w/3 Jones) OR (Jam* w/3 Nelson).

[11] Some Proposed Custodians appear on multiple documents, and thus it would be incorrect to argue that the Proposed Custodians other than Messrs. Vuppuluri and Jones appear on "only" 40,000 documents.

production.  Mesabi explained that "none of the senders or recipients of the two documents is a Mesabi document custodian."  *See* Ex. P (Letter from D. Suggs to B. Bell (Feb. 19, 2021)).

It is commonplace, to say the least, for a party to have potentially responsive documents that are not in the files of its document custodians.  By trying to transform Mesabi's run-of-the-mill explanation about two documents into a broad "concession" about the sufficiency of Mesabi's custodians, Cliffs reveals just how far it must stretch to defend its Motion.

Cliffs also suggests that Mesabi should add custodians because Cliffs has produced from more individuals than Mesabi.  But there is no rule that parties must have the same number of custodians.  In fact, it would not make sense here, because Cliffs is much larger than Mesabi, it has been operating for decades, while Mesabi is not yet operational, and Cliffs is the party whose conduct is at issue.

The bottom line is that Mesabi's custodians were thoughtfully selected as part of negotiations with Cliffs about the ESI Protocol, and they cover all relevant topics, bolstered by searches proposed by Cliffs to identify documents related to the very custodians that Cliffs demands in its Motion.  Given the breadth of coverage by these custodians, additional custodians would be inherently duplicative.

### C.    The Requested Discovery Is of Limited Relevance

Where proposed custodians are of limited relevance, that weighs heavily in favor of denying a request for their documents.  *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. MDL No 1917, 2015 U.S. Dist. LEXIS 139387, at *193 (N.D. Cal. July 9, 2015) (holding that "the marginal relevance and limited potential benefit of the further discovery sought . . . is outweighed by the significant burden it would impose at a late stage in this case and after [responding party] has already produced substantial discovery").  Here, the minimal relevance of the requested

31

custodians is made clear by the claims in the case, Cliffs' own actions, and the individuals' roles.

As an initial matter, it is important to keep in mind that this case is first and foremost about Cliffs' conduct, not Mesabi's:

- Cliffs is the monopolist. ████████████████████████████████████
  ████████████████████████████████████████████████████████████
  ███████████████████

- Cliffs devised the plan to destroy Mesabi ████████████████████████
  ████████████████████████████████████████████████████████████

- Cliffs threatened vendors that they would lose Cliffs' business if they work for Mesabi,
  ████████████████████████████████████████████████████████████
  ████████████████████████████████████████████████████████████

- Cliffs acquired property rights in the middle of Mesabi's mine plan for the purpose of blocking Mesabi's project. ████████████████████████████████
  ████████████████████████████████████████████████████████████

- Cliffs entered long-term contracts with pellet customers to thwart Mesabi's plans to start a competing facility. ████████████████████████████████████
  ████████████████████████████████████████████████████████████
  ████████████████████████████████████████████████████████████

As much as Cliffs wants to draw attention away from its malfeasance, at the end of the day, this case turns on Cliffs' actions.

Cliffs clearly recognizes this, because until the Court ordered Cliffs to produce from more custodians, Cliffs was perfectly content to maintain the discovery status quo and not seek additional custodians from Mesabi.

Even after Cliffs found custodian religion, Cliffs failed to even ask for the Eleventh-Hour

32

Custodians for more than a year.  If those four custodians were important, it would not have taken Cliffs thirteen months to realize it.  Cliffs' lack of interest in these individuals is underscored by careless errors in the Motion.  For example, Cliffs claims that Mr. Nelson was responsible for "'day-to-day operations' from August 2018-present."  Br. at 12.  As noted above, that claim is based on a mischaracterization of a document.  And the falsehood is glaringly obvious, ████████

████████████████████████████████████████  Similarly, Ms. Bell did not join Mesabi until late December 2017, but Cliffs cites three documents from before that date to support its request for her documents.  *See* Br. Ex. 2 at 10.  Cliffs also claims that it needs Mr. Brunfelt's files because he is likely to have allegedly missing documents about Mesabi's interactions with the State of Minnesota.  Br. at 17.  But Cliffs bases that argument on documents from late 2018 and 2019.  Mr. Brunfelt left in January 2018.  *See* Br. Ex. 2 at 9.  It also bears noting that Mr. Brunfelt was Assistant General Counsel.  *Id.*  When Mesabi proposed that Cliffs add custodians who had legal roles, Cliffs objected on burden grounds.  D.I. 251 at 30 ("[T]he potential benefit from receiving any non-privileged materials from these attorney custodians is outweighed by the burden of collection and review, as any unique documents are likely privileged.").

Cliffs' dallying also reveals its lack of genuine interest in the Repeat Custodians.  If those individuals were truly vital to Cliffs' case, one would expect it to have filed a motion in fewer than seven months after it claimed to need them and also to have made a more concerted effort to explain why it needs them in the July Motion (as Mesabi did in its motion seeking additional Cliffs' custodians).  And in the case of each of the Proposed Custodians, Cliffs would have filed this Motion much sooner than a month before party depositions if it viewed their documents as critical.

In sum, while Cliffs makes great noise about the importance of the Proposed Custodians, both the nature of the case and Cliffs' repeated delays reveal otherwise.  Indeed, there are many reasons to believe that Cliffs' primary interest in these custodians is as a means to bog down Mesabi in discovery disputes.

## **CONCLUSION**

For all the foregoing reasons, Cliffs' Motion should be denied in full.

Dated: March 19, 2021

Respectfully submitted,

**BAYARD, P.A.**

*/s/Daniel N. Brogan*
Evan T. Miller (No. 5364)
Daniel N. Brogan (No. 5723)
600 N. King Street, Suite 400
Wilmington, Delaware  19801
Telephone:  (302) 655-5000
Facsimile:  (302) 658-6395
emiller@bayardlaw.com
dbrogan@bayardlaw.com

**WHITE & CASE LLP**

Mark E. Gustafson (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone:  (213) 620-7700
Facsimile:  (213) 452-2329
mgustafson@whitecase.com

Joshua A. Berman (admitted *pro hac vice*)
David H. Suggs (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
Facsimile:  (212) 354-8113
joshua.berman@whitecase.com
dsuggs@whitecase.com

*Attorneys for Plaintiff Mesabi Metallics Company LLC*

34