## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ESSAR STEEL MINNESOTA LLC and ESML HOLDINGS INC., *et al.*, | Case No. 16-11626 (CTG) |
| Reorganized Debtors. | Jointly Administered |
| MESABI METALLICS COMPANY LLC, | Adv. Proc. No. 17-51210 (CTG) |
| Plaintiff, | **Related Docket No. 774** |
| v. | |
| CLEVELAND-CLIFFS, INC., *et al.*, | |
| Defendants. | |

## <u>MEMORANDUM OPINION</u>

Invoking the public's right of access to judicial records, Mesabi moves the Court to unseal a motion for a preliminary injunction it filed against Cliffs, along with several documents Mesabi had obtained in discovery from Cleveland-Cliffs and attached to its motion.[1]  Cliffs objects, arguing that Mesabi itself already has these materials, and that its motion to unseal them is nothing more than an attempt to make an end run around the terms of the protective order, to which Mesabi agreed, that bars Mesabi from disclosing those documents publicly or using them for purposes unrelated to this litigation.

---

[1] Plaintiff Mesabi Metallics Company LLC is referred to as "Mesabi."  Defendant Cleveland-Cliffs, Inc. is referred to as either "Cleveland-Cliffs" or as "Cliffs."

The parties have agreed that a subset of the documents, whose disclosure would cause demonstrable competitive injury to Cliffs, may remain sealed. This dispute is about documents that do not meet that standard, but whose disclosure could be embarrassing to Cliffs or could provide leverage to Mesabi in litigation or negotiations over matters beyond this case. Cliffs' argument is that Mesabi's agreement in the protective order, to file any such documents under seal and not use them for matters unrelated to this case, should remain enforceable and that Mesabi should not be able to evade the terms of that order by invoking the public's right of access.

As a matter of first principles, this Court agrees with Cliffs' point, both about the intent behind and the effect of granting Mesabi's motion. The Court nevertheless believes that the better reading of Third Circuit precedent, as it now stands, requires it to grant the motion and unseal the documents at issue. That is not to say that the precedent squarely forecloses Cliffs' position. To accept Cliffs' argument, however, would require this Court to distinguish away Third Circuit precedent on a ground that this Court considers unduly presumptuous for a trial court. To the extent the Third Circuit believes it appropriate to carve out an exception to the right of public access for circumstances in which the documents are not sought by a member of the public, but by someone who already has the documents in question, and the substance and effect of granting the motion would be to avoid the strictures of a protective order, that is a step that is more properly taken by the Third Circuit than by this Court.

Two of the arguments Cliffs makes in opposing the motion come close to providing a basis for denying Mesabi's motion, but neither fits cleanly within the contours of the doctrine as it is exists. *First,* the argument that the motion is barred by principles of judicial estoppel is unsuccessful because entering into a protective order, even by stipulation, is not the kind of "position" taken by a party that typically gives rise to an estoppel. And *second,* because the precedent explains that there is nothing inherently improper about seeking to access judicial records in one case in order to serve a litigant's interests in another, the argument that the motion should be denied on the ground that Mesabi's motivations are improper is unsuccessful, at least in the absence of some greater flexibility in the doctrine than this Court finds in the existing caselaw.

Cliffs finally argues that § 107(b) of the Bankruptcy Code operates to limit the common law right of public access in the bankruptcy context. The caselaw, however, is to the contrary, explaining that § 107 merely codifies the public right of access to judicial records.

The Court will accordingly grant the motion. In view, however, of the commonsense strength of Cliffs' position and the irreparable nature of an order that unseals an otherwise confidential document, the Court will stay the effectiveness of its order for 30 days, thus permitting Cliffs to seek a further stay pending appeal. This Court believes that the order is immediately appealable under the collateral order doctrine. The Court will certify that appeal, under 28 U.S.C. § 158(d)(2)(A), for direct appeal to the Third Circuit.

## Factual and Procedural Background

Cleveland-Cliffs is a leading manufacturer of iron ore pellets, which in turn are used in the production of steel. The debtors in the main bankruptcy case are entities that seek to complete a project that will permit them to compete with Cliffs in the mining and production of iron ore pellets. The debtor initiated the current adversary proceeding in 2017. The central allegation is that Cliffs has engaged in unlawful and anti-competitive conduct aimed at blocking Mesabi's completion of that project.

