# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>ESSAR STEEL MINNESOTA LLC and ESML HOLDINGS INC.,<br><br>        Reorganized Debtors. | Chapter 11<br><br>Case No. 16-11626 (CTG)<br><br>(Jointly Administered) |
| MESABI METALLICS COMPANY LLC (F/K/A ESSAR STEEL MINNESOTA LLC),<br><br>        Plaintiff,<br><br>    v.<br><br>CLEVELAND-CLIFFS INC., *et al.*,<br><br>        Defendants. | Adv. Proc. No. 17-51210 (CTG) |
| CLEVELAND-CLIFFS INC., *et al.*,<br><br>        Counterclaim-Plaintiffs,<br><br>    v.<br><br>MESABI METALLICS COMPANY LLC,<br><br>        Counterclaim-Defendant. | |
| CLEVELAND-CLIFFS INC., *et al.*,<br><br>        Third-Party-Plaintiffs,<br><br>    v.<br><br>CHIPPEWA CAPITAL PARTNERS, LLC ,<br><br>        Third-Party-Defendant.[1] | |

**BRIEF IN SUPPORT OF DEFENDANTS CLEVELAND-CLIFFS INC. AND CLEVELAND-CLIFFS MINNESOTA LAND DEVELOPMENT LLC'S**
<u>**MOTION TO ALTER OR AMEND MEMORANDUM OPINION**</u>

---

[1] Counterclaim-Plaintiffs Cleveland-Cliffs Inc. and Cleveland-Cliffs Minnesota Land Development LLC respectfully disagree that their claims against Chippewa Capital Partners, LLC are third-party claims rather than counterclaims in this action.

# TABLE OF CONTENTS

                                                                           **Page**

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ....................................................................................................................... 1

ARGUMENT ................................................................................................................................ 2

      1. Motions in limine ........................................................................................................ 3

      2. Tortious Interference as to AMUSA ......................................................................... 6

      3. Tortious Interference as to Glacier Park ................................................................. 7

CONCLUSION ............................................................................................................................ 9

## TABLE OF AUTHORITIES

**Page**

**CASES**

Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,
    99 F.R.D. 99 (E.D. Va. 1983) ............................................................................................3

Brambles USA, Inc. v. Blocker,
    735 F. Supp. 1239 (D. Del. 1990) ......................................................................................3

Fagen, Inc. v. Exergy Dev. Grp. of Idaho, L.L.C.,
    No. 12-2703, 2016 U.S. Dist. LEXIS 135896 (D. Minn. Sept. 29, 2016) .........................8

Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc.,
    844 N.W.2d 210 (Minn. 2014) ..........................................................................................9

In re 15375 Mem'l Corp.,
    386 B.R. 548 (Bankr. D. Del. 2008), rev'd on other grounds,
    400 B.R. 420 (D. Del. 2009) ..............................................................................................3

In re Energy Future Holdings Corp.,
    575 B.R. 616 (Bankr. D. Del. 2017) ..................................................................................2

In re Scarborough-St. James Corp.,
    554 B.R. 714 (D. Del. 2016) ..............................................................................................4

In re Tribune Co.,
    464 B.R. 208 (Bankr. D. Del. 2011) ..................................................................................2

Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros,
    176 F.3d 669 (3d Cir. 1999) ..............................................................................................3

Oparaji v. N.E. Auto-Marine Terminal,
    437 F. App'x 190 (3d Cir. 2011) .......................................................................................4

P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.,
    161 F. Supp. 2d 349 (D.N.J. 2001) ....................................................................................3

Stratton v. Pop Dental, LLC,
    No. 15-0548, 2015 Minn. App. Unpub. LEXIS 1124
    (Minn. App. Dec. 7, 2015) .................................................................................................8

**Rules**

Bankruptcy Rule 9023 .................................................................................................2

Federal Rule of Civil P. 59(e) .....................................................................................2

**INTRODUCTION**

Defendants Cleveland-Cliffs Inc. and Cleveland-Cliffs Minnesota Land Development LLC (collectively, "Cliffs") bring this narrow motion to ask the Court to alter or amend its Memorandum Opinion (Adv. D.I. 1074[2] (the "Opinion" or "Op.")) on the parties' motions for summary judgment in three respects: (i) to clarify the rulings on the motions in limine; (ii) to clarify and correct the ruling on a claim; and (iii) to rule on arguments that were raised but not addressed for a claim.[3]

