**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br>ESSAR STEEL MINNESOTA LLC and ESML HOLDINGS INC.,[1]<br><br>Debtors. | Chapter 11<br>Case No. 16-11626 (CTG)<br>Jointly Administered |
| MESABI METALLICS COMPANY LLC (F/K/A ESSAR STEEL MINNESOTA LLC),<br><br>Plaintiff<br><br>v.<br><br>CLEVELAND-CLIFFS, INC., *et al.*,<br>Defendants. | Adv. Proc. No. 17-51210 (CTG) |
| CLEVELAND-CLIFFS INC., *et al*.,<br><br>Counterclaim-Plaintiffs<br><br>v.<br><br>MESABI METALLICS COMPANY LLC,<br><br>Counterclaim-Defendant. | |
| CLEVELAND-CLIFFS INC., *et al*.,<br><br>Third-Party Plaintiffs<br><br>v.<br><br>CHIPPEWA CAPITAL PARTNERS, LLC,<br><br>Third-Party Defendant. | |

**OPPOSITION TO DEFENDANTS CLEVELAND-CLIFFS INC. AND
CLEVELAND-CLIFFS MINNESOTA LAND DEVELOPMENT LLC'S
MOTION TO ALTER OR AMEND MEMORANDUM OPINION**

---

[1] Essar Steel Minnesota LLC has changed its name to Mesabi Metallics Company LLC. The last four digits of its federal taxpayer identification number are 8770. The last four digits of ESML Holdings Inc.'s federal taxpayer identification number are 8071.

# TABLE OF CONTENTS

**Page**

ARGUMENT ...................................................................................................................1

    I.      The Court Does Not Need to Clarify Its Ruling on Cliffs' Motions *in limine* ........1

    II.    Cliffs Provides No Legitimate Basis for the Court to Reconsider Its Order
            Denying Summary Judgment on Mesabi's Claim for Tortious Interference with
            AMUSA ...................................................................................................................2

            A.      As to AMUSA, Cliffs Did Not Argue Mesabi Lacked Proof of Any
                     Element of a Claim for Tortious Interference with Business
                     Relationships Except Damages .................................................................. 3

            B.      It Was Not Clear Error to Conclude Mesabi Presented Sufficient
                     Evidence of Cliffs' Tortious Interference with Business Relationships
                     as to AMUSA ............................................................................................ 5

    III.   Cliffs Identifies No Basis to Reconsider the Court's Denial of Summary
            Judgment as to Mesabi's Claim for Interference with Mesabi's Business
            Relationship with GPIOP ......................................................................................7

CONCLUSION ...............................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### CASES

*Ashton v. AT&T Corp.*,
    2006 U.S. Dist. LEXIS 4787 (D.N.J. Feb. 2, 2006) .................................................7

*Big Apple BMW, Inc. v. BMW of North America, Inc.*,
    974 F.2d 1358 (3d Cir. 1992)...................................................................................7

*Brambles USA, Inc. v. Blocker*,
    735 F. Supp. 1239 (D. Del. 1990)..........................................................................10

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).............................................................................................3, 5

*Exxon Shipping Co. v. Baker*,
    554 U.S. 471 (2008)..................................................................................................9

*Fagen, Inc. v. Exergy Dev. Grp. of Idaho, LLC*,
    2016 U.S. Dist. LEXIS 135896 (D. Minn. Sept. 29, 2016) ....................................9

*Farzan v. Cleary*,
    2024 U.S. App. LEXIS 21921 (3d Cir. Aug. 29, 2024).......................................3, 6

*Gibson v. State Farm Mut. Auto. Ins. Co.*,
    994 F.3d 182 (3d Cir. 2021)................................................................................3, 9

*Houser v. Visionquest Nat'l Ltd.*,
    2018 U.S. Dist. LEXIS 104881 (M.D. Pa. June 22, 2018) .....................................7

*In re Vehicle Carrier Servs. Antitrust Litig.*,
    846 F.3d 71 (3d Cir. 2017)......................................................................................8

