**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>ESSAR STEEL MINNESOTA LLC and ESML HOLDINGS INC.,[1]<br><br>              Debtors. | Chapter 11<br><br>Case No. 16-11626 (CTG)<br><br>(Jointly Administered) |
| MESABI METALLICS COMPANY LLC (f/k/a ESSAR STEEL MINNESOTA LLC),<br><br>              Plaintiff<br><br>       v.<br><br>CLEVELAND-CLIFFS, INC. (f/k/a CLIFFS NATURAL RESOURCES, INC.); CLEVELAND-CLIFFS MINNESOTA LAND DEVELOPMENT LLC; GLACIER PARK IRON ORE PROPERTIES LLC; and DOES 1-10,<br><br>              Defendants. | Civil Action No. 24 -_____-_____<br><br>Adv. Proc. No. 17-51210 (CTG) |
| GLACIER PARK IRON ORE PROPERTIES LLC,<br><br>              Counterclaim-Plaintiff<br><br>       v.<br><br>MESABI METALLICS COMPANY LLC (f/k/a ESSAR STEEL MINNESOTA LLC),<br><br>              Counterclaim-Defendant. | |

---

[1] Essar Steel Minnesota LLC has changed its name to Mesabi Metallics Company LLC.  The last four digits of its federal taxpayer identification number are 8770.

CLEVELAND-CLIFFS, INC. (F/K/A CLIFFS
NATURAL RESOURCES, INC.);
CLEVELAND-CLIFFS MINNESOTA LAND
DEVELOPMENT LLC,

                     Counterclaim-Plaintiffs

     v.

MESABI METALLICS COMPANY LLC
(F/K/A ESSAR STEEL MINNESOTA LLC)

                     Counterclaim-Defendant.

---

CLEVELAND-CLIFFS, INC. (F/K/A CLIFFS
NATURAL RESOURCES, INC.);
CLEVELAND-CLIFFS MINNESOTA LAND
DEVELOPMENT LLC,

                     Third-Party Plaintiffs

     v.

CHIPPEWA CAPITAL PARTNERS, LLC; and
THOMAS M. CLARKE,

                     Third-Party Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION FOR WITHDRAWAL OF THE REFERENCE</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................. 1

    A.  The Adversary Proceeding .......................................................................................... 2

    B.  The Bankruptcy Court's Conclusion That the Adversary Proceeding Is Trial-Ready ....... 5

ARGUMENT ....................................................................................................................... 6

    A.  Withdrawal of the Reference Is Mandatory in This Adversary Proceeding ...................... 7

        1.  The District Court Must Withdraw the Reference Because This Proceeding Requires Consideration of Federal Law Regulating Interstate Commerce .................................. 7

        2.  The Reference Must Be Withdrawn Because Defendants Have Not Consented to a Jury Trial Before the Bankruptcy Court ...................................................................... 9

        3.  Withdrawal of the Reference Must Occur Now Because the Adversary Proceeding Is Trial-Ready ............................................................................................................ 11

    B.  The Motion to Withdraw the Reference Is Timely .......................................................... 11

CONCLUSION.................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Acolyte Elec. Corp. v. New York*,
  69 B.R. 155 (Bankr. E.D.N.Y. 1986) ........................................................................9

*Astro Tel, Inc. v. Verizon Fla., LLC*,
  2011 U.S. Dist. LEXIS 114570 (M.D. Fla. Sep. 30, 2011) ......................................8

*Beard v. Braunstein*,
  914 F.2d 434 (3d Cir. 1990) .....................................................................................9

*Boricua Motors Corp. v. Tamachi, Inc.*,
  76 B.R. 891 (D.P.R. 1987) .......................................................................................8

*Burger King Corp. v. B-K of Kan., Inc.*,
  64 B.R. 728 (D. Kan. 1986) ......................................................................................8

*City of Clinton v. Pilgrim's Pride Corp.*,
  2009 U.S. Dist. LEXIS 148459 (N.D. Tex. Aug. 18, 2009) .....................................8

*Halper v. Halper*,
  164 F.3d 830 (3d Cir. 1999) .....................................................................................9

*Hatzel & Buehler, Inc. v. Orange & Rockland Util.*,
  107 B.R. 34 (D. Del. 1989) .............................................................................7, 9, 10

