Civil Action No. 24-_____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| ESSAR STEEL MINNESOTA LLC and ESML HOLDINGS INC., | Case No. 16-11626 (CTG) |
| Reorganized Debtors. | (Jointly Administered) |
| MESABI METALLICS COMPANY LLC (F/K/A ESSAR STEEL MINNESOTA LLC), | Adv. Proc. No. 17-51210 (CTG) |
| Plaintiff and Appellee, | Appeal from the United States Bankruptcy Court for the District of Delaware |
| v. | |
| CLEVELAND-CLIFFS INC., *et al.*, | |
| Defendants and Appellants. | |
| CLEVELAND-CLIFFS INC., *et al.*, | |
| Counterclaim-Plaintiffs, | |
| v. | |
| MESABI METALLICS COMPANY LLC, | |
| Counterclaim-Defendant. | |
| CLEVELAND-CLIFFS INC., *et al.*, | |
| Third-Party-Plaintiffs, | |
| v. | |
| CHIPPEWA CAPITAL PARTNERS, LLC , | |
| Third-Party-Defendant.[1] | |

**DEFENDANTS AND APPELLANTS CLEVELAND-CLIFFS INC. AND**
**CLEVELAND-CLIFFS MINNESOTA LAND DEVELOPMENT LLC'S**
**MOTION FOR LEAVE TO APPEAL PURSUANT TO 28 U.S.C. §158(A)(3)**

---

[1]   Counterclaim-Plaintiffs Cleveland-Cliffs Inc. and Cleveland-Cliffs Minnesota Land Development LLC respectfully disagree that their claims against Chippewa Capital Partners, LLC are third-party claims rather than counterclaims in this action.

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Michael S. Neiburg (No. 5275)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: 302.571.6600
Facsimile: 302.571.1253
Email: mneiburg@ycst.com

JONES DAY
Robert S. Faxon (*pro hac vice* forthcoming)
Kristin S.M. Morrison (*pro hac vice* forthcoming)
James R. Saywell (*pro hac vice* forthcoming)
North Point
901 Lakeside Avenue
Cleveland, OH 44114.1190
Telephone: 216.586.3939
Facsimile: 216.579.0212
E-mail: rfaxon@jonesday.com
      kmorrison@jonesday.com
      jsaywell@jonesday.com

*Attorneys for Cleveland-Cliffs Inc. and Cleveland-Cliffs Minnesota Land Development LLC*

Dated:  October 22, 2024

Pursuant to <u>Federal Rule of Bankruptcy Procedure 8012</u>, the undersigned counsel of record for Cleveland-Cliffs Inc. and Cleveland-Cliffs Minnesota Land Development LLC states:

- Cleveland-Cliffs Inc. has no corporate parent and no other publicly held corporation, except BlackRock, Inc., owns 10% or more of Cleveland-Cliffs Inc.'s stock.; and

- Cleveland-Cliffs Inc. is the corporate parent of Cleveland-Cliffs Minnesota Land Development LLC and no publicly held corporation owns 10% or more of Cleveland-Cliffs Minnesota Land Development LLC's stock.

## TABLE OF CONTENTS

Page

Corporate Disclosure Statement ........................................................ i

Table of Authorities ...................................................................... iii

INTRODUCTION ..........................................................................1

QUESTIONS PRESENTED..............................................................2

BACKGROUND ............................................................................2

RELIEF SOUGHT..........................................................................5

ARGUMENT .................................................................................5

I.      THE QUESTIONS PRESENTED ARE CONTROLLING QUESTIONS
        ON WHICH THERE ARE SUBSTANTIAL GROUNDS FOR
        DISAGREEMENT ...............................................................6

        A.      Controlling Question One: Whether and How to Consider
                Alleged Exclusionary Conduct as a Scheme ..........................6

        B.      Controlling Question Two: Whether An Antitrust Plaintiff
                Needs *Some* Evidence to Support a Reasonable Estimate
                of Damages .................................................................9

        C.      Controlling Question Three: The Standard for Evaluating
                Monopoly Power............................................................11

II.     IMMEDIATE APPEAL WILL MATERIALLY ADVANCE THIS
        PROCEEDING ...................................................................14

III.    IMMEDIATE REVIEW IS URGENTLY NEEDED ........................15

CONCLUSION...............................................................................16

Certificate of Counsel ....................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page**

C<small>ASES</small>

*3Shape Trios A/S v. Align Tech., Inc.*,
2019 WL 3824209 (D. Del. Aug. 15, 2019),
*report & recommendation adopted*,
2019 WL 4686614 (D. Del. Sept. 26, 2019)....................................................7, 8, 9

*3Shape Trios A/S v. Align Tech., Inc.*,
2019 WL 4686614 (D. Del. Sept. 26, 2019).........................................................8

*Abbott Laby's v. Teva Pharms. USA, Inc.*,
432 F. Supp. 2d 408 (D. Del. 2006)................................................................8, 9

*Atl. Richfield Co. v. USA Petrol. Co.*,
495 U.S. 328 (1990)......................................................................................7

*Ball Mem. Hosp., Inc. v. Mutual Hosp. Ins., Inc.*,
784 F.2d 1325 (7th Cir. 1986) ....................................................................12, 13

*Bradburn Parent Teacher Store, Inc. v. 3M*,
2005 WL 1819969 (E.D. Pa. Aug. 2, 2005) .......................................................15

*Broadcom Corp. v. Qualcomm Inc.*,
501 F.3d 297 (3d Cir. 2007)...........................................................................12

*CFPB v. Navient Corp.*,
522 F. Supp. 3d 107 (M.D. Pa. 2021) ............................................................6, 16

*City of Anaheim v. S. Cal. Edison Co.*,
955 F.2d 1373 (9th Cir. 1992) .........................................................................9

