**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>ESSAR STEEL MINNESOTA LLC and ESML HOLDINGS INC.,<br><br>    Reorganized Debtors. | Chapter 11<br><br>Case No. 16-11626 (CTG)<br><br>(Jointly Administered) |
| MESABI METALLICS COMPANY LLC (F/K/A ESSAR STEEL MINNESOTA LLC),<br><br>    Plaintiff,<br><br>  v.<br><br>CLEVELAND-CLIFFS INC., <u>et al.</u>,<br><br>    Defendants. | Adv. Proc. No. 17-51210 (CTG) |
| CLEVELAND-CLIFFS INC., <u>et al.</u>,<br><br>    Counterclaim-Plaintiffs,<br><br>  v.<br><br>MESABI METALLICS COMPANY LLC,<br><br>    Counterclaim-Defendant. | |
| CLEVELAND-CLIFFS INC., <u>et al.</u>,<br><br>    Third-Party-Plaintiffs,<br><br>  v.<br><br>CHIPPEWA CAPITAL PARTNERS, LLC,<br><br>    Third-Party-Defendant.[1] | |

**REPLY BRIEF OF DEFENDANTS CLEVELAND-CLIFFS INC. AND
CLEVELAND-CLIFFS MINNESOTA LAND DEVELOPMENT LLC
<u>REGARDING UNSEALING UNDER SECTION 107</u>**

---

[1] Counterclaim-Plaintiffs Cleveland-Cliffs Inc. and Cleveland-Cliffs Minnesota Land Development LLC respectfully disagree that their claims against Chippewa Capital Partners, LLC are third-party claims rather than counterclaims in this action.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 3

    I.    THE THIRD CIRCUIT HELD THAT SECTION 107(B) DIVERGES FROM THE COMMON LAW. ........................................................................................... 3

    II.   THE SECTION 107 STANDARD IS CONFIDENTIAL COMMERCIAL INFORMATION, WHICH IS MET WITH COMPETITIVE HARM. ....................... 6

    III.  CLIFFS MEETS ITS BURDEN FOR THE IDENTIFIED INFORMATION. ............ 10

CONCLUSION................................................................................................................ 15

## TABLE OF AUTHORITIES

**Page**

CASES

Aguilar v. Att'y Gen. of U.S.,
663 F.3d 692 (3d Cir. 2011).................................................................................9

In re Alterra Healthcare Corp.,
353 B.R. 66 (Bankr. D. Del. 2006) ......................................................................8

In re Anthracite Cap., Inc.,
492 B.R. 162 (Bankr. S.D.N.Y. 2013)............................................................8, 12

In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.,
924 F.3d 662 (3d Cir. 2019)..............................................................................4, 8

In re Barney's, Inc.,
201 B.R. 703 (Bankr. S.D.N.Y. 1996).................................................................8

In re Cendant Corp.,
260 F.3d 183 (3d Cir. 2001)..................................................................................4

In re ESML Holdings Inc.,
135 F.4th 80 (3d Cir. 2025) ........................................................................ passim

In re Farmland Indus., Inc.,
290 B.R. 364 (Bankr. W.D. Mo. 2003)...............................................................15

In re FTX Trading Ltd.,
2025 Bankr. LEXIS 1245 (Bankr. D. Del. May 21, 2025)..................................11

In re Mata,
2019 Bankr. LEXIS 4060 (Bankr. C.D. Cal. Dec. 20, 2019) ..............................9

In re Motors Liquidation Co.,
561 B.R. 36 (Bankr. S.D.N.Y. 2016)....................................................................9

In re Orion Pictures Corp.,
21 F.3d 24 (2d Cir. 1994).................................................................................7, 8

In re Purdue Pharma L.P.,
632 B.R. 34 (Bankr. S.D.N.Y. 2021)....................................................................9

In re Roman Cath. Archbishop,
    661 F.3d 417 (9th Cir. 2011) ...................................................................................2, 5

**STATUTES**

11 U.S.C.A. § 107................................................................................................... passim

11 U.S.C.A. § 107(b) .......................................................................................................7

11 U.S.C. § 107(b)(1) ...................................................................................................3, 7

**OTHER AUTHORITIES**

Black's Law Dictionary 1353 (8th ed. 2004) ..................................................................9

Cleveland-Cliffs Inc. Form 10-K (2025), available at
    https://www.clevelandcliffs.com/investors/sec-filings/annual-
    reports/content/0000764065-25-000058/0000764065-25-000058.pdf ...................13

**INTRODUCTION**

The Third Circuit has now held that the "distinct" standard in Section 107 of the Bankruptcy Code, and not the common-law standard for public access, governs the sealing and unsealing of documents on this Court's docket. But despite the Third Circuit's clear holding on this point on appeal in this very case, Mesabi would like this Court to pretend that the Third Circuit never so spoke. It returns to its arguments from before the appeal—the very ones the Third Circuit rejected—insisting that something equivalent to the common-law standard still applies here.

