## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ESSAR STEEL MINNESOTA LLC and ESML HOLDINGS INC., *et al.*, | Case No. 16-11626 (CTG) |
| | (Jointly Administered) |
| Reorganized Debtors. | |
| MESABI METALLICS COMPANY LLC, | Adv. Proc. No. 17-51210 (CTG) |
| Plaintiff, | **Related Docket No. 774** |
| v. | |
| CLEVELAND-CLIFFS, INC., *et al.*, | |
| Defendants. | |

## <u>MEMORANDUM OPINION</u>

Mesabi, the reorganized debtor in this bankruptcy case, has been working for more than a decade to develop an iron ore mine in northern Minnesota.[1] It contends that a leading iron ore manufacturer, Cleveland-Cliffs, has been interfering with its efforts, in violation of federal antitrust laws, in order to stymie competition in the market.[2] The parties have been engaged in a protracted litigation battle over many years, in this court, in Minnesota state regulatory proceedings, and in the Minnesota state courts. The District Court for the District of Delaware has now withdrawn the reference over the antitrust case that had been proceeding in this Court and has

---

[1] Plaintiff Mesabi Metallics Company, LLC is referred to as "Mesabi."

[2] Defendant Cleveland-Cliffs, Inc. is referred to either as "Cleveland-Cliffs" or as "Cliffs."

entered an order setting that matter for a ten-day jury trial beginning on May 5, 2027.[3]

Back when the antitrust case was before this Court, Mesabi moved for a preliminary injunction to prevent Cliffs from leasing certain parcels of land (that Mesabi argued were important to its own project) from the state of Minnesota.[4]  The Court denied that motion.[5]  Later, Mesabi moved to unseal certain of the documents it had attached to its preliminary injunction motion, citing the public's right to access judicial records.[6]  The documents it sought to unseal were ones that it obtained in discovery under a protective order that permitted them to be used only for purposes of the litigation – not in other courts, not in state regulatory proceedings, and not as part of a public relations campaign in the parties' ongoing skirmishes over the Mesabi project.

This Court concluded that, despite its concern that permitting Mesabi to use confidential material it obtained in discovery for these ulterior purposes seemed inequitable, Third Circuit law on the breadth of the public right of access required

---

[3] The case in the United States District Court for the District of Delaware is now proceeding in that under the docket number D. Del. No. 24-01117 (cited as the "District Court Docket").  The scheduling order in that case is District Court Docket No. 35.

[4] D.I. 715.

[5] D.I. 741.

[6] D.I. 774.  That "motion" took the form of an informal letter, as this Court's chambers procedures permit in connection with discovery disputes and scheduling matters.  With the benefit of hindsight, it was likely a mistake to permit Mesabi to raise a matter as complex and consequential as this to proceed in that informal manner.  But life is lived forwards not backwards.  So the Court is left to file that away under the category of "lessons learned."

that the documents be unsealed.[7] Cliffs argued (among other things) that even if that result would be correct outside of bankruptcy, for a case that is in bankruptcy, § 107 of the Bankruptcy Code provides broader protection for commercially sensitive information than is otherwise permitted under the common law right of access to judicial records.

This Court rejected that argument, following precedent from the District Court for the District of Delaware that this Court read to suggest that § 107 merely codified the common law right of access, but did not impose a higher or different standard.[8] The Court certified its decision to the Third Circuit. The Court's decision to certify a direct appeal was primarily driven by its concern that the "public right of access" was being invoked inequitably by a party who was not a member of the "public" but instead a party to the case who already had the documents in question and was invoking the "public's" right in order to free itself of properly imposed limitations on the use of confidential discovery materials. While the Court's decision did consider and reject Cliffs' argument under § 107 (such that the issue was properly preserved for appeal), that issue was treated by the parties and this Court as a secondary matter.

In the appeal, Cliffs primarily took issue with this Court's reading of § 107, contending that a reading of the statute under which it merely codifies the common

---

[7] *In re Essar Steel Minnesota, LLC*, No. 17-51210, 2023 WL 6202448, at *5 (Bankr. D. Del. Sept. 22, 2023) (citing *Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662 (3d Cir. 2019)).

[8] *Id.*, at *10 (citing *In re Motions Seeking Access to 2019 Statements*, 585 B.R. 733, 757 (D. Del. 2018)).

law right of access was inconsistent with both the text of the statute and decisions of other courts of appeals. The Third Circuit agreed with that position and reversed this Court's decision providing that the documents be unsealed.[9] The court remanded the dispute back to this Court for it to apply the standard it articulated to the documents at issue.