Concerns about the misuse of the litigation process to obtain highly valuable and sensitive business information have been present from the beginning of the bankruptcy case. Within weeks of the filing of the bankruptcy petition, the debtors sought discovery under Bankruptcy Rule 2004 from Cliffs, including information about customer lists and pricing formulas.[2] While Judge Shannon granted certain discovery under Rule 2004, he noted that "Cliffs has made a more than adequate demonstration that the requested discovery would … impose a material risk of disclosure of sensitive and valuable business information,"[3] and thus did not authorize Rule 2004 discovery of that particular information.

Sparring over access to sensitive information has continued through these proceedings. As recently as last month, this Court granted Mesabi's motion to de-designate, in part, portions of Cliffs' expert witness reports that were marked as

---

[2] *In re Essar Steel Minnesota*, Bankr. D. Del. No. 16-11626, D.I. No. 234. Documents filed on the docket in the *In re Essar Steel Minnesota* bankruptcy case are cited to as "Main Case D.I. __."

[3] Main Case D.I. 355 at 2.

confidential under the protective order in this adversary proceeding.[4]  The purpose of the partial de-designation was to permit Mesabi to share the expert reports, which were focused the conduct of Mesabi's parent, Essar Global Limited, with Essar in order to craft Mesabi's rebuttal report.[5]  And even then, the Court was required to intervene when Mesabi proposed a form of order that would grant key Essar employees access to the expert report without Essar itself agreeing to submit to the Court's jurisdiction for the purpose of enforcing the protective order.[6]  For present purposes, however, the key takeaway is that, beginning with the filing of this bankruptcy case more than seven years ago and running through today, concerns about the use of the litigation process to obtain sensitive business information, and the potential misuse thereof, have been omnipresent in this case.

The immediate dispute concerns the confidentiality of certain papers filed several months ago by Mesabi in connection with its motion for a preliminary injunction.  In May of this year, Cliffs announced that it had reached an agreement with the Minnesota Department of Natural Resources to obtain leases on land that Mesabi says is critical to its completion of its project.  Mesabi then moved this Court for a preliminary injunction that would have barred Cliffs from entering into a lease with the State of Minnesota for the properties in question.[7]  In support of its motion, Mesabi quoted and attached documents produced by Cliffs in this litigation,

---

[4] D.I. 795.

[5] Essar Global Limited is referred to as "Essar."

[6] *See* Aug. 28, 2023 Hearing Tr. at 9-14.

[7] *See* D.I. 715.

which were designated as confidential under the terms of the protective order that was negotiated between the parties and entered by the Court.  Consistent with the terms of the protective order, those confidential documents were filed under seal and the versions of the briefs filed on the public docket redacted that confidential information.[8]

After an evidentiary hearing held on May 23, 2023, the Court denied Mesabi's motion for a preliminary injunction.[9]  The Court concluded that Mesabi had a non-negligible likelihood of succeeding on the merits as a result of evidence that gave the Court concern regarding allegedly anti-competitive conduct by Cliffs.[10]  The Court also found that Mesabi had made a sufficient showing of irreparable injury.[11]  In the end, however, the Court denied the motion for an injunction based on its balancing of the applicable factors.  In particular, the Court concluded that even if it enjoined Cliffs from entering into the lease, it was far from certain, in view of the frustration that the State of Minnesota had expressed with Mesabi, that Minnesota would then lease the parcels to Mesabi.[12]  Under those circumstances, the Court did not believe it appropriate to exercise its equitable powers to enter an injunction in light of the serious risk that such an injunction might not benefit any of the parties to the litigation.[13]

---

[8] *See* D.I. 744.

[9] D.I. 741.

[10] May 23, 2023 Hr'g Tr. 181-183.

[11] *Id.* at 184.

[12] *Id.* at 186-187.

[13] *Id.* at 187-188.

On July 21, 2023, Mesabi wrote a letter to the Court seeking an order providing for the public disclosure of much of the material that was filed under seal.[14]   In substance, Mesabi's request would require that 131 documents filed under seal be unsealed and that many of the redactions in the public version of the motion be removed.  The letter invoked the common law right public right of access to judicial records.   It expressly argued that the documents were relevant to Mesabi's pending appeal from the decision to award the leases (that were the subject of the preliminary injunction motion) to Cliffs.   Mesabi thus candidly acknowledged that the purpose of the motion was to permit it to use these otherwise confidential documents (that, under the protective order, may not be used for purposes other than this litigation) in support of its appeal in state court in Minnesota.   In support of its motion, Mesabi relied heavily on the Third Circuit's 2019 decision in *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*[15]

On August 5, 2023, Cliffs responded to Mesabi's letter.[16]   Cliffs did not oppose the unsealing of 96 of the 131 documents on the grounds that those documents were either already publicly available or had been produced in discovery (and thus marked as confidential under the protective order) by Mesabi or its affiliates.  It did, however, seek to keep the 35 remaining documents under seal.[17]   Cliffs' principal

---

[14] D.I. 774.  The Court's chambers procedures permit parties to seek relief by way of a letter, rather than a formal motion, where the relief sought is "a motion to compel discovery, a motion for a protective order, or a motion related to scheduling or other case administration matters."   *See* https://www.deb.uscourts.gov/content/judge-craig-t-goldblatt.