Clarification is needed, especially as this case soon moves to an Article III court, to correct the following portions of the Opinion and ensure that it accurately reflects the scope of each ruling:

1. Statements in the Opinion that each of the in limine motions is "denied" or "denied as moot" are imprecise and potentially subject to misinterpretation by an Article III court. The Court's discussion of its reasoning makes clear that its rulings are limited to resolving summary judgment only and should not impact later stages of this case. (Op. at 2, 20, 22–25.) For this reason, the rulings should be "denied without prejudice to refiling" for each of Roger Emmott, J. Douglas Zona, and Graham Davis, or in the alternative for Emmott should be "denied in part, without prejudice to refiling."

2. The statement in the Opinion that Plaintiff Mesabi Metallics Company LLC ("Mesabi") presented evidence sufficient for a tortious interference with business relationships claim as to AMUSA (Op. at 83) is inaccurate. Mesabi did not present any evidence—or even any argument—about AMUSA for this tort claim. (See Br. at 55–60[4]; Opp'n at 73–74; Mar. 25, 2024 Hr'g Tr. at 16:10–16, 33:15–64:12.) For this reason, AMUSA instead should be included in the group of entities for which Cliffs is entitled to partial summary judgment on this claim. (See Op. 84 & n.303.)

Reconsideration is needed on the ruling denying summary judgment on Mesabi's claim that Cliffs tortiously interfered with Mesabi's business relationship with Glacier Park Iron Ore Properties LLC so that the Opinion addresses dispositive arguments that Cliffs raised but the Court

---

[2] The Court docketed the Memorandum Opinion first under seal at D.I. 1070 on August 27, 2024, and then made it public at D.I. 1074 on September 4, 2024. The two versions are identical, and each should be changed as stated.

[3] The Court entered a "Notice of Docketing of Memorandum Opinion" [Adv. D.I. 1071] (the "Notice") that contains a summary of the rulings in the Opinion. To the extent the Court grants this motion and alters or amends the Opinion, Cliffs requests that the Court make conforming changes to the content of the Notice.

[4] "Br." refers to Cliffs' opening brief [Adv. D.I. 837]; "Opp'n" refers to Mesabi's opposition brief [Adv. D.I. 894]; "Reply Br." refers to Cliffs' reply brief [Adv. D.I. 952].

1

did not address.  The Opinion addressed only two of the five required elements for these claims (Op. at 83–86), but Cliffs presented arguments on two other dispositive elements, especially with respect to Glacier Park:  that Mesabi lacked a reasonable expectation of economic advantage; and that it was not reasonably probable that Mesabi would realize such an advantage in the absence of the alleged conduct (Br. at 56–59; Mar. 25, 2024 Hr'g Tr. at 16:7–17:7).  Reconsideration is needed, even if the Court would reach the same result, to ensure that the Court's reasoning on all issues is appropriately presented.

Accordingly, and without rearguing any issue this Court already addressed in the Opinion, Cliffs respectfully asks the Court: (i) to clarify the rulings on the in limine motions; (ii) to clarify and correct the ruling on Mesabi's tortious interference with business relationships claim and grant partial summary judgment as to AMUSA; and (iii) to reconsider the ruling denying summary judgment on Mesabi's claim for tortious interference with its business relationship with Glacier Park, resolve the two unaddressed elements, and grant partial summary judgment on Mesabi's tortious interference claims as to Glacier Park.

## ARGUMENT

A request for clarification or reconsideration of interlocutory orders is considered under the standards that apply to a motion to alter or amend judgment under Rule 59(e) via Bankruptcy Rule 9023.  See, e.g., In re Energy Future Holdings Corp., 575 B.R. 616, 627–28 (Bankr. D. Del. 2017); In re Tribune Co., 464 B.R. 208, 212–13 (Bankr. D. Del. 2011).  Whatever it is called, the request is appropriate where a bankruptcy court has made errors in its rulings, such as overlooking or misapprehending facts or legal arguments that were presented that might reasonably have altered the result reached.  In re Energy, 575 B.R. at 627–28; In re Tribune Co., 464 B.R. at 213.