*Jackson v. Nuvasive, Inc.*,
    2024 U.S. Dist. LEXIS 131463 (D. Del. July 25, 2024) ........................................2

*James M. King and Assocs., Inc. v. G.D. Van Wagenen Co.*,
    717 F. Supp. 667 (D. Minn. 1989)..........................................................................4

*Karr v. Castle*,
    768 F. Supp. 1087 (D. Del. 1991)...........................................................................2

*Logan v. Commercial Union Ins. Co.*,
    96 F.3d 971 (7th Cir. 1996) .....................................................................................4

*Lynch v. Jacobs*,
  2021 U.S. Dist. LEXIS 225696 (D. Del. Nov. 23, 2021) ........................................................2

*Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros*,
  176 F.3d 669 (3d Cir. 1999) ........................................................................................................3

*Morton v. Fauver*,
  2011 U.S. Dist. LEXIS 85805 (D.N.J. July 21, 2011) ............................................................7

*N.V.E., Inc. v. Palmeroni*,
  2017 U.S. Dist. LEXIS 144785 (D.N.J. Sep. 7, 2017) ............................................................9

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
  210 F.3d 1099 (9th Cir. 2000) ....................................................................................................4

*Noonan v. Kane*,
  504 F. Supp. 3d 387 (E.D. Pa. 2020) ........................................................................................5

*Polson v. Vivimed Labs USA Inc.*,
  2024 U.S. App. LEXIS 1813 (3d Cir. Jan. 26, 2024) ......................................................3, 5, 9

*Santini v. Fuentes*,
  795 F.3d 410 (3d Cir. 2015) ........................................................................................................4

*Somerville v. Snyder*,
  2002 U.S. Dist. LEXIS 2030 (D. Del. Feb. 4, 2002) ..............................................................8

*Stratton v. Pop Dental, LLC*,
  2015 Minn. App. Unpub. LEXIS 1124 (Minn. App. Dec. 7, 2015) ......................................9

## STATUTES AND RULES

Fed. R. Bankr. P. 7056 ........................................................................................................................5

Fed. R. Civ. P. 56(c)(3) ......................................................................................................................5

Seven years into this litigation, Cliffs continues to employ every possible tactic to delay trial in this case. Its latest effort is a meritless motion for clarification and reconsideration of this Court's recent summary judgment ruling. But the motion should be denied. First, Cliffs' own motion shows that the Court's *in limine* rulings are clear. Second, there are no grounds for the Court to grant Cliffs' request to amend its ruling on Mesabi's claim of tortious interference. While styled as a request to "clarify" or "correct," the motion is properly treated as a request for reconsideration where Cliffs bears a heavy burden that it doesn't even come close to satisfying. Moreover, Cliffs made passing reference to only one element of tortious interference (damages) that was refuted by Mesabi. Even if Cliffs had argued that AMUSA should be excluded from Mesabi's claim for tortious interference with business relationships on other elements, those arguments are plainly contradicted by the record. And there is certainly no basis for Cliffs' demand that the Court supplement its opinion to Cliffs' satisfaction with respect to tortious interference with Mesabi's relationship with GPIOP. The Court's opinion is clear and well-reasoned on all of these issues. Accordingly, the Court should treat Cliffs' motion as the transparent delay tactic that it is and deny the motion.

## ARGUMENT

### I.    The Court Does Not Need to Clarify Its Ruling on Cliffs' Motions *in limine*

Cliffs asks the Court to clarify its rulings on Cliffs' motions *in limine*. But Cliffs offers only manufactured ambiguity and a professed concern about hypothetical confusion to justify that request. Cliffs argues that the Court's rulings "*could be construed* as inaccurate" or "*could be construed* as contrary to the reasoning in the memorandum opinion" or that they interject "*arguable* ambiguity" into the opinion. Mot. 3–5 (emphasis added).[2] Yet Cliffs itself appears to