*In re 24 Hour Fitness Worldwide, Inc.*,
  2022 U.S. Dist. LEXIS 1943 (D. Del. Jan. 4, 2022) ..............................................11

*In re Big V Holding Corp.*,
  2002 U.S. Dist. LEXIS 12609 (D. Del. July 11, 2002) ..........................................11

*In re CM Holdings, Inc.*,
  221 B.R. 715 (D. Del. 1998) ...............................................................................7, 11

*In re Del. & Hudson R.R.*,
  122 B.R. 887 (D. Del. 1991) .................................................................................9, 10

*In re Johns-Manville Corp.*,
  63 B.R. 600 (S.D.N.Y. 1986) ...................................................................................7

*In re Nat'l Gypsum Co.*,
  145 B.R. 539 (N.D. Tex. 1992) ................................................................................8

iv

*In re St. Mary Hosp.*,
    115 B.R. 495 (E.D. Pa. 1990) ............................................................................9

*In re Weiand Auto. Indus.*,
    612 B.R. 824 (Bankr. D. Del. 2020) ................................................................9

*Lifemark Hosp. v. Liljeberg Enters.*,
    161 B.R. 21 (E.D. La. 1993) .............................................................................8

*Michigan Milk Producers Ass'n v. Hunter*,
    46 B.R. 214 (N.D. Ohio 1985) .........................................................................8

*Pension Benefit Guar. Corp. v. Smith Corona Corp.*,
    205 B.R. 712 (D. Del. 1996) ............................................................................8

*PJI Distrib. Corp. v. Raggi & Weinstein, LLP*,
    2013 Bankr. LEXIS 3212 (Bankr. E.D. Pa. July 22, 2013) .............................10

*United States v. Delfasco, Inc.*,
    409 B.R. 704 (D. Del. 2009) .........................................................................7, 8

## STATUTES AND RULES

28 U.S.C. § 157 ...........................................................................................6, 7, 9, 11

28 U.S.C. § 1334 ......................................................................................................6

Plaintiff Mesabi Metallics Company LLC ("Mesabi") respectfully submits this memorandum of law in support of its motion (the "Motion"), pursuant to section 157(d) of title 28 of the United States Code (the "Judicial Code"), Rule 5011(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 5011-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), to withdraw the reference of the above-captioned adversary proceeding (the "Adversary Proceeding") to the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") so that the Adversary Proceeding may be adjudicated in the United States District Court for the District of Delaware (the "District Court").

## PRELIMINARY STATEMENT

After overseeing this Adversary Proceeding through fact discovery, expert discovery, and summary judgment—and determining that there are genuinely disputed questions of material fact that must be tried—the Bankruptcy Court recently declared, "This case must now move to the district court (upon a motion to withdraw the reference)." [Adv. D.I. 1070] ("MSJ Order") at 2. Indeed, no questions of bankruptcy law remain; the case is now exclusively an antitrust lawsuit coupled with some business tort claims. In addition, Defendants have demanded a jury trial, and such trial must occur in a United States district court.

Under such circumstances, the law is clear that a district court must withdraw the reference to the bankruptcy court. For all these reasons, detailed more fully below, the District Court should grant Mesabi's timely motion for withdrawal of the reference, immediately withdraw the reference, and take over administration of the Adversary Proceeding.

## FACTUAL BACKGROUND

Mesabi was formed to develop and operate an iron mine and iron ore pellet production

facility on the Mesabi Iron Range in northern Minnesota (the "Project").  On July 8, 2016, Mesabi

and its affiliated debtor (together, the "Debtors") filed voluntary petitions for relief under chapter

11 of title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court, thereby

commencing the Debtors' chapter 11 cases (the "Chapter 11 Cases").  The Debtors managed their

properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

During the Chapter 11 Cases, the Debtors worked diligently with various stakeholders to

develop a plan of reorganization, which was filed on June 8, 2017 (the "Plan").  The Bankruptcy

Court confirmed the Plan on June 13, 2017 and the Plan became effective in accordance with its

terms on December 22, 2017 (the "Effective Date").