*Continental Ore Co. v. Union Carbide*,
370 U.S. 690 (1962)......................................................................................8

*Crystallex Int'l Corp. v. Petróleos De Venezuela, S.A.*,
2016 WL 7440471 (D. Del. Dec. 27, 2016).....................................................14, 16

*Deaktor v. Fox Grocery Co.*,
475 F.2d 1112 (3d Cir. 1973)..........................................................................11

*Defiance Hosp., Inc. v. Fauster-Cameron, Inc.*,
    344 F. Supp. 2d 1097 (N.D. Ohio 2004).......................................................................12

*Dreamstime.com, LLC v. Google LLC*,
    54 F.4th 1130 (9th Cir. 2022) ......................................................................................9

*Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*,
    111 F.4th 337 (4th Cir. 2024) .....................................................................................9

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
    504 U.S. 451 (1992)...................................................................................................13

*Eatoni Ergonomics, Inc. v. Rsch. in Motion Corp.*,
    486 F. App'x 186 (2d Cir. 2012) ................................................................................9

*Florence v. Bd. of Chosen Freeholders of County of Burlington*,
    657 F. Supp. 2d 504 (D.N.J. 2009) ..........................................................................16

*Gross v. McDonald*,
    354 F. Supp. 378 (E.D. Pa. 1973) .............................................................................15

*Grp. Health Plan, Inc. v. Philip Morris USA, Inc.*,
    344 F.3d 753 (8th Cir. 2003) ....................................................................................10

*In re AE Liquidation, Inc.*,
    451 B.R. 343 (D. Del. 2011)...............................................................................5, 14

*In re ASHINC Corp.*,
    2017 WL 2774736 (D. Del. June 27, 2017)..............................................................14

*In re Chocolate Confectionary Antitrust Litig.*,
    607 F. Supp. 2d 701 (M.D. Pa. 2009) ......................................................................14

*In re Essar Steel Minnesota LLC*,
    607 B.R. 409 (D. Del. 2019)..............................................................................6, 7, 15

*In re HIV Antitrust Litig.*,
    656 F. Supp. 3d 963 (N.D. Cal. 2023) ......................................................................12

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3d Cir. 2008)......................................................................................10

*In re Intuniv Antitrust Litig.*,
    496 F. Supp. 3d 639 (D. Mass. 2020) ......................................................................12

*In re JRV Grp. USA L.P.*,
    2022 U.S. Dist. LEXIS 151890 (D. Del. Aug. 24, 2022) ...................................................6, 15

*In re L.A. Dodgers LLC*,
    465 B.R. 18 (D. Del. 2011)...................................................................................................14

*In re Lower Lake Erie Iron Ore Antitrust Litig.*,
    998 F.2d 1144 (3d Cir. 1993)...............................................................................................10

*In re MARVEL Entm't Grp.*,
    209 B.R. 832 (D. Del. 1997).................................................................................................6

*In re Processed Egg Prods. Antitrust Litig.*,
    206 F. Supp. 3d 1033 (E.D. Pa. 2016)..................................................................................8

*In re Suboxone Antitrust Litig.*,
    2017 WL 36371 (E.D. Pa. Jan. 4, 2017)...............................................................................8

*In re TK Holdings*,
    2021 WL 3796878 (D. Del. Aug. 26, 2021) ........................................................................14

*Intergraph Corp. v. Intel Corp.*,
    195 F.3d 1346 (Fed. Cir. 1999)............................................................................................9

*Johnson v. Alldredge*,
    488 F.2d 820 (3d Cir. 1973).................................................................................................5

*Katz v. Carte Blanche Corp.*,
    496 F.2d 747 (3d Cir. 1974)....................................................................................6, 14, 15

*Keogh v. Chicago & Nw. Ry. Co.*,
    260 U.S. 156 (1922)............................................................................................................10

*L.A. Land Co. v. Brunswick Corp.*,
    6 F.3d 1422 (9th Cir. 1993).................................................................................................13

*LePage's Inc. v. 3M*,
    324 F.3d 141 (3d Cir. 2003)............................................................................................8, 10

*Levine v. United Healthcare Corp.*,
    285 F. Supp. 2d 552 (D.N.J. 2003) .....................................................................................16

*McGlinchy v. Shell Chem. Co.*,
    845 F.2d 802 (9th Cir. 1988) ..............................................................................................11

32283948.1

*Milbert v. Bison Labs., Inc.*,
    260 F.2d 431 (3d Cir. 1958)...................................................................................15

*Mylan Pharms. Inc. v. Warner Chilcott Pub. Ltd. Co.*,
    838 F.3d 421 (3d Cir. 2016)...................................................................................12

*Ne. Tel. Co. v. Am. Tel. & Tel. Co.*,
    651 F.2d 76 (2d Cir. 1981).......................................................................................7

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
    555 U.S. 438 (2009)..................................................................................................7

*Package Shop, Inc. v. Anheuser-Busch, Inc.*,
    675 F. Supp. 894 (D.N.J. 1987).............................................................................10

*Piazza v. Major League Baseball*,
    836 F. Supp. 269 (E.D. Pa. 1993)..........................................................................14

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993)....................................................................................................7

*Pub. Int. Rsch. Grp. of N.J., Inc. v. Hercules, Inc.*,
    830 F. Supp. 1549 (D.N.J. 1993)...........................................................................15

*Rebel Oil Co. v. Atl. Richfield Co.*,
    51 F.3d 1421 (9th Cir. 1995) ...........................................................................12, 13

*Rossi v. Standard Roofing*,
    156 F.3d 452 (3d Cir. 1998)................................................................................9, 10

*Sage Chem., Inc. v. Supernus Pharms., Inc.*,
    2024 WL 2260331 (D. Del. May 9, 2024)..............................................................8