Mesabi is mistaken. And Cliffs, on the other hand, far from "tr[ying] to invent new law" as Mesabi suggests [Adv. D.I. 1103 at 1],[2] applies this new precedent—on a question the Third Circuit itself said had "yet [to be] addressed precedentially." In re ESML Holdings Inc., 135 F.4th 80, 95 (3d Cir. 2025). This Court, too, must apply the Third Circuit's new, unambiguous holding that "§ 107 … differs from and displaces the common law standard for sealing judicial records in bankruptcy cases," including that the required showing under Section 107 is not the same as under the common law. In re ESML, 135 F.4th at 96–97. That should be the Court's starting point.

Mesabi's opposition instead improperly collapses the two sealing standards. [See Adv. D.I. 1103 at 6–10.] Mesabi asks the Court to require a significant and current injury, as the common law would require. And Mesabi asks this Court to accept Mesabi's subjective interpretation of the information in Cliffs' documents and business operations (despite previous stipulated positions) and of whether competitors would use the information. Mesabi then exacerbates its errors by arguing for what amounts to a balancing test. [See Adv. D.I. 1103 at 1, 24–28 (arguing that the Court should weigh whether Cliffs' documents hold "significant public importance" and thus must

---

[2] Unless otherwise noted, all references to "Adv. D.I." are to docket indicators in this action, and all capitalized terms retain the meaning given them in Cliffs' opening brief in support of sealing. [Adv. D.I. 1102.]

be shared).] But this is the very balancing test that the common law contains but that Section 107 "'eliminates,'" "rendering 'the strength of the public's interest in a particular judicial record ... irrelevant.'" In re ESML, 135 F.4th at 96 (quoting In re Roman Cath. Archbishop, 661 F.3d 417, 430–31 (9th Cir. 2011)). Mesabi is not faithful to the Third Circuit's holdings.

The Third Circuit has now made this much clear: Section 107 mandates that this Court protect competitively sensitive information on its docket. Because Cliffs' tailored requests for sealing and/or redactions are designed to protect "confidential … commercial information," this Court "shall" protect the documents and information at issue. 11 U.S.C. § 107 (emphasis added). See also In re ESML, 135 F.4th at 96 ("§ 107(b) uses the mandatory term 'shall' to direct the bankruptcy court's protection of the categories of information that follow, meaning the bankruptcy court lacks discretion to decline to protect covered information."). Cliffs therefore respectfully requests that the Court maintain the seal on, and permit the proposed redactions to, the documents and information identified in Cliffs' opening brief.

Given the tenor of Mesabi's brief, it also must be said that Cliffs has no intent to unreasonably withhold documents, or portions thereof. Where documents and statements are already part of the public record (and thus not confidential), Cliffs has not attempted to maintain the seal. But the information in certain documents and testimony excerpts is commercially sensitive information, and, if disclosed, it would risk giving an unfair advantage to competitors (among them Mesabi itself, should it ever operate). Cliffs has asserted its right to protect such information under Section 107 of the Bankruptcy Code. As that statute and the Third Circuit make clear, this Court must therefore protect the confidentiality of all such information for which Cliffs provided evidence supporting the risk of competitive harm.

**ARGUMENT**

There are clear, substantial, and material differences between the common law and Section 107—as the Third Circuit already squarely held. See Section I, infra. Indeed, that is the very reason the Third Circuit vacated this Court's previous order; that should be the starting point for the Court's analysis now. The different standard under Section 107 asks whether information is confidential and commercial in nature, which includes a "competitive harm" element. See Section II, infra. Applying this Section 107 standard not only justifies, but mandates, Cliffs' proposed redactions and sealings for the confidential commercial information identified. See Section III, infra.