This Court held an evidentiary hearing on the disputed documents on August 11, 2025. For the reasons set forth below, the Court concludes that with respect to most of the documents that Cliffs seeks to maintain under seal, it has met its burden, under the Third Circuit's standard, of showing that the disclosure of those documents would impose on it a substantial risk of competitive injury. There are certain documents (or portions thereof), however, as to which Cliffs has not met its burden and that should be unsealed. Specifically, the Court finds that 10 of the 11 documents and 3 of the 5 deposition excerpts contain § 107(b)(1) commercial confidential information and denies, in relevant part, Mesabi's motion to unseal those documents and deposition excerpts. The rest should be unsealed.

In light, however, of the irrevocable nature of the unsealing of a document as to which a party claims confidentiality, the Court will stay the effectiveness of that order for 30 days (as it did with its prior orders) in order to provide Cliffs the opportunity to ask the district court to stay the order pending further appeal.

---

[9] *In re ESML Holdings Inc.*, 135 F.4th 80 (3d Cir. 2025). *See also id.* at 93 (describing Cliffs' argument under § 107 as its "primary argument" on appeal).

## Factual and Procedural Background

The basic background to this dispute is set out in this Court's prior opinion granting Mesabi's motion to unseal.[10]  Following the Third Circuit's opinion reversing this Court's decision, the parties submitted briefing regarding the application of § 107 (under the Third Circuit's standard) to the documents that Mesabi now seeks to unseal.  Of the 35 documents that were originally at issue, the parties now dispute the unsealing of only 11 documents and 5 deposition excerpts.[11]  The Court held an evidentiary hearing on August 11, 2025.  Gabriel Johnson, the director of land management at Cliffs, testified and was subject to cross-examination.  Johnson's declaration and Cleveland-Cliffs' 2024 10-K statement were admitted into evidence.[12]

## Jurisdiction

The district court has "related to" jurisdiction, provided in 28 U.S. § 1334(b), over this adversary proceeding.  That jurisdiction was referred to this Court under 28 U.S.C. § 157(a) and the district court's February 29, 2012 standing order of reference.  This adversary proceeding falls within this Court's "related to" jurisdiction and is a non-core matter under 28 U.S.C. § 157(c)(1).  While the district court has

---

[10] 2023 WL 6202448, at *2-4.

[11] D.I. 1103 at 6; D.I. 1108 at 10.  During the course of this litigation the parties' positions as to which documents they are contesting have shifted.  Certain of the documents that Mesabi now seeks to unseal are ones that it previously chose not to challenge, even under the more demanding *Avandia* standard for maintaining confidentiality.  Cliffs argues that Mesabi's earlier "concessions" that these documents are entitled to protection should estop it from challenging those documents now.  The Court disagrees.  To the extent Mesabi agreed not to press for the disclosure of certain documents as an effort to narrow the matters in dispute and thus minimize the burden on the Court's docket, that "concession" should not preclude it from prioritizing the disputed documents differently in light of the guidance provided by the Third Circuit on appeal.

[12] Cliffs' Exs. 19 and 20.

generally withdrawn the reference over this adversary proceeding, in view of the fact that the Third Circuit expressly remanded the case to this Court for it to apply the standard it announced, the Court concludes that the Third Circuit's order effectively reinstated the reference solely for the purpose of deciding the issues presented by that court's remand.[13]

## Analysis

The Third Circuit, in its April 16, 2025 opinion, clarified that § 107(b) governs the sealing of judicial records in bankruptcy cases.[14] This Court's task on remand is to determine whether Cliffs had met the "heavy, but distinct" § 107(b) burden to keep the docketed records from the public eye.[15] Under the Third Circuit's decision, in order to maintain the documents under seal, it is Cliffs' burden to demonstrate that the disclosure of the document would impose on it a substantial risk of competitive injury.[16]

There is certainly a sense in which the bankruptcy process requires transparency. For this reason, it is commonly said that the bankruptcy process "operates in a fishbowl."[17] At the same time, however, § 107 of the Bankruptcy Code and the Third Circuit's important decision in this case reflect a recognition that there

---

[13] *See* District Court Docket No. 10; *ESML Holdings*, 135 F.4th at 97 (because "the Bankruptcy Court did not have the opportunity to consider whether disclosure of the Documents would work even the less onerous competitive injury that § 107 demands to justify sealing …. we will remand and permit it to apply the correct standard in the first instance").

[14] *Id.* at 88.

[15] *Id.*

[16] *Id.* at 97.

[17] *In re Alterra Healthcare Corp.*, 353 B.R. 66, 73 (Bankr. D. Del. 2006).