[15] 924 F.3d 662 (3d Cir. 2019).

[16] D.I. 778.

[17] *See id.* at 3 n.3 (identifying the 35 documents at issue).

argument in opposition to the unsealing of those 35 documents was that Mesabi had agreed to the stipulated protective order, and that as a party to that stipulation – which stated that confidential material should be filed under seal – it should not be permitted to evade the terms of the order to which it expressly agreed.   The protective order, Cliffs argued, "not the common law, controls what documents may be designated as Protected Information and so filed under seal with this Court."[18]

The Court held a hearing, by Zoom, on August 7, 2023.  At that hearing, the Court expressed its view that under the Third Circuit's decision in *Avandia*, the 35 documents at issue were judicial records and subject to the presumptive common law right of access.  To overcome that presumption, *Avandia* requires that a court make a specific, document-by-document finding that providing public access will cause a party direct and tangible commercial harm.   The Court was not unsympathetic to view that there ought to be a difference between, on the one hand, a member of the public (or the media) seeking access to a judicial record through the common law right of access and, on the other, a party to the litigation – who already had the document but was subject to the strictures of a protective order – invoking the common law right of access for the purpose of freeing itself of those strictures such that it could distribute an otherwise confidential document to the public.  In view of the fact, however, that in *Avandia* itself the party that invoked the common law right of access was a party to the case that already had the documents subject

---

[18] *Id.* at 5.

to a protective order, the Court did not believe it appropriate to distinguish the *Avandia* precedent on that basis.

The Court accordingly said that it believed that the *Avandia* standard was applicable, but that Cliffs was entitled to an opportunity to present evidence, on a document-by-document basis as *Avandia* contemplated, showing that some or all of the documents at issue should be maintained as confidential under the applicable standard.  The Court thus set an evidentiary, in-person hearing for August 28, 2023.

On August 16, Cliffs wrote to the Court to set forth its position regarding the application of the *Avandia* standard.[19]  The letter repeated and elaborated on various arguments set out in its August 5 letter contending that the *Avandia* standard should not apply.  To that end, Cliffs argued (a) that the documents should not be unsealed because the motion to unseal was based on an improper purpose, and (b) that in the bankruptcy context, § 107(b) of the Bankruptcy Code overrode the common law right of public access.  Cliffs also went on to argue that with respect to certain documents, the *Avandia* evidentiary standard for demonstrating commercial harm was met.

Mesabi responded the next day, August 17, 2023, with a letter contending that Cliffs was improperly re-arguing the application of the *Avandia* standard, and that the portion of the letter making those arguments should therefore be struck.[20] The topic of this exchange of letters was raised during an August 18, 2023 hearing

---

[19] D.I. 790.

[20] D.I. 791.

that was otherwise devoted to a different dispute between the parties. The Court preliminarily expressed its view that it was not inclined to strike Cliffs' letter, believing that the Court was more likely to reach the correct result if all parties were afforded every opportunity to set forth their arguments.[21]   In view of the importance of the issues (and the fact that this substantive motion was brought by informal letter), the Court concluded that it would exercise its discretion to consider on the merits the arguments that Cliffs raised in its August 16, 2023 letter.

Mesabi accordingly responded on the merits to Cliffs' argument by letter dated August 23, 2023.[22]   The letter contends that *Avandia* sets forth the applicable standard, disputes Cliffs' assertions regarding improper purpose, but largely agreed with Cliffs' position regarding those documents that were sufficiently commercially sensitive to meet the *Avandia* standard.

The parties thereafter reached out to chambers, in advance of the August 28, 2023 hearing, to state that they had reached a stipulation on those documents that should remain as confidential if the *Avandia* standard applied.  Because all that remained was a legal argument about the applicable legal standard, the parties jointly asked that the hearing proceed by Zoom.  The Court acquiesced in that request.

The focus of the August 28 hearing was therefore on Cliffs' arguments to distinguish *Avandia* on its facts.  Cliffs also argued, consistent with points made in its August 16 letter, that the common law right of access should not apply because

---

[21] Aug. 18, 2023 Hr'g Tr. at 27.

[22] D.I. 796.