Reconsideration "may be appropriate where 'the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has

2

made an error not of reasoning but of apprehension.'"  Brambles USA, Inc. v. Blocker, 735 F. Supp. 1239, 1241 (D. Del. 1990) (quoting Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983)).  Reconsideration also is warranted when the court does not address an argument that was raised and that argument would require a different result.  See, e.g., P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp., 161 F. Supp. 2d 349, 353 (D.N.J. 2001); In re 15375 Mem'l Corp., 386 B.R. 548, 550–51 (Bankr. D. Del. 2008), rev'd on other grounds, 400 B.R. 420 (D. Del. 2009); see also Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).  Indeed, this Court has accepted motions to reconsider other decisions in this proceeding to address factual and legal matters that it appeared to have overlooked.  [See, e.g., D.I. 1055.]

Both things appear to have happened here.

1. Motions in limine.  The Opinion states that each of the in limine motions is "denied" or "denied as moot," but those statements are imprecise, and could be construed as inaccurate, when compared to the Court's reasoning and stated limits for its rulings.  (Op. at 2, 20, 22–25.)  To correct these errors and accurately reflect the Court's narrow reasoning, the Opinion's rulings should be amended to "denied without prejudice to refiling" for all of the in limine motions, or in the alternative for Emmott to "denied in part, without prejudice to refiling."

The Court declined to address each of the motions in limine beyond what it found would "bear on the evidence that may properly be considered for summary judgment purposes" and "only to the extent the Court is otherwise relying on the expert's opinion."  (Op. at 2, 20.)  The Court did so "[i]n light of the procedural posture of this non-core matter" and the fact that "the parties agree that these motions are intended only to address the scope of the record this Court considers in connection with the summary judgment motions and is [sic] not intended to constrain the district

3

court's exercise of its own judgment in ultimately deciding what testimony is properly admissible at trial." (Op. at 20.) With respect to Zona and Davis, the Court determined it did not need to rely on any of the challenged opinions for those experts, and so did not address the Daubert challenges at all. (Op. at 24–25.) But then the Court proceeded to say that each motion in limine "will be denied" and that the motions as to Zona and Davis would be "denied as moot." (Op. at 2, 19, 23–25.)

The Court's "denied" and "denied as moot" conclusions could be construed as contrary to the reasoning and clear limits stated in the Opinion—namely, that it was not addressing any aspect of the motions as to Zona or Davis, that it was addressing at most only limited aspects of the motion as to Emmott, and that the district court would make the ultimate decision on any of the in limine motions.

By calling the motions "moot," the Court interjected some arguable ambiguity into the case—which Cliffs worries could prejudice it later. A motion is not formally "moot" if, as here, a court merely declines to address it at the present stage of the case. See, e.g., Oparaji v. N.E. Auto-Marine Terminal, 437 F. App'x 190, 193 n. 1 (3d Cir. 2011) ("A motion is moot when a court is unable to fashion any form of meaningful relief."); In re Scarborough-St. James Corp., 554 B.R. 714, 720 (D. Del. 2016) ("When a court's decision on a pending motion will be 'hypothetical or academic' or without any 'practical significance,' then the motion is moot.") (quoting Black's Law Dictionary 1099 (9th ed. 2009); citing Oparaji, 437 F. App'x at 193 n.1). Cliffs' challenges to the admissibility of both Zona's and Davis's purported expert opinions were not resolved by the Opinion and remain live—the opposite of moot—when the case reaches an Article III district court (before any trial of Mesabi's claims against Cliffs). To correct this potential error and ensure the district court fully understands the limits that the Court intended to place on its rulings, the rulings

for the motions in limine as to Zona and Davis should be amended to be "denied without prejudice to refiling."

The Court also erred in stating that the Emmott in limine motion was "denied"—full stop—because the Court declined to address any aspect of the motion beyond "the opinions on which the Court is relying in connection with the disposition of this [summary judgment] motion" and did not state which were "the opinions on which the Court is relying." (See Op. at 23–24.) The Court was clear that it was not addressing the full in limine motion, stating, "in the context of the present [summary judgment] motions, the Court need not adjudicate the admissibility of every opinion that Emmott offers." (Id.) This statement appears to be directed to the fact that the in limine motion challenged five of Emmott's specific opinions and raised multiple other grounds for exclusion of most, if not all, of Emmott's proposed testimony. (See Defs.' Br. in Support of Mot. to Exclude the Expert Testimony of Roger N. Emmott at 1–2 [D.I. 871].) Instead, the Court stated only that it "is satisfied, however, that the opinions on which the Court is relying in connection with the disposition of this [summary judgment] motion are sufficiently reliable that they would be admissible under Rule 702 and Daubert." (Op. at 24 (emphasis added).)