---

[2] "Mot." refers to Cliffs' brief in support of its present motion to alter or amend the summary judgment ruling [Adv. D.I. 1076]; "Opp'n" refers to Mesabi's opposition brief to Cliffs' motion for summary judgment [Adv. D.I. 894];

have no trouble understanding the Court's ruling.  Indeed, Cliffs acknowledges that the Court took pains to explain that its rulings were "intended only to address the scope of the record this Court considers in connection with the summary judgment motions and **[were]** *not intended to constrain the district court's exercise of its own judgment in ultimately deciding what testimony is properly admissible at trial*."  Mot. 3–4 (quoting Op. 20) (emphasis added).

The Court's opinion is clear and does not need, nor would it benefit from, Cliffs' proposed revisions.  *See Karr v. Castle*, 768 F. Supp. 1087, 1093 (D. Del. 1991) ("the court's opinions should not be treated as 'mere first drafts'").  Cliffs' motion should be denied.

## II.    Cliffs Provides No Legitimate Basis for the Court to Reconsider Its Order Denying Summary Judgment on Mesabi's Claim for Tortious Interference with AMUSA

Cliffs moves this Court for "clarification" to "correct" "[t]he statement in the Opinion that [Mesabi] presented evidence sufficient for a tortious interference with business relationships claim as to AMUSA" which Cliffs contends "is inaccurate."  Mot. 1 (citing Op. 83).  Such a request is not one for "clarification" but for reconsideration because Cliffs is not asking this Court to "explain or clarify something ambiguous or vague," but instead is asking the court to revisit its ruling denying Cliffs' motion for summary judgment on Mesabi's claim for tortious interference with business relationships as to AMUSA.  *See Jackson v. Nuvasive, Inc.*, 2024 U.S. Dist. LEXIS 131463, at *2–3 (D. Del. July 25, 2024) (citation omitted).  "Requests to 'alter . . . previous rulings' or to 'make findings of fact' are not proper bases for a motion for clarification." *Id.*

"[R]econsideration is reserved for 'extraordinary circumstances,'" and should be granted only "sparingly." *Lynch v. Jacobs*, 2021 U.S. Dist. LEXIS 225696, at *3 (D. Del. Nov. 23, 2021)

---

"Br." refers to Cliffs' opening brief in support of its motion for summary judgment [Adv. D.I. 837]; "Reply" refers to Cliffs' reply brief in support of its motion for summary judgment [Adv. D.I. 952]; "Op." refers to this Court's memorandum opinion [Adv. D.I. 1070]; "SOF" refers to Mesabi's responses and objections to Cliffs' statement of undisputed material facts [Adv. D.I. 895]; "SOAF" refers to Mesabi's affirmative statement of additional material facts [Adv. D.I. 895].

(cleaned up). Thus, a party seeking to alter a summary judgment decision through a motion for reconsideration "bears a heavy burden." *Id.* Specifically, "a judgment may be altered or amended if the party seeking reconsideration shows *at least* one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion [for summary judgment]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Farzan v. Cleary*, 2024 U.S. App. LEXIS 21921, at *3 (3d Cir. Aug. 29, 2024) (quoting *Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)) (emphasis added). Cliffs has established none of these grounds, nor has it even tried.

In addition, Cliffs' summary judgment motion challenged only one element of Mesabi's claim for tortious interference with business relationship as to AMUSA: damages. Thus, damages is the only element for which Cliffs may now ask this Court to reconsider its prior decision. Even if this Court were to entertain Cliffs' motion to reconsider more broadly, Cliffs' motion still must be denied. As discussed below, Mesabi presented substantial evidence of Cliffs' tortious interference with Mesabi's business relationship with AMUSA to reach a jury on that claim.