## A.    The Adversary Proceeding

On September 7, 2017, the Debtors filed a complaint[2] in the Bankruptcy Court against

Defendant Cleveland-Cliffs, Inc. ("Cleveland-Cliffs"), thereby commencing the Adversary

Proceeding.  Cleveland-Cliffs is engaged in the mining and production of iron ore and pellets in

the same region as Mesabi's Project.  Among other things, Mesabi alleges that Cleveland-Cliffs

prevented Mesabi from completing the Project so that Cleveland-Cliffs could maintain its

monopoly position in the Great Lakes region.

On December 11, 2017, Cleveland-Cliffs and its subsidiary, Cleveland-Cliffs Minnesota

Land Development LLC ("Cliffs Minnesota," together with Cleveland-Cliffs, Inc., "Cliffs"),

entered into a transaction with Glacier Park Iron Ore Properties LLC ("GPIOP") to acquire certain

real estate interests and mineral and surface leases that were formerly leased by GPIOP to Mesabi

(the "Mineral Leases").

---

[2] Mesabi amended its initial complaint on September 11, 2017, at the request of the Bankruptcy Court's case administrator to address an administrative issue.

On December 22, 2017, Mesabi filed a motion for leave to file an amended complaint in the Adversary Proceeding, which, among other things, added Cliffs Minnesota and GPIOP as defendants and added certain counts related to the Mineral Leases. The Bankruptcy Court granted the motion and, on January 23, 2018, Mesabi filed the operative second amended complaint (the "Complaint"), which included 25 claims for relief. [Adv. D.I. 18].

To narrow the issues, Mesabi, Cliffs, and GPIOP agreed to submit motions for partial summary judgment on the Mineral Lease-related counts of the Complaint. On February 26, 2018, GPIOP filed a motion for summary judgment (the "GPIOP MSJ"). [Adv. D.I. 31]. On March 28, 2018, Cliffs filed its motion for summary judgment on substantially the same counts and same grounds as the GPIOP MSJ (the "Cliffs MSJ"). [Adv. D.I. 46]. Also on March 28, 2018, Mesabi filed an opposition to the GPIOP MSJ and a cross-motion for summary judgment on substantially the same counts included in the GPIOP MSJ (the "Mesabi MSJ" and, collectively, with the GPIOP MSJ and the Cliffs MSJ, the "Cross MSJs"). [Adv. D.I. 49]. Once briefing was complete, the Bankruptcy Court heard arguments on the Cross MSJs on May 15, 2018. The Bankruptcy Court issued an opinion granting the GPIOP MSJ and Cliffs MSJ [Adv. D.I. 98] on July 23, 2018, and entered an effectuating order on August 15, 2018.[3] [Adv. D.I. 104].

On August 31, 2018, GPIOP filed a second summary judgment motion [Adv. D.I. 115], which the Bankruptcy Court granted in part and denied in part by an order dated March 5, 2019. [Adv. D.I. 183].

On February 26, 2018, GPIOP filed an answer and counterclaims against Mesabi [Adv. D.I. 30]; and Cleveland-Cliffs and Cliffs Minnesota filed answers and counterclaims against

---

[3] On August 27, 2018, Mesabi appealed that order [Adv. D.I. 106] and concurrently moved for leave to prosecute the appeal on an interlocutory basis. [Adv. D.I. 108]. The District Court denied Mesabi's request on September 11, 2019. [Adv. D.I. 233].

Mesabi as well as third-party claims against Chippewa Capital Partners LLC ("Chippewa") and Thomas M. Clarke ("Clarke").  [Adv. D.I. 34 and 35].  Importantly, Cleveland-Cliffs and Cliffs Minnesota did not consent to the Bankruptcy Court entering a final order in the Adversary Proceeding and disputed that the claims are "core."  [Adv. D.I. 34 at 7, 101; Adv. D.I. 35 at 2, 57].  In addition, both Cleveland-Cliffs and Cliffs Minnesota demanded a jury trial on all claims against them.  [Adv. D.I. 34 at 101, Adv. D.I. 35 at 57].