*Spartan Concrete Prods., LLC v. Argos USVI, Corp.*,
    929 F.3d 107 (3d Cir. 2019)...................................................................................10

*Sterling Merch., Inc. v. Nestle, S.A.*,
    656 F.3d 112 (1st Cir. 2011)..................................................................................13

*United States v. E.I. du Pont de Nemours & Co.*,
    351 U.S. 377 (1956)...............................................................................................13

*United States v. Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir. 2001)...................................................................................9

*United States v. Syufy Enterprises*,
  903 F.2d 659 (9th Cir. 1990) ...............................................................................12

**RULES**

Federal Rule of Bankruptcy Procedure 8004 ........................................................1

**STATUTES**

15 U.S.C. § 15(a) ...................................................................................................10

28 U.S.C. §158(A)(3) ..........................................................................................1, 5

28 U.S.C. § 1292(b) ......................................................................................5, 6, 15

**OTHER AUTHORITIES**

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law*
  ¶¶ 502, 515 (2024 ed.) ....................................................................................13

Under 28 U.S.C. § 158(a)(3) and Federal Rule of Bankruptcy Procedure 8004, Defendants Cleveland-Cliffs Inc. and Cleveland-Cliffs Minnesota Land Development LLC (collectively, "Cliffs") move for leave to appeal an October 8, 2024, order by the U.S. Bankruptcy Court for the District of Delaware (D.I. 1083). The order denied Cliffs' motion for summary judgment, and granted Plaintiff Mesabi Metallics Company LLC's ("Mesabi") motion for partial summary judgment, on Mesabi's antitrust claims, for the reasons stated in the bankruptcy court's Memorandum Opinion (D.I. 1074).

## **INTRODUCTION**

This case is at a crucial juncture for Cliffs. Mesabi's experts have concocted a preposterous multi-billion dollar damage claim against Cliffs for profits lost due to Mesabi's own failed business strategy and execution. A non-Article III bankruptcy judge recently found not only that Mesabi's antitrust claims could go to trial, but also that Cliffs will be branded a monopolist at that trial. To so hold at summary judgment is nearly unprecedented, and certainly not warranted here. But without Article III-court intervention, the continuance of Mesabi's misplaced claims will force Cliffs to, at minimum, incur significant reputational damage and face a jury as a wrongly-branded monopolist. Interlocutory district-court review under § 158 was created for cases like this.

The sole decision point on this motion is *when*, not *if*, Article III review will occur. The Constitution, after all, guarantees Cliffs the right to have an Article III court review all of the bankruptcy judge's rulings. Delaying this review until after a trial is neither efficient nor just. Rather than forcing Cliffs into this (likely) defective trial based on the necessarily nonfinal (erroneous) decision of the non-Article III court—with review only at the *backend*—this Court should grant review to answer the legal questions now.

The legal questions, moreover, are primed for immediate review, which would materially advance—and potentially end—this litigation. If this Court resolves any questions in Cliffs' favor,

it would rid the trial, if still needed, of fundamental legal defects.  Ensuring a fair trial at the outset saves resources—this Court would not have to vacate an unjust trial for a do-over after much wasted effort.  Interlocutory review of the order should happen now.

## QUESTIONS PRESENTED

Question #1:  May an antitrust plaintiff combine conduct, lawful by itself under the relevant antitrust tests, to transform that legal conduct into unlawful, anticompetitive activity?

Question #2:  Does an antitrust plaintiff have the burden to offer a reasonable basis for calculating the *amount* of damages, or may it reach trial merely with evidence of the *fact* of some unspecified amount of damages?

Question #3:  Does an antitrust plaintiff with only indirect evidence (of high market share and high barriers to entry) establish monopoly power as a matter of law, even when there is contrary direct evidence of the *lack* of monopoly power?

## BACKGROUND

Beginning in 2008, Essar Global Fund Limited, an Indian industrial conglomerate, attempted to enter the North American market for iron-ore pellets, an intermediate good sold to steelmakers.  D.I. 1074 (Op.) at 3.  Essar bought a former iron mine site in Minnesota where its subsidiary, Essar Steel Minnesota LLC ("ESML"), intended to construct facilities to mine and pelletize iron ore.  *Id.* at 4.  By 2016, despite spending about $1 billion, ESML still lacked an operating facility, which led its largest customer-in-waiting to terminate its contract and its mineral lessors to threaten to do the same.  *Id.* at 3-4, 45.

ESML filed for bankruptcy in July 2016, facing the loss of its leases and needing hundreds of millions more in capital.  *Id.* at 3-4.  ESML's reorganization plan canceled Essar's equity stake, and a new entity won the bid for the reorganized ESML, renamed Mesabi Metallics Company.  *Id.* Mesabi attempted to assume ESML's mineral leases, but the landowners, including Glacier Park

32283948.1

Iron Ore Properties, objected. *Id.* at 5. Glacier Park ultimately agreed to the assumption of its leases on condition that Mesabi's reorganization plan become effective by October 31, 2017. *Id.* But when that deadline came and went, the land rights reverted to Glacier Park. *Id.* Mesabi continued on, and on December 22, 2017, put its reorganization plan into effect. *Id.* Soon after, Essar, the conglomerate that put ESML into bankruptcy, bought Mesabi's secured debt—at a discount—regaining control of the company, a position Essar continues to hold today. *Id.* at 4.