**I.    THE THIRD CIRCUIT HELD THAT SECTION 107(B) DIVERGES FROM THE COMMON LAW.**

It now must be taken as a given that the standard applicable here is different from the common law. That is what the Third Circuit held, and that is why it vacated this Court's previous order. The mandate to this Court, accordingly, is to apply Section 107's "less onerous competitive injury … standard in the first instance." In re ESML, 135 F.4th at 97.

What makes Section 107 "less onerous" than the common law and Avandia? The Third Circuit (adopting Cliffs' arguments) identified "two major respects" in which Section 107 diverges from the common law. First, Section 107 "permits sealing of 'a trade secret or confidential research, development, or commercial information,'" which is a category "broader than the information that could be protected under the common law doctrine." Id. at 96 (quoting 11 U.S.C. § 107(b)(1)). And second, "the bankruptcy court lacks discretion to decline to protect covered information." Id. Mesabi still does not so much as acknowledge these differences.

On the first difference—the broader categories of information that Section 107 protects— the Third Circuit explicitly rejected the Avandia standard requirement "that the disclosure of this

-3-

information 'will work a clearly defined and serious injury to the party seeking closure.'" Id. (quoting In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig., 924 F.3d 662, 672 (3d Cir. 2019)). And the Third Circuit rejected the common law's idea that the injury be "current."  Mesabi, however, employs this rejected Avandia standard in its argument that a party seeking protection under Section 107 must show "current evidence of current harm." [Adv. D.I. 1103 at 10.][3]  It is true that, under the common law standard, a party requesting sealing must provide "current evidence to show how public dissemination of the pertinent materials now would cause the competitive harm."  Avandia, 924 F.3d at 678 (quoting In re Cendant Corp., 260 F.3d 183, 196 (3d Cir. 2001)) (emphases in original).  But the Third Circuit clarified that this aspect of the common law standard is not imported to Section 107: "§ 107 does not 'codify' Avandia in the sense that it brings with it all of the common-law soil in which that decision is rooted."  In re ESML, 135 F.4th at 96.  Instead, Section 107 "differs from and displaces the common law standard," id.—including the common-law requirement that the evidence supporting sealing be "current evidence of current harm," which Mesabi seeks to apply [see Adv. D.I. 1103 at 10].

The Third Circuit's adoption of Section 107's distinct competitive-injury standard (as part of the confidentiality inquiry) further undermines Mesabi's focus on the age of the records here. [Contra Adv. D.I. 1103 at 11–12.]  It should go without saying that information can hold competitive significance for a lengthy period of time, especially where, like here, it involves a business and industry that plans for decades and relies on access to a non-fungible, finite resource. Much of the information at issue involves business planning and strategies for access to and use

---

[3] Mesabi faults Cliffs for "cit[ing] no support for its assertion that it can seal judicial records without offering current evidence that disclosure would cause current harm," [Adv. D.I. 1103 at 9], but in turn offers no authority for its position to the contrary.  It is unsurprising that there is a dearth of authority interpreting precedent that the Third Circuit has only just published.  In any event, the Third Circuit's opinion itself is the authority for this very proposition, as outlined both in Cliffs' opening brief and in this reply brief.

of mineral lands that competitors in the mining and steel industry have been evaluating for decades. [See, e.g., Adv. D.I. 1102 Ex. A ¶ 11.] Competitively sensitive details about the ore in the ground at a particular property, for example, will not change until that ore is mined, whether tomorrow or in one hundred years.

Mesabi also overlooks the second key difference between the common-law standard and Section 107: Section 107 contains no balancing test. Under Section 107, if the information is confidential and commercial, it is protected, full stop. Yet Mesabi continues to assert that the Court should consider the public importance of Cliffs' information. [See Adv. D.I. 1103 at 1, 24–28.] The Third Circuit made clear that Section 107 "'eliminates the balancing of public and private interests required by the common law rule,' rendering 'the strength of the public's interest in a particular judicial record ... irrelevant.'" In re ESML, 135 F.4th at 96 (quoting In re Roman Cath. Archbishop, 661 F.3d at 430–31). Section 107 makes no allowance for consideration of such an interest: "with § 107, Congress has struck its own balance by which the courts must abide." Id. In any event, Mesabi also misunderstands Cliffs' argument: the very fact that Mesabi, a would-be competitor of Cliffs, wants the information serves as evidence supporting a finding of an objective risk of competitive injury, which is the standard under Section 107 (see infra, Section II)— regardless of whether it also would show an improper purpose [contra Adv. D.I. 1103 at 25]. Indeed, it is difficult to imagine more relevant evidence of a risk of competitive injury than a competitor seeking disclosure of information for its own benefit.[4]