6

are circumstances in which total transparency may be inconsistent with the important bankruptcy objective of preserving value, such as when revealing otherwise confidential information will impose economic injury on a party interest. As the Third Circuit explained, in the bankruptcy context, § 107 "speaks directly to the question addressed by the common law [of] whether and under what circumstances judicial records may be sealed."[18]

The Third Circuit concluded that § 107 modifies, rather than merely codifies, the common law presumption of public access in bankruptcy proceedings. Under the common law, the public enjoys a presumptive right to access judicial records unless the party seeking to seal certain documents meets the heavy burden of demonstrating "that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure."[19] Courts apply the common law standard on a document by document basis, balancing public and private interests to determine whether the "[proponent's] interest in secrecy outweighs the presumption [of public access]."[20]

The Third Circuit explained that § 107(a) resembles the common law in that it sets forth a general presumption of public access to judicial records in a bankruptcy proceeding. "Except as provided in subsections (b) and (c) … a paper filed in a case

---

[18] *ESML Holdings,* 135 F.4th at 96 (internal quotations, brackets, and citations omitted).

[19] *Avandia*, 924 F.3d at 672.

[20] *Id.* (*quoting Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986)).

under this title and the dockets of a bankruptcy court are public records open to examination by any entity at reasonable times without charge."[21]

Section 107(b), however, provides for exceptions whose wording is broader than the exceptions provided for under common law.  The exception relevant here is set out in § 107(b)(1), which provides that on request of a party in interest, "the bankruptcy court shall … protect an entity with respect to a trade secret or confidential research, development, or commercial information."[22]

The Third Circuit emphasized two ways in which this language diverged from the common law standard.  *First,* the reference to sealing "a trade secret or confidential research, development, or commercial information" does not include the common law's requirement that the party seeking to protect information make a showing that disclosure "will work a clearly defined and serious injury."[23]  Instead, a substantial risk of competitive injury will suffice.  *Second*, the statute's use of the mandatory term "shall" operates to eliminate the balancing of interests that would otherwise apply under the common law doctrine.  Under that doctrine, a court might find that the public interest in obtaining access outweighs a party's interest in protecting confidential commercial information.[24]

---

[21] 11 U.S.C. § 107(a).  *See also ESML Holdings*, 135 F.4th at 95 (explaining how § 107(a) "sets out a general presumption of access for 'papers filed in a case under the Bankruptcy Code and the dockets of a bankruptcy court'") (internal quotations and brackets omitted).

[22] 11 U.S.C. § 107(b)(1).

[23] *In re ESML Holdings*, 135 F.4th at 96 (internal citations and quotations omitted).

[24] *Id.*

Section 107(b)(1) thus contemplates broad protection in bankruptcy proceedings for confidential commercial information, protecting the interests of both debtors who are engaged in good faith efforts to reorganize and would risk greater financial distress if sensitive commercial information were to be made publicly available, as well as those of other parties in interest who may become involved in a bankruptcy proceeding.[25] Confidential commercial information may include, among other things, "pricing formulae, short and long term marketing strategies[,]…terms of agreements with suppliers," information regarding the sale or retention of assets, internal strategic deliberations, and internal drafts that contain commercially sensitive information.[26]

The § 107(b) exception, however, still requires a substantial showing. Proponents of non-disclosure must still prove that disclosure would cause substantial risk of competitive injury.[27] This risk must be "actual and objective" rather than conclusory.[28] And the Third Circuit made clear that it was "emphatically" rejecting

---

[25] *In re Orion Pictures Corp.*, 21 F.3d 24, 27-28 (2d Cir. 1994).

[26] *In re Alterra Healthcare Corp.*, 353 B.R. 66, 76 (Bankr. D. Del. 2006) (*quoting In re Barney's Inc.*, 201 B.R. 703, 709 (Bankr. S.D.N.Y. 1996)); *see In re FTX Trading*, No. 22-11068/24-50216 (KBO), 2025 Bankr. LEXIS 1245, at *6-7 (Bankr. D. Del. May 21, 2025); *In re Farmland Industries, Inc.*, 290 B.R. 364, 368-369 (Bankr. W.D. Miss. 2003); *In re Orion Pictures Corp.*, 21 F.3d at 27; *New York v. Actavis, PLC*, No. 14-cv-7473, 2014 WL 5353774, at *3 (S.D.N.Y. 2014); *Fox News Network v. U.S. Dep't of Treas.*, 739 F.Supp.2d 515, 571 (S.D.N.Y. 2010); *Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 415-416 (M.D.N.C. 1991).

[27] *In re ESML Holdings Inc.*, 135 F.4th at 97.