Mesabi was seeking the documents for an improper purpose and that § 107 of the Bankruptcy Code provides a basis for protecting confidential business material that overrides the common law right of access.  At the close of that hearing, the Court suggested that it remained unpersuaded by Cliffs' argument that *Avandia* was factually distinguishable but would take the matter under advisement to  further consider the remaining points.

I.    **The *Avandia* standard generally applies.**

The Court adheres to its prior conclusion that the Third Circuit's decision in *Avandia* provides the applicable standard.   The arguments Cliffs makes to distinguish *Avandia* focus on facts that were also true in *Avandia* itself.  While the Court is not without some sympathy for Cliffs' arguments as a matter of first principles, and while it is true that certain of the points Cliffs makes were not addressed directly by the *Avandia* court, this Court believes it would be unduly presumptuous for it – a lower court bound by Third Circuit precedent – to distinguish that precedent away based on facts that were equally applicable in *Avandia*.

*Avandia* was a RICO lawsuit brought by various health benefit plans against GlaxoSmithKline, alleging that the drug maker concealed evidence of cardiovascular risk associated with its drug, Avandia.  In the early stages of the case, the district court had entered a standard protective order.  A review of the district court's docket suggests that the order was entered at the request of the

parties.[23]  In substance, the protective order provided that material produced in discovery that was marked as confidential could not be disclosed to third parties, and that to the extent such confidential information would be disclosed in connection with a court filing, such filing was to be made under seal.

In connection with the defendant's motion for summary judgment, the parties filed under seal documents that had been produced in discovery.  The district court granted the defendant's motion for summary judgment and the plaintiffs appealed. Plaintiffs sought to include, in the joint appendix that would be filed publicly in the court of appeals, certain material attached to the summary judgment motion that had been marked as confidential and, when filed in the district court, had been filed under seal.  The plaintiffs thus moved the district court to unseal the summary judgment papers.  The district court denied that motion, ruling that the materials at issue were properly treated as confidential under the protective order and thus should remain under seal.

The Third Circuit reversed the district court's determination to keep that material under seal.  In doing so, the court emphasized the distinction between the standard set out by Rule 26(c) to require confidential treatment of material produced in discovery and the common law right of access to judicial records.

Under Rule 26(c), while generalized allegations of harm are insufficient to support a protective order, the multi-factor test articulated by the Third Circuit

---

[23] E.D. Pa. No. 07-1087, D.I. 115 (status report indicating that parties were negotiating protective order); D.I. 138 (protective order, as entered).  The Third Circuit refers to the district court's protective order as "PTO 10."  *See Avandia*, 924 F.3d at 670.

grants trial courts substantial discretion to prevent the public disclosure of confidential business information contained in documents exchanged in discovery.[24] But unlike the broad discretion trial judges have to guard against the public disclosure of otherwise confidential information exchanged in discovery, a more demanding standard is applied to documents that have become "judicial records" and are therefore subject to a presumptive right of public access. "Unlike the Rule 26 standard, the common law right of access begins with a thumb on the scale in favor of openness—the strong presumption of public access."[25]

The notion that judicial records are subject to a common law right of public access is an ancient one. "The public's right of access was recognized at common law before the Constitution was adopted."[26] As the Supreme Court has explained, the doctrine is a pillar of democracy. It permits every citizen "to keep a watchful eye on the workings of public agencies" and allows "a newspaper publisher[] … to publish information concerning the operation of government."[27]

While there may be room around the margins to argue that certain documents that are filed on a court's docket are not "judicial records" that are subject to the right of public access, there is no dispute that a motion for a preliminary injunction and supporting materials are judicial records. And once a

---

[24] *Avandia*, 924 F.3d at 671.

[25] *Id.* at 676.

[26] *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866 (E.D. Pa. 1981) (Becker, J.).

[27] *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978). *See also United States v. Criden*, 648 F.2d 814, 820 (3d Cir. 1981).

document is a judicial record, *Avandia* makes clear that the common law right of access to such documents is "[a]nalytically distinct" from Rule 26(c) in that it is presumed that the public has a right of access to such documents.[28]  While that presumptive right of public access can be rebutted, doing so requires a showing that "the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure."[29]  In addition, the trial court "must articulate the compelling, countervailing interests to be protected, make specific findings on the record concerning the effects of disclosure, and provide an opportunity for interested third parties to be heard."[30]  The determination must be made on a specific, document-by-document basis.[31]

### A.    The parties have agreed which documents satisfy the *Avandia* standard.

As described above, the parties here have stipulated which of the documents that are otherwise subject to Mesabi's motion to unseal should remain sealed under the rigorous *Avandia* standard.  The remaining dispute relates to documents that were presumably validly designated as confidential under the protective order per Rule 26(c), but whose disclosure would not cause the kind of competitive injury required to meet the *Avandia* standard.