But the Court did not provide any reasoning for its conclusions that some of Emmott's unspecified opinions "would be admissible" or that he "has relevant expertise" and has provided unspecified opinions on "matters within the scope of that expertise" that the Court relied upon, nor did it address any of the arguments presented in the in limine motion. (Op. at 23–24.) At most, the Court's conclusions appear directed to Emmott's "factual description of the nature of the market for blast furnace pellets in the Great Lakes region, as well as his description of alternative products that are used in the manufacture of steel, [which] form the basis of Zona's conclusions about the

5

definition of the applicable market," because "[Zona's] testimony forms the basis of Mesabi's argument that Cliffs had monopoly power in the relevant market." (Op. at 22.)

Based on the limits that the Court placed on its <u>in limine</u> rulings, the description of its reliance on Emmott's opinions, and the Court's declination to address any of the arguments presented in the motion, the ruling for the motion <u>in limine</u> as to Emmott should be amended to be "denied without prejudice to refiling." In the alternative, the ruling should be amended to be "denied in part, without prejudice to refiling" and should state that the motion is denied only as to Emmott's expertise to provide the factual description of the nature of the market for blast furnace pellets in the Great Lakes region, as well as his description of alternative products that are used in the manufacture of steel, and that the Court did not adjudicate the admissibility of any opinions that Emmott offers or any other aspect of the motion <u>in limine</u>.

    2. <u>Tortious Interference as to AMUSA</u>. The Opinion includes the steel company AMUSA in the list of "specific business relationships … for which there is evidence that would permit a factfinder to conclude that Cliffs had interfered," (Op. at 83)—and then excludes AMUSA from the list of entities for which "Mesabi's response to the tortious interference claims points to no evidence of such interference,"(Op. 84 & n.303)—to reach the apparent conclusion to deny summary judgment on the claim for tortious interference with business relationships as to AMUSA. But these statements, and resulting conclusion, are clear error when compared to the record for this claim. To correct these errors, the Opinion should be amended to remove AMUSA from the list on page 83 and to include AMUSA in the list of entities for which Cliffs is entitled to partial summary judgment on this claim in footnote 303 on page 84.

The record is clear that "Mesabi's response to the tortious interference claims points to no evidence of such interference" for AMUSA (Op. at 84), and that any other conclusion is a

misunderstanding of the arguments presented. Cliffs' brief in support of its motion for summary judgment explained that there was no evidence for this claim as to AMUSA. (See Br. at 55–60.) Mesabi's opposition for this claim did not present any evidence about AMUSA. (See Opp'n Br. at 73–74.) At oral argument, Cliffs' counsel stated, "one thing I want to be clear about, we are only talking about tortious interference with four relationships because that is the only ones that Mesabi presented any evidence or even attempted to present evidence of in its opposition and that would be ELG, a law firm, Jamar, a piping contractor, Barr, an engineering firm, and GPIOP [Glacier Park], a former lessor to Mesabi." (Mar. 25, 2024 Hr'g Tr. at 16:10–16.) Mesabi did not contradict this statement, and it made no mention of AMUSA during its oral argument on the tortious interference claims. (Id. at 33:15–64:12.) The Opinion therefore should be amended to accurately reflect this record and correct the identified errors.

3. <u>Tortious Interference as to Glacier Park</u>. The Opinion seems to overlook two of Cliffs' arguments for why Cliffs' motion for summary judgment on Mesabi's claim for tortious interference with business relationships as to Glacier Park should be granted. This Court, after rejecting Cliffs' arguments on Element 3 (intentional interference) and Element 5 (damages) and the lawful competition defense, stopped its analysis and concluded that Mesabi had presented sufficient evidence to survive summary judgment on its claims "with respect to those entities for which Mesabi has identified evidence of interference," a list that included Glacier Park. (Op. at 83–87.)