### A. As to AMUSA, Cliffs Did Not Argue Mesabi Lacked Proof of Any Element of a Claim for Tortious Interference with Business Relationships Except Damages

Cliffs cannot seek reconsideration of arguments that it did not make in its summary judgment motion. *See Gibson v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 182, 191 (3d Cir. 2021) ("[M]otions for reconsideration are not a vehicle to argue facts or issues that were not raised."); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion"); *Polson v. Vivimed Labs USA Inc.*, 2024 U.S. App. LEXIS 1813, at *4 (3d Cir. Jan. 26, 2024)

(recognizing *Celotex* requires only that a plaintiff show proof on summary judgment as to the "challenged element[s]" of its claim).

Here, Cliffs' motion for summary judgment as to AMUSA argued only that Mesabi "presented no concrete evidence of damages." Br. 59–60; Reply 37. Although Cliffs now claims that its motion "explained that there was no evidence for this [tortious interference] claim as to AMUSA," Mot. 7 (citing Br. 55–60), that is revisionist history. While Cliffs' summary judgment motion stated generically that Mesabi's tortious interference claim "fails as to each identified entity," that non-specific, fact-free argument would not pass muster even on a motion to dismiss, let alone a motion for summary judgment.[3] *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) ("The moving party bears the burden of identifying specific portions of the record that establish the absence of a genuine issue of material fact."); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1105 (9th Cir. 2000) ("A moving party may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence."); *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 979 (7th Cir. 1996) (same). Nor is there anything else in Cliffs' summary judgment motion that amounts to a valid challenge of the other elements of Mesabi's tortious interference claim. In the section of its brief about "evidence of damages," Cliffs devoted one paragraph to AMUSA, and in that paragraph Cliffs included just four sentences, three of which describe the history of AMUSA's contractual relations with Mesabi and the last of which cites a case about tortious interference with *contract* (as demonstrated by Cliffs' own parenthetical and the elements of the claim discussed in the opinion, which include procuring "breach of contract"). Br. 60 (citing *James M. King and Assocs.*,

---

[3] Elsewhere Cliffs at least tailored arguments to a category of entities, but not a category that includes AMUSA. Br. 57 ("The undisputed facts reveal nothing more than Mesabi's 'mere hope' that *certain vendors* might be available and willing to work with Mesabi." (emphasis added)).

*Inc. v. G.D. Van Wagenen Co.*, 717 F. Supp. 667, 680 (D. Minn. 1989)).  Thus, Cliffs is precluded from seeking reconsideration of any element of Mesabi's tortious interference claim other than damages, and the Court should reject Cliffs' expansive request to reconsider whether Mesabi "present[ed] any evidence about AMUSA."  Mot. 7.

### B.  It Was Not Clear Error to Conclude Mesabi Presented Sufficient Evidence of Cliffs' Tortious Interference with Business Relationships as to AMUSA

Even if the lone AMUSA-specific paragraph in Cliffs' summary judgment brief could be generously construed as a coherent argument that Mesabi failed to establish any element of a tortious interference claim as to AMUSA, Cliffs' motion for reconsideration still must be denied because Mesabi presented ample evidence of those elements.[4]  For instance, Mesabi explained in great detail the evidence regarding Cliffs' anticompetitive conduct as to AMUSA, which goes to the requirement that the conduct be independently tortious or a statutory violation.  Opp'n 73; Opp'n Section IV.C.2 ("Cliffs' Anticompetitive Scheme Included Signing Long-Term Contracts That Kept Other Producers from the Market"); Opp'n Section V.B.1 ("Cliffs Used Long-Term and Exclusive Supply Contracts and Customer Acquisitions to Willfully Maintain Its Monopoly Power"); SOAF ¶¶ 237–265.