On April 11, 2018, Mesabi moved to dismiss GPIOP's counterclaims [Adv. D.I. 60]; and Mesabi, Chippewa, and Mr. Clarke moved to dismiss Cliffs' counterclaims and third-party claims.  [Adv. D.I. 62].  Once briefing was complete, the Bankruptcy Court entered orders granting in part and denying in part (a) Mesabi's motion to dismiss GPIOP's counterclaims [Adv. D.I. 148, 151] and (b) Mesabi's motion to dismiss Cliffs' counterclaims and third-party claims.  [Adv. D.I. 146].

On January 10, 2019, Mesabi filed an answer and counterclaims to GPIOP's counterclaims.  [Adv. D.I. 163].  Also on January 10, 2019, Mesabi, Mr. Clarke, and Chippewa each filed an answer to Cliffs' counterclaims.  [Adv. D.I. 160, 161, 162].

On February 2, 2021, in accordance with a settlement entered into by Mesabi and GPIOP, the Bankruptcy Court entered an order dismissing all claims and counterclaims asserted by Mesabi against GPIOP, and by GPIOP against Mesabi.  [Adv. D.I. 450].  The Adversary Proceeding continued as to (i) Mesabi's claims against Cliffs for violations of federal and state antitrust law and commission of certain common law torts, and (ii) Cliffs' claims against Mesabi, Chippewa, and Mr. Clarke for tortious interference and related tort claims.  Fact discovery closed on April 7, 2023.  Expert discovery closed on October 13, 2023.

**B.**     **The Bankruptcy Court's Conclusion That the Adversary Proceeding Is Trial-Ready**

On November 10, 2023, Cliffs filed a motion for summary judgment on Mesabi's antitrust and tort claims.  [Adv. D.I. 836].  On the same day, Mesabi filed (1) a motion for partial summary judgment on the relevant market and Cliffs' monopoly power [Adv. D.I. 835]; and (2) a motion for summary judgment on Cliffs' counterclaims for tortious interference with a prospective business advantage.  [Adv. D.I. 833].  The parties filed oppositions to the summary judgment motions on December 22, 2023 [Adv. D.I. 894, 890, 888], and replies on January 19, 2024.  [Adv. D.I. 952, 956, 955].  Once briefing was complete, the Bankruptcy Court heard arguments on the motions on February 12, 2024 and March 25, 2024.  Cliffs settled its counterclaims against Thomas Clarke. [Adv. D.I. 1003, 1004].

The Bankruptcy Court issued an opinion under seal on August 27, 2024 (1) denying in part and granting in part Cliffs' motion for summary judgment; (2) granting Mesabi's motion for partial summary judgment on market definition and monopoly power; and (3) granting Mesabi's motion for summary judgment on Cliffs' counterclaims.  MSJ Order.  Cliffs' motion for summary judgment on the antitrust claims was denied in full.  MSJ Order at 47-78.   As a result, the Adversary Proceeding is now narrowed to Mesabi's claims against Cliffs for violations of federal and state antitrust law and commission of certain common-law torts.[4]  In the opinion, Judge Goldblatt asserted that the claims are trial-ready and the case should be transferred to the District Court upon a motion for withdrawal of the reference.  MSJ Order at 2, 15-17.   On October 8, 2024, the Bankruptcy Court entered the summary judgment order.  [Adv. D.I. 1083].

---

[4] The full list of remaining claims against Cliffs are: Tortious Interference with Business Relations or Prospective Economic Advantage; Violation of Section 1 of Sherman Act (Agreements in Restraint in Trade); Violation of Section 2 of Sherman Act (Monopolization); Violation of Section 2 of Sherman Act (Attempted Monopolization); Violation of Minn. Stat. § 325D.52 (Monopolization); Violation of Minn. Stat. § 325D.52 (Attempted Monopolization).  There are no remaining counterclaims by Cliffs against Mesabi or Chippewa.

All claims requiring interpretation of bankruptcy law have been dismissed.  MSJ Order at 13-14 (recognizing that all remaining bankruptcy claims have been consensually dismissed).  As such, and as further explained below, the Adversary Proceeding now involves exclusively non-core claims, which do not depend on the Bankruptcy Code and can only be finally decided by the District Court because Cliffs has not consented to the determination of claims against it by the Bankruptcy Court and has demanded a jury trial.