Meanwhile, despite challenging conditions in the iron-ore industry, existing pellet producers continued to operate, adapt, and compete. Among these, Mesabi's would-be rivals, were Cliffs and U.S. Steel. Cliffs has supplied steelmakers with iron-ore pellets from its mines and facilities in northern Minnesota and elsewhere in North America for more than a century and today employs more than 27,000 people as a steel producer. D.I. 837 at 9. So too, U.S. Steel has long made pellets for use in its own steelmaking and, more recently, for sale. *Id.*; Op. 52. In 2014, ESML convinced one of the largest steelmakers, ArcelorMittal USA ("AMUSA"), to enter a long-term, ten-year pellet supply contract, which ESML breached when it failed to perform. Op. 52. Needing supply, AMUSA turned to Cliffs and U.S. Steel, among others. After extensive negotiations, AMUSA awarded Cliffs a contract of equal length. *Id.* Glacier Park likewise entered into negotiations with Cliffs and others after ESML's mineral leases terminated, and Cliffs agreed to Glacier Park's terms in November 2017. *Id.* at 60-61.

In bankruptcy, Mesabi blamed Essar and its own officers for its failures and inability to complete its project. *Id.* at 4. Mesabi then turned its blame on Cliffs and initiated another adversarial proceeding in late 2017, alleging antitrust law violations and tortious interference. *Id.* at 5. Just hours before emerging from reorganization, Mesabi moved to amend this proceeding to add Glacier Park. *See id.* at 11-13; D.I. 8. Mesabi claimed Cliffs engaged in business practices

that impeded Mesabi from succeeding, identifying three particular types of allegedly anticompetitive acts: (1) that AMUSA's contract with Cliffs had foreclosed Mesabi from supplying customers; (2) that Glacier Park's transaction with Cliffs deprived Mesabi of raw ore; and (3) that Cliffs had prevented three contractors from also providing services to Mesabi in mid-2017. The bankruptcy court granted this last-minute request, *see* D.I. 17, and retained jurisdiction after Mesabi exited bankruptcy protection.

The ensuing litigation has been "active and contentious" over nearly seven years. Op. 1. The scope winnowed. In 2018, Cliffs and Glacier Park won partial summary judgment on Mesabi's claims that it "retained the right to assume the Glacier Park leases" (it did not; Glacier Park was free to award them to Cliffs). *Id.* at 6. Mesabi eventually settled with Glacier Park, homing in on Cliffs. *Id.* at 7-8.

After discovery, the remaining parties moved for summary judgment in late 2023. Cliffs sought summary judgment on Mesabi's antitrust and tort claims, arguing Mesabi lacked evidence to prove the essential antitrust elements of exclusionary conduct, antitrust injury, and damages. D.I. 837. Cliffs emphasized that Mesabi's only evidence for the *amount* of damages—astronomical claims in the billions—was an inadmissible expert report challenged under *Daubert*. *Id.* at 47. Mesabi replied it could satisfy these elements on the legal theories that Cliffs' actions "must be assessed" "collectively" and that "summary judgment [is not] an appropriate stage to assess damages." D.I. 894 at 67, 70.

The bankruptcy court largely denied Cliffs' summary judgment motion. *See* D.I. 1083. The court declined to decide the *Daubert* challenge by holding damages evidence at summary judgment is sufficient if a factfinder "could conclude ... that [Mesabi] did in fact sustain an injury" and "*some* damages." Op. 78; *see also* D.I. 1079 at 2-4. The court further held Mesabi could

satisfy the antitrust elements when evaluating Cliffs' "conduct taken as a whole, rather than considering each aspect in isolation." Op. 50. The court finally denied summary judgment on certain tortious interference claims "for the same reasons." *Id.* at 83-87; *see also* D.I. 1079 at 4-7.

Mesabi, meanwhile, filed for affirmative summary judgment on two elements of its antitrust claims. Mesabi argued (1) the relevant market was "blast furnace pellets in the Great Lakes region" and (2) that "Cliffs had monopoly power in th[at] market." Op. 25-26. Ruling on *indirect* evidence of monopoly power—and ignoring the *direct* evidence of how the market actually operated—the bankruptcy court agreed with Mesabi, taking away these questions from the jury and branding Cliffs a monopolist in Mesabi's defined market. *See id.* at 26-47.

Once the court's order issued, Mesabi moved to withdraw the reference. D.I. 1084. Cliffs opposes that motion as premature because of *this* motion—*i.e.*, that a proceeding with an unresolved appeal is not "trial ready" as required.

## RELIEF SOUGHT

Cliffs requests that the Court grant leave to appeal to allow review of the bankruptcy court's order—before any trial takes place.

## ARGUMENT

Granting leave to appeal now will ensure the undue consequences of the bankruptcy court's erroneous summary-judgment decision do not take root. Courts decide § 158(a)(3) motions under the § 1292(b) standard. *In re AE Liquidation, Inc.*, 451 B.R. 343, 346 (D. Del. 2011). Under § 1292(b), an appeal is permitted when it "(1) involves a controlling question of law upon which there is (2) substantial grounds for a difference of opinion as to its correctness, and (3) if appealed immediately, may materially advance the ultimate termination of the litigation." *Id.* This Court thus grants leave when immediate review of significant "legal issues as to which there is

considerable question" may obviate the need for an ultimately "unnecessary," costly, and lengthy trial. *Johnson v. Alldredge*, 488 F.2d 820, 823 (3d Cir. 1973).

This appeal has all that and more. The three questions presented are controlling and have massive implications for this proceeding. Resolving them now could dispose of the entire case and obviate the need for this Court (and the parties) to endure a lengthy trial (or two). *See Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974) (*en banc*) (Congress' "clear intention" with 1292(b) was "to avoid a wasted trial"); *CFPB v. Navient Corp.*, 522 F. Supp. 3d 107, 114 (M.D. Pa. 2021) (certifying where issue could dispose of case).