---

[4] Relatedly, Mesabi misunderstands Cliffs' argument concerning the protective order. Cliffs is not arguing that the protective order justifies sealing these documents. [Contra Adv. D.I. 1103 at 27–28.] Rather, as made clear in its opening brief, Cliffs merely pointed out that the protective order means that Mesabi, the business entity (that is, the would-be competitor to Cliffs), has not yet seen these documents based on the risk of competitive injury if disclosed, as the protective order allows, and Cliffs would like to keep it that way. [See Adv. D.I. 1102 at 12 ("By seeking to unseal documents and testimony with these higher [confidentiality] designations, Mesabi itself would get to see them for the first time.").]

Remarkably, Mesabi seems to suggest in its opposition (for the first time) that it does not view itself as a competitor to Cliffs to try to make Cliffs' evidence of objective injury seem subjective by comparison.  [See Adv. D.I. 1103 at 27 ("Cliffs identifies no ways in which Mesabi, which is building a facility to produce iron ore products, would compete with Cliffs, which sells steel").]  Certain aspects of Cliffs' business model have changed significantly since 2016, as Cliffs has readily admitted—the iron ore that it mines and pelletizes now is consumed largely in its vertically integrated steelmaking operations rather than sold to other steelmakers.  But it is categorically false that "Cliffs' products, customers, and competitors have all changed dramatically" such that the information Cliffs seeks to protect here is no longer commercially sensitive.  [Contra Adv. D.I. 1103 at 1.]  Although Cliffs now supplies itself with many of the iron ore pellets it produces, it still also produces and sells those pellets, which is precisely what Mesabi says that Mesabi wishes to do.  Mesabi seeks to make a distinction that simply does not exist.

In sum, Section 107 imposes a "less onerous" burden on parties who seek to seal information than does the common law.  In re ESML, 135 F.4th at 97.  That is the very reason the Third Circuit vacated and remanded.  This difference is not, as Mesabi would have it, merely academic—Mesabi tried to argue for affirmance on alternative grounds on appeal, but it lost.  And under the Third Circuit's decision, Cliffs need not use "current evidence" of a current and "clearly defined" harm, as the common law would require; and this Court need not—indeed, may not— consider the public interest in any of the identified information.

## II.    THE SECTION 107 STANDARD IS CONFIDENTIAL COMMERCIAL INFORMATION, WHICH IS MET WITH COMPETITIVE HARM.

Once that starting point is cleared up, the question becomes fleshing out the standard of Section 107.  That statute requires this Court to maintain the seal of confidential commercial information, which includes information "where there is a risk 'disclosure would cause competitive

injury.'" [Adv. D.I. 1102 at 6 (quoting In re ESML, 135 F.4th at 97.).] Mesabi pays lip service to this standard, but its gloss renders the phrase all but meaningless.

Mesabi accuses Cliffs of "brazenly mischaracterize[ing] the Third Circuit's opinion" by "arguing that 'any confidential commercial information must be protected.'" [Adv. D.I. 1103 at 9 (quoting Adv. D.I. 1102 at 6).] But this is precisely what the Third Circuit opinion (not to mention the text of the statute) says: "§ 107(b) uses the mandatory term 'shall' to direct the bankruptcy court's protection of the categories of information that follow, meaning the bankruptcy court lacks discretion to decline to protect covered information." In re ESML, 135 F.4th at 96 (emphasis added). The only question is: What is "covered information"? As the statute makes clear, it includes "confidential … commercial information." 11 U.S.C. § 107(b)(1). Competitive harm plays a role in the analysis; as the Third Circuit pointed out, "[i]n order to give effect to … § 107(b)'s limitation[s] … the disclosure of a judicial record must still "cause 'an unfair advantage to competitors.'" In re ESML, 135 F.4th at 97 (quoting In re Orion Pictures Corp., 21 F.3d 24, 27 (2d Cir. 1994)); see also id. ("[B]y their plain terms, the categories of information protected by § 107(b) entail that their disclosure would cause competitive injury."). But Mesabi's accusation that Cliffs is attempting to misdirect the Court on this point falls flat: Cliffs stated up front that, to seal under Section 107, "[t]here must be a 'substantial risk that disclosure would detrimentally affect the producing party's competitive standing,' and such risk 'must be actual and objective.'" [Adv. D.I. 1102 at 7 (quoting In re ESML, 135 F.4th at 97).]