[28] *Id.*

Cliffs' argument that § 107 would permit a party to protect information "whose disclosure would work no harm at all."[29]

The Third Circuit largely adopted this "competitive injury" standard from the Second Circuit's decision in *Orion*.[30]  During the hearing on remand before this Court, Cliff's counsel correctly pointed out that some courts have read *Orion*, incorrectly, as imposing on proponents of non-disclosure the same burden of proof that would apply under the common law, suggesting that protection of confidential commercial information is appropriate only in "compelling" or "extraordinary" circumstances.[31] That is a misreading of *Orion*.  In the quoted language, the Second Circuit was contrasting the common law standard with the one under § 107.  The court explained that where the common law right of access is applicable, judges must "carefully and skeptically review sealing requests to insure that there really is an extraordinary circumstance or compelling need" that justifies protection.  The Second Circuit went on to explain, however, that under § 107, "congress has established a special rule for trade secrets and confidential research, development, and commercial information" that imposes a somewhat less stringent standard.[32]

The Court will adhere to the standard as articulated by the Third Circuit.  To be entitled to protection, "the disclosure of a judicial record must still cause an unfair

---

[29] *Id.*

[30] *Orion*, 21 F.3d at 24.

[31] *See In re Anthracite Capital, Inc.*, 492 B.R. 162, 174 (Bankr. S.D.N.Y. 2013).

[32] *Orion*, 21 F.3d at 27.  *See In re Purdue Pharma L.P.*, 632 B.R. 34, 39-40 (Bankr. S.D.N.Y. 2021) (explaining the same).

advantage to competitors."[33]  In "this context, 'confidential' means information meant to be kept secret.  Thus, by their plain terms, the categories of information protected by § 107(b) entail that their disclosure would cause competitive injury."[34]

In applying this standard, the Court is of course informed by the factual context in which this dispute arises.  In this regard, four overarching points inform this Court's judgment.

*First*, these parties operate in a market in which they compete for a finite amount of land and long-term contracts.  As the conduct of this litigation has made clear – if anything, too clear – there is no love lost between these parties.  Cliffs and Mesabi are litigating against one another, quite energetically, in a variety of different courts and regulatory proceedings.

To facilitate the litigation in *this* Court, the Court entered a standard form of protective order that limited the use of confidential information obtained in discovery to use in *this* proceeding.  And while that language may be standard, it was especially important in the context of these parties' disputes, where there was a very real risk that otherwise confidential information that is required to be produced because it is relevant to the parties' dispute before this Court might be misused in other proceedings.

And Mesabi has made it perfectly clear (whether intentionally or otherwise) that this is exactly what it wants to do.  This Court has separately denied Cliffs'

---

[33] *ESML Holdings*, 135 F.4th at 97 (internal citations and quotations omitted).

[34] *Id.* (internal citation and quotations omitted).

motion for partial summary judgment with respect to Mesabi's claims that Cliffs has engaged in anti-competitive conduct. Mostly, Mesabi seeks to use evidence of alleged anticompetitive conduct (that Cliffs was required to produce because of its relevance to that lawsuit) to its advantage (and Cliffs' disadvantage) in other proceedings. That, however, is itself a form of competitive injury to Cliffs. At the end of the day, Mesabi's motion to unseal remains an effort – at times thinly disguised, and at other times, stripped of any disguise – to free itself of the constraints of the Rule 26 protective order this Court entered when it required Cliffs to produce the information in the first place.

None of that means that Mesabi is not entitled to the public disclosure of information as to which Cliffs cannot meet its burden under § 107(b)(1). It is. The point of this context, however, is that it properly informs what is meant by "commercial information" within the meaning of § 107(b)(1). Broadly speaking, this Court concludes that the use of otherwise confidential information to advance Mesabi's cause, to the detriment of Cliffs, in the wider range of business, legal, and commercial disputes between the parties is the kind of "unfair advantage" that § 107(b)(1) is intended to guard against.

*Second*, much of Mesabi's argument is that the parties are no longer business competitors because Cliffs has more recently acquired various steel manufacturing companies, such that its business has been transformed from being an iron ore pellet supplier into a flat-rolled steel producer.[35]    Cliffs' steelmaking business is now

---

[35] Aug. 11, 2025 Hr'g Tr. at 52-53.

vertically integrated.  While it once used to sell its iron ore pellets to others who used them in steelmaking, it now uses most of the pellets it produces in its own steelmaking business.[36]

Even so, however, Cliffs continues to sell excess iron ore pellets to third-party buyers.[37]  In 2024, Cliffs sold millions of tons of iron ore products to third parties.[38] And even if one were to hold that aside, a company's input costs are a key part of its cost structure.  As such, to the extent that revealing the ways in which Cliffs manages the costs of the production of iron ore pellets might allow others to produce iron ore less expensively, doing so might well deprive Cliffs of a competitive advantage that it now enjoys.[39]  The Court believes that this kind of competitive injury also falls within the ambit of § 107(b)(1).  The Court therefore rejects Mesabi's argument that in light of the change in Cliffs' business, it no longer faces a risk of competitive injury by the disclosure of information relating to the production of iron ore pellets.