---

[28] *Avandia*, 924 F.3d at 672.

[29] *Id.* (citation omitted).

[30] *Id.* at 672-673 (internal quotation, citation, and brackets omitted).

[31] *Id.* at 673.

**B.     As for those documents that do not meet the *Avandia* standard, the doctrine of judicial estoppel is not applicable.**

With respect to those documents, Cliffs argues that, under the principle set forth in *Krystal Cadillac-Oldsmobile*,[32] Mesabi is estopped from seeking to have them unsealed by virtue of having agreed to a protective order under which material that is properly designated as confidential would be filed under seal and used only in connection with the adversary proceeding.

While the Court is not unsympathetic to the gist of Cliffs' argument, it is not persuaded that the elements of judicial estoppel are satisfied. That doctrine bars a party who has taken a position on which it has prevailed from turning around and taking another that is "irreconcilably inconsistent" with the prior one. As the Third Circuit explained in *Krystal Cadillac-Oldsmobile*, "the basic principle of judicial estoppel is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory."[33]

*Scarano v. Central R. Co. of New Jersey* presented a paradigmatic application of the doctrine.[34] There, a plaintiff sued his employer for a work-related injury, claiming to have been completely incapacitated. After winning a damages award, the employee then filed a different suit seeking reinstatement under a collective bargaining agreement. The Third Circuit would have none of that, declaring that a

---

[32] *See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314 (3d Cir. 2003).

[33] *Id.* at 319 (brackets, ellipses, and internal quotation omitted).

[34] 203 F.2d 510 (3d Cir. 1953).

"plaintiff who has obtained relief from an adversary by asserting and offering proof to support one position may not be heard later in the same court to contradict himself in an effort to establish against the same adversary a second claim inconsistent with his earlier contention."[35]

To be sure, the doctrine is not limited to the classic situation presented in *Scarano*.  In *Krystal Cadillac-Oldsmobile*, the Third Circuit found that a debtor that failed to disclose causes of action in its bankruptcy case (thus depriving creditors of potential recoveries on those claims) could not later bring that claim itself.[36]  But in each of the cases of which this Court is aware where the doctrine has been applied, the party estopped took some sort of position from which it benefited, and then later sought to take a contradictory position.

The difficulty with applying estoppel principles here is that it is far from apparent that Mesabi benefited in any meaningful way from stipulating to the protective order.  The doctrine of judicial estoppel, after all, is a variant of the traditional estoppel doctrine, under which a party asserting estoppel must show a misrepresentation by another party on which the plaintiff reasonably relied to his detriment.[37]  A claim for judicial estoppel does not require the party asserting estoppel to show that *it* relied on the representation, but is designed to protect the integrity of the judicial process by preventing a party to extract relief from a court

---

[35] *Id.* at 513.

[36] 337 F.3d at 321.

[37] *See United States v. Asmar*, 827 F.2d 907, 912 (3d Cir. 1987).

based on a representation made in litigation, and then turn around and contradict the representation on which the court presumably relied.

The difficulty with applying an estoppel doctrine here is that Mesabi's "consent" to the protective order was not the kind of representation from which it obtained a benefit. The protective order in this case is a fairly standard protective order that is customarily used in cases involving confidential information.[38] The fact that the parties negotiated and stipulated to the entry of such an order is certainly appreciated by the Court. But it is very difficult to see how Mesabi can be said to have obtained any sort of benefit by stipulating to the terms of this protective order. Indeed, the Court undoubtedly would have entered a protective order very much like this one even had Mesabi opposed it. And in the absence of a party having taken a position that yielded some benefit – which position the party later seeks to renounce – the Court does not believe that existing principles of judicial estoppel would warrant the application of that doctrine.

**C.   To the extent that either principles of judicial estoppel or the *Avandia* standard itself might be modified to address the circumstances of this case, that is a matter more properly addressed to the Third Circuit than to this Court.**

That said, there is certainly common sense to the point that Mesabi itself *already has* the documents for which it seeks public access. And as a result, Mesabi's invocation of the common law right of access can certainly be viewed as an improper effort to conduct an end run around the terms of a protective order.

---

[38] *See* D.I. 588.