With respect, the Court's analysis should have addressed the additional elements that Cliffs challenged in its briefs and at oral argument. Cliffs argued that Mesabi failed to establish a genuine dispute of fact to survive summary judgment on two elements that have specific requirements

7

when the "economic advantage" the claim is based on is an expected agreement that it wanted with a counterparty, like Glacier Park. That is, Cliffs argued that Mesabi could not establish either:

(a) Element 1 because Mesabi's negotiations with Glacier Park and one-sided belief that a deal was imminent are insufficient under Minnesota law to support a reasonable expectation of entering into an agreement; or

(b) Element 4 because it is not reasonably probable that Mesabi would have entered into a deal with Glacier Park but for Cliffs' alleged conduct.

(See Br. at 56–57, 60; Reply Br. at 37; Mar. 25, 2024 Hr'g Tr. at 16:7–17:7, 30:4–31:23, 73:23–74:15.)

Cliffs pointed the Court to both Fagen, Inc. v. Exergy Dev. Grp. of Idaho, L.L.C., No. 12–2703, 2016 U.S. Dist. LEXIS 135896, at *37 (D. Minn. Sept. 29, 2016), and Stratton v. Pop Dental, LLC, No. A15–0548, 2015 Minn. App. Unpub. LEXIS 1124, at *16 (Minn. App. Dec. 7, 2015), for its arguments on Elements 1 and 4. Under these precedents, a business relationships claim based on negotiations with a counterparty requires "close proximity to reaching an agreement" on all terms, not a one-sided belief that a deal would close if the defendant had not acted, which Cliffs argued is all the evidence here shows. Mesabi understood Cliffs was challenging these elements and argued under Stratton that evidence of Mesabi's ongoing negotiations and its own belief that it had reached an agreement, or would have without Cliffs, is sufficient. (See Opp'n at 74–75; Mar. 25, 2024 Hr'g Tr. at 51:4–53:5.)

Despite the Court's active engagement with the parties about the law and evidence presented for these elements during oral argument (Mar. 25, 2024 Hr'g Tr. at 30:4–31:23, 51:4–53:5, 73:23–74:15)—extended even into the argument on the tortious interference counterclaim (Id. at 94:5–96:5)—the Court did not discuss either Element 1 or Element 4 in the Opinion. But

the failure of proof on any element is sufficient to grant summary judgment to Cliffs. See Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc., 844 N.W.2d 210, 219–20 (Minn. 2014). The Court should have addressed Cliffs' arguments that the evidence does not support a genuine dispute of material fact exists and that the evidence is insufficient to prove either Element 1 or Element 4 under Minnesota law.

Because the Court does not appear to have resolved the arguments Cliffs raised on either element—and doing so would require a different result—the Court should grant reconsideration of the ruling denying summary judgment on Mesabi's tortious interference with business relationships claim as to Glacier Park, resolve the two unaddressed elements, and grant partial summary judgment on Mesabi's tortious interference claims as to Glacier Park.

## **CONCLUSION**

For these reasons, the Court should grant Cliffs' motion to alter or amend the Opinion.

| | |
|---|---|
| Dated: September 10, 2024 | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
| | |
| | */s/ Michael S. Neiburg* |
| | Michael S. Neiburg (No. 5275) |
| | Rodney Square |
| | 1000 North King Street |
| | Wilmington, DE 19801 |
| | Telephone: 302.571.6600 |
| | Facsimile: 302.571.1253 |
| | Email: mneiburg@ycst.com |
| | |
| | -and- |
| | |
| | JONES DAY |
| | Robert S. Faxon (admitted pro hac vice) |
| | Kristin S.M. Morrison (admitted pro hac vice) |
| | Brian K. Grube (admitted pro hac vice) |
| | James R. Saywell (admitted pro hac vice) |
| | Brett Bell (admitted pro hac vice) |
| | North Point |
| | 901 Lakeside Avenue |
| | Cleveland, OH 44114.1190 |
| | Telephone: 216.586.3939 |
| | Facsimile: 216.579.0212 |
| | E-mail: rfaxon@jonesday.com |
| |     kmorrison@jonesday.com |
| |     bkgrube@jonesday.com |
| |     jsaywell@jonesday.com |
| |     bbell@jonesday.com |
| | |
| | *Attorney for Cleveland-Cliffs Inc. and* |
| | *Cleveland-Cliffs Minnesota Land Development LLC* |