Mesabi also put forth sufficient evidence of its reasonable expectation of economic advantage as to AMUSA.  There is no dispute that prior to Cliffs' interference, Mesabi had an offtake agreement with AMUSA.  SOF ¶ 63 ("Undisputed."); ¶ 64 ("Undisputed.").  That fact

---

[4] Given Cliffs' failure to argue that Mesabi did not establish the non-damages elements as to AMUSA, Br. 57–58, it is no surprise that Mesabi similarly did not focus on AMUSA in the section of its opposition brief addressing Cliffs' specific arguments on tortious interference.  *See Celotex*, 477 U.S. at 323 (moving party "always bears the initial responsibility of informing the district court of the basis for its motion"); *Polson*, 2024 U.S. App. LEXIS 1813, at *4 (obligation to respond to summary judgment motion limited to "challenged element[s]").  Of course, whether Mesabi cited evidence as to AMUSA specifically in the tortious interference section of its brief is irrelevant to Cliffs' present motion, as the Court may properly rely on the entire summary judgment record in deciding a motion for summary judgment.  *Noonan v. Kane*, 504 F. Supp. 3d 387, 392 (E.D. Pa. 2020) (citing Fed. R. Civ. P. 56(c)(3)) ("The Court may consider materials in the summary judgment record not cited by the parties."); *see also* Fed. R. Bankr. P. 7056.

alone is sufficient to establish the element of a reasonable expectation, Opp'n 74, but Mesabi also presented evidence that AMUSA wanted to obtain blast furnace pellets from Mesabi and that AMUSA requested a shorter-term contract with Cliffs so that AMUSA could do so.  Op. 65.

And Mesabi presented substantial evidence that it suffered "some damages" from Cliffs' interference with Mesabi's relationship with AMUSA.  Op. 85–86; *Farzan*, 2024 U.S. App. LEXIS 21921, at *3.  As this Court properly recognized, "precise quantification is not necessary to overcome summary judgment."  Op. 85.  Just as a jury could conclude, as a matter of "common sense," that Mesabi incurred costs to replace lost contractors, *id*., a jury could just as easily conclude that Mesabi suffered injury due to Cliffs' tortious interference with Mesabi's relationship with the largest buyer of blast furnace pellets in the Great Lakes Region.  But Mesabi also pointed to other evidence of the damages it suffered due to Cliffs' long-term, exclusive contract with AMUSA.  Opp'n 75, citing, *inter alia*, App. Ex. 42 (Davis Report) ¶¶ 50–60; *see also* Opp'n 25–26, 35–42, 59–62; SOAF ¶¶ 237–242 (outlining the impact of Cliffs' long-term contracts with customers—including AMUSA—on Mesabi's project and profits).

More broadly, the Court correctly concluded that its reasons for denying summary judgment on Mesabi's antitrust claims were also a basis to deny summary judgment on Mesabi's claims for tortious interference with business relations.  Op. 83–84; *see also* Op. 52–54 (addressing Mesabi's prior contracts with AMUSA and Cliffs' 2017 10-year exclusive contract with AMUSA); Op. 63–65 (addressing AMUSA's preference for a non-exclusive and shorter-term contract); Op. 72–73 (addressing evidence AMUSA would have turned to Mesabi if it had not entered into an exclusive supply agreement with Cliffs).  And, as discussed above, there can be no question that Mesabi presented substantial evidence of its antitrust damages.

In summary, it was not clear error for the Court to rule that a reasonable juror could conclude that Cliffs had tortiously interfered with Mesabi's business relationship with AMUSA and caused Mesabi some damage.  *See Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) (at summary judgment, "[i]nferences should be drawn in the light most favorable to the non-moving party"); *Houser v. Visionquest Nat'l Ltd.*, 2018 U.S. Dist. LEXIS 104881, at *12–13 (M.D. Pa. June 22, 2018) (mere "disagree[ment] with the Court's view of the inferences supported by the evidence of the record . . . does not constitute 'clear error' warranting reconsideration of the Court's decision").

### III.    Cliffs Identifies No Basis to Reconsider the Court's Denial of Summary Judgment as to Mesabi's Claim for Interference with Mesabi's Business Relationship with GPIOP

Asserting that the Court must have "overlook[ed]" some of Cliffs' arguments, Mot. 7, Cliffs asks the Court to supplement its already lengthy opinion with further explanation of its reasons for denying summary judgment on Mesabi's claim for tortious interference with business relationships as to GPIOP.  But there is no legal or factual basis for Cliffs' presumptuous demand.