Mesabi asked Cliffs if it would agree to file a joint motion to withdraw the reference. However, Cliffs did not state whether it would join such a motion or otherwise give its position on withdrawing the reference to the Bankruptcy Court, despite follow-up from Mesabi.  Mesabi now moves to withdraw the reference with respect to the Adversary Proceeding.

## **ARGUMENT**

Bankruptcy jurisdiction is originally vested in the United States district courts.  28 U.S.C. § 1334(a), (b).  As authorized by section 157(a) of the Judicial Code, the United States District Court for the District of Delaware referred jurisdiction with respect to bankruptcy cases and proceeding in this District to the Bankruptcy Court.  28 U.S.C. § 157(a); *Amended Standing Order of Reference* (D. Del. Feb. 29, 2012).

Even after referred, district courts retain the authority to withdraw the reference with respect to a particular proceeding.  Section 157(d) of the Judicial Code provides that withdrawal may be mandatory or discretionary, depending upon the circumstances:

> [(1)] The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.  [(2)] The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both [the Bankruptcy Code] and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).

For the reasons set forth below, the Adversary Proceeding is subject to mandatory withdrawal of the reference.[5]   The motion is timely because the Bankruptcy Court recently completed pretrial proceedings and asserted that the case is trial-ready.   MSJ Order at 2, 15.

**A.      Withdrawal of the Reference Is Mandatory in This Adversary Proceeding**

> **1.   The District Court Must Withdraw the Reference Because This Proceeding Requires Consideration of Federal Law Regulating Interstate Commerce**

Congress intended federal district courts, not bankruptcy courts, to resolve claims that are "rooted in the commerce clause." *See United States v. Delfasco, Inc.*, 409 B.R. 704, 707 (D. Del. 2009) ("environmental statutes and regulations such as RCRA are 'rooted in the commerce clause' and [are] precisely 'the type of law[s] Congress had in mind when it enacted the statutory withdrawal provision'") (alteration in original); *Hatzel & Buehler, Inc. v. Orange & Rockland Util.*, 107 B.R. 34, 38 (D. Del. 1989) ("Clearly, the OSHA statute and its regulations are rooted in the commerce clause and are the types of laws that Congress intended to have decided by Article III Judges when it enacted the mandatory withdrawal provision."); *In re Johns-Manville Corp.*, 63 B.R. 600, 602 (S.D.N.Y. 1986) (observing that CERCLA "is a statute 'rooted in the commerce clause' and is precisely 'the type of law Congress had in mind when it enacted the statutory withdrawal provision'").

Accordingly, withdrawal of the reference is mandatory if resolution of an adversary proceeding "requires substantial and material consideration of non-Bankruptcy Code laws regulating interstate commerce." *Hatzel & Buehler*, 107 B.R. at 38; *see also In re CM Holdings, Inc.*, 221 B.R. 715, 721 (D. Del. 1998).   "[T]he issue for the Court is not whether the Bankruptcy

---

[5] Even if withdrawal of the reference were not mandatory here, the District Court can and should exercise its discretion to withdraw the reference for cause shown for the same reasons outlined here.

Court *can* capably interpret [the non-Bankruptcy Code] law, but rather whether the Bankruptcy Court will be *required* to interpret [the non-Bankruptcy Code] law." *Delfasco, Inc.*, 409 B.R. at 708 (emphasis in original).

Because this Adversary Proceeding principally involves antitrust claims, it unquestionably will require substantial and material consideration of non-Bankruptcy Code laws regulating interstate commerce. Indeed, federal antitrust laws "by their very nature" affect interstate commerce. *Lifemark Hosp. v. Liljeberg Enters.*, 161 B.R. 21, 27 (E.D. La. 1993). Thus, courts routinely hold that withdrawal of the reference is required in litigations asserting antitrust claims. *See, e.g.*, *Astro Tel, Inc. v. Verizon Fla., LLC*, , 2011 U.S. Dist. LEXIS 114570, at *6 (M.D. Fla. Sep. 30, 2011); *City of Clinton v. Pilgrim's Pride Corp.*, 2009 U.S. Dist. LEXIS 148459, at *4 (N.D. Tex. Aug. 18, 2009); *Lifemark Hosp.*, 161 B.R. at 27; *In re Nat'l Gypsum Co.*, 145 B.R. 539, 542 (N.D. Tex. 1992); *Boricua Motors Corp. v. Tamachi, Inc.*, 76 B.R. 891, 893 (D.P.R. 1987); *Burger King Corp. v. B-K of Kan., Inc.*, 64 B.R. 728, 731 (D. Kan. 1986); *Michigan Milk Producers Ass'n v. Hunter*, 46 B.R. 214, 216 (N.D. Ohio 1985).