## I.      THE QUESTIONS PRESENTED ARE CONTROLLING QUESTIONS ON WHICH THERE ARE SUBSTANTIAL GROUNDS FOR DISAGREEMENT.

Not one but three "controlling questions of law" exist here—questions that "(1) 'would be reversible error on final appeal' or (2) [are] 'serious to the conduct of the litigation, either practically or legally.'" *In re Essar Steel Minnesota LLC*, 607 B.R. 409, 415-16 (D. Del. 2019) (quoting *Katz*, 496 F.2d at 755). A question meets the § 1292(b) standard when there are "genuine doubts as to the correct legal standard"; "[c]onflicting and contradictory opinions"; an "absence of controlling law on a particular issue"; or the decision is "contrary to well-established law." *Id.* at 416 (citations omitted); *see also In re JRV Grp. USA L.P.*, 2022 U.S. Dist. LEXIS 151890, at *15 (D. Del. Aug. 24, 2022); *In re MARVEL Entm't Grp.*, 209 B.R. 832, 837 (D. Del. 1997) (same). This Court thus looks for thorny or unsettled legal questions, ones the bankruptcy court got clearly wrong, or ones that reviewing now would save "time of the district court" and "expense to the litigants." *In re Essar*, 607 B.R. at 415 (quoting *Katz*, 426 F.2d at 755). This case has all types.

### A.      Controlling Question One:   Whether and How to Consider Alleged Exclusionary Conduct as a Scheme.

The bankruptcy court grouped together all three of Cliffs' allegedly anticompetitive actions—despite understanding that each could be legal—and held they could possibly form a

single viable antitrust claim "taken as a whole." Op. 50, 71. Mesabi had argued that *each* of the distinct acts (the AMUSA contract, the Glacier Park transaction, and the vendor interactions) was illegal under well-established tests and could support a standalone claim. D.I. 894 at 57, 61. Cliffs disagreed. The bankruptcy court, however, never determined whether any of the three actions could support a stand-alone claim.

The bankruptcy court erred. At worst, it violated Supreme Court precedent on grouping claims as a "scheme." At best, it revealed the substantial disagreement on applying that precedent. Either way, review is warranted. *In re Essar*, 607 B.R. at 416.

**1.** The Supreme Court has already rejected the bankruptcy court's "holistic" approach, holding plaintiffs may not "alchemize" deficient claims "into a new form of antitrust liability." *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 457 (2009). This Court has followed *linkLine* to hold that "two wrong claims," or even "five wrong claims[,] do not make a right [one]." *3Shape Trios A/S v. Align Tech., Inc.*, 2019 WL 3824209, at *12 (D. Del. Aug. 15, 2019). Yet this bankruptcy court held just that, Op. 51, committing reversible error.

The bankruptcy court's improper approach also poisoned its analysis of antitrust injury, which it again evaluated "as a whole rather than considering each aspect in isolation." Op. 71, 74-77. A private plaintiff must prove the defendant's anticompetitive practices have caused it an antitrust injury (one that stems from harm to competition). *Atl. Richfield Co. v. USA Petrol. Co.*, 495 U.S. 328, 334 (1990). Just as two baseless claims cannot combine into an actionable one, neither can antitrust injury result "from the practices ... found not to have been anticompetitive." *Ne. Tel. Co. v. Am. Tel. & Tel. Co.*, 651 F.2d 76, 95 (2d Cir. 1981); *cf. Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 53 n.2 (1993). The bankruptcy court needed to make that determination rather than skirt it.

**2.**  Even disregarding this controlling precedent, there are conflicting opinions on how to apply the correct legal standard, independently warranting review.  Courts continue to disagree about how to treat claims that try to transform deficient individual claims into a collective one that succeeds.  This conflict stems from *Continental Ore Co. v. Union Carbide*, 370 U.S. 690, 699 (1962), which the bankruptcy court treated (and others treat), mistakenly, as controlling.  *See, e.g.*, *Sage Chem., Inc. v. Supernus Pharms., Inc.*, 2024 WL 2260331, at *9 (D. Del. May 9, 2024); *Abbott Laby's v. Teva Pharms. USA, Inc.*, 432 F. Supp. 2d 408, 428 (D. Del. 2006).

That the bankruptcy court's treatment of this issue is not unique only underscores the need for immediate review to correct it.  Other courts in this Circuit, on the other hand, have correctly read *Continental Ore* merely to "stand for the proposition that courts must look at *anticompetitive* acts in combination to assess their anticompetitive effect."  *3Shape*, 2019 WL 3824209, at *10 (emphasis added); *see also In re Processed Egg Prods. Antitrust Litig.*, 206 F. Supp. 3d 1033, 1041 (E.D. Pa. 2016).  The bankruptcy court's view at best applies only "in certain circumstances," *In re Suboxone Antitrust Litig.*, 2017 WL 36371, at *8 (E.D. Pa. Jan. 4, 2017), when a plaintiff can "explain[] why this specific 'course of conduct' was anticompetitive under antitrust law" in a way that "amounts to anything more than those individual acts."  *3Shape Trios A/S v. Align Tech., Inc.*, 2019 WL 4686614, at *1–2 (D. Del. Sept. 26, 2019); *see, e.g.*, *3Shape*, 2019 WL 3824209, at *10 (providing examples).  *Continental Ore* thus should not permit courts to conclude that "acts otherwise insulated from antitrust scrutiny"—legal when viewed individually—can be combined into an actionable claim.  *3Shape*, 2019 WL 3824209, at *10; *see In re Suboxone Antitrust Litig.*, 2017 WL 36371, at *9.  Yet the bankruptcy court permitted precisely that by refusing to even determine whether each of the three actions could support a stand-alone claim.