The question for this Court is whether disclosure of the identified information could constitute a risk of "unfair advantage to competitors." On this point, it is Mesabi, not Cliffs, that mischaracterizes the Third Circuit's holding. Section 107 does not require that the information for which a party seeks information is "critical" to the party's commercial operations. [Contra Adv.

D.I. 1103 at 5.]  Avandia and the common law, not Section 107, requires showing of a "clearly defined and serious injury."  Avandia, 924 F.3d at 679.  The Third Circuit explicitly rejected the argument that Section 107 requires such a high standard in favor of a standard "not as onerous as the common law requirement," under which information must be protected if it runs the risk that it will "cause 'an unfair advantage to competitors.'"  In re ESML, 135 F.4th at 97 (quoting Orion, 21 F.3d at 27).

It is nearly self-evident that commercial information that is not "critical" still can run a substantial risk of some competitive harm to an entity if disclosed, and neither Section 107 nor the Third Circuit's opinion set a higher bar to seal such information.  [See generally Adv. D.I. 1102 at 7-8 (collecting cases which apply Section 107 to various types of confidential commercial information, including to elements of the "operation of a business").]  And while Mesabi identifies certain categories that courts have found are protected by Section 107—"pricing formulae, short and long term marketing strategies, and the terms of agreements with suppliers" [Adv. D.I. 1103 at 12 (quotation omitted)]—this district's case law (and the very case Mesabi cites) discusses such lists as simply examples of information that could, on a case-by-case analysis, qualify as confidential commercial information.  See In re Alterra Healthcare Corp., 353 B.R. 66, 76 (Bankr. D. Del. 2006) ("confidential commercial 'information might include, without limitation, pricing formulae, short and long term marketing strategies and the terms of agreements with suppliers.'" (quoting In re Barney's, Inc., 201 B.R. 703, 709 (Bankr. S.D.N.Y. 1996)) (emphasis added)); see also In re Anthracite Cap., Inc., 492 B.R. 162, 178 (Bankr. S.D.N.Y. 2013) (listing "examples of commercial information that should be sealed").

The "substantial risk" of competitive injury that Section 107 requires, of course, does not mean that there must be a certainty that such injury will occur.  [Contra Adv. D.I. 1103 at 12–13.]

"The term 'risk' is defined as '[t]he uncertainty of a result, happening, or loss; the chance of injury, damage or loss; esp., the existence and extent of the possibility of harm.'" Aguilar v. Att'y Gen. of U.S., 663 F.3d 692, 702 n.19 (3d Cir. 2011) (quoting Black's Law Dictionary 1353 (8th ed. 2004)).  For the information in every document and deposition excerpt at issue, Cliffs provided the sworn testimony of a corporate witness describing with particularity the risk of competitive injury Cliffs seeks to prevent.  [See generally Adv. D.I. 1102 Ex. A.]  The document-specific paragraphs and evidence set forth in the declaration are a far cry from the "conclusory statements" in cases Mesabi cites.  See, e.g., In re Purdue Pharma L.P., 632 B.R. 34, 43 (Bankr. S.D.N.Y. 2021) ("Mr. Vellucci could not state whether there in fact was an organized boycott, however, or even if there was any negative financial impact from the articles"); In re Mata, 2019 Bankr. LEXIS 4060, at *7 (Bankr. C.D. Cal. Dec. 20, 2019) (denying sealing under Section 107 where defendants apparently offered no declaration, providing only "repeated assertions that '[p]ublic disclosure of this private commercial information could negatively impact Defendants' competitive standing in the student loan industry'"); In re Motors Liquidation Co., 561 B.R. 36, 40 (Bankr. S.D.N.Y. 2016) (denying request to seal under Section 107 where "Movants … failed to file a declaration supporting their confidentiality arguments" and neither "identified any market competitors who would be able to unfairly benefit from the disclosure of this information, nor … explained who those competitors could be").