*Third*, Mesabi proposes to unseal particular statements that are contained in various documents on the ground that the statement, read in isolation, is a matter of public record and therefore cannot be confidential.  But that is incorrect.  There are times when the inclusion of otherwise publicly known information in a *particular* document may reveal confidential information.  To take an extreme example, it may well be the case that a map of a city showing particular buildings is entirely public

---

[36] *Id*. at 58.; Cliffs' Ex. 20 at 7.

[37] Cliffs' Ex. 20 at 8-9.

[38] *Id*. at 9.

[39] Aug. 11, 2025 Hr'g Tr. at 123.

and can be found in a tourist guide.  That same map, however, when contained in a military war plan, can reveal highly sensitive and confidential information.  For that reason, the Court concludes that the inclusion of certain otherwise public information in various internal strategic presentations may itself be confidential commercial information within the meaning of § 107(b)(1).

*Fourth*, commercial negotiations sometimes involve posturing and bluffing as parties take various positions about the terms under which they are prepared to conduct a transaction.  It is therefore not terribly surprising that one might find, if one could obtain a counterparty's internal documents and email exchanges about how it valued a particular transaction, documents that suggest that the party's "reserve price," for example, was actually higher than what it represented in negotiations would be its "last and final" offer.  To the extent that those parties continue to engage in transactions or negotiations, revealing one side's internal thinking regarding prior transactions could well put that party at a relative disadvantage in future negotiations with the other.  It is true that there are cases stating that mere "reputational injury" does not justify the sealing of information under § 107(b)(2) which protects information that is "scandalous" or "defamatory." [40]  But that does not mean, however, that a disclosure falls outside of § 107(b)(1)'s protection on the ground that it is merely "embarrassing."  The question is whether the "embarrassment"

---

[40] *See In re Food Management Group, LLC*, 359 B.R. 543 (Bankr. S.D.N.Y. 2007) (explaining that the fact that disclosure may cause a party reputational harm is not a basis to protect it under § 107(b)(2) on the ground that it is "scandalous" or "defamatory").

might give rise to the kind of competitive injury that is the subject of § 107(b)(1). Where that standard is met, the documents may be protected.

This Court will evaluate Mesabi's motion to unseal under the § 107(b)(1) standard articulated above. The chart below identifies the 11 documents and deposition excerpts in dispute, listing the exhibit numbers provided for those documents by each of the parties. For simplicity, the Court cites to these documents below by reference to the Cliffs exhibit number.

| Cliffs' Ex. Number | Mesabi's Ex. Number | Parties' positions |
|---|---|---|
| Ex. 2 | Ex. Binder Tab 13<br>First Suggs Declaration Ex. 23 | **Cliffs' position**: redacted<br><br>**Mesabi's position**: proposes fewer redactions |
| Ex. 3 | First Suggs Declaration Ex. 25 | **Cliffs' position**: redacted<br><br>**Mesabi's position**: unsealed in their entirety |
| Ex. 4 | First Suggs Declaration Ex. 26 | **Cliffs' position**: redacted<br><br>**Mesabi's position**: unsealed in their entirety |
| Ex. 5 | Ex. Binder Tab 14<br>First Suggs Declaration Ex. 35 | **Cliffs' position**: redacted<br><br>**Mesabi's position**: proposes fewer redactions |
| Ex. 6 | First Suggs Declaration Ex. 37 | **Cliffs' position**: redacted<br><br>**Mesabi's position**: unsealed in their entirety |
| Ex. 7 | First Suggs Declaration Ex. 38 | **Cliffs' position**: redacted<br><br>**Mesabi's position**: unsealed in their entirety |

| Ex. 9 | Ex. Binder Tab 15<br>First Suggs Declaration Ex. 42 | **Cliffs' position**: seal in full<br><br>**Mesabi's position**: proposes fewer redactions |
|---|---|---|
| Ex. 10 | Ex. Binder Tab 16<br>First Suggs Declaration Ex. 45 | **Cliffs' position**: seal in full<br><br>**Mesabi's position:** unsealed with redactions |
| Ex. 12 | First Suggs Declaration Ex. 54 | **Cliffs' position**: seal in full<br><br>**Mesabi's position:** unsealed with redactions |
| Ex. 14 | Second Suggs Declaration Ex. 62 | **Cliffs' position**: seal in full<br><br>**Mesabi's position:** unsealed with redactions |
| Ex. 15 | Second Suggs Declaration Ex. 63 | **Cliffs' position**: seal in full<br><br>**Mesabi's position:** unsealed with redactions |
| Ex. 18<br>Deposition<br>Testimony | | In dispute |

As further described below, the Court concludes that 10 of the 11 documents at issue, and 3 of the 5 contested deposition excerpts, contain confidential commercial information that is protected under § 107(b)(1) and will remain either partially or fully sealed.  The Court's specific findings are as follows:

### A.    Mesabi's motion to unseal exhibit 2 in part is denied.

Exhibit 2 is an internal presentation prepared by a Cliffs employee in 2013.[41] The document discusses Minnesota lands that continue to be mined or are available for mining today, and identifies which companies hold mineral leases with respect to

---

[41] Cliffs' Ex. 19 at 7-8.

those parcels.[42]  The presentation contains discussions of the potential financial and strategic value of these lands to Cliffs and other interested parties.[43]  Cliffs is concerned that disclosure of the redacted confidential information will disadvantage Cliffs in future negotiations with other landowners, specifically U.S. Steel, which is the current co-owner of a project "for which the redacted details in this document are relevant."[44]

The information that Mesabi seeks to unseal is strategic information, that if disclosed, creates a substantial risk of placing Cliffs at a competitive disadvantage. The Court will deny Mesabi's motion, in relevant part, to unseal exhibit 2.

### B.    Mesabi's motion to unseal exhibit 3 is granted in part and denied in part.

Exhibit 3 is an email chain from 2015 among Cliffs executives.[45]  In the email, the executives are discussing their negotiation posture and strategy for acquiring potential new mineral leases with the state of Minnesota.[46]  A portion of this email chain is a discussion about scheduling a call with a Minnesota state official.[47]  The balance of the email contains the executives' discussion about strategy and approach for those negotiations.  Mesabi has moved to unseal exhibit 3 entirely.

---

[42] *Id.*

[43] *Id.* at 8.

[44] *Id.* at 8; D.I. 1108 at 10.

[45] Cliffs' Ex. 19 at 8.

[46] *Id.* at 8-9.

[47] Cliffs' Ex. 3.

Cliffs currently holds mineral leases with Minnesota for the lands discussed in this email and seeks to maintain a commercial relationship with the state in the future.[48]  Cliffs has proposed redactions to portions of the email (sent on 7/24/2015 at 4:03 p.m.) that pertain to Cliffs' negotiation strategy with the state of Minnesota.  For the reasons described above (in the point listed as "*fourth*" beginning on p. 14), these portions of the email will remain sealed to prevent placing Cliffs at a competitive disadvantage or harming an existing commercial relationship.[49]  Disclosure of the email discussions regarding scheduling (emails sent on 7/24/2015 at 3:03 p.m., 3:32 p.m., and 3:37 p.m.) does not present a substantial risk of competitive injury so the Court will grant Mesabi's motion to unseal those portions of the email.

Mesabi's motion to unseal exhibit 3 is granted as to the above identified scheduling emails and denied as to the redacted portions of the email discussing negotiation strategy.

### C.     Mesabi's motion to unseal exhibit 4 is denied.

Exhibit 4 is an email discussion among Cliffs executives about what Cliffs' response should be to a news article about the Minnesota governor's position on Mesabi's affairs and how the news article affects Cliffs' negotiation posture with respect to potential new mineral leases with the state.[50]  Mesabi has moved to unseal this entire email exchange, asserting that disclosure of this 10-year old email exchange will, at most, cause reputational harm which is insufficient to justify

---

[48] D.I. 1124 at 8-9.

[49] Cliffs' Ex. 3 at 1.

[50] Cliffs' Ex. 19 at 9.

sealing under § 107(b).[51]  Cliffs asserts that disclosure of the proposed redacted information will cause it competitive injury because it currently holds mineral leases with the state of Minnesota for the lands discussed in the email, and expects to renegotiate or renew those leases in the future.[52]

For the same reasons discussed with respect to the prior document, Cliffs has sufficiently demonstrated that disclosure of the internal strategic discussions within this email exchange will create a substantial risk of damaging its present relationship with the state (which has ongoing commercial value) and place it at a competitive disadvantage relative to other parties interested in the lands discussed in the email. The proposed redacted information is protectable under § 107(b)(1).  Mesabi's motion to unseal exhibit 4 is denied.

### D.    Mesabi's motion to unseal exhibit 5 in part is denied.

Exhibit 5 is an internal presentation from 2016 prepared in connection with Cliffs' analysis of a proposed transaction.[53]  It contains financial valuations prepared by one of Cliffs' employees of certain lands in Minnesota.[54]  The lands discussed in this internal presentation are continuing to be mined or are available to be mined today.[55] Because the internal presentation contains Cliffs' internal considerations for land acquisitions, Cliffs asserts that disclosure of the proposed redacted information,

---

[51] D.I. 1103 at 16-17.

[52] Cliffs' Ex. 19 at 10.