17

Protective orders serve important purposes.  When sensitive or confidential information is sought in discovery in a civil case, Civil Rule 26(c) provides that a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[39]  The rules set forth particular protective measures the court may impose, including "requiring that … commercial information ... be revealed only in a specified way" and that any material that is filed with the court be filed under seal.[40]

The protective order entered in this case did exactly that.  It established a mechanism for the party producing documents to mark them at an appropriate level of confidentiality.  Material that is designated as confidential may not be disclosed to any person who is not bound by the protective order.[41]  In addition, the order expressly provides that "all Protected Information provided in accordance with this Stipulation and Order … shall be used by the Receiving Party solely for the purpose of the Adversary Proceeding and not for any other purpose."[42]

The Third Circuit has explained the important purposes served by such protective orders in civil litigation.  "It is appropriate for courts to order confidentiality to prevent the infliction of unnecessary or serious pain on parties who the court reasonably finds are entitled to such protection."[43]  The Third Circuit accordingly observed in another case that "it would appear proper for the District

---

[39] Fed. R.  Civ. P. 26(c)(1).

[40] Fed. R. Civ. P. 26(c)(1)(G), (H).

[41] D.I. 588 at ¶ 7.

[42] *Id.*

[43] *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir.1994).

Court to permit no greater release of the information sought by appellee than is absolutely necessary for the particular purposes for which it is sought."[44]

This Court is candidly concerned that the straightforward application of the principles set forth in *Avandia* to the circumstances of this case render the protections contemplated by Rule 26(c) wholly illusory.  If an opposing party can attach an otherwise confidential document provided in discovery to a pleading (and thereby render it a judicial record), and then seek to unseal it, the protective order's assurance that confidential information not be disclosed to third parties, used only for purposes related to the litigation, and be filed under sealbecome meaningless words..

Under the circumstances of this case – circumstances in which the Court (especially Judge Shannon, who presided over it before the case was reassigned to the undersigned judge in April 2021) has been required to devote substantial attention to preventing the misuse of information exchanged in discovery for improper commercial advantage – the worries about a party strategically circumventing a protective order by invoking the public's right of access are particularly troubling.  That concern, moreover, extends not only to information with direct and immediate commercial value (which can properly remain sealed under the *Avandia* standard) but also to information that does not meet that standard but that might be used to embarrass an opponent or to gain leverage in other negotiations or litigation.

---

[44] *Pearson v. Miller*, 211 F.3d 57, 73 (3d Cir. 2000); *see also Cipollone v. Liggett Group*, 785 F.2d 1108, 1121 (3d Cir. 1986).

A litigant knows and understands (or, at the very least, should know and understand) that such information, if included in a judicial record, can be obtained by the press or the public upon the filing of a motion to unseal.  That risk is just a cost attendant to having an open judicial system whose operations are subject to public scrutiny.  But one could reasonably believe that the point of a standard protective order is to remove the risk that one's litigation opponent – not a member of the press or the public, and someone who already has the information in question – would seek to reveal such otherwise confidential information.  Indeed, a regime that barred a litigation opponent from publicizing such information (but that protected the right of access of the press or the public) seems far better suited to the orderly resolution of business disputes than one in which confidential information could be so easily weaponized by a litigant.

The difficulty the Court confronts, however, is that the facts that give this Court concern all appear to have been equally present in *Avandia* itself.  There, as here, the plaintiffs who filed the motion to unseal the documents in question already had those documents.  They sought to unseal the summary judgment papers so that their joint appendix on appeal could be filed publicly.  And there, as here, the district court's docket strongly suggests that the court had entered an agreed protective order that provided that documents designated as confidential would be filed under seal.[45]  In view of this Court's obligation to adhere to Third Circuit precedent, the Court believes it would be unduly presumptuous of it to

---

[45] *See supra* at n.19 and accompanying text.

distinguish away controlling authority based on factual circumstances that in no way actually distinguish the circumstances here from those confronted by the Third Circuit.

That is not to say, however, that Cliffs' position is foreclosed.  Nothing in the *Avandia* decision suggests that the defendant argued that the plaintiffs should not be permitted to invoke the public right of access as an end run around a protective order.  As such, the Third Circuit did not address or otherwise consider the argument.  And under the traditional formulation, the "holding" of a case is limited to matters that the court actually decided, not those that the court might have decided but were not in fact raised or considered.[46]  This Court nevertheless concludes, however, that the more appropriate course is for it to follow the binding precedent as it now exists.  To the extent the Third Circuit believes it appropriate to carve out an exception to the right of public access for the circumstances of this case, it is certainly free to say so.  But in view of this Court's obligation to respect the *Avandia* precedent, this Court will decline the invitation to read the precedent as narrowly as Cliffs urges.[47]

---

[46] *See generally Goldman v. Citigroup Global Markets, Inc.*, 834 F.3d 242, 251-252 (3d Cir. 2016) (declining to give effect to a "drive by jurisdictional ruling" on the ground that had "the adversarial process properly put jurisdiction in issue, we doubt the jurisdictional ruling would have been the same").