First, "[a]n argument is not deemed overlooked because it is not specifically addressed in a court's opinion."  *See Ashton v. AT&T Corp.*, 2006 U.S. Dist. LEXIS 4787, at *5 (D.N.J. Feb. 2, 2006) ("An argument may be regarded as having been considered if it is presented to the court in written submissions and in oral argument.") (citation omitted).  Moreover, Cliffs is not entitled to an opinion that answers its every question about the Court's (ample) grounds for denying Cliffs' motion, particularly in a case as wide-ranging and complex as this one.  *See Morton v. Fauver*, 2011 U.S. Dist. LEXIS 85805, at *19 (D.N.J. July 21, 2011) (finding that a court's silence on a particular argument in its written opinion does not mean "that the court overlooked the matter").  Indeed, losing litigants are rarely satisfied with the explanations given for their losses, and

indulging those litigants' need for closure could consume much of a court's time—even when the court has already authored an opinion as thorough and thoughtful as the one issued here.

Second, Cliffs' request is at odds with the facts. For example, far from overlooking the element of reasonable expectation as to GPIOP, the parties and the Court extensively discussed that element at oral argument. Mar. 25, 2024 Hr'g Tr. 30:4–31:23; 51:4–53:6; 73:23–74:15; 94:5–96:5; 109:24–110:13. Cliffs even acknowledged the Court's "active engagement" on the issue. Mot. 8.

Going beyond its request for a supplemental opinion, Cliffs also proposes that, while revising the opinion to Cliffs' liking, the Court grant Cliffs' motion for summary judgment on the claim for tortious interference as to GPIOP. Mot. 9. But Cliffs does not even pretend to identify one of the limited bases that would support a request for reconsideration: (1) an intervening change in controlling law; (2) new evidence that was not previously available; or (3) clear error of law or fact. *See In re Vehicle Carrier Servs. Antitrust Litig.*, 846 F.3d 71, 87 (3d Cir. 2017); supra, 2–3. That failure is fatal to Cliffs' request. Moreover, Cliffs admits that its request might not result in a different ruling. Mot. 2 ("Reconsideration is needed, ***even if the Court would reach the same result***, to ensure that the Court's reasoning on all issues is appropriately presented.") (emphasis added). That fact also forecloses Cliffs' request. *See Somerville v. Snyder*, 2002 U.S. Dist. LEXIS 2030, at \*2 (D. Del. Feb. 4, 2002) ("A motion for reconsideration is not appropriate where the matter to be reconsidered would not reasonably have altered the result previously reached by the court.").

In any event, it was not clear error for the Court to deny Cliffs' motion for summary judgment on this claim. Cliffs focuses on two elements: (1) Mesabi's reasonable expectation that it would sign new leases with GPIOP and (2) causation (that Cliffs prevented Mesabi from signing

new leases).   Mesabi presented substantial evidence to raise an issue of fact regarding both elements.  Opp'n 63–66, 74–75, §§ IV.C.4, IV.D, V.B.3.

On its reasonable expectation of entering new leases with GPIOP, Mesabi had been negotiating with GPIOP on the relevant property for months and was close to finalizing a deal before Cliffs' interference.  *Id.* § IV.D; SOAF ¶¶ 283–300.  Such negotiations with "close proximity to reaching an agreement" raise issues of material fact as to whether Mesabi had a reasonable expectation of economic advantage.  Opp'n 74–75 (*citing Stratton v. Pop Dental, LLC*, 2015 Minn. App. Unpub. LEXIS 1124, at *16 (Minn. App. Dec. 7, 2015)).[5]