The trial in this Adversary Proceeding will require evaluation of substantive antitrust law and issues such as whether Cliffs engaged in an exclusionary scheme to maintain its monopoly power, including (1) using long-term contracts to foreclose competition; (2) demanding key vendors stop working with Mesabi; and (3) acquiring property in the middle of Mesabi's project site to impede completion of the Project. MSJ Order at 47-71 (identifying genuine questions of material fact for trial on these issues). As a result, the action "cannot remain in the Bankruptcy Court." *Delfasco*, 409 B.R. at 708; *see also Michigan Milk*, 46 B.R. at 216 (granting motion for mandatory withdrawal where "resolution of these proceedings will require substantial and material consideration of federal antitrust claim"); *see also Pension Benefit Guar. Corp. v. Smith Corona*

*Corp.*, 205 B.R. 712, 214 (D. Del. 1996) ("Application of the standard furthers the underlying policy of Section 157(d), which is to withdraw matters requiring the application of non-bankruptcy law from the relatively less experienced bankruptcy court.") (quoting *In re St. Mary Hosp.*, 115 B.R. 495 (E.D. Pa. 1990)) (internal quotations omitted).

### 2. The Reference Must Be Withdrawn Because Defendants Have Not Consented to a Jury Trial Before the Bankruptcy Court

"[A] bankruptcy court cannot conduct a jury trial in a non-core proceeding" unless it has the consent of the parties. *Beard v. Braunstein*, 914 F.2d 434, 443 (3d Cir. 1990); *see also* 28 U.S.C. § 157(e). A proceeding is "core" if it invokes a substantive right provided by the Bankruptcy Code or if it could only arise in the context of a bankruptcy case. *See Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999); *In re Del. & Hudson R.R.*, 122 B.R. 887, 890 (D. Del. 1991). Non-core claims are those that merely relate to a case under the Bankruptcy Code. *In re Weiand Auto. Indus.*, 612 B.R. 824, 854 (Bankr. D. Del. 2020).

This Adversary Proceeding is a non-core proceeding. MSJ Order at 1 ("The principal claims are 'non-core' matters, on which the parties are entitled to a trial by jury and an Article III adjudication."); 13-14 (recognizing that none of the remaining claims at issue "arise under" the Bankruptcy Code). Indeed, all remaining claims exist independent of bankruptcy laws, could proceed in another court, and are subject to bankruptcy jurisdiction only based on their relationship to the Debtors and the Chapter 11 Cases. MSJ Order at 13-14; *see also Hatzel & Buehler*, 107 B.R. at 34 ("[T]o be a core proceeding, an action must have as its foundation the creation, recognition, or adjudication of rights which would not exist independently of a bankruptcy environment although of necessity there be a peripheral state law involvement.") (quoting *Acolyte Elec. Corp. v. New York*, 69 B.R. 155, 173 (Bankr. E.D.N.Y. 1986)). The remaining claims in this Adversary Proceeding do not invoke substantive rights provided by the Bankruptcy Code, and

therefore the proceeding is non-core. *See Del. & Hudson R.R.*, 122 B.R. at 894 ("The state law claims at issue in the [petitioner's] lawsuit existed prior to and independent of the filing of the instant bankruptcy, and the Court concludes that under these circumstances the [petitioner's] lawsuit is a non-core proceeding. . . ."); *Hatzel & Buehler*, 107 B.R. at 39 (finding proceedings to be non-core "because the state contract and tort claims do not involve any interpretation of the Bankruptcy Code and are not otherwise related to the underlying bankruptcy proceeding").