This Court should grant review to get this law right—and to consider a related circuit split. Precedent suggests the "synergistic effect" of a defendant's combined conduct might violate antitrust law. *LePage's Inc. v. 3M*, 324 F.3d 141, 162 (3d Cir. 2003) (*en banc*) (quoting *City of Anaheim v. S. Cal. Edison Co.*, 955 F.2d 1373, 1376 (9th Cir. 1992)). The Third Circuit has never explained whether such synergies may result from practices that are not anticompetitive individually, but some lower courts have concluded they may. *E.g.*, *Abbott*, 432 F. Supp. 2d at 428. Genuine doubts exist, though, whether that interpretation remains valid, and Mesabi presented no evidence of such synergistic effects. *See, e.g.*, *3Shape*, 2019 WL 3824209, at *10. Of the circuits to have addressed this, all but one has concluded that practices not anticompetitive themselves cannot combine into an anticompetitive course of conduct. *Compare Eatoni Ergonomics, Inc. v. Rsch. in Motion Corp.*, 486 F. App'x 186, 191 (2d Cir. 2012), *Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1142 (9th Cir. 2022), *United States v. Microsoft Corp.*, 253 F.3d 34, 78 (D.C. Cir. 2001) (*en banc*), and *Intergraph Corp. v. Intel Corp.*, 195 F.3d 1346, 1366-67 (Fed. Cir. 1999), *with Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337, 354-56 (4th Cir. 2024). That makes this a quintessential issue for review.

## B. Controlling Question Two: Whether An Antitrust Plaintiff Needs *Some* Evidence Sufficient to Support A Reasonable Estimate Of Damages.

"[I]n antitrust cases, there are ultimately two related, but distinct, inquiries to establish antitrust injury. First, the plaintiff must prove the *fact* of antitrust injury ... ; then, he must make a showing regarding the *amount* of damages." *Rossi v. Standard Roofing*, 156 F.3d 452, 484 (3d Cir. 1998). The bankruptcy court recognized, but then flatly ignored, the second inquiry. It held it *did not matter* whether Mesabi had any evidence sufficient to reasonably estimate the amount of damages, so long as Mesabi had evidence "that the plaintiff did in fact sustain an injury" resulting in "*some* damages" (of whatever amount). Op. 23, 25, 77-78. This led the bankruptcy court to

decline to address the admissibility of the only evidence Mesabi offered to estimate the amount of damages—an expert report subject to a *Daubert* challenge.

The bankruptcy court's holding is wrong and worthy of immediate review.  By statute, a private antitrust plaintiff like Mesabi must prove "the damages by him sustained." 15 U.S.C. § 15(a).  "[M]easurable damages" is a fundamental element of every private antitrust claim.  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008).  Controlling decisions from this Circuit—and the Supreme Court—hold the plaintiff must have sufficient evidence for the trier of fact to calculate an amount of claimed damages that is "not the product of speculation or guess work." *Rossi*, 156 F.3d at 484 (quoting *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1176 (3d Cir. 1993)); *see also Keogh v. Chicago & Nw. Ry. Co.*, 260 U.S. 156, 164 (1922).

The bankruptcy court required evidence only "that [a plaintiff] suffered *some* damages on account of the defendant's conduct," but not sufficient to estimate an amount.  Op. 25, 77-78.  That approach flattens the two distinct inquiries—the *fact* of damage, and the *amount*—into one, which is incorrect as a matter of law.  *E.g.*, *Spartan Concrete Prods., LLC v. Argos USVI, Corp.*, 929 F.3d 107, 115 n.2 (3d Cir. 2019) ("amount of … antitrust damages … is a separate inquiry from establishing antitrust injury," and judgment may be granted if plaintiff fails to establish basis for estimating amount); *LePage's*, 324 F.3d at 166 (after establishing "unlawful activity caused the antitrust injury," *then* "damages may be determined" under "speculation or guesswork" standard).

Plaintiffs who fail to provide evidence sufficient to allow a jury to reasonably estimate the *amount* of damages cannot avoid summary judgment.  *See, e.g.*, *Package Shop, Inc. v. Anheuser-Busch, Inc.*, 675 F. Supp. 894, 946-47, 952 (D.N.J. 1987) (granting summary judgment because challenged expert's report "cannot serve as a factual basis for reaching a 'fair and reasonable estimate of damages'"); *Grp. Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 753, 761 (8th

Cir. 2003) ("Because the HMOs do not have any other evidence demonstrating the amount of damages caused by Tobacco's alleged misconduct, a factfinder in this case would have to act arbitrarily to set a damage amount."); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 808 (9th Cir. 1988) ("Summary judgment is appropriate where appellants have no expert witnesses or designated documents providing competent evidence from which a jury could fairly estimate damages."); *accord Deaktor v. Fox Grocery Co.*, 475 F.2d 1112, 1116 (3d Cir. 1973) (no error "in concluding that the plaintiffs' evidence on damages was too speculative to send to the jury"). Decisions like these show the bankruptcy court committed reversible error—or at least that this question is subject to conflicting opinions—and either justifies review.

The consequences of failing to grant immediate review, moreover, could not be starker. Without review, Cliffs faces a trial on "*some* damages" with an expert claiming billions. But with review (and reversal), Mesabi's damages expert report may be struck (as Cliffs argues), leaving Mesabi with no evidence for a jury to reasonably estimate an amount of damages without guesswork and speculation, making summary judgment for Cliffs proper. *See* D.I. 952 at 35 n.14. The Court should decide this issue now.

### C. Controlling Question Three: The Standard for Evaluating Monopoly Power.

To find Cliffs had monopoly power, the bankruptcy court improperly held that indirect evidence is dispositive and contrary direct evidence can be ignored. Op. 43-47. This was error, as shown by the scarcity of cases finding monopoly power—the most fact-intensive element of a plaintiff's antitrust case—at summary judgment, and the manifold cases denying summary judgment after considering both indirect and direct evidence together. Not only does the bankruptcy court's finding rest on legal (and economic) questions that are at best open to debate, but it could not be more serious to this litigation. If not reviewed now, no Article III court will consider this defective ruling until *after* a trial in which the jury never sees the conflicting evidence

32283948.1

and Cliffs is incorrectly painted as a monopolist as a matter of law.  The Court should grant an appeal of this controlling question of law to prevent that result.