Simply put: Mesabi is, by these arguments, once again seeking to collapse the differences between the common law and Section 107.  Congress designed Section 107 to protect parties in bankruptcy court from the risk of competitive harm associated with the unsealing of documents and information on a bankruptcy court docket.  The Third Circuit has directly ruled that Section

107 governs here.  The only question that remains, therefore, is whether Cliffs has met its burden

for the identified information.

## III.    CLIFFS MEETS ITS BURDEN FOR THE IDENTIFIED INFORMATION.

Mesabi's arguments as to each exhibit and deposition excerpt are unavailing.  Because of

Mesabi's fundamental misunderstanding as to the differences between the common law and

Section 107, and because Mesabi misunderstands the nature of the competitive injury, many of its

particular arguments fall flat as a matter of law.  And on others, Mesabi is wrong as a matter of

both law and fact.

The parties have repeatedly narrowed the universe of documents at issue.  At this point,

Mesabi and Cliffs disagree about the propriety of sealing only eleven documents and limited

deposition excerpts, and for many of those the parties disagree only about some smaller portion

thereof.  As in its opening brief, Cliffs will refer to these documents first by the exhibit numbers

associated with the documents at the time of their initial filing, and, in parentheses, by their exhibit

numbers set forth in the declaration attached to Cliffs' opening brief [Adv. D.I. 1102, Ex. C].

**Ex. 23 to First Suggs Declaration (Ex. 2)**:  Cliffs maintains that disclosure of the

information Mesabi wants to publicize on slides 8 and 9 would place Cliffs at a competitive

disadvantage.  Mesabi's main argument against sealing the limited information it seeks to publicize

in this document stands on only its inflammatory and unproven assertions concerning the purpose

for which Cliffs purchased certain land—which only repeat Mesabi's allegations, are not evidence,

and in any event, Cliffs denies.  Mesabi's remaining argument centers on the notion that the

information is "obsolete" or otherwise "now irrelevant" due to the mere passage of time.  [Adv.

D.I. 1103 at 14.]  Not only is this not the correct legal standard, as discussed supra Section I, but

it is also factually inaccurate: Cliffs and ████████████████████████████████ for which

the redacted details in this document are relevant.  [See Adv. D.I. 1102 Ex. A ¶ 8.]  Mesabi's

speculative assertion that this information is no longer relevant is belied by Cliffs' proffered evidence to the contrary.

Mesabi's comments on Exhibit 23 also demonstrate just how far divorced Mesabi's arguments are from the Third Circuit's opinion. After previously agreeing that the information on Slide 8 warranted sealing under the <u>higher bar</u> of the common law standard [see Adv. D.I. 811 at 10, 14; Adv. D.I. 1102 Ex. C ¶ 6], Mesabi now argues that Cliffs cannot satisfy the "less onerous" standard which the Third Circuit has now expressly held applies to these documents. In Mesabi's eyes, the whole process that led the parties, and this Court, to this moment has changed precisely nothing—other than Mesabi apparently now says the information in this document has lost competitive significance Mesabi accepted before.[5]

**Exs. 25 and 26 to First Suggs Declaration (Exs. 3 and 4)**: Mesabi's argument against sealing the information it seeks to publicize in these documents stands on its subjective assessments that the information is outdated and will not impact competitors' ability to compete with Cliffs. [Adv. D.I. 1103 at 16–17.] Mesabi seems to suggest that, in order to take advantage of the statutory protections offered to parties by Section 107, a party seeking to protect information in a document (or a portion thereof) must write a gameplan for a competitor to use the commercially sensitive material should it be disclosed. This is not the requirement. See, e.g., In re FTX Trading Ltd., 2025 Bankr. LEXIS 1245, at *6 (Bankr. D. Del. May 21, 2025) (record citation omitted) (granting protection under In re ESML and Section 107 after, in part, crediting a declaration which "states that the Exhibits include 'confidential business information that, if publicly disclosed, would harm [the Defendants] in the competitive marketplace'").

---

[5] Of course, Mesabi suggests that it never conceded that the documents actually satisfied the Avandia standard, just as it does not now concede that any of Cliffs' proposals meet the Section 107 standard. Putting to one side this litigation tactic, it remains the case that, when the standard was higher, Mesabi was more permissive; now that it has lost on appeal and the standard for sealing is lower, Mesabi is less permissive.