[53] *Id.*

[54] *Id.*

[55] *Id.*

could cause it competitive injury.[56]   Mesabi does not object to Cliffs' proposed redactions except that it seeks to unseal one additional sentence from a slide in this presentation.[57]

The information Cliffs proposes to redact is strategic internal information with commercial value, whose public disclosure poses substantial risk of competitive harm to Cliffs.  The Court will deny Mesabi's motion to unseal, in relevant part, exhibit 5.

### E.    Mesabi's motion to unseal exhibit 6 is granted.

Exhibit 6 is a 2014 presentation that was prepared for and presented to Cliffs' investors.[58]   Mesabi has moved to unseal the presentation in its entirety.   Johnson testified that he was unaware of how many people with whom Cliffs shared this presentation, and what, if any, steps Cliffs took to prevent this presentation from being distributed beyond the intended recipients (investors).[59]   Though the presentation is labeled "confidential," Cliffs has presented no evidence to suggest that the investors were under any legal obligation to maintain the information contained within this presentation in confidence.[60]

A party seeking to protect information as confidential must take reasonable steps to preserve that information's confidentiality.[61]   When a document is widely

---

[56] *Id.* at 10-11.

[57] D.I. 1103 at 17.

[58] Cliffs' Ex. 19 at 11.

[59] Aug. 11, 2025 Hr'g Tr. at 38-39.

[60] *Id.* at 39-40.

[61] *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (explaining that one of the factors that must be considered when deciding whether to seal documents is whether the information contained within the records has already been made publicly available in some capacity).

distributed, simply marking the document as "confidential," on its own, is insufficient to establish that the party actually took meaningful steps to protect the confidentiality of the information.  Cliffs has thus failed to meet its burden of demonstrating that it took reasonable steps to ensure that the information within this presentation to investors would remain confidential.  The Court accordingly grants Mesabi's motion to unseal exhibit 6.

### F.    Mesabi's motion to unseal exhibit 7 in part is denied.

Exhibit 7 is an email chain between Cliffs' CEO and Cliffs' investment bankers.[62]  The email chain contains a draft of the 2014 presentation prepared for use with investors (exhibit 6).  Cliffs has proposed to redact various pieces of information in the draft presentation.  Mesabi contends that some of the proposed redactions are general facts about the iron ore industry that are known by the public already or are generally knowable.[63]

As described above under the point listed as "*third*" (beginning on p. 13), the Court is not persuaded by the argument that the inclusion of otherwise public information in a particular internal document means that the statement itself is not a confidential one.  Based on its review of the document and the factual record presented at the evidentiary hearing, the Court is satisfied that the disclosure of the document would pose a substantial risk of competitive injury to Cliffs.  The fact that the document is a draft of something that was ultimately made public (as revised)

[62] Cliffs' Ex. 19 at 12.

[63] D.I. 1103 at 20.

does not mean that the draft itself was not confidential. The point of creating a confidential *draft* is to permit an internal deliberative process about what should ultimately be disclosed.[64] The Court therefore denies Mesabi's motion to unseal, in relevant part, exhibit 7.

### G.    Mesabi's motion to unseal exhibit 9 in part is denied.

Exhibit 9 is an internal presentation prepared by a Cliffs corporate strategy group employee.[65] The presentation contains Cliffs' analysis of one of Mesabi's projects, strategic considerations with regard to a current Cliffs customer, and Cliffs' strategies for responding to competition.[66] Cliffs seeks to seal this document in its entirety. Mesabi has proposed to redact only slide 2 of 3.

Internal strategic communications such as these are protectable commercial information under § 107(b)(1), where, as here, the disclosure poses a substantial risk of competitive injury. In view of the fact that the customer that is discussed in the document remains a current customer, the Court is not persuaded by Mesabi's contention that the information is too stale to warrant protection. Mesabi's motion to unseal exhibit 9, in relevant part, is denied.

### H.    Mesabi's motion to unseal exhibit 10 in part is denied.

Exhibit 10 is an employee self-assessment form prepared by a former mine engineer.[67] The assessment discusses Cliffs' strategy and techniques for mining

---

[64] *Actavis*, 2014 WL 5353774, at *3 (explaining that "unpublished drafts" may be confidential even if the final version of a document will be disclosed publicly).

[65] Cliffs' Ex. 19 at 13; D.I. 1102 at 16.

[66] Cliffs' Ex. 19 at 13.

[67] *Id.*

operations at two different properties, Cliffs' valuation of a potential land acquisition, and how this acquisition may affect the lifetime of one of Cliffs' existing mining projects.[68]  Cliffs seeks to seal this document in its entirety.  Mesabi has proposed to unseal one paragraph in this document that describes the former employee's role in Cliffs' land acquisitions and leases.  The paragraph in question includes a discussion of Cliffs' strategic approach to land acquisition that, if made public, would impose on Cliffs a substantial risk of competitive injury.  Mesabi's motion to unseal exhibit 10, in relevant part, is therefore denied.