[47] *See generally* Bryan A. Garner, *et al.*, THE LAW OF JUDICIAL PRECEDENT 28-30 (2016) (addressing the need for lower courts carefully to adhere to "vertical precedent").  *Cf. Khan v. State Oil Co.*, 93 F.3d 1358 (7th Cir. 1996) (Posner, J.) (applying Supreme Court precedent whose continued vitality had been called into question because it "is not our place to overrule [the precedent]; and [the precedent] cannot fairly be distinguished from this case.").

**II.    Under existing precedent, Mesabi's purpose for seeking to unseal the documents – to use them in other litigation – is not an improper one.**

Cliffs further argues that Mesabi's motion should be denied because Mesabi is seeking to unseal the documents for an improper purpose.  The applicable caselaw, however, fails to support Cliffs' argument that Mesabi's manifest purpose for unsealing these documents – Mesabi's desire to use them in connection with its Minnesota state court appeal – is an improper one.

In *Nixon v. Warner Communications*, the Supreme Court explained that despite the general common law right of access to judicial records, "[e]very court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes."[48]  The Court then enumerated three examples of the kinds of purposes that had been found to be improper (while noting that these examples did not set forth a "comprehensive definition")[49].  *First,* "the common-law right of inspection has bowed before the power of a court to insure that its records are not 'used to gratify private spite or promote public scandal' through the publication of 'the painful and sometimes disgusting details of a divorce case.'"[50]  *Second,* "courts have refused to permit their files to serve as reservoirs of libelous statements for press consumption."[51]  And

---

[48] *Nixon*, 435 U.S. at 598.

[49] *Id.*

[50] *Id.* (citation omitted).

[51] *Id.* (citation omitted).

*finally*, one cannot obtain access to judicial records to obtain "business information that might harm a litigant's competitive standing."[52]

This third category, business information that might harm a litigant's competitive standing, is the exception to the common law right of access that was addressed in *Avandia*. Prior Third Circuit cases, however, help articulate the scope of the other types of "improper purposes" that would bar a party from seeking access to judicial records. Those cases exclude the possibility that obtaining documents for the purpose of using them in other litigation is the kind of "improper purpose" that would justify denying access to those records.

*Leucadia, Inc. v. Applied Extrusion Technologies* was a trade secret case between business competitors, involving claims of misappropriation of trade secrets.[53] Several months after the case had settled, a shareholder of defendant Applied Extrusion Technologies separately brought a securities action against the company, alleging that the company had made false and misleading statements about its business prospects.

The shareholder thereafter moved to intervene in the trade secrets case for the express purpose of obtaining documents, by way of a motion to unseal judicial records, that he might be able to use in his securities lawsuit. In the meantime, the district court hearing the securities lawsuit issued an order staying all discovery during the pendency of a motion to transfer.[54]

---

[52] *Id.* (citations omitted).

[53] 998 F.2d 157 (3d Cir. 1993).

[54] *Id.* at 160.

The district court denied the motion to unseal on the ground that, among other reasons, the motion to unseal would operate to circumvent the stay of discovery in the securities lawsuit, and that stay order "should not be ignored by another judge."[55]  The Third Circuit, however, reversed.  It explained that under *Nixon v. Warner Communications*, "an intervenor who is also a litigant in a collateral proceeding enjoys no lesser rights merely because s/he desires to use public documents for his or her own benefit."[56]  Rather, the importance of public access to judicial records is "not lessened because [it is] asserted by a private party to advance its own interests in pursuing its [separate] lawsuits."[57]  Just as the shareholder "could, consistent with the stay order [entered in the securities litigation] continue to research the factual underpinning for his claim in libraries or other institutions where publicly available information is stored, so he may also inspect and copy those court records which any member of the public has a right to view."[58]

This analysis would appear to foreclose Cliffs' argument that Mesabi's apparent purpose in seeking to obtain the documents, its desire to use them in the Minnesota appeal from the decision to award the property leases to Cliffs, is the kind of improper purpose that might operate as an exception to the presumption of a public right of access to judicial records.

---

[55] *Id.* (internal quotation omitted).

[56] *Id.* at 167.

[57] *Id.* at 167-168 (citing *Bank of America Nat'l Trust & Savings Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 345 (3d Cir. 1986)).

[58] *Id.* at 168.