As to causation, Cliffs' assertion that the Court overlooked this element is especially bold because Cliffs' briefs never identified causation as a basis for summary judgment on this claim. In fact, Cliffs challenged only three of the five elements: (1) tortious conduct; (2) reasonable expectation of business relationship; and (3) damages.[6]  Br. 55–60; Reply 37.  Because Cliffs cannot raise new arguments on a motion for reconsideration, its causation argument is waived.[7] *See Gibson v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 182, 191 (3d Cir. 2021) (motions to reconsider "are not a vehicle to argue facts or issues that were not raised") (citing *Exxon Shipping*

---

[5] Cliffs is also wrong on the law.  Cliffs relies on *Stratton* (already cited by Mesabi in its Opposition) on the issue of reasonable expectation of economic advantage.  Mot. 8; *see also* Opp'n 74–75.  But Cliffs misconstrues that case, citing it to argue that a purchase order is required to establish a reasonable expectation of economic advantage. Reply 37.  Cliffs erroneously relies on a section of *Stratton* relating to the separate claim for tortious interference *with a contract*.  *See Stratton*, 2015 Minn. App. Unpub. LEXIS 1124, at *12–13.  As to reasonable expectation of business advantage, the Minnesota appellate court stated all that is required is a "close proximity to reaching an agreement," not a written agreement or purchase order.  *Id.* at *16.  Cliffs' reliance on *Fagen* is equally unavailing. Mot. 8 (*citing Fagen, Inc. v. Exergy Dev. Grp. of Idaho, LLC*, 2016 U.S. Dist. LEXIS 135896, at *38 (D. Minn. Sept. 29, 2016)).  In *Fagen*, a non-controlling decision, one of the negotiating parties had announced that it "no longer could pursue the project," leading to the assumption that the deal "was dead" prior to the alleged interference. *Id.* at *37.  Cliffs points to no comparable facts in this case, and certainly no *new facts*.

[6] To the extent Cliffs argues that it raised the issue at oral argument, which Mesabi disputes, that is too late.  *See*, *e.g.*, *N.V.E., Inc. v. Palmeroni*, 2017 U.S. Dist. LEXIS 144785, at *4 (D.N.J. Sep. 7, 2017) (denying motions for reconsideration where new issue was improperly raised for the first time during oral argument).

[7] Additionally, parties have no obligation to oppose elements that a movant did not brief.  *See*, *e.g.*, *Polson*, 2024 U.S. App. LEXIS 1813, at *4 (obligation to respond to summary judgment motion limited to "challenged element[s]").

*Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008)); *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990) (motions for reconsideration "should not be used as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided").

Cliffs is wrong on the facts either way. There is substantial record evidence to permit a reasonable juror to conclude that Cliffs' anticompetitive conduct prevented Mesabi from obtaining the GPIOP leases, which hindered Mesabi's ability to obtain financing to complete its Project. Opp'n 63–66. Indeed, the Court's ruling on Mesabi's antitrust claims, holding that there are triable issues of fact relating to the impact of Cliffs' GPIOP transaction on Mesabi, more than suffices to show causation for the tortious interference claim. Op. 75–77.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Cliffs' motion to alter or amend the memorandum opinion.


Dated:  September 24, 2024                Respectfully submitted,

                                          **WHITE & CASE LLP**

                                          /s/ *David Suggs*
                                          David H. Suggs (admitted *pro hac vice*)
                                          Martin M. Toto (admitted *pro hac vice*)
                                          William Bave (admitted *pro hac vice*)
                                          1221 Avenue of the Americas
                                          New York, New York 10020-1095
                                          Telephone: (212) 819-8200
                                          Facsimile: (212) 453-8113
                                          dsuggs@whitecase.com

                                          Kelly Newman (admitted *pro hac vice*)
                                          75 State Street
                                          Boston, MA 02109
                                          Telephone: (617) 979-9300
                                          Facsimile: (617) 979-9301

GianClaudio Finizio (No. 4253)
Steven D. Adler (No. 6257)
Bayard, P.A.
600 N. King Street, Suite 400
Wilmington, Delaware 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
gfinizio@bayardlaw.com
sadler@bayardlaw.com

*Attorneys for Plaintiff*
*Mesabi Metallics Company LLC*