Cliffs has consistently indicated that the Adversary Proceeding is a non-core proceeding, and it has refused to consent to the entry of final order or judgments of the Bankruptcy Court with respect to the remaining claims in the Adversary Proceeding. MSJ Order at 15; *see also* Adv. D.I. 34 at 7, 101; Adv. D.I. 35 at 2, 57.[6] Cliffs has also demanded a jury trial. *Id.* In its Complaint, Mesabi asserted that the Adversary Proceeding is a core proceeding. Compl. ¶ 2. However, many of Mesabi's original claims have been dismissed, leaving only antitrust and tort claims. MSJ Order at 13-14. Given the nature of the remaining claims, Mesabi agrees with Cliffs that the Adversary Proceeding is a non-core proceeding.

Because Cliffs has demanded a jury trial and has not consented to trial in the Bankruptcy Court, the District Court must withdraw the reference. *See PJI Distrib. Corp. v. Raggi & Weinstein, LLP*, 2013 Bankr. LEXIS 3212, at *3 (Bankr. E.D. Pa. July 22, 2013) ("the bankruptcy court has no power to preside over a jury trial in this adversary proceeding, making withdrawal of the reference mandatory").

---

[6] *See also* Adv. D.I. 81 at ¶ 22 ("The Cliffs Defendants maintain their non-consent to entry of final orders or judgments of the Bankruptcy Court in connection with all [remaining] matters in this Adversary Proceeding pursuant to Bankruptcy Rule 7012 and Local Rule 7012-1").

**3.    Withdrawal of the Reference Must Occur Now Because the Adversary Proceeding Is Trial-Ready**

It is the general practice of this Court to withdraw the reference at "such time as the matter is ready for trial." *In re 24 Hour Fitness Worldwide, Inc.*, 2022 U.S. Dist. LEXIS 1943, at *10 (D. Del. Jan. 4, 2022).  That time is now.

Judge Goldblatt recognized that the Adversary Proceeding "has now progressed as far as it can" in the Bankruptcy Court.  MSJ Order at 1.  Indeed, Judge Goldblatt explicitly stated that withdrawal is necessary now because the case is trial-ready: "Preserving the right to jury trial will require the parties to move the district court to withdraw the reference under 28 U.S.C. § 157(d).  The filing of such a motion after the bankruptcy court has conducted pre-trial proceedings is fully consistent with the longstanding practice in this jurisdiction . . . ." MSJ Order at 15 (citing *In re Big V Holding Corp.*, 2002 U.S. Dist. LEXIS 12609, at *17-18 (D. Del. July 11, 2002) (finding withdrawal of a reference is appropriate when a case is trial ready)).

**B.    The Motion to Withdraw the Reference Is Timely**

Mesabi files the Motion promptly after Judge Goldblatt's summary judgment order [Adv. D.I. 1083] and acknowledgement that the Adversary Proceeding is ready for trial.  No party is prejudiced by the timing of this Motion.  *See In re CM Holdings, Inc.*, 221 B.R. 715 (D. Del. 1998) (finding five week "wait [to file motion] was not impermissibly long" and granting mandatory withdrawal of reference).

## <u>CONCLUSION</u>

For the foregoing reasons, Mesabi respectfully requests that the District Court withdraw reference of the Adversary Proceeding to the Bankruptcy Court and direct the Clerk of Court for the U.S. Bankruptcy Court for the District of Delaware to transfer the entire docket of this matter to the District Court Clerk for the District of Delaware.

Dated: October 8, 2024

Respectfully submitted,

**WHITE & CASE LLP**

/s/ *David Suggs*
David H. Suggs (admitted *pro hac vice*)
Martin M. Toto (admitted *pro hac vice*)
William H. Bave III. (admitted *pro hac vice*)
Eugene E. Hutchinson (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020-1095
Telephone: (212) 819-8200
Facsimile: (212) 453-8113
dsuggs@whitecase.com
mtoto@whitecase.com
eugene.hutchinson@whitecase.com

Kelly Newman
75 State Street
Boston, MA 02109
Telephone: (617) 979-9300
Facsimile: (617) 979-9301
kelly.newman@whitecase.com

GianClaudio Finizio (No. 4253)
Steven D. Adler (No. 6257)
Bayard, P.A.
600 N. King Street, Suite 400
Wilmington, Delaware 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
gfinizio@bayardlaw.com
sadler@bayardlaw.com

*Attorneys for Plaintiff*
*Mesabi Metallics Company LLC*