To recover on its monopolization and attempted monopolization claims, Mesabi must prove "monopoly power"—"the ability to control prices and exclude competition in a given market." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 307, 317 (3d Cir. 2007).  Courts often discuss two ways to establish this crucial element, the first being "direct evidence of supracompetitive prices and restricted output" and the second being indirect evidence of "the structure and composition of the relevant market." *Id.*  In cases in which both types of evidence are presented at summary judgment, courts consider both—unlike the bankruptcy court here.[2]

The bankruptcy court found monopoly power because Mesabi presented indirect evidence of two things:  (1) Cliffs' high market share in Mesabi's defined market and (2) high barriers to entry in that market.  Op. 44-45.  But other courts have held to the contrary—that "[m]arket power cannot be inferred solely from the existence of entry barriers and a dominant market share." *Rebel Oil*, 51 F.3d at 1441; *see, e.g.*, *Ball Mem. Hosp., Inc. v. Mutual Hosp. Ins., Inc.*, 784 F.2d 1325, 1335-36 (7th Cir. 1986); *United States v. Syufy Enterprises*, 903 F.2d 659, 664 (9th Cir. 1990).  "[M]arket share and barriers to entry," these courts hold, are "merely surrogates for determining the existence of monopoly power." *Broadcom*, 501 F.3d at 307 n.3.  Relying on them too much,

---

[2]    *See, e.g.*, *Mylan Pharms. Inc. v. Warner Chilcott Pub. Ltd. Co.*, 838 F.3d 421, 435 (3d Cir. 2016) (affirming denial of summary judgment to plaintiff on monopoly power, considering both direct and indirect evidence); *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995) (affirming summary judgment for defendant on monopoly power, noting plaintiff only submitted insufficient indirect evidence); *In re HIV Antitrust Litig.*, 656 F. Supp. 3d 963, 982 (N.D. Cal. 2023) (denying plaintiffs' motion for summary judgment on market power, finding dispute of fact as to direct and indirect evidence); *In re Intuniv Antitrust Litig.*, 496 F. Supp. 3d 639, 657 (D. Mass. 2020) (denying cross-motions for summary judgment on market power, finding dispute of fact as to direct and indirect evidence).  *Cf. Defiance Hosp., Inc. v. Fauster-Cameron, Inc.*, 344 F. Supp. 2d 1097, 1113 (N.D. Ohio 2004) (granting plaintiff's summary judgment motion on monopoly power based on indirect evidence, noting no direct evidence was presented).

as here, creates an unacceptable risk of false positives—inferring (incorrectly and here dispositively) that a big company in a plaintiff-defined market is a "monopolist." *See* Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶¶ 502, 515 (2024 ed.).

The bankruptcy court further erred in its indirect-evidence analysis by not requiring Mesabi to meet its full burden—to both "show that there are significant barriers to entry *and* show that existing competitors lack the capacity to increase their output in the short run." *Rebel Oil*, 51 F.3d at 1434 (emphasis added). Indeed, the bankruptcy court ignored evidence that *existing firms* had capacity to expand output. *See* Op. 44-47. Even assuming Mesabi's alleged relevant market were correct, then, the ability of existing rivals to expand their production and counter any attempt to increase prices must be considered. *See, e.g.*, *Rebel Oil*, 51 F.3d at 1441-42; *Ball Mem. Hosp.*, 784 F.2d at 1335. Yet it was not here.

Relying on indirect evidence alone is especially problematic where, as here, the parties presented conflicting *direct* evidence on monopoly power. *See, e.g.*, D.I. 890 at 19-23. Courts have held direct evidence of a lack of monopoly power—which Cliffs presented here—entitles *defendants* to judgment, even with high market shares. *See, e.g.*, *Sterling Merch., Inc. v. Nestle, S.A.*, 656 F.3d 112, 125-26 (1st Cir. 2011); *L.A. Land Co. v. Brunswick Corp.*, 6 F.3d 1422, 1425-26 (9th Cir. 1993). It at least should prevent summary judgment for the *plaintiff*.

The bankruptcy court's approach further is inconsistent with the principle that "determining the existence of market power" in antitrust law should be based on "actual market realities" and "examin[ing] closely the economic reality of the market at issue." *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 466-67 (1992) (quoting *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 400 (1956)) (affirming denial of summary judgment to defendant

32283948.1

because direct evidence sufficient to show market power, and movant defendant failed to show inference was unreasonable).

Whether the bankruptcy court's analysis correctly applied this law presents a controlling question of law requiring review now—before Cliffs faces an unjust trial branded a monopolist.

## II.    IMMEDIATE APPEAL WILL MATERIALLY ADVANCE THIS PROCEEDING.

Review now, before expending time and resources on a complex (and defective) trial, unquestionably "may materially advance the ultimate termination of the litigation." This is not a demanding standard. This Court need only identify a "*possibility* that interlocutory review would materially advance the litigation." *Crystallex Int'l Corp. v. Petróleos De Venezuela, S.A.*, 2016 WL 7440471, at *2 (D. Del. Dec. 27, 2016). This includes when the appeal could eliminate a trial entirely (as here) or at least resolve complex and controlling legal questions (also as here). *See In re TK Holdings*, 2021 WL 3796878, at *4 (D. Del. Aug. 26, 2021); *In re AE Liquidation, Inc.*, 451 B.R. at 348. This factor considers "settlement possibilities" and "the potential length of a possibly avoidable trial, and similar maters." *Katz*, 496 F.2d at 755.