As for Mesabi's argument that public relations discussions are not the type of information meant to be sealed, this is simply not the law.  Section 107 does not limit "confidential … commercial information" to the categories of issues or fields in which an entity competes with competitors—instead, <u>any</u> information which would give competitors an "unfair advantage," including, as Mesabi elsewhere admits, "short and long term marketing strategies" [Adv. D.I. 1103 at 12 (quoting <u>In re Anthracite Cap.</u>, 492 B.R. at 178)], is protected by the statute.  Disclosure of these internal marketing, public relations, and ██████████████ runs a substantial risk of competitive injury.  [<u>See</u> Adv. D.I. 1102 Ex. A ¶¶ 9, 10.]  The documents should not be disclosed.

**Ex. 35 to First Suggs Declaration (Ex. 5)**: With this exhibit, as with several others, Mesabi seeks to parse out and decontextualize particular statements and soundbites to such a degree as to make them appear to be commercially irrelevant.  Mesabi seeks to present the public with a version of the document in which only its favorite line is unredacted—a clear attempt to create a competitive disadvantage for Cliffs by presenting a statement out of context.  Mesabi's preferred version of this exhibit is like an edited interview: in taking such statements out of context, Mesabi would necessarily be misrepresenting the information.  (And it definitely would be here, as its argument depends on its subjective interpretation of the information to disagree with the evidence Cliffs presented.  [<u>See</u> Adv. D.I. 1103 at 17–18.])

Should Mesabi succeed in having this particular redaction removed, Cliffs will face an unenviable choice: either permit Mesabi to take public a decontextualized, single bullet point and make misrepresentations about its meaning or be forced to sacrifice the statutory protections to which Cliffs is entitled—and for which it has fought for years—in order to prevent such a decontextualization.  This Court also faces some risk from such fine parsing: should every aggrieved party be able to force this Court to go line-by-line or word-by-word to determine which

Case 17-51210-CTG    Doc 1112    Filed 06/30/25    Page 17 of 20

parts of a commercially sensitive document can be excerpted without risking competitive harm? Surely this is not what Congress, or the Third Circuit, intended.

**Exs. 37 and 38 to First Suggs Declaration (Exs. 6 and 7)**:  Mesabi's argument against sealing the information it seeks to publicize in these documents again stands on its subjective assessments that the information is outdated and will not impact competitors' ability to compete with Cliffs.  [Adv. D.I. 1103 at 18–20.]  Contrary to Mesabi's argument, Cliffs has never "disavowed" that it is ███████████████████████  [Adv. D.I. 1103 at 18.]  Indeed, Cliffs still produces substantial tonnage of iron ore, and ore pricing is still a crucial component of its operations.  Cliffs still sells iron ore externally (albeit less than it once did), and strategies for downturns in the market are still very much applicable to Cliffs' current business operations (to the extent that mattered under Section 107).[6]  Mesabi again repeatedly argues that none of this information is "current enough" or "applicable today" and that it is "outdated."  [Adv. D.I. 1103 at 18–20.]  As already discussed, this is not the standard.  Mesabi's other arguments largely center on whether the statements in Cliffs' witness' declaration are "conclusory," but it can test the sufficiency of the evidence presented at an evidentiary hearing, which is the process this Court directed.  Cliffs hardly thinks it is "conclusory" to suggest, for example, that there is a risk of competitive injury from disclosure to competitors of "Cliffs' cost mitigation strategies and expenditure plans and the terms and information that Cliffs' investors consider for investment decisions regarding Cliffs' operations."  [Adv. D.I. 1102 Ex. B ¶ 12.]

**Ex. 42 to First Suggs Declaration (Ex. 9)**: Mesabi's entire argument against sealing the entirety of this document is that the information on two of the three slides is "outdated," "obsolete,"

---

[6] See, e.g., Cleveland-Cliffs Inc. Form 10-K (2025), at 8, available at https://www.clevelandcliffs.com/investors/sec-filings/annual-reports/content/0000764065-25-000058/0000764065-25-000058.pdf (listing sales to steel producers as 13% of Cliffs' sales in 2025).

and "ha[s] no application today." [Adv. D.I. 1103 at 20–21.] Again, this is not the standard. Ironically, although Mesabi questions whether Cliffs should be able to protect certain of its analysis of its would-be competitor ESML's (now Mesabi's) business strategies as "obsolete" and "changed dramatically," Mesabi does not oppose sealing Cliffs' ten-year-old analysis of its would-be competitor ESML's (now Mesabi's) ███████████████████████████ ████████████████████████████████ contained in slide two of this document. [Adv. D.I. 1103 at 21.] Cliffs stands by its arguments and evidence presented in support of sealing the information in this document in its opening brief and associated declaration. [Adv. D.I. 1102 at 16–17.]