## I.     Mesabi's motion to unseal exhibit 12, in part, is denied.

Exhibit 12 is an email chain among Cliffs executives discussing their potential interest in acquiring a competitor's outstanding debt.[69]  The email contains discussion of Cliffs' valuation of the competitor's debt based on its assets, and Cliffs' communications with and strategy for negotiating with the competitor's creditors, from whom it would acquire this debt.[70]  Cliffs seeks to seal this document in full to ensure that disclosure of these discussions does not affect future negotiations with this competitor or create leverage for other interested purchasers.[71]  Mesabi has proposed to unseal two sentences from this email chain, asserting that the two sentences, in isolation, do not reveal "competitively sensitive" information.[72]

---

[68] *Id.*; D.I. 1102 at 17.

[69] Cliffs' Ex. 19 at 15.

[70] *Id.*

[71] *Id.*; D.I. 1102 at 17.

[72] D.I. 1103 at 23.

Having reviewed the document in question and based on the evidentiary record in the case, the Court is satisfied that the disclosure of this information would impose on Cliffs a substantial risk of competitive injury (for the reason listed as *"first,"* beginning on p. 11). Mesabi's motion to unseal exhibit 12, in relevant part, is denied.

### J.    Mesabi's motion to unseal exhibits 14 and 15, in part, is denied.

Exhibit 14 is an internal presentation from 2015 discussing Cliffs' expansion of its taconite reserves.[73] Exhibit 15 is an internal presentation from 2017 discussing the same. The presentations contain information about Cliffs' deliberative process for executing on this expansion, timelines, and projected costs.[74] Cliffs is still considering expansion options and seeks to seal these documents to ensure it is not disadvantaged in negotiations with necessary suppliers.[75]

Mesabi has proposed to unseal slides 1, 3, and portions of slide 2 in both exhibits 14 and 15, asserting that these slides contain general information from 10 years ago that the public already has access to, and in far greater detail.[76]

As described above, however, the fact that a document contains otherwise public information does not automatically render the inclusion of that information in a particular commercial document non-sensitive. The disclosure of these internal deliberations for expansion would impose on Cliffs a substantial risk of competitive

---

[73] D.I. 1124 at 16.

[74] *Id.*

[75] *Id.* at 16-17; D.I. 1102 at 18-19.

[76] D.I. 1103 at 23-24.

injury.  The documents are thus protectable under § 107(b)(1).  Mesabi's motion to unseal exhibits 14 and 15, in relevant part, is therefore denied.

### K.    Mesabi's motion to unseal various deposition excerpts is granted in part and denied in part.

Cliffs has moved to redact five deposition excerpts in Mesabi's opening brief in support of its motion to preliminarily enjoin Cliffs from executing certain Minnesota state leases.[77]  The excerpts are from Gabriel Johnson's 30(b)(6) deposition and Lourenco Goncalves' 30(b)(1) deposition.[78]  Two of the excerpts reflect Cliffs' views about Mesabi's projects, tactics, and strategies – these excerpts are commercially sensitive and their disclosure would impose a substantial risk of competitive injury.  The motion to unseal these excerpts will thus be denied.[79]  Two of the excerpts discuss Cliffs' land acquisitions – Mesabi asserts that these excerpts contain public information and Cliffs has not disputed that.[80]  To that end, if the testifying party answered a question by providing publicly available information, that statement is not protectable now.  The motion will be granted to that extent.  The fifth excerpt pertains to Cliffs' internal operations – how Cliffs manages its operations is

---

[77] Cliffs' Ex. 19 at 19; D.I. 1102 at 20.

[78] Cliffs' Ex. 19 at 19.

[79] The first excerpt is from Goncalves' deposition transcript (p. 240) and is referenced in D.I. 715 at 9.  The second excerpt is from Goncalves' deposition transcript (pp. 239-241) and is referenced in D.I. 715 at 21.

[80] The first excerpt is from Johnson's deposition transcript (p. 130) and referenced in D.I. 715 at 10.  The second excerpt is from Johnson's deposition transcript (pp. 113-114) and is referenced in D.I. 715 at 10.

protectable information whose disclosure would pose a substantial risk of competitive injury.  The motion to unseal this excerpt will therefore be denied.[81]

## Conclusion

For the foregoing reasons, Mesabi's motion is granted in part and denied in part.  The parties are directed to settle an appropriate order reflecting the terms of this ruling, including (to the extent Cliffs intends to appeal this ruling) a provision staying the effectiveness of the order for 30 days to provide Cliffs the opportunity to seek a stay pending appeal.

Dated: September 4, 2025

_____
CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE

---

[81] This excerpt is from Johnson's deposition transcript (p. 96) and is referenced in D.I. 715 at 10.