In fairness, there is at least one district court decision from a court within the Third Circuit that treats the "improper purpose" standard somewhat more elastically.  In *Accenture Global Services*,[59] a district court denied a motion to unseal a proposed amended answer and counterclaim (which was plainly a judicial record) on the ground that maintaining secrecy was important to "promot[ing] the integrity of the judicial process."[60]  The basis for that conclusion, however, was that the pleading in that case "recites hearsay out of context from documents designated as confidential that may not otherwise ever be exposed to public scrutiny at trial.  Defendant uses such materials not merely for purposes of its litigation strategy, but (were the pleading to be unsealed) in a larger public relations fight. Defendant seeks to inflame, not inform, and the attempted use of judicial process to accomplish that end is not to be tolerated."[61]  It could certainly be argued that invoking the right of public access for the purpose of circumventing a validly entered protective order similarly threatens the "integrity of the judicial process."  In view, however, of *Leucadia*'s conclusion that a trial court could not deny a litigant access to a judicial record in order to prevent that litigant from circumventing another judge's stay of discovery (and in the absence of the other factors on which the *Accenture* court relied), this Court does not believe it appropriate for it to brush aside the binding *Leucadia* precedent on this basis.

---

[59] *Accenture Global Services GMBH v. Guidewire Software Inc.*, 631 F. Supp. 2d 504 (D. Del. 2009).

[60] *Id.* at 510.

[61] *Id.*

III.   **Section 107(b) codifies, rather than alters, the principles applicable to the common-law right of access.**

Cliffs also argues that § 107(b) provides a basis for protecting information that would otherwise be subject to disclosure under the common law right of access. The precedent, however, does not support that contention.

Consistent with the public records doctrine, § 107(a) of the Bankruptcy Code states that "[e]xcept as provided in subsections (b) and (c) … a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge." Section 107(b), in turn, provides that upon "request of a party in interest, the bankruptcy court shall … (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title."

Cliffs suggests that this statutory provision provides a basis for denying Mesabi's motion.  The case law, however, makes plain that § 107(b) merely codifies the exceptions to the public access doctrine set forth in the *Nixon* decision.  It does not expand them.  Judge Stark reached that conclusion in *In re Motions Seeking Access to 2019 Statements*.[62]  And the Third Circuit reached the same decision on appeal from that determination.  "[Section] 107 codified the common law, and evidenced Congress's strong desire to preserve the public's right of access to judicial

---

[62] 585 B.R. 733, 757 (D. Del. 2018) ("§ 107 codifies the common law right of access").

records in bankruptcy proceedings."[63]   Accordingly, because § 107 codifies rather than changes the common law right of access, the invocation of § 107(b)'s exception (which, in any case, broadly tracks the three exceptions to the common law right of access that the Supreme Court described in the *Nixon* case) does not alter the result here.

## IV.   The Court will certify the decision for direct appeal to the Third Circuit and stay its order for 30 days.

While this Court would not normally opine on the finality of its orders – the jurisdiction of an appellate court typically being a matter to be decided by the appellate court – the Third Circuit has made it plain that an order granting access to judicial records is a final order that is appealable under 28 U.S.C. § 1291.[64]

Section 158(d)(2)(A)(i) of Title 28 permits direct review in the court of appeals from bankruptcy court orders where there is no controlling decision of the court of appeals.  And 28 U.S.C. § 158(d)(2)(B)(i) authorizes a bankruptcy court, on its own motion, to certify that this condition is satisfied.  For the reasons set forth in Part I.C. of this Memorandum Opinion, this condition is satisfied in this case.  The Court will accordingly certify a direct appeal from its order.

In addition, because the unsealing of the sealed documents would effectively moot any appeal, as once the documents were disclosed, the appellate court (whether the district court or the court of appeals) would no longer have any ability to grant meaningful relief, the Court will stay the effectiveness of its order for 30

---

[63] *In re A C & S Inc.*, 775 Fed. App'x 78 (3d Cir. 2019).

[64] *See United States v. Smith*, 123 F.3d 140, 145 (3d Cir.1997); *United States v. Antar*, 38 F.3d 1348, 1355–1356 (3d Cir.1994).

days.[65]   This administrative stay is intended to provide the appellate court an appropriate opportunity to determine whether any appeal from this order raises issues of sufficient merit to warrant a further stay pending appeal.

## Conclusion

For the foregoing reasons, the motion will be granted.  A separate order will issue.

Dated: September 22, 2023

CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE

---

[65] *See Zenith*, 529 F. Supp. at 915 (temporarily staying the effectiveness of court's own order requiring the unsealing of documents).