Interlocutory review here meets this standard. The first and second questions challenge elements needed for all antitrust claims, and Cliffs must prevail on only a single element to obtain judgment. *See* Op. 25-26, 43, 47. Resolving either question in Cliffs' favor would thus eliminate the need for a trial. *Cf. Piazza v. Major League Baseball*, 836 F. Supp. 269, 272 (E.D. Pa. 1993). And determining now whether the bankruptcy court correctly applied any of the antitrust standards in these questions would at minimum "simplify [the] case by foreclosing complex issues" about Mesabi's allegations. *In re Chocolate Confectionary Antitrust Litig.*, 607 F. Supp. 2d 701, 707 (M.D. Pa. 2009); *see also In re L.A. Dodgers LLC*, 465 B.R. 18, 30 (D. Del. 2011).

Review now also may materially reduce the costs of continuing litigation. *See Katz*, 496 F.2d at 755. The possibility of avoiding trial fulfills the "highly relevant" considerations of "saving

32283948.1

14

judicial resources and sparing expense to the litigants" compared with the possibility of multiple trials with a later successful appeal. *In re ASHINC Corp.*, 2017 WL 2774736, at *6 (D. Del. June 27, 2017). The Court thus may consider the "practical matter" here that, "if th[ese] issue[s] [are] not immediately appealed, the parties and the court may, if [appellants] are successful in their appeal after a final judgment, have to conduct two lengthy, and almost identical, trials," meaning an immediate appeal would "save the time and resources of this court and reduce the parties' litigation expenses." *Pub. Int. Rsch. Grp. of N.J., Inc. v. Hercules, Inc.*, 830 F. Supp. 1549, 1555-56 (D.N.J. 1993); *see also Bradburn Parent Teacher Store, Inc. v. 3M*, 2005 WL 1819969, at *4 (E.D. Pa. Aug. 2, 2005) (granting interlocutory appeal in antitrust action, noting the "senseless waste of private and public resources" and "strong likelihood that the trial of this action will require lengthy proceedings").

Nor would this appeal cause unnecessary delay, as Mesabi's remaining tortious interference claims each need a viable antitrust claim. *See* Op. 83-84. Review now thus impacts the entire proceeding and does not risk "piecemeal" litigation. *In re Essar*, 607 B.R. at 418.

## III.   IMMEDIATE REVIEW IS URGENTLY NEEDED.

Congress authorized interlocutory appeals to address cases like this one: "exceptional cases involving protracted and expensive litigation, such as antitrust cases, when the district court's resolution of the interlocutory issue was the subject of serious doubt." *Gross v. McDonald*, 354 F. Supp. 378, 383 (E.D. Pa. 1973) (cleaned up); *see generally Katz*, 496 F.2d at 754 (applying legislative history of § 1292(b)). "Forcing the parties to proceed with litigation when there appears to be controlling law that definitively resolves the matter is an exceptional circumstance warranting leave to appeal." *In re JRV Grp*, 2022 U.S. Dist. LEXIS 151890, at *16; *accord Milbert v. Bison Labs., Inc.*, 260 F.2d 431, 433 (3d Cir. 1958) ("exceptional cases" include "where an intermediate appeal may avoid protracted and expensive litigation"). Indeed, meeting the § 1292(b) factors—

as shown here—generally demonstrates "exceptional circumstances" are present.  *E.g.*, *Levine v. United Healthcare Corp.*, 285 F. Supp. 2d 552, 556-57 (D.N.J. 2003); *Florence v. Bd. of Chosen Freeholders of County of Burlington*, 657 F. Supp. 2d 504, 507 (D.N.J. 2009).

But this case is extraordinary in other ways, too.  It involves multiple claims, millions of documents, and conduct across nearly a decade.  The issues are complex enough to merit a nearly-100-page summary judgment opinion by the non-Article III court and have "nationwide significance" given the substance and size of the companies involved.  *See Navient*, 522 F. Supp. 3d at 114.  And Plaintiff's expert, at least, values the claims at a wildly high, multibillion-dollar figure.  *See Crystallex*, 2016 WL 7440471, at *2 ("enormous sums of money" as potential damages constitute exceptional circumstances).  Permissive forms of interlocutory review exist precisely for cases of this significance.

## **CONCLUSION**

For these reasons, this Court should grant Cliffs leave to appeal.

Dated: October 22, 2024                    Respectfully Submitted,

                                           */s/ Michael S. Neiburg*
                                           YOUNG CONAWAY STARGATT &
                                           TAYLOR, LLP
                                           Michael S. Neiburg (No. 5275)
                                           Rodney Square
                                           1000 North King Street
                                           Wilmington, DE 19801
                                           Telephone: 302.571.6600
                                           Facsimile: 302.571.1253
                                           Email: mneiburg@ycst.com

                                           JONES DAY
                                           Robert S. Faxon (*pro hac vice* forthcoming)
                                           Kristin S.M. Morrison (*pro hac vice*
                                           forthcoming)
                                           James R. Saywell (*pro hac vice* forthcoming)
                                           North Point
                                           901 Lakeside Avenue
                                           Cleveland, OH 44114.1190
                                           Telephone: 216.586.3939
                                           Facsimile: 216.579.0212
                                           E-mail: rfaxon@jonesday.com
                                                   kmorrison@jonesday.com
                                                   jsaywell@jonesday.com

                                           *Attorneys for Cleveland-Cliffs Inc. and*
                                           *Cleveland-Cliffs Minnesota Land*
                                           *Development LLC*

32283948.1

17

## **Certificate of Counsel**

Pursuant to Federal Rules of Bankruptcy 8013(f)(3)(A) and 8015(h)(1), counsel for Appellant certifies that this document complies with the type-volume limitation of Rule 8013.  Per the word-processing system used to prepare the document, and excluding those items listed in Rule 8015(g), there are 5,185 words in this motion.

*/s/ Michael S. Neiburg*

Counsel for Appellants

32283948.1