**Ex. 45 to First Suggs Declaration (Ex. 10)**: Like the revised redactions Mesabi suggests to Exhibit 35, Mesabi's proposal to reveal one paragraph is plainly designed to create a decontextualized soundbite for its public use that it asserts supports its unproven allegation that "the employee played [a role] with respect to Cliffs' anticompetitive acquisition of property at Mesabi's project site." [Adv. D.I. 1103 at 22.] And like Exhibit 23, Mesabi had previously agreed that this whole document could remain under seal. Cliffs again stands by its arguments and evidence presented in support of sealing the information in this document in its opening brief and associated declaration, and it is prepared to discuss the evidence in more detail at the evidentiary hearing.

**Ex. 54 to First Suggs Declaration (Ex. 12)**: In the most blatant attempt to create an edited soundbite out of a document, Mesabi proposes (again for the first time) un-redacting just two sentences from this document. [Adv. D.I. 1103 at 23.] Removing these sentences—which themselves form part of the strategy discussion that Cliffs seeks to protect—would not only run the risks Cliffs already identified regarding decontextualized soundbites but would undermine the

protection Section 107 offers to strategic conversations regarding the potential purchase or sale of assets.  See In re Farmland Indus., Inc., 290 B.R. 364, 369 (Bankr. W.D. Mo. 2003).

**Exs. 62 and 63 to Second Suggs Declaration (Exs. 14 and 15)**:  Mesabi's argument against sealing the information it seeks to publicize in these documents stands on its subjective assessments that the information will not impact competitors' ability to compete with Cliffs.  [Adv. D.I. 1103 at 23–24.]   Mesabi is plainly wrong about the competitive significance of these documents.  ███████████████████████████████████ is commercially sensitive information even under Mesabi's mistaken "current evidence of current harm" standard.   Cliffs is ██████████████████████████, and its internal deliberations concerning the same (not merely its technical knowledge about the site) are therefore commercially sensitive.  Landowners, Cliffs' partners, customers, and competitors, and Mesabi itself could all gain a competitive advantage from disclosure of this information, as Cliffs has already made clear.  [Adv. D.I. 1102 Ex. B ¶¶ 20–21.]

**Deposition Testimony (Ex. 18)**: Mesabi argues that Cliffs failed to support its arguments to protect the information in the identified lines of deposition testimony [Adv. D.I. 1103 at 24], but as Cliffs outlined in its opening brief, the arguments and evidence supporting protection are the same as the arguments and evidence supporting protection for Exhibits 23 and 35, as discussed supra.  [Adv. D.I. 1102 at 20.]  Moreover, as Cliffs explained, Mesabi had previously agreed that these statements could be sealed when it thought that Avandia was the standard.  Its apparent about-face now is yet one more sign that it does not understand the Third Circuit's decision.

## CONCLUSION

For these reasons, and as set forth in Cliffs' opening brief, this Court should keep the relevant information sealed under Section 107 of the Bankruptcy Code.

Dated: June 20, 2025

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Michael S. Neiburg*
Michael S. Neiburg (No. 5275)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: 302.571.6600
Facsimile: 302.571.1253
Email: mneiburg@ycst.com

-and-

JONES DAY
Robert S. Faxon (admitted pro hac vice)
Kristin S.M. Morrison (admitted pro hac vice)
Brian K. Grube (admitted pro hac vice)
James R. Saywell (admitted pro hac vice)
North Point
901 Lakeside Avenue
Cleveland, OH 44114.1190
Telephone: 216.586.3939
Facsimile: 216.579.0212
E-mail: rfaxon@jonesday.com
        kmorrison@jonesday.com
        bkgrube@jonesday.com
        jsaywell@jonesday.com

*Attorney for Cleveland-Cliffs Inc. and*
*Cleveland-Cliffs Minnesota Land Development LLC*